UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIEGO AGUILAR, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BATON CORPORATION LTD, d/b/a PUMP.FUN, ALON COHEN, DYLAN KERLER, and NOAH BERNHARD HUGO TWEEDALE,<br><br>Defendants. | Case No. 1:25-cv-00880-CM-BCM |

**MEMORANDUM OF LAW IN SUPPORT OF MICHAEL OKAFOR'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND**
<u>**APPROVAL OF SELECTION OF LEAD COUNSEL**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND............................................................ 2

    A.    The Defendants ..................................................................................... 2

    B.    The Sale of Pump.Fun Tokens Is Alleged to Damage Investors ........... 2

    C.    Defendants' Alleged Violations of the Securities Act........................... 4

    D.    Procedural History ................................................................................. 5

ARGUMENT ........................................................................................................................ 6

I.    Okafor Is the Most Adequate Plaintiff and Should Be Appointed Lead Plaintiff .............. 6

    A.    The Lead Plaintiff Framework Under the PSLRA ................................ 6

    B.    Okafor Has Satisfied the PSLRA's Procedural Requirements .............. 7

    C.    Okafor Has the "Largest Financial Interest" in the Relief Sought by the Class ..... 7

    D.    Okafor Satisfies the Typicality and Adequacy Requirements of Rule 23 .............. 8

II.    Okafor's Selection of Wolf Popper and Burwick Law to Serve as Co-Lead Counsel Should Be Approved ............................................................................................... 10

CONCLUSION .................................................................................................................... 12

WORD COUNT CERTIFICATION ................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Aude v. Kobe Steel, Ltd.*,
  No. 17-CV-10085 (VSB), 2018 U.S. Dist. LEXIS 57591 (S.D.N.Y. Apr. 4, 2018) .................. 7

*Balestra v. ATBCOIN LLC*,
  380 F. Supp. 3d 340 (S.D.N.Y. 2019) ................................................................................. 7

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Svcs. Group, Inc.*,
  269 F.R.D. 291 (S.D.N.Y. 2010) .......................................................................................... 9

*In re Fuwei Films Sec. Litig.*,
  247 F.R.D. 432 (S.D.N.Y. 2008) ...................................................................................... 7, 8

*In re Livent, Inc. Noteholders Sec. Litig.*,
  210 F.R.D. 512 (S.D.N.Y. 2002) .......................................................................................... 8

*Lax v. First Merchants Acceptance Corp.*,
  No. 97 C 2715, 1997 U.S. Dist. LEXIS 12432 (N.D. Ill. Aug. 11, 1997) ............................... 7

*Martinek v. AmTrust Financial Services, Inc.*,
  No. 19-cv-08030-KPF, ECF No. 111 (Final Judgement) (S.D.N.Y. Nov. 16, 2022) .............. 10

*Martinek v. AmTrust Financial Services, Inc.*,
  No. 19-cv-08030-KPF, 2022 U.S. Dist. LEXIS 209097 (S.D.N.Y. Nov. 16, 2022) ................ 10

*Oberlander v. Coinbase Glob. Inc.*,
  No. 23-184-cv, 2024 U.S. App. LEXIS 8200 (2d Cir. Apr. 5, 2024) ...................................... 5

*Pinter v. Dahl*,
  486 U.S. 622 (1988) ............................................................................................................. 5

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*,
  No. 2:09-cv-01713, ECF No. 230 (Transcript) (E.D.N.Y. July 24, 2014) ............................. 10

*SEC. v. W.J. Howey Co.*,
  328 U.S. 293 (1946) ............................................................................................................. 4

**Statutes**

15 U.S.C. § 77b(a)(1) ................................................................................................................... 1

15 U.S.C. § 77e ............................................................................................................................ 1

15 U.S.C. § 77l(a)(1) ................................................................................................................ 1, 7

15 U.S.C. § 77o ............................................................................................................................ 1

15 U.S.C. § 77z-1(a) ................................................................................................ passim

## PRELIMINARY STATEMENT

This litigation is a securities class action brought on behalf of a Class of all purchasers of tokens promoted and sold on Pump.Fun (the "Pump.Fun Tokens"). The complaint alleges, among other things, that (a) the Pump.Fun Tokens are securities, as defined by Section 2(1) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77b(a)(1); (b) that a U.S. Securities and Exchange Commission ("SEC") required registration statement was never filed for Pump.Fun Tokens; (c) that defendant Baton Corporation was a "statutory seller" of the Pump.Fun Tokens and violated Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e, 77l(a)(1), by selling, passing title, or soliciting the purchase of, Pump.Fun Tokens to the Class, and (d) the other defendants were control person of Baton Corporation and violated Section 15 of the Securities Act, 15 U.S.C. § 77o.

