UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIEGO AGUILAR, KENDALL CARNAHAN and MICHAEL OKAFOR on behalf of themselves and all others similarly situated,<br>    *Plaintiffs*,<br><br>v.<br><br>BATON CORPORATION LTD, d/b/a PUMP.FUN, ALON COHEN, DYLAN KERLER, and NOAH BERNHARD HUGO TWEEDALE, SOLANA LABS INC., SOLANA FOUNDATION, JITO LABS INC., JITO FOUNDATION, ANATOLY YAKOVENKO, RAJ GOKAL, DAN ALBERT, AUSTIN FEDERA, LILY LIU, LUCAS BRUDER, and BRIAN SMITH,<br>    *Defendants*. | Case No.: 1:25-cv-00880-CM-BCM<br><br>Hon. Colleen McMahon |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
<u>ALTERNATIVE SERVICE AND AN EXTENSION OF TIME</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii
I.    INTRODUCTION ........................................................................................................... 1
II.    FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 2
III.    PLAINTIFFS' ATTEMPTS TO SERVE DEFENDANTS ............................................. 3
    A.    Defendant Anatoly Yakovenko .......................................................................... 3
    B.    Defendant Raj Gokal .......................................................................................... 4
    C.    Defendant Lily Liu ............................................................................................. 4
    D.    Brian Smith ........................................................................................................ 4
    E.    Defendant Lucas Bruder .................................................................................... 5
    F.    Defendant Jito Foundation ................................................................................. 5
IV.    PROPOSED ALTERNATIVE SERVICE METHODS .................................................. 6
V.    ARGUMENT: ................................................................................................................. 6
    A.    Alternative Service is Permitted by Fed. R. Civ. P. 4(e)(1) ............................... 7
    B.    Plaintiffs Should be Permitted an Extension of Time to Serve ......................... 8
    C.    Plaintiffs' Proposed Alternative Method of Service Satisfies Due Process ..... 8
VI.    CONCLUSION ................................................................................................................ 9

# **TABLE OF AUTHORITIES**

**Cases**

*Breuer v. Castaneda*,
 No. 15-CV-9042 (JPO), 2016 WL 11483932 (S.D.N.Y. Apr. 19, 2016) .................................. 8

*Buon v. Spindler*,
 65 F.4th 64 (2d Cir. 2023) ....................................................................................................... 8

*DeLuca v. AccessIT Grp., Inc.*,
 695 F. Supp. 2d 54 (S.D.N.Y. 2010) ........................................................................................ 8

*Europgold Ltd. v. Silver N Gold Wholesale*, LLC,
 No. 1:24-CV-07297 (JLR), 2025 WL 1898949 (S.D.N.Y. July 9, 2025) ............................. 7, 8

*Freeman v. Giuliani*,
 No. 24-CV-06563 (LJL), 2024 WL 5054913 (S.D.N.Y. Dec. 10, 2024) .............................. 7, 8

*Grp. One Ltd. v. GTE GmbH*,
 523 F. Supp. 3d 323 (E.D.N.Y. 2021) ...................................................................................... 8

*Meghji v. Wallet Owner (In re Celsius Network LLC)*,
 666 B.R. 28 (Bankr. S.D.N.Y. 2024) ....................................................................................... 8

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
 339 U.S. 306 (1950) ................................................................................................................. 8

*Patel v. Clane Gessel Studio*,
 No. 22CIV10964GHWRFT, 2023 WL 8280498 (S.D.N.Y. Nov. 30, 2023) ........................... 8

**Rules**

CPLR § 308(5) ............................................................................................................................... 7

Fed. R. Civ. P. 4(e)(1) .................................................................................................................... 7

I.   **INTRODUCTION**

Plaintiffs Diego Aguilar, Kendall Carnahan, and Michael Okafor, on behalf of themselves and all others similarly situated, have brought this action against Defendants for, among other things, operating a coordinated racketeering enterprise disguised as a meme coin launch platform. At the center of this scheme are corporate and individual defendants, including Pump.fun, Jito Labs, Jito Foundation, Solana Labs, the Solana Foundation, and their respective executives and affiliates, presented publicly as innovators in decentralized finance and blockchain technology. In reality, Pump.fun functioned as the "slot machine cabinet" of an illegal gambling digital casino. Its purpose: facilitate unlicensed gambling and money transmission at a massive scale (ECF No. 34 ¶¶ 1–2).

