**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIEGO AGUILAR, KENDALL CARNAHAN and MICHAEL OKAFOR on behalf of themselves and all others similarly situated, <br><br>             Plaintiffs, <br><br> v. <br><br> BATON CORPORATION LTD, d/b/a PUMP.FUN, ALON COHEN, DYLAN KERLER, and NOAH BERNHARD HUGO TWEEDALE, SOLANA LABS INC., SOLANA FOUNDATION, JITO LABS INC., JITO FOUNDATION, ANATOLY YAKOVENKO, RAJ GOKAL, DAN ALBERT, AUSTIN FEDERA, LILY LIU, LUCAS BRUDER, BRIAN SMITH, <br><br>             Defendants. | Case No.: 1:25-cv-00880-CM-BCM |

**MEMORANDUM OF LAW IN SUPPORT OF BATON CORPORATION LTD, d/b/a PUMP.FUN'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS <u>ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

    A.  Baton and the Pump.fun Platform........................................................ 2

    B.  Tokens on Pump.fun ............................................................................ 3

    C.  Plaintiffs' Alleged Purchases and Losses ............................................ 3

    D.  Alleged RICO Enterprise .................................................................... 4

ARGUMENT .......................................................................................................... 4

I.  THE CAC DOES NOT ALLEGE PERSONAL JURISDICTION OVER BATON ................. 4

II.  THE CAC FAILS TO PLEAD AN ACTIONABLE SECURITIES ACT CLAIM. ................. 5

    A.  The CAC Fails to Establish That the Pump Tokens Were Sold as Securities. ....... 5

        1.  The CAC Does Not Adequately Allege a Common Enterprise......................... 6

        2.  The CAC Does Not Adequately Allege a Reasonable Expectation of Profits Based on the Efforts of Others. ................................................ 8

    B.  The CAC Fails to Allege Domestic Transactions Under *Morrison*..................... 10

    C.  Plaintiffs Lack Standing as to Tokens They Did Not Buy.................... 11

III.  THE RICO CLAIM SHOULD BE DISMISSED WITH PREJUDICE. ............................ 12

    A.  The PSLRA's Securities Exclusion Bars the RICO Claim.................... 12

    B.  Plaintiffs Do Not Have RICO Standing to Sue Baton. ........................ 13

        1.  Plaintiffs Fail to Plead an Injury to Business or Property................................ 14

        2.  Plaintiffs Fail to Plead That Baton's Alleged Conduct Caused Their Injuries. 15

    C.  The CAC Fails to Adequately Plead a § 1962(c) Claim. ...................... 18

        1.  The CAC Does Not Adequately Plead a RICO Enterprise.............................. 18

        (a)  The CAC Fails to Adequately Allege a Common Purpose. .......................... 18

        (b)  The CAC Does Not Allege Sufficient Relationships Among Participants. ... 19

      2.    The CAC Does Not Adequately Plead Two or More Predicate Acts. .............. 19

    D.   The CAC Fails to Adequately Allege a "Conspiracy" Under Section 1962(d).... 23

    E.   Plaintiffs Do Not Adequately Allege Domesticity ................................................. 23

IV.  PLAINTIFFS' GBL CLAIMS ARE BARRED UNDER NEW YORK LAW. .................... 24

    A.   Plaintiffs' GBL Claims Must Be Dismissed for Lack of a New York Nexus. ..... 24

    B.   Plaintiffs Do Not Allege Actual Injury or Causation Under GBL §§ 349-350. ... 24

V.  THE UNJUST ENRICHMENT CLAIM IS DEFICIENT. ...................................................... 25

CONCLUSION ................................................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*7 West 57th St. Realty Co., LLC v. Citigroup, Inc.*,
  771 F. App'x 498 (2d Cir. 2019) ............................................................16

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2024)..............................................................10, 11

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
  529 F. Supp. 3d 111 (S.D.N.Y. 2021).......................................................4

*Barton v. Pret A Manger (USA) Ltd.*,
  535 F. Supp. 3d 225 (S.D.N.Y. 2021).....................................................25

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
  667 F. Supp. 3d 83 (S.D.N.Y. 2023).......................................................21

*Bender v. Cont'l Towers Ltd., P'ship*,
  632 F. Supp. 497 (S.D.N.Y. 1986) ...........................................................8

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007)......................................................................5

*Black v. Ganieva*,
  619 F. Supp. 3d 309 (S.D.N.Y. 2022)....................................................19

*Boyle v. United States*,
  556 U.S. 938 (2009)..........................................................................18, 19

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016)......................................................................5

*City of Providence, R.I. v. Bats Global Mkts., Inc.*,
  878 F.3d 36 (2d Cir. 2017).....................................................................13

*Corsello v. Verizon N.Y. Inc.*,
  18 N.Y.3d 777 (2012) .............................................................................25

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)..............................................................18, 24

*D. Penguin Bros. v. City Nat'l Bank*,
  587 F. App'x 663 (2d Cir. 2014) .......................................................18, 19

*Davis v. Rio Rancho Estates, Inc.*
  401 F. Supp. 1045 (S.D.N.Y. 1975)................................................................10

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001)......................................................................19

*Demaree v. Castro*,
  2023 WL 6465881 (S.D.N.Y. Oct. 4, 2023) (McMahon, J.) ..................................23

*Doe v. Trump Corp.*,
  385 F. Supp. 3d 265 (S.D.N.Y. 2019)...........................................................16

*Donovan v. GMO-Z.com Trust. Co., Inc.*,
  779 F. Supp. 3d 372 (S.D.N.Y. 2025)...........................................................8, 9

*Edmondson v. Raniere*,
  751 F. Supp. 3d 136 (E.D.N.Y. 2024) ..........................................................14

*Elsevier Inc. v. W.H.P.R. Inc.*,
  692 F. Supp. 2d 297 (S.D.N.Y. 2010) (McMahon, J.).................................12, 18, 19

*Emergency Phys. Servs. of N.Y. v. UnitedHealth Grp.*, Inc., 2021 WL 4437166
  (S.D.N.Y. Sept. 28, 2021) ......................................................................17

*In Re Ethereummax Litig.*,
  2022 WL 20804358 (C.D. Cal. Dec. 6, 2022) .................................................14

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
  400 F. App'x 611 (2d Cir. 2010) ..............................................................25

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
  20 F. Supp. 3d 451 (S.D.N.Y. 2014)............................................................17

*Flexborrow LLC v. TD Auto Fin. LLC*,
  255 F. Supp. 3d 406 (E.D.N.Y. 2017) ..........................................................23

*Forefront Mgmt., LLC v. Vergilis-Kalner*,
  2025 WL 1222648 (S.D.N.Y. Apr. 24, 2025).....................................................7

*Friel v. Dapper Labs, Inc.*,
  657 F. Supp. 3d 422 (S.D.N.Y. 2023)............................................................7

*Goldemberg v. J&J Consumer Cos.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) ............................................................25

*Estate of Gottdiener v. Sater*,
  35 F. Supp. 3d 386 (S.D.N.Y. Mar. 19, 2014)..................................................22

*Gucci Am. v. Alibaba Grp. Holding Ltd.*,
    2016 WL 6110565 (S.D.N.Y. Aug. 4, 2016) ........................................................................23

*Gurung v. MetaQuotes Ltd.*,
    2024 WL 3849460 (E.D.N.Y. Aug. 16, 2024) ......................................................................19

*Hemi Grp., LLC v. City of N.Y.*,
    559 U.S. 1 (2010) .................................................................................................................16

*In re J.P. Jeanneret Assoc., Inc.*,
    769 F. Supp. 2d 340 (S.D.N.Y. 2011) (McMahon, J.) .......................................................6, 7

*Kerik v. Tacopina*,
    64 F. Supp. 3d 542 (S.D.N.Y 2014) ...................................................................................15

*Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*,
    2023 WL 6124801 (S.D.N.Y. Sept. 19, 2023) ...................................................................13

*In re Lehman Bros. Sec. & ERISA Litig.*,
    684 F. Supp. 2d 485 (S.D.N.Y. 2010) ................................................................................11

