UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :

DIEGO AGUILAR, KENDALL CARNAHAN :
and MICHAEL OKAFOR, Individually and on :
Behalf of All Others Similarly Situated, :
                                                :

                   Plaintiffs,     :     Civ. No. 1:25-cv-00880-CM
                                                :

          - against -             :
                                                  :

BATON CORPORATION LTD, d/b/a :
PUMP.FUN, ALON COHEN, DYLAN :
KERLER, and NOAH BERNHARD HUGO :
TWEEDALE, SOLANA LABS INC., :
SOLANA FOUNDATION, JITO LABS INC., :
JITO FOUNDATION, ANATOLY :
YAKOVENKO, RAJ GOKAL, DAN :
ALBERT, AUSTIN FEDERA, LILY LIU :
LUCAS BRUDER, BRIAN SMITH, :
                                                  :

                   Defendants.     :
                                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


### MEMORANDUM OF LAW IN SUPPORT OF JITO LABS, INC.'S MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

Alexander C. Drylewski
James M. Johnston
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

*Counsel for Defendant Jito Labs, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT .......................................................................... 1

BACKGROUND ................................................................................................. 4

    A.    Solana's Decentralized Blockchain Network ........................................ 4

    B.    Solana's High Transaction Volume and Low Fees Invite Spam
        Transactions, Degrading Performance for Users .................................... 5

    C.    Jito Labs Developed Open-Source Tools for Solana Users ................... 6

    D.    Anyone Can Use the Jito Validator Software and Tipping Tools, Including
        Plaintiffs ................................................................................................ 7

    E.    Pump.fun Launches Its Own Platform on Solana's Network ................. 7

    F.    Plaintiffs Bring Suit and Later Add Jito Labs in an Attempt to
        Manufacture a RICO Theory .................................................................. 8

ARGUMENT ..................................................................................................... 10

I.    PLAINTIFFS FAIL TO STATE A RICO CLAIM (COUNT II) ................... 10

    A.    Plaintiffs Fail to Plead Jito Labs' Participation in Any RICO Enterprise ............. 10

    B.    Plaintiffs Fail to Plead a RICO Conspiracy Against Jito Labs ............. 12

    C.    Plaintiffs Do Not Have RICO Standing to Sue Jito Labs .................... 13

        1.    Plaintiffs Fail to Plead an Injury to Business or Property ........ 13

        2.    Plaintiffs Fail to Plead That Jito Labs' Alleged Conduct Was the
            Cause of Their Injuries ............................................................ 14

    D.    Plaintiffs Fail to Plead That Jito Labs Engaged in Two RICO Predicate
        Acts ...................................................................................................... 16

II.    PLAINTIFFS' STATE LAW CLAIMS FAIL ............................................... 20

    A.    The Court Lacks Personal Jurisdiction Over Jito Labs ........................ 20

    B.    Plaintiffs Fail to Plead the State Law Claims Against Jito Labs .......... 21

        1.    Plaintiffs' New York Consumer Protection Claim Fails (Count III) ........ 21

     2.     Plaintiffs' Unjust Enrichment Claim Fails (Count IV)............................21

CONCLUSION.........................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                                 **PAGE(S)**

*Arthur v. Orchestrate Business LLC*,
    2025 WL 2201067 (S.D.N.Y. Aug. 1, 2025) ............................................................ 20, 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 4, 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 4, 10

*Chufen Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020) ...................................................................................... 21

*Columbia Memorial Hospital v. Hinds*,
    38 N.Y.3d 253 (N.Y. 2022) ....................................................................................... 21

*Demaree v. Castro*,
    2023 WL 6465881 (S.D.N.Y. Oct. 4, 2023) ........................................................... 10, 11

*Democratic National Committee v. Russian Federation*,
    392 F. Supp. 3d 410 (S.D.N.Y. 2019) .................................................................... 11, 12

*Doe v. Trump Corp.*,
    385 F. Supp. 3d 265 (S.D.N.Y. 2019) .......................................................................... 15

*Donohue v. Teamsters Local 282 Trust Funds*,
    12 F. Supp. 2d 273 (E.D.N.Y. 1998) ............................................................................ 13

*Edmondson v. Raniere*,
    751 F. Supp. 3d 136 (E.D.N.Y. 2024) .................................................................... 13, 15

*Entretelas Americanas S.A. v. Soler*,
    2020 WL 9815186 (S.D.N.Y. Feb. 3, 2020) ................................................................ 18

*Fometal S.R.L. v. Keili Trading LLC*,
    2024 WL 307976 (S.D.N.Y. Jan. 26, 2024) .................................................................. 20

*Georgia Malone & Co. v. Rieder*,
    19 N.Y.3d 511 (2012) .......................................................................................... 21, 22

*Goldfine v. Sichenzia*,
    118 F. Supp. 2d 392 (S.D.N.Y. 2000) ................................................................. 2, 11, 12

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010) ................................................................................................... 14

*Kaul v. Christie,*
    372 F. Supp. 3d 206 (D.N.J. 2019)............................................................18, 19

*Khan Funds Management America, Inc. v. Nations Technologies Inc.,*
    2023 WL 6124801 (S.D.N.Y. Sept. 19, 2023)................................................13

*Motorola Credit Corp. v. Uzan,*
    322 F.3d 130 (2d Cir. 2003)..........................................................................13

*Muidallap Corp. v. State Liquor Authority,*
    143 A.D.2d 9 (1st Dep't 1988)......................................................................17

*Petrosurance, Inc. v. National Ass'n of Insurance Commissioners,*
    888 F. Supp. 2d 491 (S.D.N.Y. 2012)..........................................................16

*Randolph v. Mondelez Global LLC,*
    2022 WL 953301 (S.D.N.Y. Mar. 30, 2022) ..................................................5

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993) .........................................................................10, 11, 12

*Risley v. Universal Navigation Inc.,*
    690 F. Supp. 3d 195 (S.D.N.Y. 2023) ............................................................2

*Sandoval v. Uphold HQ Inc.,*
    2024 WL 1313826 (S.D.N.Y. Mar. 27, 2024) ..............................................22

*Stevenson v. Thornburgh,*
    2024 WL 645187 (S.D.N.Y. Feb. 14, 2024)..................................................19

*In re Tether & Bitfinex Crypto Asset Litigation,*
    576 F. Supp. 3d 55 (S.D.N.Y. 2021) ..............................................13, 14, 15

*United States v. Lorenzo,*
    534 F.3d 153 (2d Cir. 2008)...................................................................18, 19

*Van Praagh v. Gratton,*
    993 F. Supp. 2d 293 (E.D.N.Y. 2014) ............................................................5

*West 79th Street Corp. v. Congregation Kahl Minchas Chinuch,*
    2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004)..............................................19

