## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

DIEGO AGUILAR, KENDALL CARNAHAN and
MICHAEL OKAFOR on behalf of themselves and
all others similarly situated,

Plaintiffs,

v.

Case No. 25 Civ. 00880 (CM)

BATON CORPORATION LTD d/b/a PUMP.FUN,
ALON COHEN, DYLAN KERLER, and NOAH
BERNHARD HUGO TWEEDALE, SOLANA
LABS INC., SOLANA FOUNDATION, JITO
LABS INC., JITO FOUNDATION, ANATOLY
YAKOVENKO, RAJ GOKAL, DAN ALBERT,
AUSTIN FEDERA, LILY LIU, LUCAS BRUDER,
BRIAN SMITH,

Defendants.

## THE BATON OFFICERS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS THE
## <u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>

CAHILL GORDON & REINDEL LLP
Samson A. Enzer
Tammy L. Roy
Lauren Perlgut
32 Old Slip
New York, NY 10005
(212) 701-3000

*Counsel for the Baton Officers*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................... 1

ALLEGATIONS AGAINST THE BATON OFFICERS ................................................................. 4

ARGUMENT ............................................................................................................................ 6

I.     THERE IS NO PERSONAL JURISDICTION OVER THE BATON OFFICERS ........... 6

     A.     Plaintiffs Fail to Establish Personal Jurisdiction as to Their Federal Claims ........ 7

     B.     Plaintiffs Fail to Establish Personal Jurisdiction as to Their State Claims ............. 9

II.    THE BATON OFFICERS ARE NOT STATUTORY SELLERS AND CANNOT BE LIABLE UNDER SECURITIES ACT SECTION 12(A)(1) ........................................... 11

III.   THE RICO CLAIMS AGAINST THE BATON OFFICERS FAIL ................................ 13

IV.   PLAINTIFFS LACK STANDING TO BRING THEIR GBL CLAIMS ........................ 16

V.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS ............................................ 18

CONCLUSION ........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur* v. *Orchestrate Bus. LLC*,
  2025 WL 2201067 (S.D.N.Y. Aug. 1, 2025) .......................................................................... 9-10

*Asahi Metal Indus. Co.* v. *Superior Ct. of California, Solano Cnty.*,
  480 U.S. 102 (1987) ..................................................................................................................6

*Baker-Rhett* v. *Aspiro AB*,
  324 F. Supp. 3d 407 (S.D.N.Y. 2018) .....................................................................................16

*Barlow* v. *Skroupa*,
  221 A.D.3d 482 (1st Dep't 2023) ............................................................................................19

*Best Van Lines, Inc.* v. *Walker*,
  490 F.3d 239 (2d Cir. 2007) .....................................................................................................11

*Bilinski* v. *Keith Haring Found., Inc.*,
  96 F. Supp. 3d 35 (S.D.N.Y. 2015) .........................................................................................19

*Brenner* v. *Brenner*,
  821 F. Supp. 2d 533 (E.D.N.Y. 2011) .....................................................................................18

*Caplan* v. *Dollinger*,
  2025 WL 1808530 (S.D.N.Y. June 30, 2025) ....................................................................6, 18

*Crab House of Douglaston, Inc.* v. *Newsday, Inc.*,
  418 F. Supp. 2d 193 (E.D.N.Y. 2006) ............................................................................. 14-15

*DeFalco* v. *Bernas*,
  244 F.3d 286 (2d Cir. 2001).....................................................................................................13

*Demaree* v. *Castro*,
  2023 WL 6465881 (S.D.N.Y. Oct. 4, 2023) .......................................................................2, 14

*DeMaria* v. *Andersen*,
  153 F. Supp. 2d 300 (S.D.N.Y. 2001)......................................................................................13

*Dorchester Invs.* v. *Peak Int'l Ltd.*,
  134 F. Supp. 2d 569 (S.D.N.Y. 2001)......................................................................................13

*In re EHang Holdings Ltd. Sec. Litig.*,
  646 F. Supp. 3d 443 (S.D.N.Y. 2022)........................................................................................8

*Elsevier Inc.* v. *W.H.P.R., Inc.*,
    692 F. Supp. 2d 297 (S.D.N.Y. 2010)...................................................................14

*F.W. Webb Co.* v. *State St. Bank & Tr. Co.*,
    2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010) ......................................................12

*Fuld* v. *Palestine Liberation Org.*,
    606 U.S. 1 (2025)..................................................................................................7

*Girl Scouts of U.S.* v. *Steir*,
    102 F. App'x 217 (2d Cir. 2004) ..........................................................................8

*Goshen* v. *Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314 (2002) ....................................................................................16, 17

*Haft* v. *Haier US Appliance Sols., Inc.*,
    578 F. Supp. 3d 436 (S.D.N.Y. 2022) ..................................................................17

*IMAX Corp.* v. *The Essel Grp.*,
    154 A.D.3d 464 (1st Dep't 2017) .........................................................................10

*Jackson* v. *Wells Fargo Home Mortg.*,
    2019 WL 1376840 (E.D.N.Y. Mar. 27, 2019) .....................................................5n

*Johnson* v. *Ward*,
    4 N.Y.3d 516 (2005) ............................................................................................10

*Kim* v. *Kimm*,
    884 F.3d 98 (2d Cir. 2018)...................................................................................13

*Koenig* v. *Boulder Brands, Inc.*,
    995 F. Supp. 2d 274 (S.D.N.Y. 2014)..................................................................18

*Komatsu* v. *United States*,
    2023 WL 317326 (S.D.N.Y. Jan. 19, 2023) ........................................................16

*LaSalle Nat'l Bank* v. *Duff & Phelps Credit Rating Co.*,
    951 F. Supp. 1071 (S.D.N.Y. 1996)....................................................................14

*Metro Life Ins. Co.* v. *Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)....................................................................................9

