UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIEGO AGUILAR, KENDALL
CARNAHAN, and MICHAEL OKAFOR
*on behalf of themselves and all others
similarly situated*

Plaintiffs,

v.

BATON CORPORATION LTD, d/b/a
PUMP.FUN, ALON COHEN, DYLAN
KERLER, and NOAH BERNHARD HUGO
TWEEDALE, SOLANA LABS INC.,
SOLANA FOUNDATION, ANATOLY
YAKOVENKO, RAJ GOKAL, DAN
ALBERT, AUSTIN FEDERA, LILY LIU,
LUCAS BRUDER, BRIAN SMITH,

Defendants.

Case No.: 1:25-cv-00880-CM-
BCM

Hon. Colleen McMahon

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OMNIBUS MOTION FOR
(I) LEAVE TO FILE A SECOND AMENDED COMPLAINT AND TO MODIFY THE
SCHEDULING ORDER; (II) A TEMPORARY STAY OF PROCEEDINGS; AND (III)
<u>OTHER RELIEF</u>**

1

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................................. 4

II. BACKGROUND................................................................................................................. 6

    A. Procedural Posture and Existing Record .............................................................. 7

    B. New Evidence from a Re-Emergent Whistleblower .............................................. 7

    C. Necessity of a Short Stay and Schedule Adjustment............................................. 9

    D. Scope of the SAC ................................................................................................. 9

    E. Dropping Parties on Just Terms pursuant to Rule 21 ............................................ 9

III. ARGUMENT................................................................................................................... 10

    A. The Court Should Grant Leave to Amend the Complaint and Modify the Case Schedule.. 10

        1.    Leave to Amend should be freely granted under Rule 15(a)(2). ................................. 10

        2.    Good Cause Exists to Modify the Schedule Under Rule 16(b)(4)............................... 11

    B. A Brief Stay and Consolidated Briefing Promote Judicial Economy ................................. 13

        1. The Court's Inherent Authority Supports a Temporary Stay............................................. 13

        2. The Forthcoming Amended Complaint Will Moot the Pending Motions......................... 13

    C.  Plaintiffs' Ancillary Procedural Requests Are Warranted .................................................. 14

        1. Plaintiffs Have Endeavored to Comply with All Applicable Procedural Rules................ 14

        2. A Limited *In Camera* Submission Is Necessary to Protect the Confidential Informant ... 15

IV. Conclusion .................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**                                                                            **Page**

*Foman v. Davis*,
          371 U.S. 178 (1962).................................................................................................10, 11
*In re Crysen/Montenay Energy Co.*,
          226 F.3d 160 (2d Cir. 2000)...................................................................................14
*Kassner v. 2nd Ave. Delicatessen Inc.*,
          496 F.3d 229 (2d Cir. 2007)...................................................................................12
*Landis v. North American Co.*,
          299 U.S. 248 (1936).................................................................................................13
*Lugosch v. Pyramid Co. of Onondaga*,
          435 F.3d 110 (2d Cir. 2006)...............................................................................15, 16
*Parker v. Columbia Pictures Indus.*,
          204 F.3d 326 (2d Cir. 2000)...................................................................................12
*Pettaway v. Nat'l Recovery Sols.*, LLC,
          955 F.3d 299 (2d Cir. 2020)...................................................................................14
*Reves v. Ernst & Young*,
          507 U.S. 170 (1993)...................................................................................................8


**Rules and Statutes**

Fed. R. Civ. P. 1...............................................................................................................4
Fed. R. Civ. P. 15....................................................................................................*passim*
Fed. R. Civ. P. 16....................................................................................................*passim*
Fed. R. Civ. P. 21.........................................................................................................9,10


Local Civil Rule 15.1(a)(b)....................................................................................*passim*


15 U.S.C. § 1114..............................................................................................................9
15 U.S.C. § 1125(a)..........................................................................................................9
15 U.S.C. § 1125(c)..........................................................................................................9
18 U.S.C. § 1962(c) .....................................................................................................5, 7
18 U.S.C. § 1962(d).......................................................................................................5, 7


N.Y. Civil Rights Law §§ 50–51......................................................................................9
N.Y. Gen. Bus. Law §§ 349.............................................................................................5
N.Y. Gen. Bus. Law §§ 350.............................................................................................5

## I. PRELIMINARY STATEMENT

Plaintiffs respectfully seek (i) leave to file a Second Amended Complaint ("SAC"); (ii) a brief, 35-day stay of proceedings and a corresponding schedule modification; and (iii) related relief to streamline this action.

