UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIEGO AGUILAR, KENDALL CARNAHAN, AND MICHAEL OKAFOR on behalf of themselves and all others similarly situated,

    *Plaintiffs,*

v.

BATON CORPORATION LTD, d/b/a PUMP.FUN, ALON COHEN, DYLAN KERLER, NOAH BERNHARD HUGO TWEEDALE, SOLANA LABS, INC., SOLANA FOUNDATION, JITO LABS INC., JITO FOUNDATION, ANATOLY YAKOVENKO, RAJ GOKAL, DAN ALBERT, AUSTIN FEDERA, LILY LIU, LUCAS BRUDER, BRIAN SMITH,

    *Defendants.*

Case No. 1:25-cv-00880-CM-BCM

**DEFENDANTS SOLANA LABS, INC., SOLANA FOUNDATION, DAN ALBERT, AND AUSTIN FEDERA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND**

Gregory N. Wolfe
Joseph W. Baier (*pro hac vice*)
NAGY WOLFE APPLETON LLP
31 East 62nd Street
New York, New York 10065

*Counsel for Defendants Solana Labs, Inc., Solana Foundation, Dan Albert, and Austin Federa*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..................................................................................................1

**PROCEDURAL HISTORY** ......................................................................................................3

I.  THE COURT ALREADY REJECTED PLAINTIFFS' REQUEST FOR 90 DAYS TO "CONTINUE [THEIR] RESEARCH AND INVESTIGATION INTO THE FACTS OF THE CASE" ..........................3

II. WEEKS AFTER DEFENDANTS FILED THE MTDS, PLAINTIFFS' COUNSEL SOUGHT CONSENT TO FILE THIS MOTION 5.5 HOURS PRIOR TO DOING SO—EVEN THOUGH PLAINTIFFS' COUNSEL WERE AWARE OF THE CHAT LOGS BEFORE DEFENDANTS FILED THE MTDS ...................................................................................................................3

**ARGUMENT** ..............................................................................................................................4

I.  PLAINTIFFS' MOTION MUST BE DENIED BECAUSE IT DOES NOT COMPLY WITH LOCAL RULE 15.1(B) AS IT DOES NOT ATTACH AN AMENDED PLEADING ......................................4

II. PLAINTIFFS' MOTION SHOULD BE DENIED ON DUE DILIGENCE, UNDUE DELAY, AND BAD FAITH GROUNDS .................................................................................................5

III. AMENDMENT SHOULD BE DENIED AS FUTILE ................................................................8

IV. PLAINTIFFS' REQUEST FOR *IN CAMERA* REVIEW IS UNSUPPORTED AND WOULD PREJUDICE DEFENDANTS ..........................................................................................10

**CONCLUSION** ........................................................................................................................10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*,
   636 F. Supp. 3d 476 (S.D.N.Y. 2022) (McMahon, J.) ................................................................. 8

*Dominguez v. Walsh*,
   2023 WL 6199861 (S.D.N.Y. Sept. 22, 2023) ............................................................................ 5

*Guity v. Uniondale Union Free School Dist.*,
   2014 WL 795576 (E.D.N.Y. Feb. 27, 2014) ............................................................................... 5

*Hernandez v. DMSI Staffing, LLC.*,
   79 F. Supp. 3d 1054 (N.D. Cal. 2015) ........................................................................................ 7

*Kassner v. 2nd Ave. Delicatessen Inc.*,
   496 F.3d 229 (2d Cir. 2007) ........................................................................................................ 5

*Kiarie v. Dumbstruck, Inc.*,
   473 F. Supp. 3d 350 (S.D.N.Y. 2020) ..................................................................................... 5, 7

*Klein v. Forster & Garbus, LLP*,
   2021 WL 2646334 (E.D.N.Y. June 28, 2021) ............................................................................ 4

*La Barbera v. Ferran Enters., Inc.*,
   2009 WL 367611 (E.D.N.Y. Feb. 10, 2009) ............................................................................... 4

*New York Times Co. v. U.S. Secret Serv.*,
   2018 WL 722420 (S.D.N.Y. Feb. 5, 2018) ............................................................................... 10

