UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIEGO AGUILAR, KENDALL CARNAHAN and MICHAEL OKAFOR on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>BATON CORPORATION LTD, d/b/a PUMP.FUN, ALON COHEN, DYLAN KERLER, and NOAH BERNHARD HUGO TWEEDALE, SOLANA LABS INC., SOLANA FOUNDATION, JITO LABS INC., JITO FOUNDATION, ANATOLY YAKOVENKO, RAJ GOKAL, DAN ALBERT, AUSTIN FEDERA, LILY LIU, LUCAS BRUDER, BRIAN SMITH,<br><br>     Defendants. | Case No.: 1:25-cv-00880-CM-BCM |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF BATON CORPORATION LTD, d/b/a PUMP.FUN'S MOTION TO DISMISS THE <u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT ("CAC")</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I.      THE CAC DOES NOT ALLEGE PERSONAL JURISDICTION OVER BATON. . 1

      A.    The CAC Does Not Establish Jurisdiction Over Baton. ......................................... 1

      B.    Plaintiffs Are Not Entitled to Jurisdictional Discovery. ........................................ 2

II.     THE CAC'S SECURITIES CLAIM MUST BE DISMISSED .................................. 3

      A.    The CAC Fails To Establish That Any Tokens Were Sold As Securities .............. 3

          1.    The CAC Fails To Adequately Plead a Common Enterprise. ............................ 3

          2.    The CAC Fails to Adequately Plead a Reasonable Expectation of Profit. .......... 4

      B.    The CAC Fails to Adequately Plead a Domestic Transaction. ............................... 5

      C.    Plaintiffs Lack Class Standing As To Tokens They Did Not Buy. ........................ 5

III.    THE RICO CLAIM SHOULD BE DISMISSED WITH PREJUDICE ...................... 6

      A.    The PSLRA's Securities Exclusion Bars the RICO Claim .................................... 6

      B.    Plaintiffs Do Not Have RICO Standing to Sue Baton. .......................................... 6

      C.    The CAC Fails to Adequately Plead a § 1962(c) Claim. ....................................... 7

          1.    The CAC Does Not Adequately Plead a RICO Enterprise ................................ 7

          2.    The CAC Does Not Adequately Plead Two or More Predicate Acts. ................ 8

      D.    The CAC Fails to Adequately Allege a "Conspiracy" Under Section 1962(d) ...... 9

      E.    Plaintiffs Do Not Adequately Allege Domesticity ................................................ 9

IV.    PLAINTIFFS' GBL CLAIMS ARE BARRED UNDER NEW YORK LAW .......... 10

V.     THE UNJUST ENRICHMENT CLAIM IS DEFICIENT. ....................................... 10

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012)..................................................................................................5

*Balestra v. ATBCOIN LLC*,
   380 F. Supp. 3d 340 (S.D.N.Y 2019).................................................................................3

*Bell Atl. Corp., v. Twombly*,
   550 U.S. 544 (2007).............................................................................................................4

*Blessing v. Chandrasekhar*,
   988 F.3d 889 (6th Cir. 2021) ..............................................................................................1

*Bridge v. Phoenix Bond & Indem. Co.*,
   553 U.S. 639 (2008).............................................................................................................7

*Brill v. Postle*,
   2020 WL 2936688 (E.D. Cal. June 3, 2020) ....................................................................6

*Capitol Recs., LLC v. VideoEgg, Inc.*,
   611 F. Supp. 2d 349 (S.D.N.Y. 2009)................................................................................2

*D. Penguin Bros. v. City Nat'l Bank*,
   587 F. App'x 663 (2d Cir. 2014) .......................................................................................7

*Doe 1 v. Gov't of U.S. Virgin Islands*,
   771 F. Supp. 3d 379 (S.D.N.Y. 2025)................................................................................2

*In re EHang Holdings Ltd. Sec. Litig.*,
   646 F. Supp. 3d 443 (S.D.N.Y. 2022)................................................................................1