Class member Michael Okafor ("Okafor") respectfully seeks appointment as Lead Plaintiff in the action. Okafor meets all the requirements of the Private Securities Litigation Reform Act ("PSLRA") for appointment as Lead Plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii). Okafor timely filed this motion; believes he has the largest financial interest in the relief sought by the Class, having suffered a loss of $242,076.74 related to his purchase of Pump.Fun Tokens; and also satisfies the adequacy and typicality requirements of Rule 23.

Okafor further requests that the Court approve his selection of Wolf Popper LLP and Burwick Law, PLLC to serve as Co-Lead Counsel for the Class. Wolf Popper is a nationally recognized securities litigation firm with a consistent record of achieving substantial recoveries for the benefit of injured investor classes. Burwick Law PLLC is a law firm focused on representing clients in issues related to digital assets, cryptocurrency, and securities law. Wolf Popper and Burwick Law have the expertise and resources necessary to provide high quality legal representation to the Class.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

## A. The Defendants

Defendant Baton Corporation Ltd. ("Baton Corporation" or the "Company") is a private limited company organized under the laws of the United Kingdom. Baton Corporation owns and operates Pump.Fun and the Pump.Fun website (collectively, "Pump.Fun"), and/or conducted business as or through Pump.Fun. ¶¶ 14-15. Pump.Fun's core function is to work alongside influencers to co-issue and market unregistered securities. ¶ 6.

Defendant Alon Cohen ("Cohen") is a founder and the Chief Operating Officer ("COO") of Baton Corporation. ¶ 16. Defendant Dylan Kerler ("Kerler") is a founder and the Chief Technology Officer ("CTO") of Baton Corporation. ¶ 17. Defendant Noah Bernhard Hugo Tweedale ("Tweedale") is a founder and the Chief Executive Officer ("CEO") of Baton Corporation. Tweedale also owns or controls more than 75% of the voting rights in Baton Corporation. ¶ 18.

## B. The Sale of Pump.Fun Tokens Is Alleged to Damage Investors

Pump.Fun Tokens are memecoins. Memecoins are digital assets that are issued leveraging existing blockchain technology. While functioning as tradable cryptocurrencies on blockchain networks, memecoins derive their primary appeal from their association with viral trends, social media phenomena, and celebrity endorsements. The term "memecoin" aptly reflects the reliance of these assets on cultural references and branding strategies that resonate strongly with online communities, serving as a tool to build awareness and attract participants. The proliferation of memecoins and their associated trading platforms has led to widespread financial losses among

---

[1] Unless otherwise noted, the factual background herein relies on the Complaint filed in this action (ECF No.1), and references to "¶_" are to the paragraphs of the Complaint.

retail investors, particularly affecting younger and less experienced individuals who are attracted by promises of quick wealth and social media promotion. *See, e.g.,* ¶¶ 26-40.

The promotional strategies employed for memecoins heavily emphasize the potential for exponential returns, often described in terms such as "100x" or "1000x" gains while exploiting the "fear of missing out" (FOMO) psychology, creating artificial urgency and encouraging impulsive investment decisions without proper consideration of risks. Despite their growing popularity in cryptocurrency markets, memecoins generally lack any substantive economic value or underlying assets with price movements driven almost entirely by speculation, marketing hype, and the continuous influx of new investors, creating an inherently unstable and high-risk investment environment. The speculative nature of memecoins, combined with their accessibility and liquidity, attracts participants seeking opportunities for financial gain in the volatile cryptocurrency market. *See, e.g.,* ¶¶ 26-40.

Pump.Fun exercises complete control over the creation, launch, and trading of every memecoin on its platform through a mandatory standardized technical framework. This framework encompasses proprietary smart contract templates, unified pricing mechanisms, and centralized liquidity management that apply uniformly to all tokens launched on the platform. Every token created through Pump.Fun must utilize the Pump.Fun's proprietary smart contract templates, which dictate the fundamental characteristics and operational parameters of the token. Significantly, these templates are not customizable by individual developers, ensuring that all tokens share identical technical characteristics and operational features that make them securities under federal law. The platform implements a uniform bonding curve pricing mechanism across all tokens, which automatically determines token prices based on supply and demand. This standardized pricing structure creates identical speculative characteristics across all tokens, as

early investors are incentivized by artificially low initial prices that rise automatically as more investors purchase the token. *See, e.g.,* ¶¶ 72-76.