The "Meme Coin Casino" generated hundreds of millions in revenue through "exit liquidity gambling," a scheme in which early buyers of newly created tokens profit by selling to later entrants before the price collapses, often within minutes, leaving latecomers with worthless assets. In the alternative, plaintiffs allege Defendants sold certain unregistered securities, without required registration, misleading users about the fairness of launches, and concealing structural advantages for insiders (*id, at* ¶¶ 16, 21).

Based on these allegations, Plaintiffs assert claims under Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(1); the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and 1962(d); New York General Business Law §§ 349 and 350; and unjust enrichment, and are seeking injunctive relief, damages, and other remedies (ECF No. 34).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2025, Plaintiffs filed their initial Complaint against Baton Corporation Ltd., d/b/a Pump.fun, Alon Cohen, Dylan Kerler, and Noah Bernhard Hugo Tweedale, alleging securities violations within the meaning of Section 2(1) of the Securities Act, 15 U.S.C. § 77b(a)(1). (ECF No. 1).

On June 26, 2025, in the *Appointment of Lead Plaintiff and Lead Counsel* order, the Court expressly suspended the normal Federal Rule service deadlines, directing that "[a]ny new defendants who might be identified in that 30-day period must be served within 20 days thereafter (Federal Rules time periods are suspended.) ECF No. 33.

On July 23, 2025, Plaintiffs Diego Aguilar, Kendall Carnahan, and Michael Okafor, on behalf of themselves and all others similarly situated, filed an Amended Complaint naming additional defendants: Solana Labs Inc., Solana Foundation, Jito Labs Inc., Jito Foundation, Anatoly Yakovenko, Raj Gokal, Dan Albert, Austin Federa, Lily Liu, Lucas Bruder, and Brian Smith. The Amended Complaint alleges four counts: (i) violation of Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(1) (against Pump.fun, Cohen, Kerler, and Tweedale), asserted on behalf of the Pump Token purchasers of twenty memecoins; (ii) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and 1962(d), against all defendants as to all tokens and the class, and in the alternative as to the Pump Tokens and Pump Tokens subclass; (iii) violation of New York General Business Law §§ 349 and 350. (ECF No. 34); and (iv) unjust enrichment.

Plaintiffs have successfully served numerous defendants through traditional means, including Austin Federa (ECF No. 68), Dan Albert (ECF No. 69), Jito Labs Inc. (ECF No. 70), Solana Labs Inc. (ECF No. 71), Solana Foundation (ECF No. 72), Baton Corporation Ltd. d/b/a

2

Pump.fun (served via ECF), Alon Cohen (served via ECF), Noah Tweedale (served via ECF), and Dylan Kerler (served via ECF).

Plaintiffs have complied with the Court's directive (ECF No. 33) to the extent possible, but given a foreign defendant and evidence of service evasion, additional time to serve several of the defendants is warranted.

### III.   PLAINTIFFS' ATTEMPTS TO SERVE DEFENDANTS

Plaintiffs have undertaken diligent efforts to identify reliable email and residential addresses, yet those efforts have been met with significant obstacles regarding some of the defendants. Using OSINT investigative reports and TransUnion Comprehensive Reports—drawing on verified public records, credit bureau data on these six defendants, and cross-referenced digital identifiers—Plaintiffs have accurately confirmed defendants' addresses, ownership history, and active contact information. Despite these measures, service has not been effected on six of the sixteen Defendants, and Plaintiffs, therefore, seek leave for alternative service methods.

#### A.   Defendant Anatoly Yakovenko

Plaintiffs have exercised diligent efforts to serve Defendant Anatoly Yakovenko, whose address has been independently confirmed through a TransUnion Comprehensive Report, property records, and verified credit reports. Plaintiffs have made a total of 9 separate service attempts at his confirmed San Francisco residence. Once on August 4, three attempts on August 5, again on August 6, August 7, twice on August 9, 2025, and again on August 11, 2025, all of which were unsuccessful due to the secured nature of the building, and lack of response. Plaintiffs also sent the complaint, summons, AO 398 and AO 399 forms, and a waiver of service request to Defendant's confirmed email address. *See* Burwick Decl. ¶¶ 7–13.

3

### B.     Defendant Raj Gokal

Plaintiffs have exercised diligent efforts to serve Defendant Raj Gokal, whose address has been independently confirmed through TransUnion Comprehensive Report, property records, and verified credit reports. Plaintiffs made a personal service attempt on August 6, 2025, at a West Lake Hills, Texas residence, which was unsuccessful. Plaintiffs made an additional personal service attempt on August 8, 2025, at Defendants Roswell, Georgia residence, where property records confirm defendant Raj Gokal is the current property owner, this too was unsuccessful. On August 11, 2025, process servers attempted service at Defendants Rosewell Geogia verified addresses and were unable to effect service. Process servers confirmed another attempt by end of the day August 11, at defendants Texas property. On August 8, 2025, Plaintiffs also sent the complaint, summons, AO 398 and AO 399 forms, and a waiver of service request to Defendant's confirmed email address. *See* Burwick Decl. ¶¶ 14–18.