*Lowenbraun v. L.F. Rothschild, Unterberg, Towbin*,
    685 F. Supp. 336 (S.D.N.Y 1988) ........................................................................................7

*Major League Baseball Prop., Inc., v. Price*,
    105 F. Supp. 2d 46 (E.D.N.Y. Mar. 14, 2000) ...................................................................14

*Manhattan Telecomms. Corp. v. DialAmerica Mktg., Inc.*,
    156 F. Supp. 2d 376 (S.D.N.Y. 2001) ................................................................................19

*Miramontes v. Ralph Lauren Corp.*,
    2023 WL 3293424 (S.D.N.Y. May 5, 2023) (McMahon, J.) ..............................................24

*MLSMK Inv. Co., v. JP Morgan Chase & Co.*,
    651 F.3d 268 (2d Cir. 2011) ...............................................................................................13

*Morrison v. Nat'l Aus. Bank Ltd.*,
    561 U.S 247 (2010) ............................................................................................................10

*Motorola Credit Corp. v. Uzan*,
    322 F.3d 130 (2d Cir. 2003) ...............................................................................................13

*Matter of Muidallap Corp. v. State Liquor Auth.*,
    143 A.D.2d 9 (1st Dep't 1988) ...........................................................................................20

*Nelson v. Pub. Circulation Fulfillment, Inc.*,
    2012 WL 760335 (S.D.N.Y. Mar. 7, 2012) ........................................................................21

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
    537 F.3d 168 (2d Cir. 2008)..................................................................25

*Oden v. Bos. Sci. Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ......................................................25

*One World, LLC v. Onoufriadis*,
    2021 WL 184400 (S.D.N.Y. Jan. 19, 2021) (McMahon, J.)..................................12

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015)..................................................................24

*Orrico v. Nordic Nats., Inc.*,
    2023 WL 6308015 (E.D.N.Y. Sept. 28, 2023) ......................................................24

*Palatkevich v. Choupak*,
    2014 WL 1509236 (S.D.N.Y. Jan. 24, 2014) (McMahon, J.) ................................17

*In re Platinum & Palladium Antitrust Litig.*,
    61 F.4th 242 (2d Cir. 2023) ..................................................................4

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013)..................................................................11

*Rivera v. Golden Nat. Mortg. Banking Corp.*,
    2005 WL 1514043 (S.D.N.Y. June 27, 2005) ......................................................21

*RJR Nabisco v. Eur. Cmty.*,
    579 U.S. 325 (2016)..................................................................23

*Savino v. E.F. Hutton & Co., Inc.*
    507 F. Supp. 1225 (S.D.N.Y. 1981)..................................................................7

*SEC v. Coinbase*,
    726 F. Supp. 3d 260 (S.D.N.Y. 2024)..................................................................9

*SEC v. Kik Interactive Inc.*,
    492 F. Supp. 3d 169 (S.D.N.Y. 2020)..................................................................6

*SEC v. Ripple*,
    682 F. Supp. 3d 308 (S.D.N.Y. 2023)..................................................................9, 10

*SEC v. Terraform*,
    684 F. Supp.3d 170 (S.D.N.Y. 2023)..................................................................9

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946)..................................................................6, 8, 9

*Sinva, Inc., v. Merrill, Lynch, Pierce, Fenner & Simth, Inc.*,
    253 F. Supp. 359 (S.D.N.Y. 1966) ...........................................................................9

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .............................................................................................11

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir.2008).......................................................................................21

*Stevenson v. Thornburgh*,
    2024 WL 645187 (S.D.N.Y. Feb. 14, 2024) (McMahon, J.)............................12, 13

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004)..........................................................................................4

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013).........................................................................................4

*In re Tether & Bitfinex Crypto Asset Litig.*,
    576 F. Supp. 3d 55 (S.D.N.Y. 2021)...........................................................14, 16, 18

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013).......................................................................................16

*United Hous. Found. v. Forman*,
    421 U.S. 837 (1975) ....................................................................................................8

*United States v. Johnson*,
    945 F.3d 606 (2d Cir. 2019)......................................................................................20

*Villoldo v. BNP Paribas S.A.*,
    2015 WL 13145807 (S.D.N.Y. July 21, 2015) .........................................................14

*Westchester Cnty. Indep. Party v. Astorino*,
    137 F. Supp. 3d 586 (S.D.N.Y. 2015).......................................................................14

*Williams v. Binance*,
    96 F.4th 129 (2d Cir. 2024) ......................................................................................11

*Williams v. Block One*,
    2022 WL 5294189 (S.D.N.Y. Aug. 15, 2022).........................................................10

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007).......................................................................15

*Yegiazaryan v. Smagin*,
    599 U.S. 533 (2023).................................................................................................23

**Statutes**

15 U.S.C. § 77l(a)(1)..................................................................................................5

15 U.S.C. § 78j(b).....................................................................................................13

18 U.S.C. § 1084(a)..................................................................................................20

18 U.S.C. § 1955......................................................................................................20

18 U.S.C. § 1955(b)(1).............................................................................................20

18 U.S.C. § 1960(b)(2).............................................................................................22

18 U.S.C. § 1961(4)..................................................................................................18

18 U.S.C. § 1962.................................................................................................12, 15

18 U.S.C. § 1962(c).......................................................................................18, 22, 23

18 U.S.C. § 1962(d)..................................................................................................23

18 U.S.C. § 1964(c).......................................................................................12, 15, 23

31 U.S.C. §§ 5361-6367...........................................................................................20

31 US.C. § 5362(1)...................................................................................................20

N.Y. Gen. Bus. Law § 349........................................................................................24

N.Y. Gen. Bus. Law § 350........................................................................................24

N.Y.P.L. § 225.00.....................................................................................................20

N.Y.P.L. § 225.10.....................................................................................................20

**Other Authorities**

17 C.F.R. § 240.10b-5(b)..........................................................................................13

Fed. R. Civ. P. 9(b)..............................................................................................20, 21

Fed R. Civ. P. 12(b)(6)...............................................................................................2

## PRELIMINARY STATEMENT[1]

The Consolidated Amended Class Action Complaint ("CAC") should be dismissed as to Baton Corporation LTD, d/b/a Pump.fun ("Baton"). The three named plaintiffs ("Plaintiffs"), who claim to have purchased speculative tokens launched by third parties on Baton's trading platform, seek to transform their trading losses into damages claims under the federal securities law, RICO, and state law. But none of those laws let Plaintiffs shift the risks of their own trades onto Baton for alleged platform abuses by others. The CAC also contains broad theories of fraud, conspiracy, insider trading, and misrepresentation but lacks basic facts about how such conduct occurred, which trades were impacted, and how Plaintiffs were harmed. The Court should dismiss all Counts with prejudice for five separate reasons.

*First*, the Court lacks personal jurisdiction over Baton. Plaintiffs identify no basis for haling this foreign company into a New York court.

*Second*, Plaintiffs fail to state a claim under the Securities Act. The CAC does not plausibly allege that the "Pump Tokens" are securities. Plaintiffs also allege no domestic transactions, as the securities laws require. Nor can Plaintiffs pursue claims as to tokens they never purchased.

*Third*, numerous elements of the RICO claim are fatally deficient, including injury, proximate causation, an "enterprise," any well-pled predicate acts, and conspiracy. Moreover, if Plaintiffs do allege securities transactions, the federal securities laws bar the RICO claim.

---

[1] At present, due to the anonymous nature of users on the Pump.fun website, Baton lacks sufficient information to determine whether any Plaintiff viewed and agreed to Baton's Terms of Use containing an arbitration clause. Because Plaintiffs' assent cannot be established based on the information presently known by Baton and disclosed in the CAC, it is not possible for Baton to move to compel arbitration at this stage. Nothing in this filing should be construed as a waiver of Baton's contractual right to arbitrate. Baton expressly reserves the right to move to compel arbitration should discovery or further proceedings reveal that one or more Plaintiffs viewed and assented to the Terms of Use.