*Western Energy Opportunities II, LLC v. Finalis Securities, LLC,*
    2025 WL 935201 (S.D.N.Y. Mar. 26, 2025) ..........................................16, 20

*Westchester County Independence Party v. Astorino,*
    137 F. Supp. 3d 586 (S.D.N.Y. 2015) ....................................................13, 14

*Williams v. Affinion Group, LLC,*
    889 F.3d 116 (2d Cir. 2018)................................................................................12

## STATUTES

18 U.S.C. § 1084............................................................................................................17

18 U.S.C. § 1343............................................................................................................19

18 U.S.C. § 1955(a)........................................................................................................17

18 U.S.C. § 1960............................................................................................................18

18 U.S.C. § 1961(1)........................................................................................................19

18 U.S.C. § 1964(c)........................................................................................................14

18 U.S.C. § 1956(a)..................................................................................................18, 19

18 U.S.C. § 1957............................................................................................................18

N.Y. Penal Law § 225.00(2)....................................................................................16, 17

N.Y. Penal Law § 225.10..............................................................................................17

## RULES

CPLR § 302(a)................................................................................................................20

Defendant Jito Labs, Inc. ("Jito Labs") respectfully submits this memorandum of law in support of its motion to dismiss the Consolidated Amended Class Complaint ("CAC" (ECF No. 34)) with prejudice.  As applicable, Jito Labs also adopts and incorporates by reference the arguments set forth in the motions to dismiss of Baton Corporation, LTD ("Baton"), and Solana Labs, Inc., Solana Foundation, Dan Albert, and Austin Federa (the "Blockchain Defendants"), filed concurrently herewith (the "Baton Motion" and "Blockchain Motion," respectively).

## PRELIMINARY STATEMENT

Plaintiffs' lawsuit is a misguided attempt to hold Jito Labs liable under RICO for purported losses Plaintiffs sustained when they engaged in speculative trading of notoriously volatile "meme coins" on a platform called "Pump.fun," built on the Solana blockchain network ("Solana"). Plaintiffs allege that "Pump.fun Inc., Solana Labs Inc., Solana Foundation, and Jito Labs" together formed a RICO enterprise, dubbed the "Pump Enterprise," with the "purpose of launching, promoting, and profiting from" certain tokens on the Pump.fun platform.  (CAC ¶ 440.)  But Plaintiffs do not allege any facts connecting Jito Labs to Pump.fun, let alone facts showing any agreement or involvement in the alleged "Pump Enterprise."  Rather, Jito Labs—which was not named in the original complaint—appears to have been tacked-on to this lawsuit in an attempt to manufacture a RICO claim.

Jito Labs is a technology company that builds open-source software for use on Solana. Years before Pump.fun existed, Jito Labs developed tools that allow *anyone* to process transactions faster on Solana.  Plaintiffs allege that unidentified users of Pump.fun later used this software in connection with the Pump.fun platform, allowing those users to buy the cheapest meme coins first and then sell them, purportedly causing trading losses to Plaintiffs, who did not transact as quickly. (CAC ¶¶ 288-94.)

Plaintiffs' theory does not hold water.  As the CAC admits, *anyone* can use the open-source

software previously developed by Jito Labs—without Jito Labs' knowledge, involvement or permission. Indeed, one of the *Plaintiffs* expressly admits doing so. (CAC ¶ 28, 130, 289, 291.) And while the so-called Pump Enterprise allegedly acted to profit from certain token sales on Pump.fun, Plaintiffs do not allege that Jito Labs had any relationship, involvement, or control over the Pump.fun platform. Nor do Plaintiffs allege that Jito Labs had any awareness of the tokens at issue or the alleged conduct of Pump.fun users. Jito Labs simply created software that unaffiliated parties later used on an unaffiliated platform. Crediting Plaintiffs' theory of liability would be akin to holding a manufacturer of high-speed modems liable for the conduct of third parties on the internet. This lacks any basis in logic or the law, as Judge Failla emphasized in another case involving blockchain technology: "[I]t defies logic that a drafter of computer code underlying a particular software platform could be liable . . . for a third-party's misuse of that [software]." *Risley v. Universal Navigation Inc.*, 690 F. Supp. 3d 195, 215 (S.D.N.Y. 2023), *aff'd in part, vacated in part on other grounds*, 2025 WL 615185 (2d Cir. Feb. 26, 2025). Plaintiffs' untenable theory should be rejected, and the CAC should be dismissed, for the following independent reasons:

*First*, Plaintiffs do not plead facts that Jito Labs participated in any "RICO enterprise." (*Infra* § I.A.) Plaintiffs must plead Jito Labs' active involvement and control over the alleged enterprise, but fail to offer any facts that Jito Labs had any relationship with—much less involvement or control over—any aspect of the Pump.fun platform. Plaintiffs' allegations show, at most, Jito Labs independently running its own business for profit, which is insufficient as a matter of law. *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 403 (S.D.N.Y. 2000) (McMahon, J.).

*Second*, Plaintiffs fail to state a RICO conspiracy claim against Jito Labs because they do not plead a primary RICO violation, much less that Jito Labs entered into any agreement with the other Defendants to commit a substantive RICO offense.  (*Infra* § I.B.)

*Third*, Plaintiffs lack RICO standing.  (*Infra* § I.C.)  Plaintiffs' alleged injury—the missed opportunity to profit from meme coin speculation—is not a cognizable RICO injury to business or property.  Further, Plaintiffs fail to plead that Jito Labs was the proximate cause of those losses.  Rather, as pleaded, Plaintiffs' losses were caused by unknown parties who transacted on the Pump.fun platform and used publicly available software tools created by Jito Labs to help process their transactions—tools that Plaintiffs could have used (and did use) themselves.  Thus, Plaintiffs' theory of causation is far too attenuated to satisfy RICO's strict proximate cause standard.

*Fourth*, Plaintiffs do not plead that Jito Labs engaged in two or more RICO predicate acts.  (*Infra* § I.D.)  While Plaintiffs assert that "Defendants" engaged in a hodgepodge of illegal gambling, money transmitting, wire fraud, money laundering, trademark violations, counterfeiting, and identity theft, the CAC is devoid of any facts that Jito Labs did such acts.

*Finally*, Plaintiffs' New York consumer protection and unjust enrichment claims fail.  (*Infra* § II.)  The CAC does not establish personal jurisdiction over Jito Labs, a Delaware company.  Nor is Jito Labs alleged to have engaged in any misleading conduct or have any relationship with Plaintiffs to support their state law claims.

\*  \*  \*

At bottom, a review of the 474-paragraph CAC reveals that Plaintiffs opted for quantity over quality.  But confusing jargon and ill-founded legal conclusions cannot mask the CAC's lack of well-pleaded facts.  This lawsuit never should have been filed against Jito Labs, and the Court should dismiss it with prejudice.