*Meyer* v. *Bd. of Regents of Univ. of Oklahoma*,
    2014 WL 2039654 (S.D.N.Y. May 14, 2014) .......................................................7

*Miramontes* v. *Ralph Lauren Corp.*,
    2023 WL 3293424 (S.D.N.Y. May 5, 2023) .......................................................17

*Oden* v. *Bos. Sci. Corp.*,
 330 F. Supp. 3d 877 (E.D.N.Y. 2018) ................................................................17

*In re Parmalat Sec. Litig.*,
 376 F. Supp. 2d 449 (S.D.N.Y. 2005) ...................................................................8

*Pinter* v. *Dahl*,
 486 U.S. 622 (1988) ...........................................................................................11

*In re Platinum & Palladium Antitrust Litig.*,
 61 F.4th 242 (2d Cir. 2023) ..................................................................................7

*Reliance First Capital, LLC* v. *Mid Am. Mortg., Inc.*,
 2019 WL 2504039 (E.D.N.Y. June 17, 2019) ......................................................8

*Reves* v. *Ernst & Young*,
 507 U.S. 170 (1993)............................................................................................14

*Risley* v. *Universal Navigation Inc.*,
 2025 WL 615185 (2d Cir. Feb. 26, 2025).......................................................12-13

*Safex Found., Inc.* v. *SafeLaunch Ventures Ltd.*,
 694 F. Supp. 3d 1 (D.D.C. 2023) ......................................................................8-9

*Snowbridge Advisors LLC* v. *ESO Cap. Partners UK LLP*,
 589 F. Supp. 3d 401 (S.D.N.Y. 2022).................................................................18

*Stevenson* v. *Thornburgh*,
 2024 WL 645187 (S.D.N.Y. Feb. 14, 2024).......................................................6, 9

*Sullivan* v. *UBS AG*,
 2025 WL 2423899 (2d Cir. Aug. 22, 2025)...........................................................7

*In re Terrorist Attacks on Sept. 11, 2001*,
 714 F.3d 659 (2d Cir. 2013).................................................................................7

*Tyman* v. *Pfizer, Inc.*,
 2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017) ....................................................19

*United Foods & Com. Workers Unions & Emps. Midwest Health Benefits Fund* v.
 *Walgreen Co.*,
 719 F.3d 849 (7th Cir. 2013) ..............................................................................14

*Walden* v. *Fiore*,
 571 U.S. 277 (2014)...........................................................................................8, 9

**Statutes**

C.P.L.R. § 301................................................................................................................10

C.P.L.R. § 302................................................................................................................10, 11

New York General Business Law §§ 349 & 350................................................................4, 16, 17

Racketeer Influenced and Corrupt Organizations Act ("RICO") ......................................... *passim*

Securities Act of 1933 Section 12(a)(1)..................................................................11, 11n, 12, 13

**Rules**

Fed. R. Civ. P. 8(a) .............................................................................................................18

Fed. R. Civ. P. 9(b) ........................................................................................................18, 19

Fed. R. Civ. P. 12(b)(2)..........................................................................................................1

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1

**Constitution**

U.S. Const. Amend. V ............................................................................................................7

**Other Authorities**

Dawn Allcot, "Warren Buffett Says Stock Market Is Becoming 'Casino-Like' —
    How To Invest and Not Gamble," Nasdaq (Mar. 22, 2024),
    https://www.nasdaq.com/articles/warren-buffett-says-stock-market-is-
    becoming-casino-like-how-to-invest-and-not-gamble....................................................15, 15n

Pump.fun's Terms of Service (effective Oct. 22, 2024),
    https://web.archive.org/web/20241125205719/https://pump.fun/docs/terms-
    and-conditions...........................................................................................................2, 2n

SEC Division of Corporation Finance, *Staff Statement on Meme Coins* (Feb. 27,
    2025), https://www.sec.gov/newsroom/speeches-statements/staff-statement-
    meme-coins. ...........................................................................................................1, 1n, 2

Baton Corporation Limited officers Alon Cohen, Dylan Kerler and Noah Tweedale (collectively, the "Baton Officers") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Consolidated Amended Class Action Complaint (ECF No. 34) (the "Amended Complaint" or "AC") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

This lawsuit never should have been filed, it never should have been styled as a putative RICO class action, it never should have named the individual Baton Officers as defendants, and it fails to present any plausible basis for haling those foreign residents to defend US litigation before this Court or in any other US tribunal.

In their original complaints filed in January before this Court, Plaintiffs characterized themselves as representatives of proposed classes of meme coin buyers seeking to sue the Baton Officers for allegedly selling meme coins as unregistered securities via the Pump.fun website operated by their UK company, Baton Corporation Limited ("Baton"), in violation of the Securities Act of 1933.[2] (*See* ECF No. 1). After the US Securities and Exchange Commission ("SEC") issued guidance in February that meme coin transactions "do not involve the offer and sale of securities under the federal securities laws"[3] — dealing a fatal blow to the premise for Plaintiffs' claims that those meme coin transactions somehow violated the Securities Act — Plaintiffs tried

---

[1] Unless otherwise noted, all emphasis is added and internal citations and quotations are omitted.

[2] For purposes of this motion only, the Baton Officers treat Plaintiffs' factual allegations as accurate, and do not make any affirmative representations about these topics.

[3] SEC Division of Corporation Finance, *Staff Statement on Meme Coins* (Feb. 27, 2025), *available at* https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins ("SEC Meme Coin Statement").

to repackage their meritless securities claims into the putative class RICO lawsuit set forth in the Amended Complaint.