Plaintiffs will honor the existing schedule and file their oppositions on Friday, September 26, 2025. At the same time, granting a brief stay and a tailored schedule modification will avoid wasted effort on motion practice if Plaintiffs' request to file a superseding complaint is granted and will allow a single, consolidated merits presentation that better serves judicial economy.

Plaintiffs' request arises from newly available, highly material evidence produced by a confidential informant (the "CI"), who first contacted counsel months ago and whose initial information informed the Consolidated Amended Complaint (the "CAC"), ECF No. 33. Approximately three weeks ago, the CI alerted counsel to and produced nearly 5,000 chat logs (with more available), which directly bear on the coordination between Solana Labs engineers and the Pump.fun team regarding technical integration of key software components. These communications go to the operation and management of the alleged racketeering enterprise, bolster predicate-act allegations, and shore up venue and jurisdiction in the Southern District of New York given Solana Labs' New York presence. *See* CAC ¶¶ 49–56 (Solana Labs' New York headquarters and operations); RICO Case Statement ("RCS") §§ 2, 5, ECF No. 78 (roles of Solana Labs/Jito/Pump.fun and integrated operation).

Incorporating this new information now is essential to ensuring a "just, speedy, and inexpensive determination of every action," consistent with the core mandate of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 1.

Plaintiffs do not intend to change the core theory; rather, the SAC will add ~40–50 paragraphs of specific factual matter and one to two tailored causes of action (described below) that are squarely supported by the existing pleading architecture (RICO §1962(c) and (d) and related claims). See RCS § 1 (pleading 18 U.S.C. §§ 1962(c), (d)); CAC Count II (RICO) ¶¶ 438–42; CAC Count III (N.Y. Gen. Bus. Law §§ 349, 350) (beginning at ¶ 469); and CAC § V (Intellectual Property Theft and Platform-Aided Impersonation) ¶¶ 196–233.

Counsel has been diligently triaging and indexing the chats but, given their volume and formatting, a four-week period is reasonably necessary to complete processing, incorporate the new facts into a single superseding SAC, and—if appropriate—drop one or more defendants to further narrow the case. A short stay avoids unnecessary briefing on motions directed at a soon-to-be superseded pleading and promotes consolidated, efficient merits presentation.

These chats identify direct communications between Solana Labs engineers and Pump.fun personnel regarding integration of program functionality and priority-routing mechanics, which go to operation/management of the enterprise and venue/personal jurisdiction in SDNY given Solana Labs' New York base. *See* CAC ¶¶ 49–56; RCS §§2, 5. Plaintiffs will not alter the core theory but will add approximately 40–50 paragraphs particularizing these facts and 1–2 tailored claims that are foreshadowed by the existing predicate-act allegations. A brief, four-week stay allows proper processing and incorporation of this evidence into a single superseding SAC.

This proactive approach serves the paramount interest of judicial economy. At present, four separate motions to dismiss the CAC are pending before the Court. Proceeding with a full round of briefing on these motions would be an inefficient use of the Court's and the parties' resources, as the forthcoming SAC, fortified by the new CI evidence, will supersede the current operative pleading and render the pending motions moot. The most logical and efficient path forward is to

pause the current motion practice, permit Plaintiffs to file a comprehensive and updated complaint, and then address any challenges to that single, operative pleading in a consolidated and orderly fashion.