*Parker v. Columbia Pictures Indus.*,
   204 F.3d 326 (2d Cir. 2000) ........................................................................................................ 5

*Pearlstein v. BlackBerry Ltd.*,
   2019 WL 13525091 (S.D.N.Y. Sept. 27, 2019) ........................................................................ 10

*Rosendale v. Iuliano*,
   67 F. App'x 10 (2d Cir. 2003) ..................................................................................................... 4

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
   921 F.2d 409 (2d Cir. 1990) ........................................................................................................ 6

*Youngbloods v. BMG Music*,
   2011 WL 43510 (S.D.N.Y. Jan. 6, 2011) .................................................................................... 6

**Statutes**

5 U.S.C. § 552(a)(4)(B) ..................................................................................................................10

**Other Authorities**

L. Civ. R. 11....................................................................................................................................8

L. Civ. R. 15...........................................................................................................................1, 5, 10

L. Civ. R. 15.1.................................................................................................................................5

L. Civ. R. 15.1(b) ......................................................................................................................4, 10

L. Civ. R. 16............................................................................................................................5, 10

L. Civ. R. 16(b)(4) .......................................................................................................................1, 5

Defendants Solana Labs, Inc., Solana Foundation, Dan Albert, and Austin Federa (the "Blockchain Defendants") respectfully oppose Plaintiffs' Omnibus Motion For (i) Leave to File a Second Amended Complaint and to Modify the Scheduling Order; (ii) A Temporary Stay of Proceedings; and (iii) Other Relief (the "Motion" or "Mot.").

## PRELIMINARY STATEMENT

The Motion seeks to amend the Consolidated Amended Complaint (the "CAC") based on the speculation that unreviewed chat logs (the "Chat Logs") provided by a purported Confidential Informant ("CI") weeks before Plaintiffs filed the Motion could cure the deficiencies in Plaintiffs' claims. The Motion is a procedurally improper and frivolous effort to delay resolution of these proceedings and should be denied. Plaintiffs previously "asked for 90 days to file an amended complaint [to] allow them time to 'continue research' and possibly identify additional defendants," Dkt. 32 at 2, and to continue their "investigation into the facts of the case." Dkt. No. 30 at 2. The Court rejected the request stating, "[f]rankly, research should be done before pleadings are filed" and that it would not grant any extensions to the briefing schedule. Dkt. No. 32 at 2. Nevertheless, Plaintiffs ask the Court to do exactly what it said it would not do: delay resolution of the case so that they may investigate the facts.

The Motion must be denied for numerous reasons. Initially, no proposed amendment is attached to the Motion, as required, which alone warrants denying the Motion.

Next, amendment should be denied, whether under Rule 16(b)(4)'s good cause standard—which Plaintiffs state they must meet—or Rule 15's undue delay and bad faith standard. Either way, Plaintiffs have failed to establish they exercised due diligence and a reasonable excuse for delay, as they fail to explain why the Chat Logs could not have been accessed earlier. Counsel's declaration in support of the Motion (the "Declaration" or "Decl.") states that (1) Plaintiffs' counsel

1

has been in communication with the CI since January 15, 2025, and (2) that the CI then provided the Chat Logs "approximately three weeks" before the filing of the Motion on September 24, 2025. No factual averment is given for why the Chat Logs could not have been provided earlier. Moreover, based on the timeline, Plaintiffs have been aware of the Chat Logs since *before* all Defendants filed their motions to dismiss (the "MTDs") on September 5, 2025. Yet, Plaintiffs inexplicably delayed raising the Chat Logs to the Court's attention for weeks. At the very least, Plaintiffs should not be allowed to add "1–2 causes of action that are already foreshadowed in the pleadings' factual sections and RICO predicates" (Mot. at 9)—if the claims were already supported by the factual allegations of the CAC, then they could have been asserted without the benefit of the Chat Logs.

Furthermore, Plaintiffs' description of what a second amended complaint would contain does not establish that amendment would be anything but futile. No specific detail is given about the supposed "new claims," as needed to evaluate their sufficiency. Plaintiffs also propose that they may drop one or two defendants, but it is unclear why review of the Chat Logs would enable that decision and raises serious concerns as to the good faith basis for the CAC.