*Elsevier, Inc. v. Grossman*,
   77 F. Supp. 3d 331 (S.D.N.Y. 2015)..................................................................................2

*Goldfine v. Sichenzia*,
   118 F. Supp. 2d 392 (S.D.N.Y. 2000) (McMahon, J.).....................................................9

*Haber v. United States*,
   823 F.3d 746 (2d Cir. 2016)................................................................................................2

*In re J.P. Jeanneret Assoc*,
   769 F. Supp. 2d 340 359-360 (S.D.N.Y. 2011) ................................................................3

*Leon v. Shmukler*,
   992 F. Supp. 2d 179 (E.D.N.Y. 2014) ...................................................................................2

*Marini v. Adamo*,
   812 F. Supp. 2d 243 (E.D.N.Y. 2011) ...................................................................................3

*Miramontes v. Ralph Lauren Corp.*,
   2023 WL 3293424 (S.D.N.Y. May 5, 2023) (McMahon, J.)..................................................10

*Matter of Muidallap Corp. v. State Liquor Auth.*,
   143 A.D.2d 9 (1st Dep't 1988) ..............................................................................................8

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)...................................................................................................5

*Ret. Bd. of Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of
   N.Y. Mellon*,
   775 F.3d 154 (2d Cir. 2014)...................................................................................................5

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985)................................................................................................................6

*Small Bus. Bodyguard, Inc. v. House of Moxie, Inc.*,
   2014 WL 5585339 (S.D.N.Y. Oct. 30, 2014) (McMahon, J.) ...............................................10

*United States v. Velastegui*,
   199 F.3d 590 (2d Cir. 1999)...................................................................................................9

*Williams v. Binance*,
   96 F.4th 129 (2d Cir. 2024) ...................................................................................................5

**Statutes**

18 U.S.C. § 1955...........................................................................................................................8

18 U.S.C. § 1962(c) .......................................................................................................................7

18 U.S.C. § 1962(d) .......................................................................................................................9

18 U.S.C. § 1965(b) .......................................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................................................8, 9

**INTRODUCTION**

Plaintiffs' Opposition (the "Opp.") confirms what the CAC already makes clear: Baton is not subject to this Court's jurisdiction, and none of the claims against it can survive. Plaintiffs' primary response to the motions to dismiss is to rewrite the CAC, relying on "facts" that do not appear in the CAC and citing paragraphs that do not support their assertions. No wonder Plaintiffs sought leave to amend and dismissed several Defendants—even though they were part of the alleged RICO enterprise and conspiracy—before filing their brief. The Opp. lays bare that Plaintiffs' theories of jurisdiction and of RICO, securities, and GBL liability rest on legal conclusions and fictionalized allegations that cannot be credited and are fatally deficient.

First, Plaintiffs' reliance on global social-media posts that do not target the U.S. cannot establish personal jurisdiction. Second, the securities claim fails because a platform fee does not establish a common enterprise, Plaintiffs concede they did not buy 17 of the alleged "Pump Securities," and the CAC alleges no domestic transaction. Third, Plaintiffs' RICO claim is incurably deficient on nearly every element and rests on legal conclusions and conclusory assertions that cannot establish RICO standing, a RICO enterprise, or any well-pled predicate acts or conspiracy. Finally, the state-law claims fail because the CAC alleges no New York nexus, and unjust enrichment is duplicative of other claims. The CAC should be dismissed with prejudice.

**ARGUMENT**

**I. THE CAC DOES NOT ALLEGE PERSONAL JURISDICTION OVER BATON.**

  **A.** **The CAC Does Not Establish Jurisdiction Over Baton.**

This Court lacks personal jurisdiction over Baton because Plaintiffs have alleged no facts showing that Baton purposefully directed its activities at New York or the United States. Baton's social-media posts promoting Pump.fun to a *global* audience do not confer jurisdiction. *See In re EHang Holdings Ltd. Sec. Litig.*, 646 F. Supp. 3d 443, 457–58 (S.D.N.Y. 2022); *see also Blessing*

1

*v. Chandrasekhar*, 988 F.3d 889, 905–06 (6th Cir. 2021) (no jurisdiction where "no evidence that the defendants posted the tweets hoping to reach [the subject forum] specifically").