For example, Pump.Fun actively promoted the First Convicted Raccoon Token, the FWOG Token, and the GRIFFAIN Token through systematic campaigns and actions that were designed to drive speculative investment. ¶ 41. These promotional materials consistently emphasized potential returns while minimizing or omitting disclosure of investment risks. These promotional materials were designed to create expectations of profit among potential investors. ¶ 45. The defendants actively promoted Pump.Fun Tokens through a systematic campaign designed to drive speculative investment and platform adoption. This campaign included regular social media posts demonstrating increasingly sophisticated AI trading capabilities, including "Agent Sniper," which promises to "snipe tokens with less X SOL in the bonding curve," and "Agent Flipper," which advertises specific profit targets like "2x initials" and "10x take profit." ¶¶ 41, 45, 66. These campaigns included regular social media posts combined with claims about record-breaking market capitalization achievement, and were designed to create expectations of profit among potential investors. ¶¶ 41-42.

### C. <u>Defendants' Alleged Violations of the Securities Act</u>

The Complaint alleges that Pump.Fun Tokens are securities, as defined by Section 2(1) of the Securities Act, because they "involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *SEC. v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946). For example, investors made a monetary investment by purchasing Pump.Fun Tokens. ¶¶ 2, 41-42, 45-52, 56-62, 65-71. A common enterprise existed, as evidenced by a sharing or pooling of the of investors' funds, and the fortunes of each investor in the pool being tied to one another and the fortunes and efforts of Pump.Fun and/or the defendants. ¶¶ 91-104. The marketing campaign, led by the defendants, created uniform expectations of profit across all tokens through

4

its standardized marketing approach and technical infrastructure. ¶¶ 105-109 Pump.Fun's promotional materials consistently emphasize extraordinary returns, with statements like "100x your money" and "222,222x growth" presented as realistic possibilities for any token launched on the platform. ¶¶ 77-81.

The Complaint alleges that Pump.Fun Tokens are unregistered securities. No required registration statement was ever filed for the Pump.Fun Tokens. ¶¶ 3, 141.

The Complaint alleges that Baton Corporation, which owns, operates, and controls Pump.Fun, violated Sections 5 and 12(a)(1) of the Securities Act and is liable to the proposed Class as it is a statutory seller of Pump.Fun Tokens in that it either (a) passed title or other interest in Pump.Fun Tokens for value to the Class, or (b) solicited the purchase of Pump.Fun Tokens for their own financial benefit through, among other things, public statements touting Pump.Fun Tokens and their potential for profit, as well as encouraging the purchase of Pump.Fun Tokens. *See, e.g.,* ¶¶ 1-5, 104-113; *see also Pinter v. Dahl*, 486 U.S. 622 (1988); *Oberlander v. Coinbase Glob. Inc.*, No. 23-184-cv, 2024 U.S. App. LEXIS 8200, at *3 (2d Cir. Apr. 5, 2024). The Complaint also alleges claims against defendants Cohen, Kerler, and Tweedale as control persons of Baton Corporation. ¶¶ 146-151.

D. **Procedural History**

On January 30, 2025, this action was filed in this Court. On February 1, 2025, the PSLRA required notice of pendency (15 U.S.C. § 77z-1(a)(3)(A)(i)) was published on *ACCESS Newswire*, a national wire service, announcing that this securities class action had been filed against the defendants, and advising the putative class members that they may move the Court no later than

60 days from the date of the notice, or April 2, 2025 for appointment as Lead Plaintiff (the "Notice," Insley-Pruitt Decl. Ex. 1).[2]

**ARGUMENT**

I. **Okafor Is the Most Adequate Plaintiff and Should Be Appointed Lead Plaintiff**

   A. **The Lead Plaintiff Framework Under the PSLRA**

The PSLRA instructs that in a securities class action, a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff')." 15 U.S.C. § 77z-1(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the "person or group of persons that has either filed the complaint or made a motion [for appointment as lead plaintiff]; in the determination of the court, has the largest financial interest in the relief sought by the class; and … otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa)-(cc). The PSLRA allows that the presumption may only be rebutted "upon proof" that the most adequate plaintiff "will not fairly and adequately protect the interests of the class; or … is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa)-(bb).