### C.     Defendant Lily Liu

Plaintiffs have exercised diligent efforts to serve Defendant Lily Liu, whose address has been independently confirmed through TransUnion Comprehensive Report, property records, and verified credit reports. Plaintiffs attempted service on August 4, 2025, and again on August 6, 2025, at her confirmed Piedmont, California residence, which was unsuccessful due to no answer at the door. On August 11, 2025, Plaintiffs again attempted service on Defendant Lily Liu in care of Solana Foundation, with no success. On August 8, 2025, Plaintiffs also sent the complaint, summons, AO 398 and AO 399 forms, and a waiver of service request to Defendant's confirmed email address. *See* Burwick Decl. ¶¶ 19-24.

### D.     Brian Smith

4

Plaintiffs have exercised diligent efforts to serve Defendant Brian Smith, whose address has been independently confirmed through TransUnion Comprehensive Report, property records, and verified credit reports. Plaintiffs attempted to personally serve Defendant Smith on August 1, 2025, at a Salt Lake City, Utah residence. Plaintiffs followed up with two further attempts at a second confirmed Salt Lake City residence on August 6 and August 10, 2025, both of which were unsuccessful due to no answer at the door. On August 8, 2025, Plaintiffs also sent the complaint, summons, AO 398 and AO 399 forms, and a waiver of service request to Defendant's confirmed email address. *See* Burwick Decl. ¶26-31.

### E.   Defendant Lucas Bruder

Plaintiffs have exercised diligent efforts to serve Defendant Lucas Bruder, whose address has been confirmed through a TransUnion Comprehensive Report, property records, and verified credit reports. On August 7, 2025, Plaintiffs attempted personal service at Defendant's confirmed residence and could not effect service. On August 8, 2025, Plaintiffs sent an email to Defendant's confirmed address containing the complaint, summons, and waiver forms. On August 11, 2025, Plaintiffs attempted personal service at Defendant's confirmed residence. Vehicles registered in the Defendant's name were parked and present at the address at the time of the service attempt, however, plaintiffs we unable to affect service. *See* Burwick Decl. ¶32-38.

### F.   Defendant Jito Foundation

Plaintiffs have exercised diligent efforts to serve Defendant Jito Foundation, a Cayman Islands Incorporated entity on six separate occasions, including through its Executive Director, Brian Smith, and the General Counsel for Jito Labs, Rebecca Rettig. On August 4, 2025, Plaintiffs sent the complaint, summons, AO 398 and AO 399 forms, and a waiver request to Ms. Rettig at an email confirmed by an OSINT investigative report. That same day, Plaintiffs attempted personal

5

service on Brian Smith in care of Jito Foundation at 625 East 200 South, Unit 11, Salt Lake City, Utah 84102-2299; there was no answer, and a neighbor confirmed they did not recognize the name and that the location was a residence, not a business. Plaintiffs made further service attempts at the same address on August 6, 7, 8, and 9, 2025, and each was unsuccessful. Despite these repeated personal service and email efforts, service has not been affected. *See* Burwick Decl. ¶¶ 38–44.

Moreover, the Jito Foundation is on notice of this litigation by virtue of service on Jito Labs, Inc. Jito Labs and the Jito Foundation purportedly operate as two formally distinct entities but in practice pursue the same commercial objectives. Like the Solana Labs/Solana Foundation arrangement, this bifurcation is designed to create the appearance of decentralization and avoid U.S. regulatory oversight. The two share overlapping leadership — including Brian Smith, Jito Labs' former COO and current Executive Director of the Jito Foundation — and coordinate on technical, financial, and strategic matters, making the Foundation's awareness of this litigation both likely and foreseeable.

### IV. PROPOSED ALTERNATIVE SERVICE METHODS

Plaintiffs respectfully request authorization for the following alternative service methods:

1. **Email service** to these six Defendants' verified and active email addresses.
2. **Federal Express mail** to Defendant verified addresses.
3. **Direct Message** to certain Defendant's X.com account.
4. **Service through legal counsel** of Jito Labs, Inc. for Defendant Jito Foundation.

These methods, individually and collectively, are reasonably calculated to provide defendants with actual notice of the proceedings and satisfy due process requirements.