*Fourth*, Plaintiffs' New York General Business Law claims fail because there is no New York nexus for their token transactions, and Plaintiffs do not plead actual injury or causation.

*Finally*, the unjust enrichment claim should be dismissed as duplicative of Plaintiffs' other theories, and Plaintiffs also have not pled the lack of an adequate remedy at law.

## STATEMENT OF FACTS[2]

### A.    Baton and the Pump.fun Platform

Baton is a private company organized under the laws of England and Wales, with its registered office and principal place of business in the United Kingdom. CAC ¶ 33. Baton operates the Pump.fun website, which allows third parties to create their own tokens, and buy tokens created by other users, on the Solana blockchain. *Id.* ¶¶ 33, 74. Pump.fun users could buy tokens using SOL, Solana blockchain's native currency, from a connected cryptocurrency wallet. *Id.* ¶ 251. The price of all token transactions on Baton's website is automatically set by a uniform "bonding curve"—*i.e.*, an algorithm that increases (or decreases) each token's price based on users' purchases (or sales) of that token. *Id.* ¶¶ 121, 133, 141, 254, 372, 377, 407, 430. The CAC admits that Baton did not take custody of users' funds and that users could sell their tokens at the bonding curve (market) price in exchange for SOL. *Id.* ¶¶ 176, 430.

Baton users allegedly could increase trading through software created by Defendant Jito Labs Inc. ("Jito Labs"). Baton allegedly profited by collecting a 1% fee from every transaction on its site regardless of the nature of the token. *Id.* ¶¶ 33, 330–334, 362, 377, 444, 465–67. Plaintiffs' profits, by contrast, fluctuated with token demand and market prices. *Id.* ¶ 354.

---

[2] These allegations are drawn from the CAC and taken as true only for purposes of Rule 12(b)(6).

### B.    Tokens on Pump.fun

Plaintiffs allege that over 11 million tokens were launched on the Pump.fun platform. *Id.*
¶ 123. They identify a subset of 20 "Pump Tokens" that were allegedly promoted as unregistered
investment contracts. *Id.* ¶¶ 368–369, 407(c), 409–428. Plaintiffs also allege that other tokens
launched by users infringed on public companies' trademarks, impersonated public figures, falsely
designated their origin, diluted famous marks, or were used by a criminal actor to launder stolen
funds. *Id.* ¶¶ 456, 458–62. The CAC does not specifically allege that Plaintiffs purchased any of
these other tokens or that they suffered any resulting harm.

### C.    Plaintiffs' Alleged Purchases and Losses

Plaintiffs Diego Aguilar and Kendall Carnahan and Lead Plaintiff Michael Okafor
allegedly bought tokens on Pump.fun. *Id.* ¶¶ 28–30. Aguilar allegedly bought three: First
Convicted Raccoon Token ("FRED"), the FWOG Token, and the GRIFFAIN Token
("GRIFFAIN"). *Id.* ¶ 29. Carnahan allegedly bought and sold only PNUT. Okafor's alleged
transactions appear to include Alchemist AI ("ALCH"). *See* ECF No. 34-10, p. 44. Thus, Aguilar
and Okafor allegedly traded only 3 of the 20 Pump Tokens: FRED, GRIFFAIN, and ALCH.
Carnahan did not buy or sell any. The CAC does not allege where Plaintiffs placed their purchase
orders, where title passed, or where and how their transactions were matched. CAC ¶¶ 28–30.

Plaintiffs describe trading on Pump.fun as a "game of chance" driven by speculation. *Id.*
¶¶ 74, 111, 120, 131, 132, 138, 140, 144, 152, 159, 177. They allege losses from the decrease in
value of tokens they purchased in the days or weeks that followed, caused in part by unidentified
"early buyers, bots, and insiders" manipulating transaction orders. *Id.* ¶¶ 28, 308, 377, 380–81,
446. Plaintiffs allege the platform's presentation as "fair" was misleading because some
unidentified trades were "front-run" by unidentified individuals using technology created by Jito

Labs. *Id.* ¶¶ 184-190, 457, 464-466. Plaintiffs acknowledge that many users profited: thousands allegedly made over $100,000, and hundreds earned more than $1 million. *Id.* ¶¶ 351, 355–56.

### D.    Alleged RICO Enterprise

Plaintiffs claim that Defendants formed a RICO "enterprise" to offer "a pseudonymous online gambling system disguised as a decentralized token launch platform." *Id.* ¶¶ 443, 447-448. They try to substantiate this claim with allegations that Defendants operated coordinated, complementary businesses and had overlapping investors. *Id.* ¶¶ 273, 275, 281, 289, 302. But the CAC cites no facts showing how or when the alleged enterprise members came to any agreement and does not identify any coordinated conduct except through conclusory assertions.

## ARGUMENT

## I.    THE CAC DOES NOT ALLEGE PERSONAL JURISDICTION OVER BATON.

The CAC alleges no facts establishing personal jurisdiction over Baton. To survive a motion to dismiss based on a lack of personal jurisdiction, "a plaintiff must make a prima facie showing that jurisdiction exists" (*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)) "separately over each defendant" (*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021)) and "with respect to *each* claim asserted" (*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).

Personal jurisdiction requires that a defendant have minimum contacts with the forum and that exercising jurisdiction be reasonable. *In re Terrorist Attacks,* 714 F.3d at 674. Specific jurisdiction, where the claim arises from or relates to the defendant's forum contacts, differs from general jurisdiction, which is based on the defendant's overall business contacts with the forum. *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 269 (2d Cir. 2023).

Plaintiffs articulate no theory of jurisdiction over Baton: the CAC's "Jurisdiction and Venue" section contains *no* factual allegations about it. General jurisdiction cannot exist because

the CAC alleges Baton is incorporated and maintains it principal place of business in the U.K. CAC ¶ 33; *see Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("[E]xcept in a truly 'exceptional' case, a corporate defendant may be [subject to general personal jurisdiction] only where it is incorporated or maintains its principal place of business." (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014))).

Specific jurisdiction also does not exist. Specific jurisdiction requires purposeful availment of the forum such that a defendant should reasonably anticipate being haled into court there. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). Plaintiffs do not allege that Baton had any contacts—let alone minimum contacts—with either New York or the United States as a whole. Plaintiffs do not allege that Baton is organized under the laws of, or operates within, New York or the United States. CAC ¶ 33. Nor do they claim that Plaintiffs purchased any tokens at issue while in New York or the United States. The Court therefore need go no further and should dismiss all claims against Baton for lack of personal jurisdiction.

## II.     THE CAC FAILS TO PLEAD AN ACTIONABLE SECURITIES ACT CLAIM.

The CAC fails to state a claim under Section 12 of the Securities Act for three reasons: (A) it does not adequately allege that the Pump Tokens were sold as securities; (B) it does not allege any domestic transaction covered by the federal securities laws; and (C) Plaintiffs lack standing as to the 17 "Pump Tokens" that they do not allege they bought.

### A.     The CAC Fails to Establish That the Pump Tokens Were Sold as Securities.

To state a Securities Act § 12 claim, a complaint must adequately allege transactions in a security. 15 U.S.C. § 77l(a)(1). There is no serious question here that tokens themselves are not securities. *See, e.g.*, SEC Staff Statement on Meme Coins (Feb. 27, 2025) ("a meme coin is not

5

itself a security").[3] Rather, the issue is how meme coins and tokens are sold, and Plaintiffs claim the Pump Tokens were sold as "investment contract[s]." CAC ¶ 407. To plead an investment contract, a Plaintiff must allege (i) an investment of money (ii) "in a common enterprise" and (iii) "with profits to come solely from the efforts of others." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946). The CAC fails adequately to plead the second and third elements of *Howey*.