# BACKGROUND[1]

## A.    Solana's Decentralized Blockchain Network

Launched in March 2020, Solana is a decentralized blockchain network developed by Solana Labs, Inc. ("Solana Labs"). (CAC ¶¶ 31, 62.) Solana records transactions in digital assets, including its native token SOL as well as other tokens for applications built on Solana. (*Id.* ¶ 62.) Users can interact with Solana either directly using their own software or through a variety of different applications, including marketplaces and trading platforms created by third parties. (*Id.* ¶¶ 60, 65-70, 298, 357, 361, 426.) By way of example, a user may transact on Solana (1) through a third-party centralized exchange, in which user transactions are handled by a centralized party that typically custodies the user's assets; (2) through a decentralized protocol in which users connect their own self-custody digital wallets and interact directly with third parties through the protocol; or (3) by transacting directly with another party through each party's self-custody wallet. (*Id.* ¶¶ 58-61, 65-70.)

Like the Bitcoin and Ethereum blockchains, the code for Solana is open source—*i.e.*, public—and decentralized, such that anyone in the world can transact or build on it without needing permission from anyone, Solana Labs or otherwise. (CAC ¶¶ 58-59, 61, 92.) All transactions are verified by network participants known as "validators." (*Id.* ¶¶ 61-62, 239.) Anyone can become a validator by downloading the publicly available, open-source validator software ("Solana Validator Software"). (*Id.* ¶ 61.) Validators are paid small rewards (in SOL) for the work of processing and settling transactions. (*Id.* ¶¶ 17-18, 61, 266.) These fees are paid

---

[1] The following alleged facts are drawn from the CAC and, where indicated, materials incorporated by reference therein. Jito Labs reserves all rights to contest Plaintiffs' factual allegations at the appropriate time, but, to the extent they are not conclusory or merely recite the gravamen of a cause of action, they are deemed true solely for this motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

(in SOL) to the "network" when they submit transactions and are then distributed to validators. (CAC ¶¶ 61, 266.)  Users also have the option to pay additional "priority fees" to validators, which increase the likelihood and speed at which the transaction is verified.  (CAC ¶ 130, Ex. 1 (website cited in CAC ¶ 273 & n.21).)[2]

### B.    Solana's High Transaction Volume and Low Fees Invite Spam Transactions, Degrading Performance for Users

Unlike other blockchains, Solana employs a "Proof of History" mechanism that uses timestamps to establish the order in which transactions are validated and recorded.  (*See* Ex. 2 (website cited in CAC ¶ 273 & n.21).)  This mechanism effectively allows Solana to execute transactions simultaneously, as opposed to blockchain networks like Bitcoin and Ethereum, which process transactions sequentially.  (CAC ¶¶ 59, 92; Ex. 2.)  As a result, Solana processes a higher volume of transactions more quickly, which results in lower transaction fees.  (CAC ¶ 92; Ex. 3 (website cited in CAC ¶ 273 & n.21).)

Due to its unique infrastructure, Solana receives an outsized volume of attempted transactions, including those submitted by automated bots using algorithms to input millions of transactions to try to settle as many transactions as possible: at most, only 4% settle.  (Ex. 3.)  The automated failed transactions require significant bandwidth, making it more challenging to land transactions on Solana.  (*Id.*; Ex. 4 (cited in CAC ¶ 92 & n.4).)

---

[2] The Court may consider Jito Labs' website and all other websites exhibited herein as they are incorporated by reference in the CAC.  *See Randolph v. Mondelez Glob. LLC*, 2022 WL 953301, at *5 (S.D.N.Y. Mar. 30, 2022) ("websites cited in the complaint itself [are] . . . incorporated by reference therein"); *see also Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 298 (E.D.N.Y. 2014) (defendant's website cited in complaint was incorporated by reference).

### C.    Jito Labs Developed Open-Source Tools for Solana Users

Formed in 2021, Jito Labs is a technology company that builds open-source software to improve Solana's performance.  (CAC ¶ 35; Ex. 5 (cited in CAC ¶ 273 & n.21).)  Jito Labs has no affiliation with Solana Labs, Solana Foundation, or Pump.fun—rather, it is an independent company that develops software for Solana, as any company is able to do given that the Solana code is open source.  (CAC ¶¶ 35, 280-82.)  Jito Labs developed, among other things, the Jito-Solana validator client ("Jito Validator Software"), a modified version of the Solana Validator Software.  (*Id.* ¶¶ 274, 285.)  The Jito Validator Software is open source, meaning anyone can download and use it without Jito Labs' knowledge, involvement or permission.  (*Id.* ¶¶ 297, 323, Ex. 5.)[3]  The Jito Validator Software is a tool that helps third-party validators filter spam and achieve transaction finality on Solana.  (CAC ¶ 286; Exs. 1, 5.)  As a result, over 93% of Solana validators have downloaded the Jito Validator Software.  (CAC ¶ 323.)

The Jito Validator Software has several features that benefit Solana users.  For instance, the Jito Validator Software allows any Solana user to create "bundles" of up to five transactions at a time to be executed sequentially by validators (or not at all).  (CAC ¶¶ 285-88; Ex. 1.)  The Jito Validator Software also gives Solana users the option to set an additional "tip" amount (in addition to the Solana priority fees), which is paid to the validator that settles the user's transaction bundle. (*Id.*)  These tips incentivize validators to process the user's transaction; in this way, the tipping tool acts as a "fast pass," helping users execute transactions faster and with greater certainty.  (*Id.*) Jito Labs historically received a small portion of these tips as a developer fee.  (CAC ¶ 446.)

---

[3] This is true of all open-source software, including many widely used programs such as Linux, Android, WordPress, and Mozilla Firefox.  *See* Investopedia, *Open Source: What it Means, How it Works, Example* (July 2, 2023), https://www.investopedia.com/terms/o/open-source.asp.