Like its predecessors, the Amended Complaint is fatally flawed and should be dismissed with prejudice. The fact that Plaintiffs are unhappy that they apparently made money on only *some* of the meme coins they purchased via the Pump.fun website (*see, e.g.*, ECF No. 17-2 at 32-33) — in what they characterize as a game whose goal was to buy and "hold [each] meme coin and appreciate as much value as possible before the crash" (AC ¶ 182) — does not transform Pump.fun into a criminal enterprise, nor the Baton Officers into racketeers. As the SEC has recognized, meme coin trading is inherently "speculative," and it is well-known that meme coins "tend to experience significant market price volatility," such that they are "often are accompanied by statements regarding their risks and lack of utility, other than for entertainment or other non-functional purposes." (SEC Meme Coin Statement). Pump.fun expressly warns users of these exact risks. For example, Pump.fun's Terms of Service cautioned, under the heading "RISK WARNING," that "the value of Digital Assets can fluctuate significantly and there is material risk of economic loss when buying, selling, holding or investing in Digital Assets."[4]

Since "the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Demaree* v. *Castro*, 2023 WL 6465881, at *5 (S.D.N.Y. Oct. 4, 2023) (McMahon, J.). That guidance calls for dismissal of Plaintiffs' claims as to the Baton Officers.

*First*, the Amended Complaint fails to establish, as is Plaintiffs' burden, that this Court has personal jurisdiction over the Baton Officers.

---

[4] (Oct. 22, 2024 Version) *available at* https://web.archive.org/web/20241125205719/https://pump.fun/docs/terms-and-conditions.

The Amended Complaint accuses the Baton Officers — Mr. Cohen, Mr. Kerler, and Mr. Tweedale — of participating in a racketeering conspiracy without alleging *any* facts supporting that these individuals participated in any conduct (let alone criminal racketeering acts) that would subject them to the jurisdiction of this Court.  According to Plaintiffs' allegations, each of these individuals resides in the UK and is a co-founder and officer of Baton, a UK company with its principal place of business in the UK.  (AC ¶¶ 33, 43-45).  For Mr. Kerler and Mr. Tweedale, that is it.  There are no further factual allegations about them anywhere in the 113-page Amended Complaint.  In the case of Mr. Cohen, Plaintiffs cite to a handful of his public Twitter (c/k/a "X") posts, comments during a YouTube interview, and internal Baton chats, mostly to provide context on Baton's business, but have not alleged that any of his public statements or "tweets" were directed toward or sought to initiate action in the US.  (AC ¶¶ 155-158, 162).  The Amended Complaint makes no allegations that the Baton Officers participated in any meetings, calls, or conversations in the US; maintained any bank accounts, crypto exchange accounts, property, offices, computer equipment, data storage devices, or staff in the US; sent, received, or reviewed any social media, cellphone, or other communications in the US; received or transmitted any funds in the US; or engaged in any suit-related conduct whatsoever in the US.

These skimpy allegations are woefully insufficient to allow these foreign residents to be haled into the US to defend litigation before this Court.

**Second**, Plaintiffs' allegations are also insufficient to plead a facially plausible claim for relief against any of the Baton Officers.  To avoid burdening the Court with unnecessary repetition, the Baton Officers join and incorporate by reference the arguments made in the motions to dismiss filed by Baton (ECF No. 89) and by the other Defendants (ECF Nos. 87, 94).  In addition, the putative claims against the Baton Officers also fail because:

-3-

- ***Securities Act (Count I)***:  Plaintiffs have not alleged that the Baton Officers passed title to, or solicited Plaintiffs' purchases of, any of the cryptographically secured tokens that were allegedly sold via Pump.fun as unregistered securities.

- ***RICO (Count II)***:  Plaintiffs have not alleged that the Baton Officers participated in the operation or management of the purported RICO enterprise.  They allege only that these Officers operated Baton itself.  But they concede, as they must, that Baton is separate and distinct from the alleged RICO enterprise, and thus the Baton Officers' management of Baton is insufficient to plead that they operated or managed the supposed RICO enterprise.

- ***New York General Business Law ("GBL") §§ 349 & 350 (Count III)***:  Plaintiffs, who have not alleged that they are New York residents or were injured in New York, lack standing to assert a GBL claim against the Baton Officers, foreign residents who are not alleged to have taken any specific actions in or directed to New York.

- ***Unjust Enrichment (Count IV)***:  Plaintiffs have not alleged that any of the Baton Officers received anything of value from Plaintiffs.

For all these reasons and those detailed below, the Amended Complaint should be dismissed with prejudice as to the Baton Officers.

## ALLEGATIONS AGAINST THE BATON OFFICERS

Notwithstanding that this is Plaintiffs' second attempt to plead viable claims, the Amended Complaint is nearly bereft of any allegations against the Baton Officers.  Across 496 paragraphs of sprawling allegations, the only mentions of these individuals in the Amended Complaint are as follows:

**As to Defendant Alon Cohen**:

- Plaintiffs allege that Mr. Cohen is a resident of London, UK and serves as Baton's "public-facing Chief Executive"(AC ¶¶ 33, 43) and make no allegations about any activities (let alone suit-related conduct) by Mr. Cohen in New York or the US.

- Plaintiffs make conclusory allegations that Mr. Cohen "directed and knowingly participated in the affairs of the Pump Enterprise," which the Amended Complaint defines as an "association-in-fact enterprise" formed by Baton, Solana Labs Inc., Solana Foundation, and Jito Labs Inc. "with the common purpose of launching, promoting, and profiting from 'Pump Tokens.'"  (AC ¶¶ 43, 440).

- Plaintiffs allege that Mr. Cohen made certain public statements on Twitter and in a YouTube interview about Pump.fun or tokens launched on Pump.fun, which are not alleged to have been made in the US or specifically directed to the US, and do not include statements about any of the tokens the named Plaintiffs allegedly purchased.  (AC ¶¶ 116, 155-58, 162).

**As to Defendant Noah Tweedale**:

- Plaintiffs allege that Mr. Tweedale is a resident of Brighton & Hove, UK and serves as Baton's Chief Product Officer (AC ¶¶ 33, 44) and make no allegations about any activities (let alone suit-related conduct) by Mr. Tweedale in New York or the US.