The relief sought is fully supported by the Federal Rules of Civil Procedure and controlling precedent in this Circuit. Leave to amend is freely given under Rule 15, and Plaintiffs have acted with the requisite diligence under Rule 16 to establish good cause for a schedule modification. The Court's inherent authority to manage its docket supports the requested stay, and the motion also seeks to further streamline this action by dropping several defendants, if appropriate, who are no longer central to the dispute. For these reasons, and as set forth more fully below, Plaintiffs' motion should be granted in its entirety.

## II. BACKGROUND

This action commenced with the filing of the Complaint on January 30, 2025. Plaintiffs filed the operative Consolidated Amended Complaint ("CAC") on July 23, 2025. In response to the CAC, four motions to dismiss were filed on September 5, 2025. *See* ECF Nos. 86, 88, 93, 96 (collectively, the "MTDs"). These motions are currently pending.

Approximately three weeks ago, the same CI re-contacted us after having been unavailable for several months and both provided us with and alerted us to a substantially larger tranche of materials—nearly 5,000 internal chat logs (Telegram/Discord-style exports) involving members of the Pump.fun team, Solana Labs engineers, Jito Labs executives and third parties. This dataset was not available when the CAC was filed and bears directly on several issues in this case. This CI is in possession of hardware containing electronically stored information that counsel believes, in good faith, is directly material to Plaintiffs' claims against the Defendants. Upon learning of the

CI's electronically stored, counsel acted immediately to secure the information and present this motion to the Court.

As the chronology shows, the time between the availability of the new evidence and the filing of this motion has been minimal. Plaintiffs now seek a brief 35-day period to complete the logistical and technical steps necessary to retrieve and process the CI's hardware and incorporate the resulting evidence into a SAC.

## A. Procedural Posture and Existing Record

This case challenges the coordinated operation of a high-velocity token wagering system run through Pump.fun and executed on Solana's infrastructure—with Jito's priority-pathway mechanics integrated into launches—pled as a RICO enterprise under §§1962(c) and (d). The operative complaint already details: (i) the "fair-launch" misrepresentations, (ii) Jito bundle/tip priority, and (iii) the roles of Solana Labs/Solana Foundation in providing and monetizing the rails (SPL Token Program; validator stack). See CAC §§ IV–VIII; RCS ¶¶ 7–13, 20–23 (Jito integration with Solana); RCS ¶¶ 73, 80–82, 138–39 (role allocation; Pump instructions to "construct a Jito bundle" and "add a bribe (tip)"); RCS § 5 (association-in-fact enterprise).

The CAC also pleads venue and personal jurisdiction in SDNY based on Solana Labs' New York headquarters at 141 East Houston Street and a significant New York engineering footprint, tying the enterprise's operation to this District. CAC ¶¶ 49–56.

Venue and personal jurisdiction in SDNY are supported by Solana Labs' New York headquarters and engineering footprint, already pleaded in CAC ¶¶ 49–56.

## B. New Evidence from a Re-Emergent Whistleblower

Months after counsel received initial CI input (portions of which informed the CAC), the same CI re-established contact approximately three weeks ago and provided a corpus of nearly

5,000 chat logs (and stands ready to provide additional logs). Initial triage—conducted promptly and diligently—has surfaced targeted communications in which Solana Labs engineers are in direct contact with Pump.fun personnel, discussing and providing technical guidance concerning integration of key components implicated in the alleged enterprise (e.g., token program behavior, validator/priority inclusion pathways, or launch-flow mechanics). This directly corroborates and particularizes what the CAC and RCS already allege about interdependence and coordination, elevating the allegations from public-facing conduct and architectural inference to specific behind-the-scenes communications. See RCS §§ 5, 10; CAC §§ VIII–IX (enterprise roles, profits, and integrated rails).

This newly available communications evidence is material because it:

1. Strengthens "operation or management" under *Reves* as to Solana Labs by evidencing hands-on technical involvement in the launch/execution rails beyond passive platform provision. *See Reves v. Ernst & Young*, 507 U.S. 170, 183–185 (1993). RCS §§ 2, 10–13 (sections which cumulatively address operation and management as pled thus far concerning Pump.fun, Jito, and Solana.)