Finally, as to the pending claims, Plaintiffs claim that the Chat Logs will bolster venue, personal jurisdiction, and RICO conducting, pattern, and continuity allegations. Beyond offering speculation, Plaintiffs do not explain how the Chat Logs would actually fix any deficiencies in the claims. Even if they could fix some deficiencies, there are numerous other independent bases to dismiss Plaintiffs' claims that it is undisputed the proposed amendment would not address.

Accordingly, the Motion should be denied.

## PROCEDURAL HISTORY

I. **THE COURT ALREADY REJECTED PLAINTIFFS' REQUEST FOR 90 DAYS TO "CONTINUE [THEIR] RESEARCH AND INVESTIGATION INTO THE FACTS OF THE CASE"**

Plaintiffs commenced this action on January 30, 2025. Dkt. No. 1. On June 25, 2025, the Court appointed Michael Okafor as Lead Plaintiff as well as Wolf Popper and Burwick Law as Co-Lead Counsel. Dkt. No. 32 (the "Lead Plaintiff Order"). Plaintiffs' counsel requested "a deadline to file a complaint of 90 days from the entry of an order appointing Lead Plaintiff and Lead Counsel," predicated on their desire to "continue [their] research and investigation into the facts of the case and consider whether additional defendants are appropriate." Dkt. No. 30 at 2. The Court categorically rejected the request, observing that "research should be done before pleadings are filed." Dkt. No. 32 at 2. In doing so, the Court ordered the following schedule: (1) Plaintiffs' amended complaint would be due on July 22, 2025; (2) Defendants' motions to dismiss on September 5, 2025; (3) Plaintiffs' opposition on September 26, 2025; and (4) Defendants' replies on October 10, 2025. In setting this schedule, the Court specifically stated it would "not chang[e] these dates." *Id.* at 2–3.

II. **WEEKS AFTER DEFENDANTS FILED THE MTDS, PLAINTIFFS' COUNSEL SOUGHT CONSENT TO FILE THIS MOTION 5.5 HOURS PRIOR TO DOING SO—EVEN THOUGH PLAINTIFFS' COUNSEL WERE AWARE OF THE CHAT LOGS BEFORE DEFENDANTS FILED THE MTDS**

On July 23, 2025, Plaintiffs filed the CAC. On September 5, 2025, Defendants filed their respective MTDs.

Two days before the opposition was due, on September 24, 2025, at approximately 6:30 PM EDT, Plaintiffs' counsel informed the undersigned, for the first time, that Plaintiffs intended to file the Motion by the end of the day (*i.e.*, within approximately 5.5 hours) and asked whether Defendants would consent to the filing of this Motion. Wolfe Decl., Ex. 1.

3

The undersigned objected, including due to the timing of the request, stating:

> You are informing me, after business hours, of your intent to file a 16-page motion less than five-and-a-half hours before you apparently intend to file the motion. I have skimmed your preliminary statement. It reflects that your C.I. contacted you some three weeks ago. Given that you are sending me a 16-page motion, and that your C.I. contacted you three weeks ago, I can only conclude that you have known you would be seeking this relief for some time. This is thus an ambush. I obviously cannot meaningfully consider your request and consult with my clients.

*Id*. The undersigned asked that Plaintiffs' counsel include in the Motion a statement reflecting the timing of Plaintiffs' request. *Id*. Plaintiffs' counsel neither responded nor included the requested statement. *Id*.

The Motion and Declaration reveal that Plaintiffs' counsel, at the latest, became aware of the Chat Logs approximately three weeks before September 24—*i.e.*, before Defendants filed the MTDs on September 5.