The Opp.'s claim (at 52-53) that jurisdiction exists because every transaction "invok[es] Solana Labs' System Program, Token Program" also fails: the CAC does not explain what these programs are, where they are located, or how their alleged use constitutes a contact with New York or the U.S. Moreover, allegations of the Blockchain Defendants' presence in New York are irrelevant. *See Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 359 (S.D.N.Y. 2009) ("[U]nilateral acts of third parties are not . . . purposeful contacts" that confer personal jurisdiction).

Finally, 18 U.S.C. § 1965(b) is inapplicable because Baton is a foreign corporation that does not reside and has not been served in the U.S. *See Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015) ("[A] district court relying on § 1965 may only exert this jurisdictional pull over defendants 'residing *in any other district*,' 18 U.S.C. § 1965(b), not foreign defendants.").

### B. **Plaintiffs Are Not Entitled to Jurisdictional Discovery.**

Jurisdictional discovery is allowed "only when the allegations are sufficient to articulate a colorable basis for personal jurisdiction, which could be established with further development of the factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 195 (E.D.N.Y. 2014). Where, as here, there is no "*prima facie* case for personal jurisdiction, jurisdictional discovery is generally not granted." *Doe 1 v. Gov't of U.S. Virgin Islands*, 771 F. Supp. 3d 379, 397 (S.D.N.Y. 2025). Moreover, Plaintiffs fail to show "that the requested discovery is likely to produce the facts needed to establish jurisdiction." *Haber v. United States*, 823 F.3d 746, 750 (2d Cir. 2016). Because Plaintiffs have neither alleged a colorable basis for jurisdiction nor identified any disputed facts that discovery could resolve, their request should be denied.

## II. THE CAC'S SECURITIES CLAIM MUST BE DISMISSED.

### A. The CAC Fails To Establish That Any Tokens Were Sold As Securities

#### 1. The CAC Fails to Adequately Plead a Common Enterprise.

As to all "Pump Securities," the Opp. confirms that the CAC lacks allegations supporting a common enterprise under either applicable test.

First, Plaintiffs agree that strict vertical commonality requires linking investors' and promoters' fortunes. Opp. at 55. The only potentially relevant allegation is that Baton charged a "fixed 1% platform fee" on all trades. Opp. at 56 (citing ¶ 329). But Plaintiffs mischaracterize this as a performance fee. It is a flat transactional fee, which links Baton's revenue to "trading volume," not to "token performance." *Id*. Token price changes thus have *no impact* on Baton's fortunes. *In re J.P. Jeanneret Assoc*, 769 F. Supp. 2d 340 359-360 (S.D.N.Y. 2011), which both parties cite, confirms that flat transactional fees do not satisfy strict vertical commonality, even if performance fees might. *See Opp.* at 55-56, citing 769 F. Supp. 2d 340 359-360 (S.D.N.Y. 2011) ("[u]nlike a stockbroker, who collects a fee for every consummated transaction, JPJA's [performance-based] compensation was linked to the fortunes of the investors"); MTD[1] at 6-7. *Marini v. Adamo* also does not help Plaintiffs because it relied on *J.P. Jeanneret Assoc* and ultimately denied summary judgment due to factual disputes. 812 F. Supp. 2d 243, 260-61 n.14 (E.D.N.Y. 2011)).