Okafor satisfies each requirement of the PSLRA, and respectfully submits that he is the presumptive "most adequate plaintiff." Okafor has complied with the PSLRA procedural requirements, holds the largest financial interest of any known movant, and satisfies Rule 23's typicality and adequacy requirements.

---

[2] Declaration of Matthew Insley-Pruitt in Support of Michael Okafor's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Insley-Pruitt Declaration").

### B. Okafor Has Satisfied the PSLRA's Procedural Requirements

Okafor timely filed the instant motion seeking appointment as Lead Plaintiff for the Class and approval of his selection of lead counsel for the Class. Okafor has also submitted the PSLRA required sworn certification attesting to his willingness to serve as Lead Plaintiff for the Class and to provide testimony at deposition and trial, if necessary. Insley-Pruitt Decl. Ex. 2. Okafor therefore satisfies the first element of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

### C. Okafor Has the "Largest Financial Interest" in the Relief Sought by the Class

The PSLRA states that the Court should award the most adequate plaintiff presumption to the movant who "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). The PSLRA does not specify a method to determine which lead plaintiff movant has the largest financial interest, and neither the Supreme Court nor the Second Circuit have specified a method for the calculation. *See Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 361 (S.D.N.Y. 2019) (citation and omitted) (applying PSLRA lead plaintiff analysis in case alleging sale of unregistered securities).

> Thus, courts in this district typically apply the four-factor test first adopted *in Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 12432 (N.D. Ill. Aug. 11, 1997), when making a determination as to which party has the largest financial interest. Those factors include: (1) number of shares purchased during the class period; (2) number of net shares purchased during the class period; (3) net funds expended during the class period; and (4) approximate financial losses suffered.

*Id*. (citation omitted); *see also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008) (setting forth elements of the *Lax* test); *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 U.S. Dist. LEXIS 57591, at *7 (S.D.N.Y. Apr. 4, 2018) (applying *Lax* test).

Okafor purchased 301,982,370.53 Pump.Fun Tokens and sold 281,273,701.69 Pump.Fun Tokens. Applying the *Lax* factors, Okafor (1) purchased 301,982,370.53 Pump.Fun Tokens, (2) purchased 20,708,668.84 net Pump.Fun Tokens, (3) expended net funds of $242,076.74, and (4) suffered approximate financial losses of $242,076.74. As damages under Section 12(a)(1) of the Securities Act are rescissory, the value of Okafor's current holdings does not reduce his losses. 15 U.S.C. § 77l(a)(1) (the purchaser "may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.").

Accordingly, Okafor satisfies the second requirement of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).

### D. Okafor Satisfies the Typicality and Adequacy Requirements of Rule 23

In a motion for appointment as lead plaintiff, "the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Fuwei Films*, 247 F.R.D. at 436.

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Okafor's claims are typical of those of the purported Class. Okafor, as did all members of the Class, purchased Pump.Fun Tokens that were unregistered securities in violation of the federal securities laws either from Pump.Fun or as a result of the defendants' solicitations of the sale of Pump.Fun Tokens. Okafor, and the Class, suffered damages as a result of the

purchase of these unregistered securities. Because Okafor's claims arise from the same course of events as the Class's claims, Okafor satisfies the typicality requirement of Rule 23(a)(3).

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Svcs. Group, Inc.*, 269 F.R.D. 291, 297 (S.D.N.Y. 2010).

Here, Okafor is an adequate representative. Okafor's claims are not antagonistic or in conflict with those of the Class. Okafor is not subject to any unique defenses. Further, Okafor's loss of $242,076.74 means he has sufficient interest in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, whose interests align directly with his own. As described below, Okafor has retained Wolf Popper LLP and Burwick Law PLLC to act as Co-Lead Counsel, and the firms are experienced in securities, cryptocurrency, and digital asset litigation. Okafor has submitted a sworn certification, as required by the PSLRA, attesting to his willingness to serve as Lead Plaintiff for the Class and to provide testimony at deposition and trial, if necessary. Insley-Pruitt Decl., Ex. 2. Okafor has also submitted a declaration attesting to, among other things, his understanding of the obligations of a lead plaintiff and commitment to zealously prosecute this litigation. Insley-Pruitt Decl., Ex. 3.

Because Okafor's claims are typical of those of the Class and because Okafor will adequately represent the Class, Okafor satisfies the third requirement of the PSLRA's "presumptively most adequate plaintiff" analysis. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc).