### V. ARGUMENT:

6

Plaintiffs have attempted to locate the six defendants to perfect the traditional methods of service. They have not been successful, and good cause exists to permit service on these defendants by an alternative method reasonably calculated to provide them with notice of the claims. As detailed in the accompanying Burwick Declaration, Plaintiffs have undertaken diligent efforts to effect service, including attempts at residences where the defendants are listed on current property records, where verified credit reports confirm their occupancy, and where vehicles registered to the defendants are located. Plaintiffs respectfully request an extension of time to effect service in light of the involvement of multiple foreign defendants, and evidence suggesting that certain defendants are actively evading service.

### A.    Alternative Service is Permitted by Fed. R. Civ. P. 4(e)(1)

Fed. R. Civ. P. 4(e)(1) allows service on an individual by "following state law" for serving a summons where the district court is located. CPLR § 308(5) provides that "[i]f service is impracticable under" the usual methods (personal delivery, leave-and-mail, nail-and-mail, etc.), the court may direct "such manner" of service as it deems proper. "Impracticable" does not mean impossible, just that a plaintiff has made genuine efforts and personal service is unlikely to succeed. *See Freeman v. Giuliani*, No. 24-CV-06563 (LJL), 2024 WL 5054913, at *2 (S.D.N.Y. Dec. 10, 2024) (holding that impracticability does not require satisfying due diligence or even showing that actual prior attempts to serve a party under each and every method provided in the statute have been undertaken.) *See also Europgold Ltd. v. Silver N Gold Wholesale*, LLC, No. 1:24-CV-07297 (JLR), 2025 WL 1898949, at *2 (S.D.N.Y. July 9, 2025) (The impracticability standard under CPLR 308(5) is met where personal service at a known address is unlikely to succeed despite reasonable efforts).

7

### B.     Plaintiffs Should be Permitted an Extension of Time to Serve

Rule 4(m) of the Federal Rules of Civil Procedure requires service within 90 days but allows courts to extend the period for good cause, and even without good cause, in their discretion. Courts consider factors such as diligence, actual notice to the defendant, potential prejudice, and the statute of limitations. *Buon v. Spindler*, 65 F.4th 64, 70 (2d Cir. 2023). *Patel v. Clane Gessel Studio*, No. 22CIV10964GHWRFT, 2023 WL 8280498, at *2 (S.D.N.Y. Nov. 30, 2023) *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010). *See also Breuer v. Castaneda*, No. 15-CV-9042 (JPO), 2016 WL 11483932, at *3 (S.D.N.Y. Apr. 19, 2016) (granting leave to serve via email and delivery to relatives at an associated address after multiple failed personal service attempts at a known residence.)

### C.     Plaintiffs' Proposed Alternative Method of Service Satisfies Due Process

Alternative service methods must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 344 (E.D.N.Y. 2021) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Courts in this District have repeatedly found that service by email satisfies due process in situations such as described above. *See, e.g.*, *Europgold Ltd.*, 2025 WL 1898949, at *2 (authorizing service by email); *Freeman*, 2024 WL 5054913, at *2 (citing multiple opinions from this District that have authorized alternative service by email as well as via certified mail to known addresses); *Meghji v. Wallet Owner (In re Celsius Network LLC)*, 666 B.R. 28, 34 (Bankr. S.D.N.Y. 2024) ("Courts have found that service by email satisfies due process when the movant has supplied some facts indicating that the person to be served would be likely to receive the summons and complaint at

the given email address."); *Breuer v. Castaneda*, No. 15-CV-9042 (JPO), 2016 WL 11483932, at *2 (S.D.N.Y. Apr. 19, 2016) (authorizing service by email).

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion and enter the proposed order: (1) authorizing plaintiffs alternative to service on the six defendants who have not yet been served via email; (2) extending the time to complete service on all Defendants; and (3) providing such other relief as the Court deems just and proper.

DATED: August 11, 2025
New York, NY

Respectfully submitted,

**BURWICK LAW, PLLC**

By:  /s/ Max L. Burwick
Max Burwick
43 West 43rd Street, Ste. 114
New York, NY 10036
maxb@burwick.law

**WOLF POPPER LLP**
Chet B. Waldman
845 3rd Avenue – 12th Floor
New York, NY 10022
212-759-4600
cwaldman@wolfpopper.com

*Co-Lead Counsel for Plaintiffs and the Proposed Class*

9

## WORD COUNT CERTIFICATION

Pursuant to Southern District of New York Local Civil Rule 7.1(c), the undersigned hereby certifies that this memorandum of law contains 2,315 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates. I utilized the word count of the word-processing program used to prepare the document in order to obtain that word count.