### 1.    The CAC Does Not Adequately Allege a Common Enterprise.

Second Circuit Courts have recognized two ways to establish a common enterprise: horizontal commonality or strict vertical commonality. "[H]orizontal commonality" is the "tying of each individual investor's fortunes to the fortunes of the other investors by the pooling of assets, usually combined with the pro-rata distribution of profits." *In re J.P. Jeanneret Assoc., Inc.,* 769 F. Supp. 2d 340, 359 (S.D.N.Y. 2011) (McMahon, J.); *see also SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 179 (S.D.N.Y. 2020) ("key feature" of horizontal commonality is "that investors' profits at any given time are tied to the success of the enterprise."). A common enterprise might also be established by "strict vertical commonality," which exists when "the fortunes of plaintiff and defendants are linked so that they rise and fall together." *Jeanneret,* 769 F. Supp. 2d at 359-360 (noting that Second Circuit has not decided whether strict vertical commonality suffices, but citing district court decisions holding that it might).

Plaintiffs satisfy neither horizontal nor strict vertical commonality. First, Plaintiffs do not allege their funds were pooled and invested into a common enterprise. They allege that, in exchange for tokens, users sent money to a "bonding curve." *See* CAC ¶¶ 254, 372, 377, 407. But the CAC does not allege that Baton used those funds to increase the value of the Pump Tokens or build its business. This case differs from crypto-offering cases where courts found pooling satisfied

---

[3] Ex. A, available at https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins ("the <u>SEC Staff Statement</u>" or "<u>SEC Staff Stmt.</u>").

based on allegations that "plausibly tied the funds received by the promoter through the offering to an improvement of the ecosystem . . . that consequently increases the value of the token[.]" *Friel v. Dapper Labs, Inc*., 657 F. Supp. 3d 422, 436 (S.D.N.Y. 2023). Rather, the CAC alleges that, when users sold their tokens back to the bonding curve, the contract "returned SOL" *to the users*, not to Baton. CAC ¶ 430. Apart from transaction fees, Plaintiffs do not allege Baton's use of Plaintiffs' funds is in any way "causally related to the profitability of [the enterprise] as a whole," which is fatal to horizontal commonality. *Savino v. E.F. Hutton & Co., Inc*. 507 F. Supp. 1225, 1237 (S.D.N.Y. 1981); *see also Forefront Mgmt., LLC v. Vergilis-Kalner*, 2025 WL 1222648, at *5 (S.D.N.Y. Apr. 24, 2025) (no horizontal commonality absent allegations that pooled funds were tied "to the success of the overall venture"); SEC Staff Stmt. (meme-coin purchasers do not invest in an enterprise because "their funds are not pooled together to be deployed by the promoters or other third parties for developing the coin or a related enterprise").

The CAC also fails to establish strict vertical commonality because it pleads different economic circumstances for Plaintiffs and Defendants. Plaintiffs allege that Baton profited from fixed 1% transaction fees "whether a token succeeded or failed." *Id*. ¶¶ 444, 362. Plaintiffs, by contrast, made or lost money based on market demand, *id.* ¶ 255, and the prices at which they traded, *id*. ¶ 354 (losses from "closed trading positions"); *see also id*. ¶ 28 & Ex. J (ECF No. 34-10) at 46 (losses are "net funds expended"). In other words, Plaintiffs' and Defendants' profits did *not* rise and fall together. These divergent economic realities defeat strict vertical commonality. *Lowenbraun v. L.F. Rothschild, Unterberg, Towbin*, 685 F. Supp. 336, 341 (S.D.N.Y 1988) (profits "were not interdependent since the broker allegedly profited from the commissions while plaintiffs suffered losses."); *see also Jeanneret*, 769 F. Supp. 2d at 360 (fortunes of "stockbroker, who collects a fee for every consummated transaction" are not tied to client's).

### 2.    The CAC Does Not Adequately Allege a Reasonable Expectation of Profits Based on the Efforts of Others.

To satisfy *Howey*'s third prong, a plaintiff must allege that purchasers had "a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *United Hous. Found. v. Forman*, 421 U.S. 837, 852 (1975). "The focus is on 'what the purchasers were offered or promised' and whether a reasonable purchaser under the circumstances would have expected 'profits' derived primarily from the efforts of others." *Donovan v. GMO-Z.com Trust. Co., Inc*., 779 F. Supp. 3d 372, 385 (S.D.N.Y. 2025) (quoting *Forman*). "An objectively reasonable purchaser . . . must believe that the efforts of others will be geared towards generating profits, enhancing the value of the asset underlying the investment contract, or growing the enterprise—not merely *facilitating individual purchasers' speculative schemes*." *Id.* at 389 (emphasis added). This requirement "helps distinguish between investment contracts that are securities and investment contracts that are simply investments." *Id.*

The CAC's allegation that Baton was a gambling platform undermines any argument that investors were reasonably led to expect profits *from Defendants' efforts*. The CAC asserts that speculation and "randomness" drove the price of tokens. *See* CAC ¶ 132 (users encouraged to take a "fleeting chance at speculative profit"); ¶ 255 (tokens valued based on "external market hype, memes or randomness"). But the promotional activities envisioned in *Howey* are "the organization of a business, the efforts of a promoter in cultivating and marketing citrus, the efforts of a promoter in drilling an exploratory well in connection with the sale of oil leases, or the efforts of the managers of a savings and loan to earn profits to be distributed as dividends." *Bender v. Cont'l Towers Ltd., P'ship*, 632 F. Supp. 497, 501 (S.D.N.Y. 1986) (cleaned up). Allegations that Baton facilitated speculative schemes and operated its website for alleged gamblers are "a far cry from the entrepreneurial or managerial efforts required for an objectively reasonable purchaser to

8

believe that they would derive a profit solely from the efforts of others." *GMO-Z*, 779 F. Supp. 3d 372 at 389 (dismissing complaint under third *Howey* prong); *SEC v. Ripple*, 682 F. Supp. 3d 308, (S.D.N.Y. 2023) (partial summary judgment for defendants because "a speculative motive on the part of the purchaser" does not satisfy *Howey*'s third prong); *see also* SEC Staff Stmt. ("value of meme coins is derived from speculative trading"; "promoters are not undertaking . . . managerial and entrepreneurial efforts from which purchasers could reasonably expect profit").

The CAC also alleges that Baton led token buyers to expect profits from the growth of the Pump.fun platform but pleads no facts that would give a reasonable investor cause to expect this. CAC ¶ 407(C). This case is unlike "ecosystem" cases where investors were told that "profits from the continued sales of the tokens would be fed back into further development" of the token's ecosystem. *SEC v. Coinbase*, 726 F. Supp. 3d 260, 292 (S.D.N.Y. 2024); *SEC v. Terraform,* 684 F. Supp.3d 170, 196 (S.D.N.Y. 2023) (profits "from the use of the Mirror Protocol . . . were fed back to investors"). Plaintiffs allege no promise by Baton or its executives that would increase the Pump Tokens' value, such as by using invested funds to grow the Pump.fun network. The CAC's generic assertion that "buyers were told" the tokens would appreciate (CAC ¶ 374) begs the question of *how* that alleged appreciation would supposedly occur: whether from Defendants' efforts or from other traders' activities. Moreover, the CAC cites no specific statements *by Defendants* about token appreciation and uses passive phrasing to obscure the lack of factual support. *Id.* ¶ 407(C). Baton's platform left each token issuer and buyer "to (its) own devices for realizing upon (its) rights." *Sinva, Inc., v. Merrill, Lynch, Pierce, Fenner & Simth, Inc*., 253 F. Supp. 359, 367 (S.D.N.Y. 1966) (striking securities claims, quoting *Howey* at 348).

Descriptions of Pump Tokens by their putative issuers—users unaffiliated with Baton— also do not satisfy *Howey*'s third prong. CAC ¶¶ 409-427 (citing descriptions in Ex. C). For

example, as to StakeCoin, the CAC appears to allege an expectation of profits based on StakeCoin's putative issuer's plans for "integrating Real World Assets with blockchain" and tokenizing real estate deeds. *Id*. ¶ 409 (citing Ex. C. at 2). But Baton did not issue StakeCoin, and the alleged token descriptions (many of which do not appear in Plaintiffs' exhibits) do not identify *who* made these statements, what concrete promises the unidentified promoters made, or why investors should expect investment gains from those promises. *See* CAC, Ex. C. at 1-20. An objective, reasonable investor thus could not have expected profit from them based on *Baton's* activities. *See Davis v. Rio Rancho Estates, Inc*. 401 F. Supp. 1045, 1049-50 (S.D.N.Y. 1975) ("defendants' promotional materials, fairly read [do not encourage a] purchase as an investment"); *Ripple,* 682 F. Supp.2d at 326 (expectation of profit "inquiry is an objective one").