### D.    Anyone Can Use the Jito Validator Software and Tipping Tools, Including Plaintiffs

Critically, the ability to bundle transactions and tip validators to get priority treatment are features available to *any* Solana user.  (CAC ¶¶ 289-91; Ex. 5; Ex. 6 (cited in CAC ¶¶ 125-30 & Exs. C-F).)  Indeed, Lead Plaintiff Okafor admits that he used certain of these tools, alleging that he "paid for priority blockspace via transaction and *bundling* fees," meaning that he *chose* for his meme coin transactions to go through the Jito Validator Software (like anyone can do).  (CAC ¶ 28; *see also id.* ¶¶ 130, 289, 291.)  Solana *users* do not have to download the Jito Validator Software to obtain its advantages; rather, certain third-party applications—completely unaffiliated with Jito Labs—can provide an option for users to independently *select* to include their transaction in a bundle to be processed by a third-party validator running the Jito Validator Software.  (*Id.* ¶¶ 130, 289; Ex. 6.)  The third-party website interfaces that allow for this are not provided by, or supported by, Jito Labs, nor do they require Jito Labs' knowledge, involvement, or permission. (CAC ¶¶ 31-35, 289; Ex. 6.)  Rather, applications like Pump.fun build this functionality independently, taking advantage of the open-source Jito Validator Software code.  (*Id.*)

### E.    Pump.fun Launches Its Own Platform on Solana's Network

Pump.fun is a Solana-based application launched in January 2024, years after the open-sourcing of the Jito Validator Software.  (CAC ¶¶ 35, 120; Ex. 5.)  Plaintiffs do not (and could not) allege that Jito Labs had any involvement in or knowledge of the Pump.fun launch.  Pump.fun allows any third-party user to create, launch and trade digital tokens known as "meme coins"—*i.e.*, tokens inspired by internet trends and humor.  (CAC ¶¶ 16, 120; Ex. 7 (cited in CAC ¶ 336 & n.23).)  A "bonding curve system" automatically determines the token's pricing on Pump.fun based on supply and demand.  (CAC ¶¶ 121, 290.)  Because prices increase as more tokens are

purchased, the earliest buyers of a given token may obtain lower prices. (*Id.*)  It is alleged that Pump.fun users have launched over 11 million tokens on the platform. (*Id.* ¶ 123.)

Anyone can buy and sell meme coins on Pump.fun. (CAC ¶¶ 8, 88, 124.)  Similar to other Solana-based applications, Pump.fun gives each user, including Plaintiffs, the option to pay priority fees to Solana validators, as well as to add an additional tip to validators running the Jito Validator Software. (*Id.* ¶¶ 130, 289; Ex. 6.)  Users can add a tip via a "toggle" on the application's website interface; a user must turn the toggle on in order for their transaction to be bundled and sent to a validator who's downloaded the Jito Validator Software. (*Id.*)  Pump.fun's developers allegedly integrated this tip toggle into the Pump.fun application interface, as any application developer is free to do since the Jito Validator Software is freely available as open-source software. (CAC ¶¶ 130, 289; Exs. 5, 6.)  The CAC does not allege that Jito Labs had any involvement in this. (CAC ¶¶ 130, 289-92.)  Once integrated, the tip functionality was available to any users who transacted on the Pump.fun platform. (*Id.*)

## F.    Plaintiffs Bring Suit and Later Add Jito Labs in an Attempt to Manufacture a RICO Theory

Plaintiffs are Pump.fun users who claim to have lost money trading meme coins created by unnamed third parties on the Pump.fun platform. (CAC ¶¶ 28-30.)  In January 2025, Plaintiff Aguilar commenced this lawsuit against Baton and certain of its officers, alleging purported securities law violations. (ECF No. 1.)  In July 2025, Plaintiffs filed the CAC, naming for the first time Jito Labs, along with Solana Labs, Solana Foundation, Jito Foundation, and certain of their current or former officers. (CAC ¶¶ 31-48.)  Plaintiffs assert claims against all defendants for purported RICO violations, violations of New York's consumer protection laws, and unjust enrichment. (*Id.* ¶¶ 438-74.)

The CAC alleges that "Pump.fun Inc.,"[4] Solana Labs, Solana Foundation, and Jito Labs together formed the Pump Enterprise with the "common purpose of launching, promoting, and profiting from 'Pump Tokens,'" *i.e.*, twenty particular tokens that Plaintiffs allege constitute securities. (CAC ¶ 440; *see also id.* ¶¶ 371, 386, 443-49.) Plaintiffs assert that the Pump Enterprise created a system that enabled "early buyers, bots, and insiders to manipulate transaction ordering [to] extract value" at the expense of retail users. (*Id.* ¶ 446; *see also id.* ¶¶ 308, 441, 465-68.) Notwithstanding the absence of supporting allegations, the CAC alleges that Jito Labs participated in the Pump Enterprise by "buil[ding] and maintain[ing]" the Jito Validator Software. (*Id.* ¶¶ 35, 304.) Specifically, Plaintiffs' theory appears to be that certain Pump.fun token creators utilized the Jito Validator Software to process their transactions faster, enabling them to obtain lower prices available at the outset of a token's bonding curve. (*Id.* ¶¶ 291-93.) The CAC is replete with vague and conclusory allegations that Jito Labs had "actual knowledge" of Pump.fun's "integration" of the Jito Validator Software. (*See, e.g.*, *id.* ¶ 294). But nowhere do Plaintiffs allege specific facts that Jito Labs had any relationship, involvement, or affiliation with Pump.fun, much less the Pump Enterprise. Nor does the CAC allege any facts that Jito Labs had any awareness of Plaintiffs or any of the alleged activities on the Pump.fun platform. Instead, Plaintiffs simply assert, in generic and conclusory fashion, that Jito Labs had "visibility into Pump.fun's operations via on-chain data and public discourse." (*Id.* ¶ 114; *see also id.* ¶¶ 200, 233, 447.)[5]

---

[4] "Pump.fun Inc." is not a Defendant and is mentioned only twice in the CAC. (CAC ¶¶ 440, 481.)

[5] On August 21, 2025, Plaintiffs filed their RICO Case Statement (ECF No. 78), relying on exhibits of alleged "Pump Team" chats. (*Id.* at 43-44.) Plaintiffs allege that Exhibit C shows the Pump Team working with Jito Labs CEO Lucas Bruder. (*Id.*; ECF No. 78-3.) However, the face of the document indicates only that a chart was "[f]orwarded from Buffalo" (who is presumed to be Bruder). (ECF 78-3.) Bruder is not a member of the chat (*id.*), nor do Plaintiffs provide any further information on the purpose of the chat or the forwarded chart, nor do Plaintiffs explain how they connect in any way to the allegations in the CAC.

**ARGUMENT**

To survive a motion to dismiss, a plaintiff must plausibly plead facts sufficient to establish every element of its claims. *Iqbal*, 556 U.S. at 678. A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the facts alleged would not "state a claim to relief that is plausible on its face," the action must be dismissed. *Id.* at 547. As set forth below, each of Plaintiffs' civil RICO, New York General Business Law ("GBL") §§ 349 and 350, and unjust enrichment claims fails as a matter of law.

**I.    PLAINTIFFS FAIL TO STATE A RICO CLAIM (COUNT II)**

As set forth in the Baton and Blockchain Motions, Plaintiffs have failed to plead (1) an injury to business or property caused by Defendants' purported RICO activity, (2) the existence of a RICO enterprise in fact, (3) a domestic injury, or (4) a RICO conspiracy. (Baton Mot.; Blockchain Mot.) Plaintiffs' RICO claim fails as to Jito Labs for the additional reasons that Plaintiffs have failed to plead that (a) Jito Labs participated in any alleged RICO enterprise, (b) Jito Labs was part of a RICO conspiracy, (c) Jito Labs' conduct caused them to suffer an injury to business or property such that they have RICO standing, or (d) Jito Labs engaged in two or more RICO predicate acts.