- Plaintiffs make conclusory allegations that Mr. Tweedale "directed and knowingly participated in the affairs of the Pump Enterprise."  (AC ¶ 44).

**As to Defendant Dylan Kerler**:

- Plaintiffs allege that Mr. Kerler is a resident of London, UK and serves as Baton's Chief Technology Officer (AC ¶¶ 33, 45) and make no allegations about any activities (let alone suit-related conduct) by Mr. Kerler in New York or the US.

- Plaintiffs make improper and irrelevant allegations that Mr. Kerler "has a documented history of prior 'rug-pull' schemes" (AC ¶ 33) based on unsubstantiated assertions in press reports.[5]

---

[5] This "documented history" consists of an article on "protos.com" that cites to another article that speculates that Mr. Kerler may have been involved in what may have been misconduct when he was 16 years old.  The article is irrelevant and does not rescue Plaintiffs' deficient pleadings.  *See, e.g.*, *Jackson* v. *Wells Fargo Home Mortg.*, 2019 WL 1376840, at *4 (E.D.N.Y. Mar. 27, 2019) (The complaint's "incorporation of newspaper articles about Defendant's prior misconduct that bears no apparent connection to Plaintiffs situation or . . . claim" did not supply a basis for a plausible claim), *aff'd*, 811 F. App'x 27 (2d Cir. 2020).

- Plaintiffs make conclusory allegations that Mr. Kerler "directed and knowingly participated in the affairs of the Pump Enterprise." (AC ¶ 45).

These allegations are insufficient to establish jurisdiction or to state a claim against these individuals.

## ARGUMENT

## I.    THERE IS NO PERSONAL JURISDICTION OVER THE BATON OFFICERS

The Amended Complaint rests on the assertions that the Baton Officers are UK residents who have been sued because of their positions with a UK company. (AC ¶¶ 33, 43-45). Plaintiffs have not alleged that these men had any connections to the US or to New York, let alone connections related to the claims at issue. Under these circumstances, the exercise of personal jurisdiction would be "unreasonable and unfair." *Asahi Metal Indus. Co.* v. *Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 116 (1987).

Plaintiffs must establish personal jurisdiction "separately over each defendant," and as to each claim asserted. *Caplan* v. *Dollinger*, 2025 WL 1808530, at *3 (S.D.N.Y. June 30, 2025) (citing *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) and *Sunward Elecs., Inc.* v. *McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)). "To allege personal jurisdiction over a defendant, group pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant." *Stevenson* v. *Thornburgh*, 2024 WL 645187, at *32 (S.D.N.Y. Feb. 14, 2024) (McMahon, J.) (citing *In re Aegean*, 529 F. Supp. 3d at 135). Plaintiffs "must make allegations establishing jurisdiction with some factual specificity and cannot establish jurisdiction through conclusory assertions alone." *Id.* (citing *Cont'l Indus Grp., Inc.* v. *Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014)). Plaintiffs do not come anywhere close to satisfying these standards as to the federal or state law claims asserted against the Baton Officers.

A.    **Plaintiffs Fail to Establish Personal Jurisdiction as to Their Federal Claims**

As the Supreme Court has long held, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Fuld* v. *Palestine Liberation Org.*, 606 U.S. 1, 19 (2025) (citing *Asahi Metal Industry Co.*, 480 U.S. at 102). Foreign defendants may be haled into US courts only where doing so is consistent with the Due Process Clause of the Fifth Amendment. *Id*.

A federal court "may not exercise personal jurisdiction over a foreign defendant unless, among other things, that defendant has minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Sullivan* v. *UBS AG*, 2025 WL 2423899, at *3 (2d Cir. Aug. 22, 2025) (brackets omitted) (assessing personal jurisdiction over RICO claim) (citing *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts can be shown through "general jurisdiction," based on whether a defendant's "contacts with that [forum] are so continuous and systematic as to render it essentially at home in the forum" (*Meyer* v. *Bd. of Regents of Univ. of Oklahoma*, 2014 WL 2039654, at *2 (S.D.N.Y. May 14, 2014) (McMahon, J.)), or specific jurisdiction, if the lawsuit "aris[es] out of or relate[s] to the defendant's contact with the forum" (*In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 269 (2d Cir. 2023)).

Plaintiffs do not contend that this Court has general jurisdiction over the Baton Officers, three foreign citizens who are not alleged to have any connections to the US or to New York. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) ("[F]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]") (citing *Goodyear Dunlop Tires Ops., S.A.* v. *Brown*, 564 U.S. 915, 924 (2011)).

-7-

Nor have Plaintiffs plausibly alleged that any of the Baton Officers' "suit-related conduct" created a "substantial connection with the forum." *Walden* v. *Fiore*, 571 U.S. 277, 284 (2014). As to the Securities Act claims, Plaintiffs have not alleged that any of the Baton Officers passed title of tokens to Plaintiffs, solicited their purchases, or otherwise had any contacts within the US with respect to the sales of the 20 tokens at issue.  Merely alleging the Baton Officers' status as corporate officers of Baton, a UK corporation, does not suffice. *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 454 (S.D.N.Y. 2005) ("[T]he Due Process Clause is made of sterner stuff than a mere allegation of [corporate] control.").