2. Reinforces horizontal/vertical relatedness and continuity (pattern), linking the "fair-launch" wire scheme and priority pathway to specific cross-entity collaboration. See RCS ¶¶ 72–82 (wire-fraud particulars and pattern); CAC §§IV–VIII.

3. Bolsters SDNY venue and jurisdiction by connecting key decision-making and engineering activity to Solana Labs' New York base, consistent with CAC ¶¶ 49–56.

4. Facilitates streamlining of parties: the specific allocation of roles evidenced in the chats may justify dropping one or more defendants to narrow discovery and motion practice (without retreating from the core enterprise allegations).

## C. Necessity of a Short Stay and Schedule Adjustment

Given the volume (≈5,000 logs), the need to ingest/deduplicate/convert mixed exports, extract timestamps/handles/metadata, and cross-reference custodians across the existing record, 35 days is a modest and reasonable processing window given the scope of the work required to integrate the evidence into a SAC. A short stay avoids wasteful briefing on motions directed at a soon-superseded pleading and is consistent with this Court's case-management tools and the Second Circuit's approach to amended pleadings mooting prior motions.

## D. Scope of the SAC

Plaintiffs do not intend to alter the core theory. The SAC will:

1. Add ~40–50 paragraphs particularizing Solana-Pump.fun engineer communications and technical integration details;

2. Add 1–2 causes of action that are already foreshadowed in the pleadings' factual sections and RICO predicates—e.g., Lanham Act §1114 and §1125(a)/(c) and/or New York right-of-publicity (Civ. Rights Law §§50–51)—to align counts with the counterfeiting/impersonation conduct already described and used as RICO predicates. See CAC §§ V (counterfeit branding and impersonation); RCS ¶¶ 70–71 (counterfeit labels/goods and identity misuse).

## E. Dropping Parties on Just Terms pursuant to Rule 21

Federal Rule of Civil Procedure 21 authorizes the Court to "at any time, on just terms, add or drop a party." Where narrowing parties will streamline discovery and motion practice without

9

prejudicing remaining litigants, courts in this District routinely grant Rule 21 relief to align the case with the claims that will be litigated on the merits. Here, Plaintiffs anticipate dropping one or more defendants in light of the clarified allocation of roles in the CI chats, which will reduce briefing duplication and discovery scope during the next phase of the case.

## III. ARGUMENT

### A. The Court Should Grant Leave to Amend the Complaint and Modify the Case Schedule.

The core of Plaintiffs' motion is a request for leave to amend the complaint to incorporate new evidence. This request is governed by the interplay of Federal Rules of Civil Procedure 15 and 16. While the standards differ, Plaintiffs' request is amply justified under both.

#### 1. Leave to Amend should be freely granted under Rule 15(a)(2).

Federal Rule of Civil Procedure 15(a)(2) provides that, other than amendments as a matter of course, a party may amend its pleading only with the opposing party's written consent or the court's leave. The rule mandates that "[t]he court should freely give leave when justice so requires." This liberal standard reflects the principle that cases should be decided on their merits rather than on technical pleading deficiencies.

The Supreme Court's seminal decision in *Foman v. Davis*, 371 U.S. 178 (1962), provides the framework for applying this rule. The Court held that leave to amend should be "freely given" so that the plaintiffs be afforded an opportunity to "test [their] claim on the merits." *Foman*, 371 U.S. at 182. To deny such leave, the Court must do so with a justifying reason, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance

10

of the amendment, [or] futility of amendment." *Id*. None of the *Foman* factors justifying denial are present here.

This motion is not the product of delay or dilatory tactics. To the contrary, it is a direct and prompt response to the recent availability of new, significant evidence. Plaintiffs acted as soon as the CI became available, demonstrating good faith and a commitment to presenting a complete and accurate case.

Defendants will not be unduly prejudiced by the amendment. Formal discovery has not yet commenced, and no depositions have been taken. The proposed amendment comes at an early stage of the litigation, well before trial. Any prejudice caused by the brief delay will be mitigated by the efficiency gained from avoiding a round of moot motion practice and by the establishment of a clear, consolidated briefing schedule going forward.