## ARGUMENT

**I.     PLAINTIFFS' MOTION MUST BE DENIED BECAUSE IT DOES NOT COMPLY WITH LOCAL RULE 15.1(B) AS IT DOES NOT ATTACH AN AMENDED PLEADING**

Plaintiffs' Motion should be denied for failing to comply with Local Civil Rule 15.1(b)'s requirement that a party moving to amend a pleading attach a copy of the proposed amended pleading to its motion. Courts routinely deny the relief Plaintiffs have requested where they fail to submit a proposed amended complaint. *E.g.*, *Klein v. Forster & Garbus, LLP*, 2021 WL 2646334, at *5 (E.D.N.Y. June 28, 2021); *Rosendale v. Iuliano*, 67 F. App'x 10, 14 (2d Cir. 2003) (no abuse of discretion in denying leave to amend where plaintiff failed to attach amended complaint). This requirement is not a mere formality. Instead, it is necessary "so that both the Court and the opposing party can understand the exact changes sought." *La Barbera v. Ferran Enters., Inc.*, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009).

Plaintiffs do not dispute they have failed to comply. Instead, they ask the Court to excuse them from these requirements because they have neither drafted their amended complaint nor reviewed the documents they purport to rely on. Mot. at 14; Decl. ¶ 7. Plaintiffs cite no case in support of their request with good reason: speculation as to what documents may contain does not justify deviating from Local Civil Rule 15.1. Accordingly, the Motion should be denied.

## II.   PLAINTIFFS' MOTION SHOULD BE DENIED ON DUE DILIGENCE, UNDUE DELAY, AND BAD FAITH GROUNDS

Plaintiffs state they must comply with Rule 16. Even if a Plaintiff meets Rule 16, they must still meet Rule 15's standards. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Given the factual circumstances here, the analysis for good cause under Rule 16 collapses with the analysis for undue delay and bad faith under Rule 15, and consequently will be discussed together.

Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." When assessing good cause, "the primary consideration is whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). "A party is not considered to have acted diligently where the proposed amendment is based on information that the party knew, or should have known, in advance of the . . . deadline." *Guity v. Uniondale Union Free School Dist.*, 2014 WL 795576, at *4 (E.D.N.Y. Feb. 27, 2014).

Under Rule 15, "a court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay." *Kiarie v. Dumbstruck, Inc.*, 473 F. Supp. 3d 350, 357 (S.D.N.Y. 2020). Independently, bad faith coupled with delay is sufficient to warrant denial of motion to amend. *See Dominguez v. Walsh*, 2023 WL 6199861, at *2 (S.D.N.Y. Sept. 22, 2023). And bad faith is found where "a party is seeking leave to amend solely to gain a

5

tactical advantage." *Youngbloods v. BMG Music*, 2011 WL 43510, at *9 (S.D.N.Y. Jan. 6, 2011) (internal quotation omitted).

The facts here demonstrate undue delay, bad faith to gain a tactical advantage, and lack of diligence. Initially, there has been no showing that the Chat Logs have been, in fact, unavailable to Plaintiffs. Although the Motion claims that the "CI re-contacted" Plaintiffs' counsel "after having been unavailable for several months" and that "[t]his dataset was not available when the CAC was filed" (Mot. at 6), the Declaration in fact includes no information to substantiate those claims. Instead, all it states is:

> On or about January 15, 2025, a [CI] first contacted me and provided preliminary information that Plaintiffs, in good faith, incorporated into the Consolidated Amended Complaint. Approximately three weeks ago, the same CI alerted us to nearly 5,000 internal chat logs (Telegram/Discord-style exports) involving members of the Pump.fun team and third parties. The CI then produced those chats to us. This dataset was not available when the CAC was filed and bears directly on several issues in this case.

Decl. ¶ 4. No information is given as to, for example, (1) what information was requested from the CI in the preceding eight months; (2) when counsel stopped interacting with the CI and why; (3) whether counsel could have contacted the CI; (4) whether counsel was previously aware of the Chat Logs—and so on. Certainly, the Declaration is not enough to establish due diligence or that the Chat Logs were in fact unknown to Plaintiffs at the time they filed the CAC on July 23, 2025.