Second, Plaintiffs cannot establish their two theories of horizontal commonality, which the Opp. concedes requires pooling investors' funds. *See* Opp. at 56 (citing *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 353 (S.D.N.Y 2019) ("horizontal commonality requires a sharing or pooling of funds")). First, Plaintiffs contend horizontal commonality exists when a promoter "uses [investors'] proceeds to strengthen its ecosystem and blockchain—which in turn supports the value

---

[1] MTD refers to Baton Corporation's Motion to Dismiss, ECF No. 89.

3

of the crypto asset." *Id*. But the CAC does not allege that token issuers used buyers' funds as part of any enterprise at all, much less to strengthen any ecosystem. *See* CAC ¶ 254. Rather it alleges that token buyers sent funds to a "bonding curve" until they were returned upon sale. *Id.* ¶ 430. Second, the CAC's claim that "users' funds were pooled" (*Id.* ¶ 373) contradicts the allegation that funds were sent to a bonding curve and is a "legal conclusion couched as a factual allegation" that must be disregarded. *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 555 (2007).

### 2. The CAC Fails to Adequately Plead a Reasonable Expectation of Profit.

The Opp. cannot and does not refute that the CAC lacks allegations that would lead a reasonable investor to expect profits on any "Pump Security." First, the Opp. does not address, and therefore concedes, that Plaintiffs fail this prong of the *Howey* test because (1) users bought tokens for speculative purposes, not expecting profit from *Defendants'* efforts, and (2) this case is unlike the "ecosystem" cases where sale proceeds were used to develop the network. *See* MTD at 8-9.[2]

The Opp. also fails to establish a reasonable expectation of profit regarding the three "Pump Securities" that Plaintiffs allegedly bought because it lacks competent supporting facts. As to ALCH, no competent facts allege any "profit-sharing mechanism" that could lead investors to expect a profit, and the cited exhibit describes merely a "no-code development platform" for "manifest[ing] any idea, dream or thoughts." CAC ¶ 417, Ex. C at 10. As to FRED and GRIFFAIN, the CAC does not explain who offered any "upside" or "staking rewards," when or where such statements appeared, or why investors should reasonably have expected to profit from them. *See* Opp. at 66-67, CAC ¶¶ 426-427; *see also* MTD at 9-10.

---

[2] Plaintiffs' token-specific arguments (*see* Opp. at 58-67) do not analogize to the "ecosystem" cases because the CAC admits sale proceeds stayed on the bonding curve (CAC ¶ 430) and were not available to develop any putative network.

4

### B.    The CAC Fails to Adequately Plead a Domestic Transaction.

The Securities Act claim must also be dismissed under *Morrison*. The Opp. admits that the test for domestic transactions turns on where "irrevocable liability [to buy or sell] was incurred" or where "title was transferred." Opp. at 67-68 (citing *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012); *see also* MTD at 10-11. But the Opp. cites *no facts* meeting this standard. Instead, Plaintiffs point to the "targeting and solicitation of US investors" in Twitter posts and marketing campaigns. Opp. at 67-68. That is legally irrelevant: *Morrison* and *Absolute Activist* require a focus on the *transaction's* situs, not the place of *solicitation*. Viewing a tweet in the U.S. does not show where irrevocable liability was incurred or title transferred. *See, e.g.*, *Absolute Activist*, 677 F.3d at 70 ("allegations that the [securities] were heavily marketed in the United States . . . do not satisfy the transactional test"); *see also Williams v. Binance*, 96 F.4th 129, 137-40 (2d Cir. 2024) (analyzing location where transactions were matched, where Plaintiffs transacted, and where buy orders became irrevocable, none of which are alleged here).