## II. Okafor's Selection of Wolf Popper and Burwick Law to Serve as Co-Lead Counsel Should Be Approved

Under the PSLRA framework, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z-1(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Okafor has selected Wolf Popper and Burwick Law to act as Co-Lead Counsel, and respectfully request that the Court approve its selection. Wolf Popper is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in its attached resume. *See* Insley-Pruitt Decl., Ex. 4. For example, in *Martinek v. AmTrust Financial Services, Inc.*, No. 19-cv-08030-KPF (S.D.N.Y.), Judge Katherine Polk Failla of this Court appointed Wolf Popper to serve as lead counsel on behalf of a class of investors in AmTrust Financial Services preferred stock. On November 16, 2022, Judge Failla entered an order finally approving a $13 million cash settlement for the Martinek class. *Martinek*, ECF No. 111 (Final Judgment). Judge Failla also stated that Wolf Popper "conducted the Litigation and achieved the Settlement with skill, perseverance and diligent advocacy; [and] Lead Counsel are highly experienced in class action litigation and securities class action litigation…." *Martinek v. Amtrust Fin. Servs., Inc.*, No. 19 Civ. 8030 (KPF), 2022 U.S. Dist. LEXIS 209097, at *4 (S.D.N.Y. Nov. 16, 2022).

Also, in *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 2:09-cv-01713 (E.D.N.Y.), Wolf Popper represented the Public Employees' Retirement System of Mississippi as lead plaintiff and recovered $280 million for investors in residential mortgage-backed securities issued by JPMorgan Acceptance Corp. On July 24, 2014, Judge Pamela K. Chen of the Eastern District of New York entered an order approving

the settlement. The Court found that "the representation of both sides was obviously very vigorous. The plaintiffs expended efforts in terms of pursuing the investigation, the theories, the research and the advocacy." *J.P. Morgan Acceptance Corp. I*, ECF No. 230 (Transcript) at 19:14-17. "Certainly in the beginning, at the time when some of the legal principles that are applied in this case, in any cases related to mortgage-backed securities, was not well established. They did yeomen's work in trying to establish some of those principles.... [T]his is a good result in this particular case." *Id.* at 22:5-18.

Burwick Law is a New York City-based litigation firm focused on representing clients in actions related to digital assets, cryptocurrency, and securities law. Burwick Law has rapidly established itself as a leader in cryptocurrency litigation. Burwick Law has successfully represented hundreds of claimants in complex actions involving fraudulent token sales, nonfungible tokens (NFTs), and Ponzi schemes, including a $440 million staking-based Ponzi scheme. The firm's work has been featured in leading media outlets such as Law360 and Bloomberg Law, underscoring its reputation for navigating high-stakes litigation in the evolving digital asset space. Max Burwick brings a unique combination of technological expertise and legal acumen to his practice, focusing on protecting investors and consumers from fraud and regulatory violations. With a commitment to rigorous advocacy and client-centered service, Burwick Law leverages deep knowledge of securities regulations and blockchain technologies to hold violators accountable and secure meaningful recoveries for defrauded investors. *See* Insley-Pruitt Decl., Ex. 5.

As a result of Wolf Popper's and Burwick Law's extensive experience in litigation involving issues similar to those raised in this action, they have the skill and knowledge to prosecute this action effectively and expeditiously. The Court may be assured that by approving

the Okafor's selection of Lead Counsel, the members of the Class will receive the best legal representation available.

## **CONCLUSION**

For the foregoing reasons, Okafor respectfully requests that this Court issue an Order appointing him as Lead Plaintiff and approving Wolf Popper and Burwick Law as Co-Lead Counsel.

Dated: April 2, 2025
      New York, NY

Respectfully submitted,

**WOLF POPPER LLP**

*/s/ Matthew Insley-Pruitt*
Matthew Insley-Pruitt
minsley-pruitt@wolfpopper.com
Chet B. Waldman
cwaldman@wolfpopper.com
Joshua W. Ruthizer
jruthizer@wolfpopper.com
Terrence Zhang
tzhang@wolfpopper.com
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: (212) 759-4600

Max Burwick (application for admission forthcoming)
max@burwick.law
BURWICK LAW, PLLC
43 West 43rd Street, Suite 114
New York, NY 10036
Telephone: (646) 762-1080

*Attorneys for Movant Michael Okafor and Proposed Lead Counsel for the Class*

## **WORD COUNT CERTIFICATION**

Pursuant to Southern District of New York Local Civil Rule 7.1(c), the undersigned hereby certifies that this memorandum of law contains 3,298 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates. I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.

                                                               */s/ Matthew Insley-Pruitt*
                                                               Matthew Insley-Pruitt