### B. The CAC Fails to Allege Domestic Transactions Under *Morrison*.

Even where securities are involved, the federal securities laws apply only to (1) "securities listed on domestic exchanges" and (2) "domestic transactions in other securities." *Morrison v. Nat'l Aus. Bank Ltd.,* 561 U.S 247, 267 (2010). The Securities Act thus cannot apply here unless the CAC adequately alleges that the Pump Tokens were listed on domestic exchanges or that Plaintiffs' transactions were "domestic transactions," meaning that "irrevocable liability [to buy or sell] was incurred or that title was transferred within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 62 (2d Cir. 2024). The CAC fails on both accounts.

The CAC does not allege that the Pump Tokens were listed on a domestic exchange; rather, it alleges they were available on the website of Baton, a U.K. corporation. CAC ¶ 33. Plaintiffs also do not allege their transactions in Pump Tokens were domestic. In the cryptocurrency context, courts have considered where the buyers placed and incurred irrevocable liability on their purchase orders, where title passed, where the internet nodes that verified the transactions at issue were located, or where the servers that matched buyers and sellers are located. *See, e.g.*, *Williams v.*

*Block One*, 2022 WL 5294189, at *7 (S.D.N.Y. Aug. 15, 2022); *see also Williams v. Binance*, 96 F.4th 129, 137-40 (2d Cir. 2024). The CAC, however, says nothing about these facts. CAC ¶¶ 28-30. It alleges only that Okafor (but not Aguilar or Carnahan) is a United States resident, but residency is not enough: a U.S. resident can transact anywhere, and the CAC does not allege that any Plaintiff transacted domestically. *Absolute Activist*, 677 F.3d at 70 ("party's residency or citizenship is irrelevant to the location of a given transaction"). The allegation that Okafor's transactions were "transmitted by interstate wires" (RICO Stmt., ECF No. 78, ¶¶ 124, 154), which does not appear in the CAC, also does not plead the types of transactional *facts* noted above.

### C.    <u>Plaintiffs Lack Standing as to Tokens They Did Not Buy.</u>

Count I also should be dismissed as to the 17 "Pump Tokens" that Plaintiffs do not allege they bought. Count I covers 20 "Pump Tokens." CAC ¶¶ 368-369, 409-428. The CAC alleges that Aguilar purchased only two of them, the FRED and GRIFFAIN tokens. CAC ¶ 29. And CAC Exhibit J might suggest that Okafor purchased a third, ALCH, even though the CAC does not allege it specifically. *See* ECF No. 34-10, p. 44. The CAC identifies no other Pump Token purchases by Okafor and none at all by Carnahan. *See* CAC ¶¶ 28, 30.

Plaintiffs cannot satisfy the "constitutional minimum of" Article III standing as to tokens they did not purchase. Standing requires that plaintiffs have "suffered an injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). But Plaintiffs do not (and cannot) allege they "suffered any injury stemming from [any] offerings [that] they did not purchase." *In re Lehman Bros. Sec. & ERISA Litig*., 684 F. Supp. 2d 485, 491 (S.D.N.Y. 2010) (plaintiffs alleged purchases in nine of 94 offerings but did "not allege[] any personal injury stemming from the other eighty-five [and] therefore have no standing to assert those claims"), *aff'd sub nom. In re Lehman Bros. Mortg.-Backed Sec. Litig*., 650 F.3d 167 (2d Cir. 2011); *see also Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc*., 721 F.3d 95, 111 (2d Cir. 2013) (same). The Court thus should

dismiss Count I as to the 17 Pump Tokens that Plaintiffs do not allege they bought. And Carnahan lacks standing to assert a claim because he is not alleged to have purchased *any* Pump Tokens.

III.    **THE RICO CLAIM SHOULD BE DISMISSED WITH PREJUDICE.**

Plaintiffs have no basis for a civil RICO claim. Courts approach civil RICO claims "with caution, understanding that Congress' goal in enacting the RICO statute was to prevent legitimate businesses from becoming infiltrated by organized crime." *One World, LLC v. Onoufriadis*, 2021 WL 184400, at *7 (S.D.N.Y. Jan. 19, 2021) (McMahon, J.). The "stigmatizing effect on those named as defendants" in RICO actions led this Court to compare RICO claims to a "thermonuclear device." *Elsevier Inc. v. W.H.P.R. Inc.*, 692 F. Supp. 2d 297, 300 (S.D.N.Y. 2010) (McMahon, J.). For this reason, "court are charged with flushing out frivolous RICO allegations at the earliest possible stage of litigation." *Id.* (granting motion to dismiss RICO claims).

Plaintiffs assert claims under RICO subsections 1962(c) and (d). CAC ¶¶ 438-468. To establish RICO standing, a plaintiff must show: "(1) a violation of section 1962; (2) an injury to the plaintiff's business or property; and (3) that the defendant's violation was the proximate cause of the plaintiff's injury." *Stevenson v. Thornburgh*, 2024 WL 645187, at *9 (S.D.N.Y. Feb. 14, 2024) (McMahon, J.). The CAC fails to state claims under either subsection for multiple, independent reasons.

A.    **The PSLRA's Securities Exclusion Bars the RICO Claim.**

To the extent the Court finds any Pump Tokens are adequately pled as investment contracts—they are not, *see* Section III.A—Section 107 of the Private Securities Litigation Reform Act (the "PSLRA Bar") prohibits all of Count II. The PSLRA Bar provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish" a RICO violation. 18 U.S.C. § 1964(c). "Congress intended that the section would eliminate securities fraud as a predicate offense in a civil RICO action, and would bar a plaintiff

from pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." *MLSMK Inv. Co., v. JP Morgan Chase & Co*., 651 F.3d 268, 277-78 (2d Cir. 2011) (cleaned up).

As to the Pump Tokens, which purportedly are securities, the CAC alleges wire fraud as a predicate act in that Defendants "misled" Plaintiffs about the terms of their token purchases and allowed purchases to be "front-run." CAC ¶¶ 457, 463. Front-running transactions and making misleading statements about sales sound in securities fraud. *See* 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5(b) (unlawful to "make any untrue statement" in connection with purchase or sale of security); *City of Providence, R.I. v. Bats Global Mkts., Inc*., 878 F.3d 36, 49 (2d Cir. 2017) (front-running claims adequately pled under Securities Exchange Act § 10(b)). The PSLRA Bar therefore prohibits a RICO claim based on this conduct. *Thornburgh*, 2024 WL 645187, at *18 (dismissing RICO claim because complaint is "replete with allegations that sound in securities fraud" and "non-specific assertions of wire fraud and mail fraud.").

The PSLRA Bar also applies to allegations relating to tokens that are *not* alleged to be securities because the front-running allegations about those tokens are "interwoven" with and "part of the same claim" relating to the Pump Tokens. *Id*. The entire RICO claim therefore is barred. *See also* Solana Defendants' brief at 21-22.

**B.**    **Plaintiffs Do Not Have RICO Standing to Sue Baton.**

As a further threshold matter, the RICO claim fails because Plaintiffs lack standing to assert it. To establish RICO standing, a plaintiff must show both an "injury to business or property" and "causation of the injury by the [RICO] violation." *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003). While some courts in the Second Circuit hold that a plaintiff need only establish standing to sue the RICO enterprise as a whole, *see Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*, 2023 WL 6124801, at *13 (S.D.N.Y. Sept. 19, 2023) (discussing this view), others require a

plaintiff to establish RICO standing as to *each defendant*, *see In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 116 (S.D.N.Y. 2021) (RICO standing requires allegations of "causation of the injury by the defendant's violation."); *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 173 (E.D.N.Y. 2024) ("each plaintiff must establish [RICO standing] as to each defendant"). Regardless of which standard applies, the CAC fails to establish RICO standing as to both injury and causation.