**A.    Plaintiffs Fail to Plead Jito Labs' Participation in Any RICO Enterprise**

Plaintiffs do not and cannot allege that Jito Labs "participated in the operation or management of the [RICO] enterprise itself," as required to state a RICO claim. *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993) (citing 18 U.S.C. § 1962(c)). To establish a defendant's "participation" in an enterprise, a plaintiff must plead some affirmative act; allegations that a defendant "failed to act" do not suffice. *Demaree v. Castro*, 2023 WL 6465881, at *10 (S.D.N.Y. Oct. 4, 2023) (McMahon, J.). To establish participation in the "operation or management" of an

enterprise, a plaintiff must plead a defendant's "actual control over [the] enterprise." *Goldfine*, 118 F. Supp. 2d at 402-03. "[T]he test is not involvement but control." *Id.* In other words, it is not enough to "provide[] goods or services that ultimately benefit the enterprise," *id.* at 403, and "[t]his standard is not met where a defendant merely attends to its own business." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 441 (S.D.N.Y. 2019); *see also Reves*, 507 U.S. at 185 ("[L]iability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs.").

The CAC does not come close to meeting these standards. It does not allege any relationship between Jito Labs and Baton, much less that Jito Labs participated in the "operation or management" of the so-called Pump Enterprise. (CAC ¶¶ 35, 120, 280-94.) Instead, it alleges merely that Jito Labs created open-source software (years before Pump.fun even existed) that could be used by anyone to execute transactions on Solana. (*Id.*) Plaintiffs do not—and cannot— allege that Jito Labs ever had any involvement or control over any aspect of the Pump.fun platform. *See Goldfine*, 118 F. Supp. 2d at 403.

Rather than offer well-pleaded facts of participation and control, Plaintiffs assert in general and conclusory fashion that Jito Labs was aware that Pump.fun users utilized the Jito Validator Software and thus had "visibility into Pump.fun's operations." (CAC ¶ 114; *see also id.* ¶¶ 200, 233, 294, 447.) This is far from sufficient. *Goldfine*, 118 F. Supp. 2d at 400, 405, 407 ("general" and "conclusory" allegations cannot support a RICO claim). On this score, Plaintiffs repeatedly assert that Jito Labs failed to take steps to prevent Pump.fun transactions from running through the Jito Validator Software. (CAC ¶¶ 200-01, 243, 294, 299, 306.) But assuming *arguendo* that Jito Labs could even do so, this theory of *inaction* is insufficient under RICO. *Demaree*, 2023 WL 6465881, at *10 ("[f]ailing to act" does not satisfy the "operation or management" test). And

while Plaintiffs allege that Jito Labs developed software that other, unidentified Pump.fun users purportedly utilized, it is not enough to simply "provide[] goods or services that ultimately benefit the enterprise." *Goldfine*, 118 F. Supp. 2d at 403; *see also Reves*, 507 U.S. at 185.

At bottom, the CAC merely alleges that Jito Labs "attend[ed] to its own business" by developing software accessible by the public, without any well-pleaded allegations of involvement in and control over the Pump Enterprise. *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 441. This is insufficient as a matter of law, and thus Plaintiffs' claim should be dismissed.

### B.    Plaintiffs Fail to Plead a RICO Conspiracy Against Jito Labs

Plaintiffs' RICO conspiracy claim similarly fails. A conspiracy claim under 18 U.S.C. § 1962(d) requires a plaintiff first to adequately plead a substantive RICO violation under § 1962(c). *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 126 (2d Cir. 2018) (affirming dismissal of § 1962(d) conspiracy claim where "[t]he alleged conspiracy involved an agreement to commit the same substantive RICO violations we have deemed insufficiently pled"). Because Plaintiffs fail to state a substantive RICO claim for the reasons herein and those set forth in the Baton and Blockchain Motions, any attempt to plead a separate RICO conspiracy claim against Jito Labs necessarily fails. (CAC ¶¶ 438-68.)

Plaintiffs' conspiracy claim independently fails because the CAC is "devoid of any factual allegation whatsoever to indicate that [Jito Labs] . . . specifically agreed to further the alleged scheme through the commission or facilitation of any racketeering activity." *Goldfine*, 118 F. Supp. 2d at 407. Plaintiffs' bald conclusion that "each Defendant agreed that members of the Pump Enterprise would commit at least two predicate acts" (CAC ¶ 442) is wholly insufficient. *See Goldfine*, 118 F. Supp. 2d at 407 ("The mere parroting of the statutory language . . . is insufficient to show that each defendant knowingly agreed to participate in the alleged scheme."). Accordingly, Plaintiffs' RICO conspiracy claim should be dismissed as well.

### C.    Plaintiffs Do Not Have RICO Standing to Sue Jito Labs

Plaintiffs' RICO claim independently fails because Plaintiffs lack standing.  To establish RICO standing, a plaintiff must demonstrate both an "injury to business or property" and "causation of the injury by the [RICO] violation."  *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003).  While some courts in the Second Circuit hold that a plaintiff need only establish standing to sue the RICO enterprise as a whole, *see Khan Funds Mgmt. Am., Inc. v. Nations Techs. Inc.*, 2023 WL 6124801, at *13 (S.D.N.Y. Sept. 19, 2023) (discussing this view), others hold that a plaintiff must establish RICO standing to sue each particular defendant.  *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 116 (S.D.N.Y. 2021) ("[T]o demonstrate RICO standing, a plaintiff must plead . . . causation of the injury by the defendant's violation." (citation omitted)); *Edmondson v. Raniere*, 751 F. Supp. 3d 136, 173 (E.D.N.Y. 2024) ("[E]ach plaintiff must establish [RICO standing] as to each defendant.").

Here, the CAC fails to establish RICO's standing requirements under either view.

### 1.    Plaintiffs Fail to Plead an Injury to Business or Property

First, Plaintiffs have not alleged that they suffered any "concrete" injuries to "business or property."  *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612-13 (S.D.N.Y. 2015).  Indeed, the decrease in value of a digital token does not constitute an injury to business or property, mandating dismissal.  (*See* Baton Mot.; Blockchain Mot.)  Moreover, as to Jito Labs, Plaintiffs allege that unidentified third parties' use of the Jito Validator Software caused Plaintiffs to purportedly miss the opportunity to purchase meme coins at a certain time.  (CAC ¶¶ 291-92.)  Putting aside that Plaintiffs were just as able to use the Jito Validator Software as anybody else (*supra* Background Part D), this sort of "missed opportunity" to profit does not constitute the requisite "injury to business or property" to establish RICO standing.  *See Donohue v. Teamsters Loc. 282 Tr. Funds*, 12 F. Supp. 2d 273, 277-78 (E.D.N.Y. 1998) (an injury to "mere expectancy

interests" is "not sufficient to confer RICO standing"); *Westchester Cnty. Indep. Party*, 137 F. Supp. 3d at 613 (a plaintiff "must allege *actual*, quantifiable injury" and "concrete financial loss").