While Plaintiffs have cited several of Mr. Cohen's public comments in Twitter posts and a YouTube interview, none relate specifically to the tokens over which Plaintiffs bring their Securities Act claims.  (*See* Section II, *infra*).  Instead, the statements generally promote the Pump.fun website, and in one instance, relate to a different token.  (*See* AC ¶¶ 116, 155-58, 162). Numerous courts have found that similar generic statements on Twitter and social media do not target any specific forum and cannot provide a basis for personal jurisdiction over a foreign defendant.  *See Girl Scouts of U.S.* v. *Steir*, 102 F. App'x 217, 219 (2d Cir. 2004) (defendant's website did not "manifest[] [an] intent specifically to target New York supporters"); *In re EHang Holdings Ltd. Sec. Litig.*, 646 F. Supp. 3d 443, 457-458 (S.D.N.Y. 2022) (Twitter and LinkedIn posts insufficient to confer jurisdiction where not directed at forum); *Reliance First Capital, LLC* v. *Mid Am. Mortg., Inc.*, 2019 WL 2504039, at *10 (E.D.N.Y. June 17, 2019) ("To the extent Plaintiff relies upon [the defendant's] Twitter posts to establish a nexus to New York, the Court also finds more persuasive [the] argument that Twitter [is a] world-wide, on-line news and social networking site" and thus posts "do not create claim-related contacts with the forum, even if people within the forum state can see them."); *see also Safex Found., Inc.* v. *SafeLaunch Ventures Ltd.*,

694 F. Supp. 3d 1, 16-17 (D.D.C. 2023) ("The mere accessibility of SafeLaunch's self-promotional Tweets in the United States, just as they are accessible around the globe, does not establish the necessary minimum contacts with this forum, particularly when the Tweets do not themselves evince any effort to target United States business.'" (brackets omitted)).

As to the RICO claims, Plaintiffs' conclusory allegations that each Baton Officer "directed and knowingly participated in the affairs of the Pump Enterprise" (AC ¶¶ 43-45) cannot establish a prima facie showing of jurisdiction. *Stevenson*, 2024 WL 645187, at *33 ("[C]onclusory non-fact specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a prima facie showing of jurisdiction.") (citing *Tamam* v. *Fransabank Sal*, 677 F. Supp. 2d 720, 725-26 (S.D.N.Y. 2010)). Nor can the contacts of other Defendants be imputed to the Baton Officers. The relationship between each defendant and the forum state must arise out of that defendant's own contacts with the forum and not "contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284. Here, Plaintiffs have alleged no such contacts by the Baton Officers.

In sum, exercising personal jurisdiction over the Baton Officers on the Amended Complaint here would "would violate our basic sense of fair play and substantial justice—and deprive the defendants of the due process guaranteed by the Constitution." *Metro Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 575 (2d Cir. 1996).

### B.    Plaintiffs Fail to Establish Personal Jurisdiction as to Their State Claims

Without personal jurisdiction with respect to the federal claims, Plaintiffs cannot establish jurisdiction with respect to their state law claims for alleged violations of New York's General Business Law ("GBL") and unjust enrichment. "To determine whether the Court has general or specific personal jurisdiction over Defendants, in the absence of a federal statute specifically

directing otherwise, the Court looks to the law of the forum state to determine whether a federal district court has personal jurisdiction, which, here, is New York law." *Arthur* v. *Orchestrate Bus. LLC*, 2025 WL 2201067, at *3 (S.D.N.Y. Aug. 1, 2025) (internal punctuation omitted) (citing *Brown* v. *Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016)).

Like its federal counterpart, New York's general jurisdiction statute, C.P.L.R. § 301, provides for jurisdiction where an individual defendant is domiciled in New York or the defendant's ties to New York are "so extensive as to support general jurisdiction notwithstanding domicile elsewhere." *IMAX Corp.* v. *The Essel Grp.*, 154 A.D.3d 464, 466 (1st Dep't 2017). As discussed above, neither is met here.

New York's long-arm statute, C.P.L.R. § 302(a), allows for specific jurisdiction over non-residents where (i) the non-resident defendant engaged in certain categories of contacts with the state enumerated at § 302(a)(1)-(4), and (ii) the alleged causes of action "aris[e] from" that conduct. Plaintiffs have not pleaded that any of the Baton Officers (1) "transact[ed] any business within the state" or "contract[ed] anywhere to supply goods or services in" New York; (2) committed a tortious act in New York; (3) committed a tortious act outside of New York that injured a person or property within the state; or (4) has real property within the state, as required to invoke C.P.L.R. § 302(a)(1)-(4). "If either prong of the statute is not met, jurisdiction cannot be conferred[.]" *Johnson* v. *Ward*, 4 N.Y.3d 516, 519 (2005).

At most, Plaintiffs have asserted that Mr. Cohen made generalized public statements in online fora available across the globe, but as discussed above, those are not alleged to have been directed at any location in the US, let alone at New York, are not connected to the Plaintiffs' purported injuries, and no Plaintiff has alleged an injury or transaction in New York. In sum, none of Plaintiffs' claims arise from any actions of the Baton Officers in or directed at New York, and

-10-

New York has no interest in adjudicating these claims. *See Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (to support jurisdiction under C.P.L.R. § 302, there must be an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York).

## II.    THE BATON OFFICERS ARE NOT STATUTORY SELLERS AND CANNOT BE LIABLE UNDER SECURITIES ACT SECTION 12(a)(1)

As set out in Baton's motion to dismiss, Plaintiffs' claims alleging violations of Securities Act Section 12(a)(1) fail for myriad reasons — including because Plaintiffs fail to adequately allege the tokens at issue were sold as "securities"; fail to allege the transactions at issue occurred in the US; and fail to allege standing with respect to most of the tokens identified. (*See* Baton Br. at § II). But even if these failings could be overlooked (and they cannot), Plaintiffs' Section 12(a)(1) claims against the Baton Officers fail for another independent reason: Plaintiffs have not alleged that any of the Baton Officers transferred title or successfully solicited the purchase of any of the tokens at issue. *See Pinter* v. *Dahl*, 486 U.S. 622, 642-47 (1988) (a defendant can be liable under Section 12(a)(1) only if he (1) directly "passes title" of a security to the buyer, or (2) "successfully solicits the purchase" with a self-interested financial motive).