The proposed amendment is far from futile. It is based on new evidence that Plaintiffs believe will substantially strengthen the claims and provide greater clarity to the operative facts. Allowing the amendment will facilitate, not hinder, a proper decision on the merits.

Because none of the countervailing factors identified in *Foman* are present, the liberal standard of Rule 15(a)(2) strongly favors granting Plaintiffs leave to amend.

## 2. Good Cause Exists to Modify the Schedule Under Rule 16(b)(4).

Good cause exists because Plaintiffs could not reasonably have obtained or reviewed this corpus sooner: the same CI only recently re-engaged and produced a large volume of chats; counsel acted diligently to triage and immediately moved to inform the Court. The new communications are case-dispositive in materiality (operation/management; pattern; venue), and prejudice to Defendants is absent—the SAC will supersede the operative pleading and any pending motions will be addressed once, against an updated, consolidated complaint.

Where, as here, a scheduling order is in place, a motion to amend a pleading also requires modification of that order. Fed. R. Civ. P. 16(b)(4) provides that a schedule "may be modified only for good cause and with the judge's consent." While the Rule 15(a) standard is liberal, courts in this Circuit recognize that the Rule 16(b)(4) "good cause" standard is the operative gatekeeper for amendments sought after a court-ordered deadline.

The primary consideration in the "good cause" analysis is the diligence of the moving party. The Second Circuit has explained that "[a] finding of good cause depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). *See also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243–244 (2d Cir. 2007).

Plaintiffs' diligence here is manifest. The factual basis for the proposed amendment—the information contained on the CI's hardware—was not in Plaintiffs' possession or otherwise available prior to the current deadline for amending pleadings. Plaintiffs could not have included these facts in the CAC because Plaintiffs were not aware of them. The moment the CI and their evidence became accessible, counsel acted with dispatch to evaluate the situation and seek this modification from the Court. This is the very definition of diligence; a party cannot be faulted for failing to act on information it does not have.

Furthermore, the requested extension is narrowly tailored to the specific tasks at hand. Plaintiffs have reasonably projected that it will require approximately 21 days to address the logistical and security concerns of retrieving the CI's hardware and having it forensically imaged and analyzed, and an additional 14 days to review the resulting data and incorporate the new facts into a carefully drafted SAC. This 35-day period is a modest, targeted request designed solely to accommodate this new evidentiary development. Because Plaintiffs have been diligent and the request is narrowly tailored, good cause exists to modify the schedule under Rule 16(b)(4).

**B. A Brief Stay and Consolidated Briefing Promote Judicial Economy**

Plaintiffs will file their oppositions on Friday, September 26, 2025, in accordance with the current order, but respectfully submit that a short pause and coordinated schedule will prevent duplication and conserve resources should the Court grant Plaintiffs' motion for leave to file a SAC.

**1. The Court's Inherent Authority Supports a Temporary Stay**

It is well-settled that a district court possesses the "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). This power includes the discretion to grant a stay of proceedings. The key is that such a stay must be moderate and reasonable, not indefinite or excessive.

The stay requested here is the epitome of a reasonable case-management tool. Plaintiffs do not seek an indefinite halt to the proceedings. Rather, Plaintiffs request a short, defined pause sufficient to permit the filing of the SAC, after which a new, consolidated briefing schedule will govern. This course of action prevents the Court and the parties from expending substantial resources briefing four MTDs that are destined to become obsolete, thereby conserving judicial resources and promoting a "single, consolidated merits presentation rather than piecemeal litigation."