The record also indicates bad faith. The Second Circuit has held that a failure to submit a proposed pleading "indicates lack of diligence and good faith." *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990). Moreover, Plaintiffs were certainly aware of the Chat Logs before Defendants filed their MTDs on September 5, 2025. Yet, Plaintiffs "timed [their] motion to amend so that [they] could have the benefit of previewing

6

Defendants' [MTDs]," which is classic bad faith. *Hernandez v. DMSI Staffing, LLC.*, 79 F. Supp. 3d 1054, 1060 (N.D. Cal. 2015).

Reinforcing the bad faith conclusion, Plaintiffs only informed Defendants of their intent to file the Motion after the close of business and 5.5 hours before filing, presumably in the hope that Defendants would not respond and they could say that Defendants took no position in the Motion. This is what Plaintiffs did when they sought an enlargement for their reply to the MTDs: at 4:21 PM on September 22, 2025, they informed Defendants of their intent to seek the enlargement, asked for "consent to this request by the end of the day" (Wolfe Decl., Ex. 2) and filed the request later on the same day without hearing from Defendants. In doing so, they misleadingly told the Court: "Plaintiffs requested Defendants' position regarding this submission, but did not receive a response prior to filing this letter." Dkt. No. 100. They only did not hear a response because they did not provide sufficient time to receive one.

Finally, Plaintiffs state that they intend to add "1–2 causes of action that are already foreshadowed in the pleadings' factual sections and RICO predicates." Mot. at 5. In its Lead Plaintiff Order, the Court required Plaintiffs to identify any additional defendants and file any amended pleadings by July 22, 2025. The Lead Plaintiff Order did not contemplate Plaintiffs further amending their Complaint, months after this deadline, to potentially add defendants and causes of action. Moreover, there is no contention that Plaintiffs were unable to plead these claims before or that they required the Chat Logs to add them. If the claims were foreshadowed by the "existing" allegations, they should have been included before. No amendment should be permitted at all, but at the very least the Court should reject the inclusion of the additional 1–2 claims, whatever they are. *Kiarie*, 473 F. Supp. 3d at 357.

### III. AMENDMENT SHOULD BE DENIED AS FUTILE

Independently, the amendment should still be denied as futile. This Court has found futility when plaintiffs fail to "specif[y] how the amendment would cure the deficiencies in the complaint." *Charles Equip. Energy Sys., LLC v. INNIO Waukesha Gas Engines, Inc.*, 636 F. Supp. 3d 476, 483 (S.D.N.Y. 2022) (McMahon, J.). Because Plaintiffs have failed to attach a proposed amended pleading, it is obviously impossible to assess whether an amendment could cure the many defects identified in the MTDs. In any event, Plaintiffs' speculation as to what the Chat Logs will show likewise demonstrates that any amendment would be futile. Plaintiffs state that they will add "1–2 causes of action" and gesture that those causes of action will "align … with the counterfeiting/impersonation conduct already described and used as RICO predicates." Mot. at 9. These purported "claims" might as well be hot air and are inherently futile.

With respect to the pending claims in the CAC, Plaintiffs claim that incorporating the Chat Logs will bolster the CAC in the below ways. Specifically, they may:

- Justify "dropping one or more defendants";
- "Reinforce[] horizontal/vertical and continuity (pattern)" for purposes of RICO;
- "Bolster[] SDNY venue" allegations;
- Bolster[] "personal jurisdiction"; and
- Bolster[] conducting allegations for purposes of RICO.

*See* Mot. at 5, 8–9. At the outset, Plaintiffs should know *now* whether they should "drop[] one or more defendants." The notion that Plaintiffs need to review the Chat Logs to do so raises Rule 11 questions as to the propriety of the claims.

Next, no Defendant has moved to dismiss on improper venue, so amendment cannot be justified on those grounds. With respect to enterprise and conducting, the Motion does not explain

8

how the purported Chat Logs change that Plaintiffs cannot sufficiently plead any Defendant conducted the affairs of the enterprise.  Plaintiffs claim that the Chat Logs show that "Solana Labs engineers exchanged messages with Pump.fun engineers and provided technical guidance concerning integration of key software components used in Pump.fun's launch flow."  Decl. ¶ 5.  But that would not affect the outcome:  RICO's requirement of a common purpose to engage in fraudulent conduct cannot be satisfied by the provision of professional services, such as providing tech support.  Dkt. No. 87 at 8.  Same goes for conducting the affairs of the enterprise.  *Id.* at 9.