### C.    Plaintiffs Lack Class Standing As To Tokens They Did Not Buy.

The Opp. concedes that named Plaintiffs did not buy 17 of the "Pump Securities" (*see* MTD at 11-12) and fails to justify extending class standing over them. The Opp. argues that claims as to the three tokens they allegedly bought "implicate[] the same set of concerns" as do claims concerning the tokens they did not buy. Opp. at 69 n.8. But this standard depends on whether there will be "differences in the proof that will be offered" for the two sets of claims. *Ret. Bd. of Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 163 (2d Cir. 2014); *see also NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 163 (2d Cir. 2012)) (claims "could turn on very different proof"). Here the proof differs substantially. Whether each token is a security turns on each issuer's specific promises and representations, which vary by token. *See Ret. Bd.*, 775 F.3d at 162 (differences in documentation

5

mean there is "no way in which answering these questions for the trusts in which Plaintiffs invested will answer the same questions for the numerous trusts in which they did not.").

### III.    THE RICO CLAIM SHOULD BE DISMISSED WITH PREJUDICE.

#### A.    The PSLRA's Securities Exclusion Bars the RICO Claim.

Plaintiffs cannot evade the PSLRA Bar. Plaintiffs do not contest that the CAC attempts to allege securities fraud. If the securities claim is actionable, the PSLRA Bar plainly applies. With respect to the tokens that are not alleged to be securities, Plaintiffs' cited cases are inapposite because they involve conduct courts found not actionable as securities fraud. Here, Plaintiffs' allegations regarding the alleged securities and non-securities tokens are interwoven because the CAC alleges the same conduct as to both groups in one scheme. *See* MTD at 13.

#### B.    Plaintiffs Do Not Have RICO Standing to Sue Baton.

The Opp.'s three attempts to recast Plaintiffs' injuries to support RICO standing do not survive scrutiny. First, Plaintiffs have not alleged a cognizable injury based upon their purchase of tokens that "failed to graduate [. . . and] became virtually worthless." Opp. at 10. The Opp.'s suggestion that losses occurred "at the moment of purchase" or "at the Point of Sale" (*id*. at 10, 13) contradicts the CAC's allegation that losses occurred when token values "collapsed within days or weeks of issuance." CAC ¶ 28; *see also* ¶ 182. The multiple intervening factors during this time gap require dismissal. *See* MTD at 13-17.

Second, the 1% platform fee cannot establish RICO standing. The CAC alleges no misrepresentations or violations of law tied to the fee, which was therefore independent of any alleged racketeering conduct. *See Brill v. Postle*, 2020 WL 2936688, at *9 (E.D. Cal. June 3, 2020) (no RICO standing because "plaintiffs would have had to pay the rake regardless of" the alleged predicate acts); *see also Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496 (1985) (RICO standing requires injury caused "by the conduct constituting the violation.").

Third, allegations of misrepresentations as to a "fair launch" or "priority 'tip' fee" cannot support RICO standing. The CAC alleges that Okafor paid "priority fees" but does not allege any injury from execution mechanics. CAC ¶ 28. Similarly, while Okafor and Aguilar allegedly traded "multiple 'fair-launch'" tokens, the CAC alleges no specific injury from tokens that were *not* fair-launched. *Id*. ¶¶ 28-29. The Opp. asserts that Defendants "extracted a fee immediately and required additional tipping to participate while insiders jumped the line," (Opp. at 14), but the cited paragraphs do not support that claim. *See* CAC ¶¶ 285-294, 329-337; RCS ¶ 149. The Opp. also attempts to transform Jito software bundling and tipping into evidence that each transaction was subject to front-running and manipulation. However, the CAC identifies no particular transactions or victims, and therefore does not plausibly allege a RICO injury. MTD at 14-15.[3]

    **C.**    **The CAC Fails to Adequately Plead a § 1962(c) Claim.**

        **1.**    **The CAC Does Not Adequately Plead a RICO Enterprise.**

The Opp. confirms that the CAC's allegations fall short of supporting a plausible inference of an association-in-fact enterprise organized around a common purpose. The alleged common purpose of monetizing "Solana-based speculative activity" (CAC ¶ 307) "is little more than a naked assertion devoid of further factual enhancement" and "fail[s] to provide a plausible basis for inferring that [defendants] acted on behalf of the enterprise as opposed to on behalf of themselves in their individual capacities, to advance their individual self-interests." *D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) (cleaned up).