### 1.    Plaintiffs Fail to Plead an Injury to Business or Property

First, Plaintiffs have not alleged any "concrete" injuries to "business or property." *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612-13 (S.D.N.Y. 2015).[4] The decrease in value of a token does not constitute an injury to business or property because there is no "standing under RICO for injury to an expectancy interest." *Villoldo v. BNP Paribas S.A.,* 2015 WL 13145807, at *3 (S.D.N.Y. July 21, 2015) (collecting cases), *aff'd*, 648 F. App'x 53 (2d Cir. 2016). Plaintiffs purchased tokens for the chance that some would "appreciate [in] value." CAC ¶ 182. That "bargain delivers actual value to each party because the chance itself is of value regardless of whether or not the . . . purchaser later suffers a 'loss.' . . . The chance is real, and having paid for it and received it, the . . . purchaser has not suffered any financial loss or RICO property injury." *Major League Baseball Prop., Inc., v. Price,* 105 F. Supp. 2d 46, 51 (E.D.N.Y. Mar. 14, 2000). The CAC itself alleges that token buyers received the chance they paid for: some realized profits (CAC ¶¶ 351, 355); others suffered losses (*id.* at 354). Any "disappointment" over Plaintiffs' decision to sell and "what their [] tokens are worth today" is not a RICO injury. *In Re Ethereummax Litig.*, 2022 WL 20804358, at *13 (C.D. Cal. Dec. 6, 2022) (no RICO injury from

---

[4] Aguilar and Carnahan do not allege any injury at all, *see* CAC ¶¶ 28-29 and Ex. J at 47-48, and therefore lack standing to sue under RICO.

cryptocurrency trading losses); *Kerik v. Tacopina,* 64 F. Supp. 3d 542, 561 (S.D.N.Y 2014) (RICO injury requires "*actual* quantifiable injury" based on a "concrete financial loss.").

The CAC also fails to establish standing based on any injury from the medley of other unrelated, alleged predicate act. *See* CAC ¶¶ 455-466. A "RICO plaintiff may not recover for speculative losses or where the amount of damages is unprovable." *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 520 (S.D.N.Y. 2007). Other than the non-particularized—and therefore inadequate—allegation that "bots, insiders and entities using Jito Labs' MEV tools" had trading advantages (*e.g.* CAC ¶¶ 121-122, 188), the CAC offers no theory as to how the alleged misrepresentations about "fair launch," "no presales," "no insider allocations" or "rug-pull proof launches" harmed any Plaintiff. *Id*. at 185. Plaintiffs do not allege an injury from a "rug-pull"; in fact, the CAC alleges the opposite. Rather than pleading any misuse of users' funds, it alleges that buyers' SOL sat on a bonding curve until the funds were "returned" upon their tokens' sale. CAC ¶ 430. Further, Plaintiffs do not identify which tokens allegedly suffered from an unfair launch; nor do they explain how the launch harmed them or affected the price they paid. S*ee* CAC ¶¶ 28-30. Neither the generic allegation that this conduct "created additional vectors for financial loss" nor any other competent facts establish an "*actual*, quantifiable injury" or "concrete financial loss" arising from other alleged predicate acts. *Kerik,* 64 F. Supp. 3d at 561 (no injury arising from "expectation of receiving" income); *Jakks Pac.*, 530 F. Supp. 2d at 521-22 (no RICO injury without a theory "as to what a non-corrupt bidding process would have yielded").

### 2.    Plaintiffs Fail to Plead That Baton's Alleged Conduct Caused Their Injuries.

Second, Plaintiffs fail to plead that Baton proximately caused their purported injuries. RICO confers standing on a "person injured in his business or property *by reason of* a violation of" section 1962. 18 U.S.C. § 1964(c) (emphasis added). Courts strictly construe this requirement

to mean the RICO violation must be more than simply a "but for" cause of Plaintiffs' losses—it must also be the *proximate cause.*" *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010). Proximate causation requires a "direct" and "straightforward" connection between the defendant's conduct and the plaintiff's injury. *Id.* at 9, 14-15. "A link that is 'too remote, purely contingent, or indirect' is insufficient." *Id.* at 9. "[E]ven at the pleading stage, civil RICO's direct relation requirement is rigorous," and "a court should rarely 'go beyond the first step' in assessing causation[.]" *Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 276-77 (S.D.N.Y. 2019).

Plaintiffs' own allegations demonstrate that any purported RICO violation *by Baton* was too indirect to constitute proximate causation because of intervening, non-RICO acts. Proximate causation cannot exist where "[p]laintiffs' allegations require the intervening activity of third parties. . . ." *Tether*, 576 F. Supp. 3d at 117. Here, Plaintiffs allege they lost money trading on the Pump.fun platform because unidentified "early buyers, bots, and insiders . . . manipulate[d] transaction ordering [to] extract value from retail participants." CAC ¶¶ 446; *see also id.* ¶¶ 308, 377, 380-81. Thus, by Plaintiffs' own admission, these independent actors—not Baton—were the proximate cause of their injuries. *See Tether*, 576 F. Supp. 3d at 119 ("[T]he manipulation of crypto[] prices 'was directly caused by buy/sell decisions that independent market actors made,' and it is these actions that established price floors and created a bubble, 'which [defendants' conduct] may have influenced'"); *see also 7 West 57th St. Realty Co., LLC v. Citigroup, Inc.*, 771 F. App'x 498, 502 (2d Cir. 2019) (summary order) (no proximate cause because "injury was directly caused by buy/sell decisions that independent market actors made").

Moreover, there is no plausible link between the predicate acts and Plaintiffs' purported injuries. First, to establish proximate cause for wire fraud "plaintiffs must also demonstrate reliance," even if not first-person reliance, "on a defendant's common misrepresentation." *In re*

*U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 (2d Cir. 2013). The CAC alleges that Okafor and Aguilar bought "multiple 'fair-launch' tokens" on Pump.fun but says nothing about whether they viewed or relied on any alleged misrepresentations. CAC ¶¶ 28-29. *See FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 459 (S.D.N.Y. 2014) (dismissing RICO claim predicated on wire fraud because plaintiff "has not plausibly pled reliance on [defendant's] alleged misrepresentations"). The CAC *implies* that unspecified *other* users saw the alleged misrepresentations, but it fails to name such users and fails to allege the basis for any reliance or how any such reliance harmed *Plaintiffs. See Emergency Phys. Servs. of N.Y. v. UnitedHealth Grp.*, Inc., 2021 WL 4437166, at *6 (S.D.N.Y. Sept. 28, 2021) (third party reliance requires "showing that *someone* relied on the defendant's misrepresentations" and that plaintiffs were harmed thereby).

The CAC also fails to adequately allege proximate causation arising from any of these purported violations because it connects them to no injury. For example, the CAC alleges laundering of hacked funds by a criminal group, an absence of KYC/AML controls, and trading by minors (CAC ¶¶ 456, 244, 260) but does not allege that this alleged conduct harmed Plaintiffs in any way. The CAC also fails to allege harm to Plaintiffs from tokens that counterfeited trademarks (*id.* ¶¶ 458, 461), falsely impersonated public figures (*id.* ¶ 462), falsely designated origin (*id.* ¶ 459), or diluted the value of other marks (*id.* ¶ 460). Nor does the CAC plead particularized harm from the alleged operation of a money-transmitting business. *See id.* ¶ 466 (alleging generic loss of "regulatory protections"). Under no competent theory could these alleged violations have injured Plaintiffs because the CAC does not claim that Plaintiffs or any named third party were misled by any of them. *See Palatkevich v. Choupak*, 2014 WL 1509236, at *5 (S.D.N.Y. Jan. 24, 2014) (McMahon, J.) (plaintiff lacks RICO standing "based on injuries it

allegedly suffered from the infringement of copyrights belonging to third parties"). Any theory of harm arising from third-party money laundering or unauthorized use of trademarks depends on a fatally deficient "intricate, uncertain, and contingent" causal chain. *Tether*, 576 F. Supp. 3d at 122.