## 2.    Plaintiffs Fail to Plead That Jito Labs' Alleged Conduct Was the Cause of Their Injuries

Second, Plaintiffs fail to plead that Jito Labs proximately caused their purported injuries. RICO provides a private right of action for "[a]ny person injured in his business or property *by reason of* a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) (emphasis added). Courts strictly construe this requirement to mean the RICO violation must be more than simply the "but for" cause of Plaintiffs' losses; it must also be the "*proximate cause*" of such losses. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (emphasis added). Proximate causation requires there to be a "direct" and "straightforward" connection between the defendant's conduct and the plaintiff's injury. *Id.* at 9, 14-15. "A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Id.* at 9 (citation omitted).

To begin with, it is well-settled that there can be no proximate causation where "[p]laintiffs' allegations require the intervening activity of third parties." *Tether*, 576 F. Supp. 3d at 117. Here, Plaintiffs allege they lost money trading on the Pump.fun platform because unidentified "early buyers, bots, and insiders . . . manipulate[d] transaction ordering [to] extract value from retail participants." (CAC ¶ 446; *see also id.* ¶¶ 308, 377, 380-81.) Thus, by Plaintiffs' own admission, these independent actors—not Defendants—were the proximate cause of their injuries. *See Tether*, 576 F. Supp. 3d at 119 ("[T]he manipulation of crypto[] prices 'was directly caused by buy/sell decisions that independent market actors made,' and it is these actions that established price floors and created a bubble, 'which [defendants' conduct] may have influenced.'" (citation omitted)).

14

Beyond that, Plaintiffs do not plead that *Jito Labs'* alleged conduct caused their injuries. *See Tether*, 576 F. Supp. 3d at 117; *Edmondson*, 751 F. Supp. 3d 173.  Plaintiffs' theory appears to be that the Jito Validator Software enabled third-party users of Pump.fun to purchase meme coins faster, which allegedly led to Plaintiffs' trading losses.  (*See* CAC ¶¶ 282, 291-92, 380.) Again, the acts of third-party actors thus constitute the proximate cause of Plaintiffs' losses.  *See Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 276-77 (S.D.N.Y. 2019) ("RICO's direct relation requirement . . . requires dismissal where substantial intervening factors attenuate the causal connection between the defendant's conduct and the plaintiff's injury." (collecting cases)).

Moreover, because the Jito Validator Software is publicly available for anyone to use, it makes no sense to say that the software's mere availability was the proximate cause of Plaintiffs' losses; indeed, Plaintiffs were just as able to use that software as anyone else—and at least one did.  (*Supra* Background Part D); *see Tether*, 576 F. Supp. 3d at 119-22 (plaintiffs cannot plead proximate causation where the relationship between defendant's conduct and their injuries "is intricate, uncertain, and contingent on numerous independent decisions made by other market participants").  Thus, any connection to the Jito Validator Software is simply "too attenuated" to establish proximate causation.  *See Tether*, 576 F. Supp. 3d at 120.

Plaintiffs' failure is further reinforced by their inability to directly connect the meme coin prices at issue to use of the Jito Validator Software.  On a public platform like Pump.fun, "myriad factors may influence [a token's] price," *Tether*, 576 F. Supp. 3d at 121 n.44, and as Plaintiffs concede, prices change rapidly—"often multiples higher"—within "seconds" or even "milliseconds" of a token's launch.  (CAC ¶¶ 122, 290, 446.)  The CAC contains no facts that, absent the availability of the Jito Validator Software, Plaintiffs would necessarily have obtained the lower-priced meme coins they wanted during the mere seconds they were available, as opposed

to other users or even the same "insiders and bots." (*Id.* ¶ 4; *see also id.* ¶¶ 133, 361-62); *cf.*
*Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*, 888 F. Supp. 2d 491, 507 (S.D.N.Y. 2012) (no
causation existed where plaintiff would have been harmed "even in the absence of" defendants'
alleged conduct), *aff'd*, 514 F. App'x 51 (2d Cir. 2013). Besides, Plaintiffs could have very well
realized gains if they had sold their tokens at the right time—indeed, Plaintiffs allege that token
prices doubled or tripled in "seconds" but took "days or weeks" to collapse. (CAC ¶¶ 28, 122.)
Thus, Plaintiffs fail to plead that Jito Labs' alleged conduct was the cause of their injuries.

### D.      Plaintiffs Fail to Plead That Jito Labs Engaged in Two RICO Predicate Acts

Even if Plaintiffs could overcome the above deficiencies, Plaintiffs' RICO claim fails
because Plaintiffs do not allege that Jito Labs engaged in two or more RICO predicate acts. *See*
*W. Energy Opportunities II, LLC v. Finalis Sec., LLC*, 2025 WL 935201, at *7 (S.D.N.Y. Mar. 26,
2025). "To establish a 'pattern of racketeering activity,' a plaintiff must plausibly allege that *each*
defendant—not merely the enterprise as a whole—engaged in at least two predicate acts." *Id.*
(collecting cases) (emphasis added). Here, Plaintiffs allege generally that "Defendants"—with no
differentiation—engaged in various RICO predicate acts. (CAC ¶¶ 451-64.) But the CAC does
not allege how *Jito Labs* engaged in any of these supposed acts.

***No Illegal Gambling***. *First*, the CAC fails to allege facts that Jito Labs operated an illegal
gambling business, promoted unlawful gambling activity, or transmitted wagering information via
interstate wires. (CAC ¶¶ 452-53.) As explained in the Baton Motion, purchasing meme coins
does not constitute gambling. (Baton Mot.) "Gambling" is defined as "stak[ing] or risk[ing]
something of value upon the outcome of a contest of chance or a future contingent event" to
"receive something of value in the event of a certain outcome." N.Y. Penal Law § 225.00(2).
Here, Pump.fun users purchased a product—a digital token. Some may have done so hoping that
the tokens would increase in value. But, as with consumers who buy baseball cards, Beanie Babies,

antique cars, or other collectible items, simply hoping an item will increase in value is not "gambling." *See id.*  Indeed, rather than staking or risking something of value for a chance to receive a prize, Plaintiffs admit they received their coins after purchasing them; they merely claim the coins later declined in market value.  That is not gambling activity under N.Y. Penal Law § 225.00(2).  *See Muidallap Corp. v. State Liquor Auth.*, 143 A.D.2d 9, 11-12 (1st Dep't 1988) (benefit event with potential prizes for attendees did not constitute gambling because "nothing of value was placed at risk by those who competed for the prizes").