In fact, Count I of the Amended Complaint, alleging violations of the Securities Act, does not even mention the Baton Officers, who appear to have been simply thrown into Count I's heading as an afterthought.[6] (*See* AC ¶¶ 398-437). Plaintiffs allege only that: "Baton Corporation is a statutory seller of the Tokens because Pump.fun, which it owns, controls, and does business as, sold, promoted, or solicited the sale of the Pump Tokens and/or passed titled to the Pump

---

[6] In Count I, Plaintiffs state that: "[t]his Count is asserted against Defendant Baton Corporation, who conducts business and operates as Pump.fun, and is based upon Sections 5 and 12(a)(1) of the Securities Act." (AC ¶ 400). However, the *title* of Count I states it is brought "Against Defendants Pump.fun[,] Alon Cohen, Dylan Kerler, and Noah Bernhard Hugo Tweedale."

Tokens to the Plaintiffs and the Subclass."  (AC ¶ 403).  Putting aside that this allegation as to Baton is entirely conclusory, Plaintiffs do not even bother to make such an assertion with respect to the individual Baton Officers.  Nor could they, as the Amended Complaint is completely devoid of any allegations that could support such a claim.

First, there are no allegations at all that Plaintiffs directly purchased tokens from any of the Baton Officers.  Second, there are no allegations (conclusory or otherwise) that the Baton Officers "solicited" any of Plaintiffs' purchases.  "[T]o be a solicitor seller, the defendant must have directly urged or sought to persuade the buyer to purchase the securities." *F.W. Webb Co*. v. *State St. Bank & Tr. Co*., 2010 WL 3219284, at *16 (S.D.N.Y. Aug. 12, 2010) (citing *Pinter*, 486 U.S. at 644, 647).  Plaintiffs fail to allege that any of the Baton Officers directly urged or sought to persuade any of the Plaintiffs to purchase the tokens at issue.

In fact, the Amended Complaint does not cite any statements at all by Mr. Kerler or Mr. Tweedale.  And, as to Mr. Cohen, although the Amended Complaint refers to several statements that he made relating to Pump.fun generally (AC ¶¶ 116, 155-58), and one statement relating to a token traded on Pump.fun ($MOTHER) that Plaintiffs did not buy, none directly urge anyone to buy anything.  Indeed, the only token ($MOTHER) mentioned in these communications is ***not*** even one of the tokens Plaintiffs allege are securities, nor is it a token Plaintiffs allege they purchased or sold.  (*See* AC ¶¶ 162 (Mr. Cohen's tweet about $MOTHER), ¶ 429 (identifying tokens alleged to be securities), ¶¶ 28-30, Exhibit J (identifying Plaintiffs' transactions)).  Moreover, Mr. Cohen's statements as to Pump.fun generally are the exact type of allegations the Second Circuit has expressly found to be insufficient to confer liability under Section 12(a)(1).  *See Risley* v. *Universal Navigation Inc*., 2025 WL 615185, at *3 (2d Cir. Feb. 26, 2025) ("Defendants' promotion of their platform on social media or use of the platform to sell their own

issued token, UNI, does not render them statutory sellers of [other alleged] securities to warrant liability under the Securities Act.").

Plaintiffs' Section 12(a)(1) claims against the Baton Officers should therefore be dismissed on this independent basis as well. *See DeMaria* v. *Andersen*, 153 F. Supp. 2d 300, 307 (S.D.N.Y. 2001) (dismissing 12(a)(1) claim against certain defendants because the complaint did "not aver that any defendant was the immediate seller to any named plaintiff" and there were "no allegations that any defendant actively solicited any named plaintiff in connection with the sale of [the security at issue]"); *Dorchester Invs.* v. *Peak Int'l Ltd.*, 134 F. Supp. 2d 569, 580 (S.D.N.Y. 2001) (same).

## III.    THE RICO CLAIMS AGAINST THE BATON OFFICERS FAIL

The Amended Complaint also fails to plead a facially plausible RICO claim against any of the Baton Officers.

To establish a violation of Section 1962(c), Plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kim* v. *Kimm*, 884 F.3d 98, 103 (2d Cir. 2018). The requirements of Section 1962(c) "must be established ***as to each individual defendant***." *DeFalco* v. *Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). Plaintiffs' Amended Complaint does not adequately plead any of these elements as to the Baton Officers.

To avoid burdening the Court with unnecessary duplication, the Baton Officers join in the arguments made by the other Defendants that Plaintiffs' RICO claims fail because they are barred by the Private Securities Litigation Reform Act; because Plaintiffs fail to adequately plead the requisite RICO injury or proximate causation; because Plaintiffs fail to adequately plead a RICO enterprise; because Plaintiffs fail to adequately plead the alleged predicate acts; because Plaintiffs fail to plead a domestic injury; and because they fail to plead a RICO conspiracy in violation of Section 1962(d). (*See* Baton Br. at § III; Solana Br. at §§ I-II; and Jito Br. at § I). Plaintiffs' RICO

-13-

claims against the Baton Officers fail for the additional reason that the Amended Complaint does not allege any facts supporting that the Baton Officers "participated in the operation or management of the enterprise itself." *Reves* v. *Ernst & Young*, 507 U.S. 170, 183 (1993). *See also Demaree*, 2023 WL 6465881, at *10 ("Simply put, one is liable under RICO only if he participated in the operation or management of the enterprise itself.") (citing *First Cap. Asset Mgmt., Inc.* v. *Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004)). This "operation and management test" is "a very difficult test to satisfy." *LaSalle Nat'l Bank* v. *Duff & Phelps Credit Rating Co.*, 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996), *abrogated on other grounds*, *Anschutz Corp.* v. *Merrill Lynch & Co., Inc.*, 690 F.3d 98, 115 (2d Cir. 2012). Plaintiffs do not and cannot meet it here.