**2. The Forthcoming Amended Complaint Will Moot the Pending Motions**

The justification for exercising the Court's Landis authority is made clear by Second Circuit precedent regarding amended pleadings. Ordinarily, an amended pleading supersedes the original

and renders it of no legal effect. *See Pettaway v. Nat'l Recovery Sols.*, LLC, 955 F.3d 299, 303 (2d Cir. 2020) (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000). When this occurs while a motion to dismiss the original pleading is pending, the district court has two options: it may "either deny the pending motion as moot or evaluat[e] the motion in light of the facts alleged in the amended complaint." *Id.*

Here, the latter option is impractical, as the MTDs were not drafted to address the forthcoming CI evidence. The only logical outcome is that the MTDs will be rendered moot by the filing of the SAC. Forcing the parties to complete briefing on these motions now would be a purely academic exercise, wasting time and money and burdening the Court with papers that have been superseded by events. The requested stay avoids this unnecessary and duplicative work and allows the parties to focus their resources on the single, operative pleading that will frame the case going forward.

## C.  Plaintiffs' Ancillary Procedural Requests Are Warranted

To fully implement this efficient path forward, Plaintiffs respectfully request that the Court grant several related items of procedural relief.

### 1. Plaintiffs Have Endeavored to Comply with All Applicable Procedural Rules

Plaintiffs have endeavored to comply with all applicable federal and local rules in making this motion.

This District's Local Civil Rule 15.1(a) requires a party moving to amend to attach both a clean and a redlined copy of the proposed amended pleading to its motion. Because the CI-related evidence has not yet been retrieved and processed, Plaintiffs cannot presently attach the clean and redlined proposed Second Amended Complaint required by Local Civil Rule 15.1(a). Plaintiffs respectfully request that the Court: (i) waive Local Civil Rule 15.1(a)'s requirements as presently

impracticable; and (ii) waive Local Civil Rule 15.1(b)'s requirement that a non-pro se moving party file the new pleading within seven days of the order granting the motion, and instead set a 35-day deadline to file the SAC after the entry of the order.

Plaintiffs have conferred with all defense counsel, who have all indicated that they object to this motion.

### 2. A Limited *In Camera* Submission Is Necessary to Protect the Confidential Informant

Plaintiffs acknowledge the strong presumption of public access to judicial documents, a right grounded in both the common law and the First Amendment. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 118–124 (2d Cir. 2006). This presumption, however, is not absolute. It may be overcome by showing that sealing "is essential to preserve higher values and is narrowly tailored to serve that interest."

The Second Circuit has established a three-step process for determining whether documents should be sealed: (1) the court determines if the documents are "judicial documents" to which a presumption of access attaches; (2) it assesses the weight of that presumption; and (3) it balances the competing considerations against it. *See United States v. Amodeo*, 71 F.3d 1044, 1048-51 (2d Cir. 1995). The need to protect the safety of witnesses or confidential informants is a higher value that should outweigh the public's right of access.

Plaintiffs' request is both essential and narrowly tailored. Protecting the identity of the CI and the sensitive logistics of retrieving the evidence are paramount. Public disclosure of these details could endanger the informant and compromise the chain of custody of the evidence. Therefore, these interests are sufficiently compelling to justify a limited sealing. Plaintiffs do not seek to seal any portion of its substantive legal arguments or the eventual SAC itself. Rather, Plaintiffs request only the ability to submit a short, supplemental declaration *in camera* and under

seal to provide the Court with additional detail regarding the CI's unavailability and the retrieval plan, should the Court require it. This is the most narrowly tailored means of providing the Court with necessary information while protecting the compelling interests at stake, consistent with *Lugosch* and the SDNY's Sealed Records Filing Instructions.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant its omnibus motion in its entirety and issue the Proposed Order submitted herewith.

Dated: September 24, 2025
New York, NY

Respectfully submitted,

**BURWICK LAW, PLLC**
By: /s/ Max L. Burwick
Max Burwick
43 West 43rd Street, Ste. 114
New York, NY 10036
maxb@burwick.law

**WOLF POPPER LLP**
Chet B. Waldman
Terrence Zhang
845 3rd Avenue – 12th Floor
New York, NY 10022
212-759-4600
cwaldman@wolfpopper.com
tzhang@wolfpopper.com

*Co-Lead Counsel for Plaintiffs*
*and the Proposed Class*