So too for personal jurisdiction.  The Blockchain Defendants explained that, for all but one of them, there is no personal jurisdiction over the common law claims because none were alleged to be at home in New York and any alleged New York contacts were not related to the common law claims at issue.  *Id*. at 23.  The Motion offers no basis to question those arguments.  As for the Baton Defendants, Plaintiffs make no factual allegations whatsoever regarding their contacts with the United States, let alone New York.  Dkt. No. 89, Baton Motion to Dismiss at 5; Dkt. No. 97, Baton Officers Motion to Dismiss at 9.

And even if Plaintiffs could somehow salvage the enterprise and conducting RICO elements and personal jurisdiction through amendment, that would still not be sufficient to save their claims.  The proposed amendments do not purport to bolster the sufficiency of the securities claims against the Baton Defendants or the common law claims against any Defendant.  And the RICO claims are defective for a host of independent reasons beyond enterprise and conducting, including that Plaintiffs have failed to sufficiently allege:  (1) a cognizable RICO injury; (2) the commission of two predicate acts by any Defendant; (3) proximate causation; (4) domestic injuries; (5) claims that are not subject to RICO's securities fraud bar; or (6) a RICO conspiracy.  Amendment should thus be denied as futile.

9

## IV.  PLAINTIFFS' REQUEST FOR *IN CAMERA* REVIEW IS UNSUPPORTED AND WOULD PREJUDICE DEFENDANTS

Plaintiffs request to submit a "supplemental declaration *in camera* and under seal to provide the Court with additional detail regarding the CI's unavailability and the retrieval plan." Mot. at 15–16. Plaintiffs provide the standard for sealing but ignore that courts in this district have repeatedly found there are generally only two instances where *ex parte in camera* review of declarations is warranted: for "(1) information withheld pursuant to a FOIA Exemption, 5 U.S.C. § 552(a)(4)(B), and (2) classified declarations when national security is at issue." *New York Times Co. v. U.S. Secret Serv.*, 2018 WL 722420, at *6 (S.D.N.Y. Feb. 5, 2018). Indeed, courts "do not favor reviewing *ex parte, in camera* declarations." *Pearlstein v. BlackBerry Ltd.*, 2019 WL 13525091, at *3 (S.D.N.Y. Sept. 27, 2019).

Plaintiffs have made no showing that *ex parte in camera* review is warranted. Their rationale is "[p]rotecting the identity of the CI and the sensitive logistics of retrieving the evidence." Mot. at 15. But they do not explain how those are issues worthy of protection. Defendants are surely entitled to know the source of Plaintiffs' information.

In any event, Plaintiffs' request is so general as to be difficult to discuss in the hypothetical. If Plaintiffs make a special application to submit a declaration, it should at the very least be addressed at that time on a definite record.

## CONCLUSION

Whether under Local Rule 15.1(b), Rule 16, or Rule 15, the Court should deny Plaintiffs' Motion.

Dated: October 8, 2025
    New York, New York

                                 NAGY WOLFE APPLETON LLP

                                 By: *Gregory N. Wolfe*
                                 Gregory N. Wolfe
                                 greg@nagylaw.com
                                 Joseph W. Baier (*pro hac vice pending*)
                                 jbaier@nagylaw.com
                                 31 East 62nd Street
                                 New York, New York 10065
                                 (646) 494-4900

                                 *Counsel for Defendants Solana Labs, Inc., Solana Foundation, Dan Albert, and Austin Federa*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with the word count and page limit set forth in Local Civil Rule 7.1 because it contains 3,143 words, excluding the exempted portions of the brief. In making this calculation, I have relied on the word count of the word-processing system used to prepare the document.

The foregoing document also complies with the typeface, margin, and spacing limitations provided in subsection (a)(4) of Local Civil Rule 7.1.

By: *Gregory N. Wolfe*
Gregory N. Wolfe

*Counsel for Defendants Solana Labs, Inc., Solana Foundation, Dan Albert, and Austin Federa*