Plaintiffs also fail to allege relationships sufficient to support an enterprise. Neither the pleadings nor the Opp. explain how or when the purported enterprise members came to an

---

[3] Cases recognizing RICO injuries without calculating their value, and *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 (2008), which allows for third-party reliance in certain circumstances, do not help Plaintiffs, because here the CAC fails to identify any transactions that injured any Plaintiff or any putative class member.

agreement to act together. Conclusory assertions about complementary roles or sequential operational steps do not transform routine business decisions into a functioning enterprise, and the cases Plaintiffs cite, all from other circuits and involving distinguishable facts, are inapposite.

### 2. The CAC Does Not Adequately Plead Two or More Predicate Acts.

**Gambling-Related Predicate Acts**. The CAC fails to plead a predicate act under 18 U.S.C. § 1955 because it does not allege that Plaintiffs staked something of value "upon an agreement or understanding to receive something of value in the event of a certain outcome." MTD at 20. Plaintiffs claim the value they could receive was if "the token graduates into open trading, they could sell their token at an inflated price for a profit." Opp. at 25-26. But the transaction was complete upon purchase: buyers paid money and received tokens. The ability to sell later was inherent to the purchase, not new value subsequently received. By Plaintiffs' logic, ordinary stock trading would be gambling too. Plaintiffs cite no authority or facts suggesting otherwise. In contrast, *Matter of Muidallap Corp. v. State Liquor Auth.*, 143 A.D.2d 9, 11-12 (1st Dep't 1988) shows that courts require additional value to be received under "chance procedures similar to those used in certain gambling games," which is not alleged here. *See* MTD at 20.

**Wire-Fraud Predicate Acts**. The CAC lacks particularized facts required by Rule 9(b) to support any wire-fraud predicate acts. *See* MTD at 20-22. The Opp. suggests that the CAC alleges "specific, falsifiable representations" and "specific intent to defraud" as to each Defendant. Opp. at 20-23. But none of the cited paragraphs identifies which Defendant made which alleged misrepresentations on which date, and why they were false and knowingly fraudulent. *See* MTD at 21. For example, Plaintiffs assert that Baton's "own documentation instructed token creators to use Jito bundles with a 'tip' to guarantee earliest inclusion," which was allegedly "flatly incompatible with a fair launch." Opp. at 23 (citing ¶ 291). But this overstates the CAC: ¶ 291 does not allege what the "documentation" is, who wrote or disseminated it (beyond unnamed third

8

parties and developers), or which "insider wallets" benefitted from which transactions. Plaintiffs fall short of Rule 9(b)'s requirement to plead fraud with particularity. *See* MTD at 21-22.

**Money Transmitting Predicate Acts**. The Opp.'s suggestion that Baton "transmitted value between and among customer wallets" (Opp. at 32) contradicts the CAC's allegation that Baton received funds from a customer and transmitted funds or "those tokens back to" the same customer. CAC ¶¶ 244, 455. Money transmitting, however, requires receiving "money from a customer and then, for a fee paid by the customer, transmit[ting] that money to a recipient in a place that the customer designates, usually [abroad]," which is not alleged here. *United States v. Velastegui*, 199 F.3d 590, 592 (2d Cir. 1999). References to delisting a token or MEV and "liquidity mixing" also fail to plead intentional misconduct. Opp. at 37; CAC ¶ 242.

**Remaining Predicate Acts**. Plaintiffs continue to conflate third-party conduct with Baton's actions (Opp. at 38-39) and fail to substantiate any remaining predicate acts as well.