### C.    The CAC Fails to Adequately Plead a § 1962(c) Claim.

To establish a § 1962(c) violation Plaintiffs must plead that "a person engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013). The CAC fails to adequately plead a RICO enterprise or predicate-act violations that constitute racketeering activity.

### 1.    The CAC Does Not Adequately Plead a RICO Enterprise.

Plaintiffs fail to allege a RICO enterprise. Plaintiffs assert that Defendants formed an "association-in-fact enterprise" under 18 U.S.C. § 1961(4). CAC ¶ 443. To plead such an enterprise, Plaintiffs must allege a (i) a common purpose, (ii) relationships among the associated entities, and (iii) sufficient longevity to pursue that purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009); *Elsevier*, 692 F. Supp. 2d at 305–06. Plaintiffs fail to meet the first two elements.

### (a)    The CAC Fails to Adequately Allege a Common Purpose.

Plaintiffs fail to allege a common purpose among the supposed enterprise participants. Plaintiffs claim the enterprise was formed to "deploy[] a pseudonymous online gambling system." CAC ¶ 443. But the alleged facts regarding the three separate businesses establish, at best, only that disparate companies in the same industry had independent profit motives. A shared motivation to earn money—to "advance [the defendants'] individual self-interests"—does not create a RICO enterprise. *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014).

Plaintiffs claim Defendants "coordinated their operations" (CAC ¶ 448), but "this allegation is little more than a naked assertion devoid of further factual enhancement" that cannot establish a common, illicit objective. *D. Penguin Bros*, 587 F. App'x at 668. The CAC lacks facts

suggesting that Defendants "acted on behalf of the enterprise as opposed to on behalf of [themselves] in their individual capacities, to advance their own self-interests." *Id.*; *see also Gurung v. MetaQuotes Ltd.*, 2024 WL 3849460, at *9 (E.D.N.Y. Aug. 16, 2024).

**(b)    The CAC Does Not Allege Sufficient Relationships Among Participants.**

Plaintiffs' allegations of loose connections among Defendants fail to establish the second prong of the *Boyle* enterprise test. Courts in this Circuit require "factual, concrete, specific, declarative, [and] trustworthy" allegations of interpersonal relationships and coordinated conduct. *Black v. Ganieva*, 619 F. Supp. 3d 309, 335 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). A RICO plaintiff must explain how the purported enterprise members "came to an agreement to act together." *Elsevier*, 692 F. Supp. 2d at 307.

Plaintiffs' enterprise allegations rely heavily on the claim that Jito Labs and Solana Labs had overlapping investors. CAC ¶¶ 273, 281, 302. But the existence of shared investors among two alleged members of the enterprise does not imply how or whether "the various sets of named defendants . . . had any interpersonal relationships." *Elsevier*, 692 F. Supp. 2d at 307. Plaintiffs claim that Defendants operated complementary businesses (CAC ¶¶ 275, 289, 302) and summarily assert that the enterprise was "coordinated," "unified and interdependent" (*id*. ¶¶ 447-448), but the CAC does not explain how or when the enterprise members agreed to act together. *See Elsevier*, 692 F. Supp. 2d at 307. Such a "loose connection of separate and independent business entities" does not establish the associated relationships necessary to plead a common enterprise. *Manhattan Telecomms. Corp. v. DialAmerica Mktg., Inc.*, 156 F. Supp. 2d 376, 383 (S.D.N.Y. 2001).

**2.    The CAC Does Not Adequately Plead Two or More Predicate Acts.**

The CAC also fails to allege that Baton or any other Defendant personally committed two or more predicate acts. *See DeFalco v. Bernas*, 244 F.3d 286, 305-306 (2d Cir. 2001).

**Gambling-Related Predicate Acts**. The CAC fails to allege a gambling violation under 18 U.S.C. § 1955. CAC ¶¶ 452-53. To do so Plaintiffs must establish a state-law gambling violation (*see* 18 U.S.C. § 1955(b)(1)), but the CAC does not adequately allege violations of N.Y.P.L. §§ 225.00 or 225.10. Section 225.00(2) defines gambling as staking or risking "something of value upon the outcome of a contest of chance . . . upon an agreement or understanding [to] receive something of value in the event of a certain outcome." The CAC alleges no such agreement or understanding. Instead, Plaintiffs allege that they bought tokens from Baton without expecting to receive anything else. A mere sale of tokens, which is priced and consummated regardless of future events, does not constitute gambling. CAC ¶¶ 28-30; *See Matter of Muidallap Corp. v. State Liquor Auth.*, 143 A.D.2d 9, 11-12 (1st Dep't 1988) (finding "no gambling occurred" where buyers did not agree to or understand that they would receive something of value, or that such value would be awarded "by chance procedures similar to those used in certain gambling games."). Moreover, the CAC refutes any assertion that buyers bought tokens with values contingent on "the outcome of a contest of chance." The alleged basis for gambling is that the bonding curve is a "random number generator," but Plaintiffs concede that it is a "pricing algorithm" that is "constant" and based on supply and demand (CAC ¶¶ 121, 133, 141).

The CAC likewise fails to allege violations of the Wire Act, which applies only to businesses that "knowingly" use wires to transmit "wagers" on a "sporting event or contest" (18 U.S.C. § 1084(a)). The predicate-act allegations under 31 U.S.C. §§ 5361-6367 fail for the same reasons because Section 5362(1) defines a "bet or wager" similar to New York law.

**Wire-Fraud Predicate Acts.** The CAC's wire-fraud allegations fail for multiple reasons. In addition to the proximate-causation defect, Plaintiffs do not plead misrepresentation or intent to defraud with the particularity that Rule 9(b) requires. *See United States v. Johnson*, 945 F.3d 606,

612 (2d Cir. 2019) (wire fraud requires "intent to defraud" and a "material misrepresentation" likely to influence decision making); *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 125 (S.D.N.Y. 2023) (civil RICO fraud predicates are subject to Rule 9(b), requiring details as to "time, place, speaker and content" of alleged misrepresentations, why they were fraudulent, and facts supporting fraudulent intent).

First, Plaintiffs' allegation of being "induced [] to deposit funds under false pretenses of fair launch and equal access" or related misrepresentations (CAC ¶¶ 457, 466) is too unparticularized and speculative to qualify as wire fraud. While the CAC recites that Baton made "fair launch" statements on its website and in social media (*id.* ¶¶ 184–190), it does not plead facts explaining why those statements were fraudulent. Nor does the CAC allege how any Plaintiffs "were misled about their odds and rights" (*id.* ¶ 457) or which transactions were impacted. Without a particularized theory of wire fraud, the alleged misstatements fail as RICO predicate acts. *See Rivera v. Golden Nat. Mortg. Banking Corp.,* 2005 WL 1514043, at *3 (S.D.N.Y. June 27, 2005) (dismissing RICO complaint that "fails to state with particularity when or which Defendants committed the [alleged fraud]").

Second, the CAC does not plausibly allege falsity. It asserts that Pump.fun touted launches as "fair," "safe," and "rug-pull proof" (CAC ¶¶ 185, 189) but pleads no presales, insider allocations, or rug pulls. Vague assurances of fairness and safety are, at most, "non-actionable puffery." *Nelson v. Pub. Circulation Fulfillment, Inc.*, 2012 WL 760335, at *4 (S.D.N.Y. Mar. 7, 2012) (promise of "safety and protection" cannot support wire fraud claim). Allegations that Pump.fun lacked "meaningful protections" (CAC ¶ 188) likewise do not identify a false statement. *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 185 (2d Cir.2008) ("predicate mail and wire fraud acts 'should state the contents of the communications, who was involved, [and] where

and when they took place, and [should] ***explain why they were fraudulent***'") (emphasis added) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993)).