But even assuming buying meme coins on Pump.fun could constitute "gambling" (and it does not), Plaintiffs fail to plead that Jito Labs violated any of the statutes they allege.  (CAC ¶¶ 452-53.)  It is not alleged that Jito Labs "conducts, finances, manages, supervises, directs, or owns" Pump.fun or any illegal gambling business.  18 U.S.C. § 1955(a).  Or that Jito Labs "*knowingly* advances or profits from unlawful gambling activity."  N.Y. Penal Law § 225.10 (emphasis added). One "advances gambling activity" when, *inter alia*, he has "control over premises being used with his knowledge for purposes of gambling activity" and allows it to occur, and one "profits from gambling activity" when he receives funds "pursuant to an agreement or understanding . . . to participate in the proceeds of gambling activity."  *Id.* §§ 225.00(4)-(5).  Plaintiffs do not allege any of this.  The CAC does not offer any allegations to show any relationship between Jito Labs and Pump.fun, much less that Jito Labs controlled or formed an agreement or understanding with *any* gambling operation.  (CAC ¶¶ 35, 280-94.)  And to the extent the Wire Act applies outside of the sports context (*see* Blockchain Mot.), Plaintiffs also fail to plead that Jito Labs knowingly transmitted betting or wager information over interstate wires.  18 U.S.C. § 1084; (CAC ¶ 454).

***No Unlicensed Money Transmission.***  *Second*, Plaintiffs fail to plead that Jito Labs operated or conspired to operate an unlicensed money transmitting business under 18 U.S.C. §

1960.  (CAC ¶¶ 455, 464.)  There is no allegation that Jito Labs "transfer[s] funds on behalf of the public."  *Id.* § 1960(b)(2).  The CAC alleges that Jito Labs merely created open-source software that any third party can use to filter, sort, and prioritize Solana transactions.  (*Supra* Background Part C; CAC ¶ 285; Exs. 1, 5.)  The CAC contains no allegations that Jito Labs transferred any funds itself, nor does it allege that Jito Labs "knowingly conducts, controls, manages, supervises, directs, or owns . . . an unlicensed money transmitting business."  18 U.S.C. § 1960(a).  Plaintiffs also do not allege any facts that Jito Labs "knowingly joined and participated in" a conspiracy to operate an unlicensed money transmitting business, *see United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008), even assuming this could serve as a predicate act.  *See Kaul v. Christie*, 372 F. Supp. 3d 206, 250 (D.N.J. 2019) (18 U.S.C. § 371 conspiracy is not a RICO predicate act).

**No Money Laundering.**  *Third*, Plaintiffs fail to plead that Jito Labs knowingly engaged in money laundering or transactions of criminally derived property pursuant to 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957.  (CAC ¶ 456.)  A defendant violates these statutes when it conducts or engages in a transaction that is either designed to conceal the proceeds of unlawful activity or known to involve criminally derived property valued at over $10,000.  18 U.S.C. §§ 1956(a)(1)(B)(i), 1957.  Again, the CAC does not allege any facts that Jito Labs conducted or engaged in any transactions—only that Jito Labs created open-source software that could be used by anyone to arrange Solana transactions before they are executed.  (CAC ¶¶ 297, 323, Ex. 5.)  And even if it did, Plaintiffs do not plead that Jito Labs knew that any such transactions involved or were designed to conceal the proceeds of illegal activity.  *See Entretelas Americanas S.A. v. Soler*, 2020 WL 9815186, at *10 (S.D.N.Y. Feb. 3, 2020) (rejecting § 1956(a)(1)(B)(i) RICO predicate act where complaint "d[id] not allege that [defendant] knew that the monies he supposedly transferred . . . were the product of illegal activity"), *aff'd*, 840 F. App'x 601 (2d Cir.

2020); *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, 2004 WL 2187069, at *9-10 (S.D.N.Y. Sept. 29, 2004) (rejecting §§ 1956(a) and 1957 RICO predicate acts where plaintiff failed to plead the "unlawful activity" from which proceeds were derived).  Although Plaintiffs allege that the Jito Validator Software allegedly "enabled" a hacker group to engage in money laundering, Plaintiffs do not plead that *Jito Labs* engaged in (or even knew about) any such activity. (CAC ¶ 456; *see also id.* ¶¶ 238-39, 242-43.)

**No Wire Fraud.**  *Fourth*, Plaintiffs do not plead that Jito Labs committed or conspired to commit wire fraud at all, let alone with the required specificity.  (CAC ¶ 457); *Stevenson v. Thornburgh*, 2024 WL 645187, at *17 (S.D.N.Y. Feb. 14, 2024) (McMahon, J.) (wire fraud allegations are subject to Rule 9(b)), *appeal filed*, No. 24-1788 (2d Cir. June 28, 2024).  Plaintiffs assert that "*Defendants*" misrepresented Pump.fun token launches (*id.*), but nowhere do they allege—much less plead with particularity—that Jito Labs made *any* representations regarding Pump.fun or token launches on the platform.  (CAC ¶¶ 35, 280-94.)  Nor do Plaintiffs allege any facts that Jito Labs acted with an intent to defraud.  *See* 18 U.S.C. § 1343.  And to the extent it can serve as a predicate act, the CAC does not allege any facts that Jito Labs knowingly joined and participated in any conspiracy to commit wire fraud.  *See Lorenzo*, 534 F.3d at 159; *Kaul*, 372 F. Supp. 3d at 250 (conspiracy to commit wire fraud not a RICO predicate act).

**No Other Predicate Acts.**  *Finally*, to the extent the remaining offenses constitute RICO predicate acts (*see* Baton Mot.; Blockchain Mot.), Plaintiffs do not allege any facts that Jito Labs engaged in trademark violations, counterfeiting, or identify theft.  (CAC ¶¶ 458-62.)  And, even if

certain unidentified users of the Pump.fun platform had committed these acts, Jito Labs is not alleged to have had any knowledge of or control over Pump.fun's users. (*See id.* ¶¶ 35, 280-94.)[6]

Because Plaintiffs do not allege that Jito Labs engaged in two or more RICO predicate acts, their RICO claim necessarily fails. *See W. Energy Opportunities II*, 2025 WL 935201, at *7.