Instead of pleading the operation or management of the alleged RICO ***enterprise*** identified in the Amended Complaint, Plaintiffs merely allege that the Baton Officers operated and managed ***Baton***. (AC ¶¶ 43-45, 440; RICO Statement ¶ 93 ("Alon Cohen is the Chief Executive Officer of Pump.fun and is alleged to have directed and participated in the enterprise ***through that role***"), ¶¶ 94-95 (same for Tweedale and Kerler), ¶ 134). That is insufficient as a matter of law. RICO claims are routinely dismissed where the allegations against a defendant are "entirely consistent" with the defendant "going about its own business" and acting in "their individual capacities, to advance their individual self-interests." *United Foods & Com. Workers Unions & Emps. Midwest Health Benefits Fund* v. *Walgreen Co.*, 719 F.3d 849, 854-55 (7th Cir. 2013). This is all that is alleged here with respect to the Baton Officers, and warrants dismissal. *See Elsevier Inc.* v. *W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010) (McMahon, J.) (dismissing RICO claims against several individual defendants because "it is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise"); *Crab House of Douglaston, Inc.* v.

-14-

*Newsday, Inc.*, 418 F. Supp. 2d 193, 206, 207-08 (E.D.N.Y. 2006) (dismissing RICO claim against individual defendants and finding allegations regarding one individual defendant insufficient to allege "operation or management of an enterprise" where "there [wa]s no attempt to distinguish" his "legitimate capacity as a supervisor" in the defendant entity and "his [alleged] illegitimate capacity as a director or manager of the enterprise").

Plaintiffs also quote a few tweets by Mr. Cohen that Plaintiffs suggest analogize meme coin trading to gambling. (AC ¶¶ 155-57; RICO Statement ¶ 47). But, even accepting that characterization, the tweets do not state or suggest that Mr. Cohen was coordinating with any of the other Defendants to operate or manage a "pseudonymous gambling system." (RICO Statement ¶ 98). Simply put, Mr. Cohen's tweets do not give rise to any plausible inference that he or anyone else was conducting the affairs of the purported enterprise.[7] Nor are they particularly remarkable; analysts and commentators often liken trading in the financial markets generally to "gambling" in a colloquial sense. *See, e.g.*, Dawn Allcot, "Warren Buffett Says Stock Market Is Becoming 'Casino-Like' — How To Invest and Not Gamble," Nasdaq (Mar. 22, 2024).[8]

The remainder of Plaintiffs' allegations as to the Baton Officers merely track, in conclusory fashion, the elements of their RICO claims. (*See, e.g.*, AC ¶ 43 (alleging that Mr. Cohen "directed and knowingly participated in the affairs of the Pump Enterprise"); AC ¶¶ 44-45 (same as to Messrs. Tweedale and Kerler)). But allegations that merely repeat statutory elements and assert

---

[7] Plaintiffs' RICO Statement also appends a few internal messages involving Mr. Cohen. These messages are not included in the Amended Complaint, nor do Plaintiffs even attempt to explain in their RICO Statement how these internal messages relate in any way to their alleged RICO claim, or would otherwise support a claim that Mr. Cohen participated in the operation or management of the purported RICO enterprise.

[8] *Available at* https://www.nasdaq.com/articles/warren-buffett-says-stock-market-is-becoming-casino-like-how-to-invest-and-not-gamble.

legal conclusions and speculation do not, as a matter of law, suffice to plead a facially plausible

RICO claim.  *See Komatsu* v. *United States*, 2023 WL 317326, at *8 (S.D.N.Y. Jan. 19, 2023)

("Plaintiff's allegations . . . are no more than threadbare recitals of the elements of a RICO cause

of action, and are too conclusory to survive.") (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009))*.

Because Plaintiffs fail to allege that any of the Baton Officers conducted or managed the

purported RICO enterprise, the RICO claims against these individuals should be dismissed on this

basis as well.

## IV.    PLAINTIFFS LACK STANDING TO BRING THEIR GBL CLAIMS

Plaintiffs, none of whom allege they are residents of New York or transacted with the Baton

Defendants in New York, do not have standing to bring a New York consumer protection claim

against foreign residents with respect to their roles as officers of a UK Company.  (*See* AC ¶¶ 28-

30).  GBL Section 349 prohibits "[d]eceptive acts or practices" in the conduct of any business or

service in New York state, and GBL Section 350 prohibits "[f]alse advertising in the conduct of

any business, trade or commerce or in the furnishing of any service in this state."  The statutes are

limited to deception of consumers *in New York*.  *See Baker-Rhett* v. *Aspiro AB*, 324 F. Supp. 3d

407, 416 (S.D.N.Y. 2018) ("Sections 349 and 350 contain a territoriality requirement: to state a

claim under either provision, the deception of consumers must occur in New York."); *Goshen* v.

*Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (2002) (same).

Plaintiffs' Amended Complaint raises no factual allegations suggesting any of the Baton

Officers transacted business in New York.  Instead, Plaintiffs assert in a conclusory fashion that

the alleged "deception and false advertising originated from, and were disseminated through,

Defendants' operations in New York," including "their SoHo headquarters" (AC ¶ 469), a location

which is undefined and has no apparent relationship to Baton, let alone the Baton Officers.  (AC ¶

33). The absence of New York-specific allegations with respect to either the Plaintiffs or the Baton Officers is fatal to Plaintiffs' GBL claims against the Baton Officers. *See Miramontes* v. *Ralph Lauren Corp.*, 2023 WL 3293424, at *5 (S.D.N.Y. May 5, 2023) (McMahon, J.) ("New York courts routinely dismiss cases like this one, in which out-of-state transactions form the basis of a complaint under the GBL, at the pleading stage." (collecting cases)). Nor can Plaintiffs bring claims on behalf of "New York Residents of the Class" (AC, Count III) when they lack standing themselves. *Haft* v. *Haier US Appliance Sols., Inc.*, 578 F. Supp. 3d 436, 444, 460 (S.D.N.Y. 2022).