### D.    The CAC Fails to Adequately Allege a "Conspiracy" Under Section 1962(d).

The RICO conspiracy allegations fail because Plaintiffs rely on only conclusory statements and allege no facts showing any defendant knowingly agreed to commit predicate acts. Neither the CAC nor the RCS alleges that each Defendant knowingly agreed to participate in the enterprise or commit predicate acts. The only allegation of agreement is the conclusory statement that "each Defendant agreed that members of the Pump Enterprise would commit at least two predicate acts." ¶ 442. But "parroting [] the statutory language in the pleadings is insufficient to show that each defendant knowingly agreed to participate in the alleged scheme." *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 407 (S.D.N.Y. 2000) (McMahon, J.). Accordingly, the conclusory allegations of agreement cannot sustain a §1962(d) claim.

### E.    Plaintiffs Do Not Adequately Allege Domesticity

Plaintiffs do not dispute that neither the CAC nor the RCS alleges any facts regarding

9

Aguilar's or Carnahan's location or any domestic nexus to the allegations. With respect to Okafor, the Opp. asserts that he incurred losses "in the United States"—an allegation absent from both the CAC and the cited RCS paragraph. *See* Opp. at 9; RCS ¶ 154. Plaintiffs may not amend their complaint through new factual assertions in opposition to a motion to dismiss. *See Small Bus. Bodyguard, Inc. v. House of Moxie, Inc.*, 2014 WL 5585339, at *3 (S.D.N.Y. Oct. 30, 2014) (McMahon, J.) ("Court will not consider any fact raised for the first time in the opposition papers").

### IV.  PLAINTIFFS' GBL CLAIMS ARE BARRED UNDER NEW YORK LAW.

Plaintiffs contend their GBL claim is viable because New York residents allegedly were targeted or injured by Baton's conduct. Opp. at 80-81. But Plaintiffs do not cite anything in support of these assertions, and none exist. Instead, the Opp. again attempts to "amend" the CAC *sub silentio* by inserting new allegations. The only alleged connection to New York is that the Blockchain defendants allegedly maintain a presence there. But as this Court has held, a company's place of business "is irrelevant" to determining a nexus with New York. *Miramontes v. Ralph Lauren Corp.*, 2023 WL 3293424, at *5 (S.D.N.Y. May 5, 2023) (McMahon, J.). The dispositive inquiry is "where the consumer was deceived," *id.*, and Plaintiffs do not identify a single New York resident or person deceived in New York. Even if there were a nexus, Plaintiffs do not dispute that they failed to allege actual injury or causation. *See also* MTD at 24-25.

### V.  THE UNJUST ENRICHMENT CLAIM IS DEFICIENT.

The Opp. does not address or refute that the unjust enrichment claim is duplicative of other claims, and the CAC fails to allege the absence of an adequate remedy at law. MTD at 25.

### CONCLUSION

For these reasons, the Court should dismiss all claims against Baton Corporation with prejudice.

Dated: October 10, 2025                                  Respectfully submitted,

**BROWN RUDNICK LLP**

*/s/ Stephen D. Palley*
Stephen D. Palley
Daniel L. Sachs
1900 N Street NW, 4th Floor
Washington, DC 20036
(202) 536-1700 (telephone)
(202) 536-1701 (facsimile)
spalley@brownrudnick.com
dsachs@brownrudnick.com

Kyle Dorso (*pro hac vice*)
One Financial Center
Boston, MA 02111
(617) 856-8200 (telephone)
(617) 289-0899 (facsimile)
kdorso@brownrudnick.com

*Counsel for Baton Corporation*

## WORD COUNT CERTIFICATION

I, Stephen D. Palley, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c). According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 3,329 words in the document.

*/s/ Stephen D. Palley*

Stephen D. Palley

## WORD COUNT CERTIFICATION FOR ECF NO. 89

Counsel is correcting here an unintentional omission from its opening brief. I, Stephen D. Palley, certify that Baton's memorandum of law in support of its motion to dismiss (ECF No. 89) complies with the word-count limitations set forth in Local Civil Rule 7.1(c). According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 8,377 words in that document.

*/s/ Stephen D. Palley*

Stephen D. Palley