Third, intent to defraud is not adequately pled. The CAC's only support is the conclusory assertion that Defendants "knowingly devised . . . a plan to defraud" (CAC ¶ 193) and a reference to an unspecified foreign regulatory reprimand (*id.* ¶ 192). Neither provides the particularized facts necessary to infer fraudulent intent.

**Money-Laundering-Related Predicate Acts.** Plaintiffs fail adequately to allege the predicate acts of knowingly laundering money or operating or conspiring to operate an unlicensed money-transmitting business. CAC ¶¶ 455, 456, 464. "Money transmitting" under 18 U.S.C. §19 60(b)(2) includes "transferring funds on behalf of the public." The CAC fails to allege such conduct; in fact, it alleges Baton "never takes custody of [customer] funds." CAC ¶ 176. The CAC also does not allege that Baton knowingly laundered money; instead, it states that, upon learning of illegal acts, Baton "removed the [subject] token from its front-end platform." *Id.* ¶ 241.

**Intellectual-Property-Related Predicate Acts**. The CAC also fails to establish the remaining predicate acts of trademark counterfeiting, false designation of origin, trademark tarnishment, trafficking in counterfeit labels, and identity theft and false impersonation. CAC ¶¶ 458-462. It attributes these violations to Baton's *users*, not to Baton or any other alleged enterprise member. *See id*. (discussing "tokens launched" by users), *see also id*. ¶¶ 117, 200 (users created tokens violating intellectual-property rights). Thus, the CAC seeks to hold Defendants secondarily liable for violations committed by non-members of the alleged enterprise. Such allegations fail to state a § 1962(c) violation. *Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 386, 396 (S.D.N.Y. Mar. 19, 2014) (§ 1962(c) does not recognize "aiding and abetting predicate acts as predicate acts").

**D.**    **The CAC Fails to Adequately Allege a "Conspiracy" Under Section 1962(d).**

Section 1962(d) makes it unlawful "to conspire to violate" one of the other RICO subsections. The § 1962(d) claim fails for reasons similar to those that defeat the § 1962(c) claim.

*First*, "Plaintiffs' failure to state a claim for their substantive RICO violation warrants dismissal of their RICO conspiracy claim." *Gucci Am. v. Alibaba Grp. Holding Ltd.*, 2016 WL 6110565, at *9 (S.D.N.Y. Aug. 4, 2016). *Second*, Plaintiffs fail to allege the essential elements of a RICO conspiracy. To plead a RICO conspiracy, Plaintiffs must allege "specifically" that each defendant entered into an agreement to commit predicate acts. *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 425 (E.D.N.Y. 2017) (cleaned up) (citing *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990)). They do not. The CAC asserts that Defendants "agreed that members of the Pump Enterprise would commit at least two predicate acts" (CAC ¶ 442) but lacks factual support for any supposed agreement. *See id*. (dismissing conspiracy claim where plaintiffs "only summarily alleged . . . an illicit agreement").

**E.**    **Plaintiffs Do Not Adequately Allege Domesticity**

"Section 1964(c) "requires a civil RICO plaintiff to allege and prove a domestic injury . . . and does not allow recovery for foreign injuries." *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 354 (2016). The CAC pleads no facts about Aguilar's or Carnahan's location or any domestic nexus to the allegations, and the CAC admits that Baton is a foreign entity. CAC ¶¶ 29–30, 33; *see Demaree v. Castro*, 2023 WL 6465881, at *1 n.3 (S.D.N.Y. Oct. 4, 2023) (McMahon, J.) (allegations that "foreigners who did business with a [foreign] corporation over a [foreign] website" do not support a viable claim). Okafor fails to satisfy domesticity as well because his US residence without more does not establish a US injury. *See Yegiazaryan v. Smagin*, 599 U.S. 533, 543-45 (2023) (rejecting "bright-line rule . . . that locates a plaintiff's injury at the plaintiff's residence").

23

## IV.  PLAINTIFFS' GBL CLAIMS ARE BARRED UNDER NEW YORK LAW.

### A.  Plaintiffs' GBL Claims Must Be Dismissed for Lack of a New York Nexus.

Plaintiffs' N. Y. Gen. Bus. Law §§ 349 and 350 claims must be dismissed because the CAC fails to allege that Baton's relevant conduct occurred in New York. These statutes apply only to conduct that occurred "in this state." N.Y. Gen. Bus. Law §§ 349(a), 350. The Second Circuit interprets "in this state" as a "limiting phrase" requiring that "the transaction in which the consumer is deceived . . . occur in New York." *FXDirectDealer LLC*, 720 F.3d at 122. GBL's territorial reach is based on "where the consumer was deceived." *Miramontes v. Ralph Lauren Corp.*, 2023 WL 3293424, at *5 (S.D.N.Y. May 5, 2023) (McMahon, J.).

Here, Plaintiffs do not allege that Baton is located in New York (*see* CAC ¶¶ 33) or that any Plaintiff viewed the alleged misrepresentations or purchased any tokens while in New York. This lack of a New York connection is fatal to Count IV. As this Court explained in *Miramontes*, "New York courts routinely dismiss cases like this one, in which out-of-state transactions form the basis of a complaint under the GBL, at the pleading stage." *Id*. (collecting cases).

### B.  Plaintiffs Do Not Allege Actual Injury or Causation Under GBL §§ 349-350.

Even if Plaintiffs had alleged a New York nexus—they have not—they fail to allege both actual injury and causation. *See Orrico v. Nordic Nats., Inc*., 2023 WL 6308015, at *7 (E.D.N.Y. Sept. 28, 2023) (plaintiff must show an injury "as a result of the [allegedly] deceptive act.").

An actual injury under Sections 349 and 350 typically requires a plaintiff to "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). Plaintiffs fail to do so. Instead, they claim monetary injury resulting from a collapse in token prices but do not allege that any misrepresentation caused that collapse or that they overpaid for the tokens.

The CAC is also deficient as to causation, which requires a plaintiff to allege "that he [saw] the misleading statements [before buying] the [subject] products." *Goldemberg v. J&J Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (cleaned up). The CAC contains no such allegations. The conclusory assertion that Plaintiffs "relied on Defendants' misrepresentations, purchased Tokens, and [subsequently] suffered monetary injury" (CAC ¶ 470) is insufficient because it does not allege when, where, or how such purported reliance occurred. *See Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 895 (E.D.N.Y. 2018) (complaint "merely allege[d] [p]laintiff's purported 'reliance' without providing any underlying factual details concerning when, where and how such reliance arose."), *adhered to on reconsideration*, 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019).

## V.    THE UNJUST ENRICHMENT CLAIM IS DEFICIENT.

Plaintiffs' unjust enrichment claim should be dismissed because it duplicates other claims. Under New York law an "unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y. Inc.*, 18 N.Y.3d 777, 790-91 (2012). Claims are duplicative "if they 'arise from the same facts and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). Plaintiffs' unjust enrichment claim repackages the same allegations underlying their other claims (CAC ¶¶ 472-74) and alleges no distinct damages, and therefore is duplicative. *See Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021) (Second Circuit courts "have consistently held that unjust enrichment claims are duplicative of GBL claims").

The claim also must be dismissed because Plaintiffs fail to allege that no adequate remedy at law exists. *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) (unjust enrichment "is unavailable where an adequate remedy at law exists.").

## CONCLUSION

For these reasons, the Court should dismiss all claims against Baton Corporation.

Dated: September 5, 2025

Respectfully submitted,

**BROWN RUDNICK LLP**

<u>*/s/ Stephen D. Palley*</u>
Stephen D. Palley
Daniel L. Sachs
1900 N Street NW, 4th Floor
Washington, DC 20036
(202) 536-1700 (telephone)
(202) 536-1701 (facsimile)
spalley@brownrudnick.com
dsachs@brownrudnick.com

Kyle Dorso (*pro hac vice*)
One Financial Center
Boston, MA 02111
(617) 856-8200 (telephone)
(617) 289-0899 (facsimile)
kdorso@brownrudnick.com

*Counsel for Baton Corporation*

26