## II.   **PLAINTIFFS' STATE LAW CLAIMS FAIL**

### A.   **The Court Lacks Personal Jurisdiction Over Jito Labs**

Because Plaintiffs' RICO claim fails (*supra* § I), Plaintiffs cannot rely on RICO to establish personal jurisdiction. *See Fometal S.R.L. v. Keili Trading LLC*, 2024 WL 307976, at *9 n.7 (S.D.N.Y. Jan. 26, 2024) ("Plaintiff 'cannot rely upon 18 U.S.C. § 1965(b) to establish personal jurisdiction over each of the defendants' if the RICO claim is dismissed." (citation omitted)). As a result, Plaintiffs must establish personal jurisdiction for the state law claims under New York law. *See Arthur v. Orchestrate Bus. LLC*, 2025 WL 2201067, at *3 (S.D.N.Y. Aug. 1, 2025).

Here, Plaintiffs have not pleaded general or specific jurisdiction over Jito Labs.   As to general jurisdiction, Plaintiffs do not allege that Jito Labs, a Delaware corporation (CAC ¶ 35), is "essentially at home" or domiciled in New York. *Arthur*, 2025 WL 2201067, at *4 (plaintiff failed to plead general jurisdiction over Missouri corporation). As to specific jurisdiction, Plaintiffs have not alleged facts showing that Jito Labs transacted business or committed a tortious act in New York under New York's long-arm statute. *Id.* at *5-8; CPLR § 302(a). In fact, while Plaintiffs attempt to allege jurisdiction over certain other Defendants (CAC ¶¶ 49-56), they do not allege that Jito Labs has any connection to New York at all.

---

[6] Plaintiffs also allege that Defendants violated the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. §§ 5361-67, New York Banking Law § 641, and 23 NYCRR Part 200.  (CAC ¶¶ 454-55.) However, these offenses do not constitute racketeering acts under the RICO statute, 18 U.S.C. § 1961(1), therefore they cannot support Plaintiffs' RICO claim. *See* 18 U.S.C. 1962(c).

Because Plaintiffs have not alleged facts to support jurisdiction over Jito Labs, the Court should dismiss the state law claims against it. *Arthur*, 2025 WL 2201067, at *7.

**B.    Plaintiffs Fail to Plead the State Law Claims Against Jito Labs**

Even if Plaintiffs could establish personal jurisdiction, the CAC fails to state a claim against Jito Labs for New York consumer protection law violations and for unjust enrichment.

**1.    Plaintiffs' New York Consumer Protection Claim Fails (Count III)**

The CAC fails to plead a New York consumer protection claim. (CAC ¶¶ 469-71.) As set forth in the Baton Motion, Plaintiffs' GBL claim fails because the CAC does not allege any nexus to New York, as required. (Baton Mot.) Moreover, Plaintiffs fail to plead that Jito Labs violated GBL §§ 349 and 350 because they do not allege that Jito Labs engaged in any "deceptive acts" or "false advertising" that would be "likely to mislead a reasonable consumer." *See Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020). While the CAC generally alleges that "Defendants" engaged in deceptive acts and false advertising "by marketing Pump Tokens as 'fair-launch,' officially endorsed, and immune from manipulation" (CAC ¶ 469), it does not include a single allegation that *Jito Labs* marketed or made *any* representation regarding the Pump Tokens, much less a deceptive one. (*Id*. ¶¶ 285-94.) Because Plaintiffs fail to plead that they were injured by any deceptive act or false advertisement by Jito Labs, their GBL claims should be dismissed. *See Chufen*, 954 F.3d at 500.

**2.    Plaintiffs' Unjust Enrichment Claim Fails (Count IV)**

The CAC also fails to plead an unjust enrichment claim against Jito Labs (CAC ¶¶ 472-74) because Plaintiffs do not allege any specialized relationship with Jito Labs "that could have caused reliance or inducement." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517 (2012); *see also Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275 (N.Y. 2022) ("Unjust enrichment 'lies as a quasi-contract claim' and contemplates 'an obligation imposed by equity to prevent injustice, in

the absence of an actual agreement between the parties.'" (citation omitted)).[7]  Indeed, Plaintiffs

do not allege *any* relationship or interactions between Plaintiffs and Jito Labs.  (CAC ¶¶ 28-30,

35.)  The only alleged connection is that Lead Plaintiff Okafor elected to send his transaction to

Solana via the Jito Validator Software by "pa[ying] for priority blockspace via transaction and

bundling fees."  (CAC ¶ 28.)  But using open-source software could not possibly give rise to any

relationship between Jito Labs and Plaintiff Okafor (or any other Plaintiff), nor does the CAC

connect Plaintiff Okafor's choice to send his transaction through the Jito Validator Software to

any harm suffered.  This is fatal.  *See Georgia Malone*, 19 N.Y.3d at 517.  If anything, Plaintiff

Okafor's use of the Jito Validator Software cuts *against* any theory of harm, as that software allows

users to transact faster on Solana.  (*Supra* § I.C.2.)  Thus, any connection between Plaintiffs and

Jito Labs is simply "too attenuated" to support an unjust enrichment claim.  *Georgia Malone*, 19

N.Y.3d at 517.

Plaintiffs' unjust enrichment claim fails for the additional reason that it is duplicative of

their GBL claim.  *Sandoval v. Uphold HQ Inc.*, 2024 WL 1313826, at *11 (S.D.N.Y. Mar. 27,

2024) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a

conventional contract or tort claim.").  Plaintiffs allege that Defendants were unjustly enriched "at

the expense of Plaintiffs and the Class through deceptive and unlawful conduct."  (CAC ¶ 472.)

The GBL § 349 claim is likewise predicated on Defendants' purported "engag[ing] in consumer-

oriented deceptive acts."  (*Id.* ¶ 469.)  Accordingly, it should be dismissed as duplicative.  *See*

*Sandoval*, 2024 WL 1313826, at *11.

---

[7] For purposes of this motion only, Jito Labs assumes New York law applies to Plaintiffs' unjust
enrichment claim.

## **CONCLUSION**

For the foregoing reasons, the CAC's deficiencies are myriad and incurable.  It should be

dismissed with prejudice as to Jito Labs.

Dated: New York, New York
      September 5, 2025

                            Respectfully submitted,

                            */s/ Alexander C. Drylewski*
                            Alexander C. Drylewski
                            James M. Johnston
                            SKADDEN, ARPS, SLATE,
                              MEAGHER & FLOM LLP
                            One Manhattan West
                            New York, NY 10001
                            Telephone: (212) 735-3000
                            Facsimile: (212) 735-2000
                            alexander.drylewski@skadden.com
                            james.johnston@skadden.com

                            *Counsel for Defendant Jito Labs, Inc.*

**WORD COUNT CERTIFICATION**

I hereby certify pursuant to the Local Civil Rule 7.1 of the Joint Local Rules for S.D.N.Y. and E.D.N.Y. that, according to the word count tool in the document processing software used to prepare this memorandum of law, the total number of words herein is 7,304.

/s/ Alexander C. Drylewski
Alexander C. Drylewski

*Counsel for Defendant Jito Labs, Inc.*