Plaintiffs' claims additionally fail because Plaintiffs have not plausibly alleged that the Baton Officers engaged "in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Goshen*, 98 N.Y.2d at 324. Plaintiffs allege merely that, as a group, the "Defendants engaged in consumer-oriented deceptive acts and practices, and disseminated materially false advertisements, by marketing Pump Tokens as 'fair-launch,' officially endorsed, and immune from manipulation, while concealing their ability to control liquidity, extract MEV profits, and dump tokens." (AC ¶ 469). Plaintiffs fail to describe ***any*** specific actions taken or statements made by Mr. Tweedale or Mr. Kerler. (*See* AC ¶¶ 33, 44-45). While the Complaint quotes a handful of statements by Mr. Cohen (AC ¶¶ 116, 155-58, 162), Plaintiffs do not allege that they relied on any such statement, nor that they were injured as a result. *See, e.g.*, *Oden* v. *Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018) ("[A] claim for deceptive business practices under GBL § 349 or for false advertising under GBL § 350 requires facts illustrating a causal connection between some injury to plaintiffs and some misrepresentation made by defendants."). In sum, Plaintiffs have failed to state a GBL claim upon which relief can

be granted against the Baton Officers for the reasons above and for the reasons set out in Baton's

motion to dismiss (*see* Baton Br. at § IV).

## V.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS

Plaintiffs have not alleged that a single dollar has flowed from their pockets to those of Mr.

Cohen, Mr. Kerler, or Mr. Tweedale.  This is fatal to Plaintiffs' unjust enrichment claim against

the Baton Officers.  *See Koenig* v. *Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014)

(to state a claim for unjust enrichment under New York law, a plaintiff must adequately allege that

"(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) it would be inequitable

to permit the defendant to retain that which is claimed by the plaintiff"); *Brenner* v. *Brenner*, 821

F. Supp. 2d 533, 540-41 (E.D.N.Y. 2011) ("To support an unjust enrichment claim a plaintiff must

establish a specific and direct benefit moving from the plaintiff to the defendant.").

Plaintiffs allege only that "Defendants" were "unjustly enriched" at "the expense of

Plaintiffs" by the retention of "platform fees, MEV profits, and token allocations" (AC ¶ 472), but

do not plead any facts supporting that any of these fees or funds were paid directly to the Baton

Officers.  Plaintiffs may not rely on such conclusory allegations or group pleading.  *See Caplan*,

2025 WL 1808530, at *9 ("Plaintiffs' [f]ailure to plead facts identifying with any specificity the

benefit each of these Defendants is alleged to have received is fatal to their unjust enrichment

claims."); *Snowbridge Advisors LLC* v. *ESO Cap. Partners UK LLP*, 589 F. Supp. 3d 401, 421-22

(S.D.N.Y. 2022) (dismissing unjust enrichment claim where plaintiff failed to allege any

"affirmative acts" by individual defendants that resulted in them obtaining a benefit at the expense

of plaintiff).

Indeed, while Plaintiffs' unjust enrichment claim fails to even satisfy the basic notice

pleading requirements of Rule 8(a), it must in fact meet Rule 9(b)'s heightened pleading standard

because the claim sounds in fraud.  (*See* AC ¶¶ 117, 186, 189, 190, 215, 216, 305, 308, 362, 457, 469, 472).  For example, in *Tyman* v. *Pfizer, Inc.*, 2017 WL 6988936, at \*10 (S.D.N.Y. Dec. 27, 2017), the court held that the plaintiffs' unjust enrichment claims were subject to Rule 9(b) where, like here, "[p]laintiffs allege, repeatedly, that [the defendant] intentionally made 'deceptive,' 'fraudulent,' 'misleading,' and 'demonstrably false' factual representations in labeling and marketing" the products at issue "and purposefully concealed material information about them" in order "to induce consumers to rely upon that information and buy and pay premiums" for the products.  *Id.*  Plaintiffs' unjust enrichment claim as to the Baton Officers comes nowhere close to meeting these standards.

Finally, even if one were to assume that the purported benefit on which Plaintiffs rest their claim as to the Baton Officers is the compensation each received as an officer of Baton, courts routinely reject claims premised on an individual's compensation as too "attenuated" to state a claim for unjust enrichment.  *See, e.g.*, *Barlow* v. *Skroupa*, 221 A.D.3d 482, 484 (1st Dep't 2023) ("[P]laintiffs failed to state a cause of action against [individual defendants] for unjust enrichment because the complaint asserts no nonconclusory facts suggesting that they were enriched at plaintiffs' expense."); *Bilinski* v. *Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 52 (S.D.N.Y. 2015) (dismissing unjust enrichment claim where "the connection between the alleged harm to the plaintiffs and the compensation paid to individual defendants is too attenuated to support an unjust enrichment claim"), *aff'd*, 632 F. App'x 637 (2d Cir. 2015).

For each of these reasons, and those set out in Baton's motion to dismiss (*see* Baton Br. at § V), Plaintiffs' unjust enrichment claims against the Baton Officers should be dismissed.

-19-

## CONCLUSION

The Amended Complaint's claims against the Baton Officers should be dismissed with prejudice.[9]

Dated:  September 5, 2025

Respectfully submitted,

**CAHILL GORDON & REINDEL LLP**

By:    /s/ Samson A. Enzer
      Samson A. Enzer
      Tammy L. Roy
      Lauren Perlgut
      32 Old Slip
      New York, NY 10005
      (212) 701-3000

*Counsel for the Baton Officers*

---

[9] Should the case proceed, the Baton Officers expressly reserve the right to move to compel arbitration should discovery or further proceedings reveal that one or more Plaintiffs viewed and agreed to Baton's Terms of Use containing an arbitration clause.  *See* Baton Br. n.1.

## <u>WORD COUNT CERTIFICATION</u>

I, Samson A. Enzer, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c).  According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 6,216 words in the document.

<u>*/s/ Samson A. Enzer*</u>
Samson A. Enzer