UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIEGO AGUILAR, KENDALL CARNAHAN and MICHAEL OKAFOR on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>                v.<br><br>BATON CORPORATION LTD d/b/a PUMP.FUN, ALON COHEN, DYLAN KERLER, and NOAH BERNHARD HUGO TWEEDALE, SOLANA LABS INC., SOLANA FOUNDATION, JITO LABS INC., JITO FOUNDATION, ANATOLY YAKOVENKO, RAJ GOKAL, DAN ALBERT, AUSTIN FEDERA, LILY LIU, LUCAS BRUDER, BRIAN SMITH,<br><br>                Defendants. | Case No. 25 Civ. 00880 (CM) |

**THE BATON OFFICERS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE
<u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

                                                CAHILL GORDON & REINDEL LLP
                                                Samson A. Enzer
                                                Tammy L. Roy
                                                Lauren Perlgut
                                                32 Old Slip
                                                New York, NY 10005
                                                (212) 701-3000

                                                *Counsel for the Baton Officers*

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

I. PLAINTIFFS FAIL TO ALLEGE A PROPER BASIS FOR JURISDICTION OR JURISDICTIONAL DISCOVERY ............................................................................... 2

II. PLAINTIFFS' STATUTORY SELLER CLAIMS FAIL..................................................... 5

III. PLAINTIFFS' GROUP PLEADING CANNOT SUSTAIN THEIR RICO CLAIMS ...... 7

IV. PLAINTIFFS FAIL TO ADEQUATELY PLEAD THEIR GBL CLAIMS ....................... 8

V. PLAINTIFFS' REVISED UNJUST ENRICHMENT THEORY STILL FAILS............... 9

CONCLUSION....................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bayshore Cap. Advisors, LLC* v. *Creative Wealth Media Fin. Corp.*,
   667 F. Supp. 3d 83 (S.D.N.Y. 2023)..................................................................................5

*Brunero* v. *Vukasinovic*,
   2024 WL 4345731 (S.D.N.Y. Sept. 30, 2024)....................................................................6

*Caplan* v. *Dollinger*,
   2025 WL 1808530 (S.D.N.Y. June 30, 2025) .................................................................10

*Chirag* v. *MT Marida Marguerite Schiffahrts*,
   604 F. App'x 16 (2d Cir. 2015) .........................................................................................5

*Cruz* v. *FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013)..............................................................................................8

*Elsevier Inc.* v. *W.H.P.R., Inc.*,
   692 F. Supp. 2d 297 (S.D.N.Y. 2010)...............................................................................4

*In re Fyre Festival Litigation*,
   399 F. Supp. 3d 203 (S.D.N.Y. 2019)...............................................................................9

*Gross* v. *Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009)...............................................................................7

*Holsworth* v. *BProtocol Found.*,
   2021 WL 706549 (S.D.N.Y. Feb. 22, 2021).....................................................................5

*Litman, Asche & Gioiella, LLP* v. *Chubb Custom Ins. Co.*,
   373 F. Supp. 2d 314 (S.D.N.Y. 2005).............................................................................10

*Matter of People* v. *JUUL Labs, Inc.*,
   212 A.D.3d 414 (1st Dep't 2023) .....................................................................................4

*Nance* v. *New York Pub. Int. Rsch. Grp. Fund, Inc.*,
   2025 WL 965883 (S.D.N.Y. Mar. 31, 2025) ....................................................................4

*NovelAire Techs., L.L.C.* v. *Munters AB*,
   2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013)...................................................................5

*Risley* v. *Universal Navigation Inc.*,
   690 F. Supp. 3d 195 (S.D.N.Y. 2023)...............................................................................6

*Stevenson* v. *Thornburgh*,
   2024 WL 645187 (S.D.N.Y. Feb. 14, 2024)..................................................................3

*Universal Trading & Inv. Co.* v. *Credit Suisse (Guernsey) Ltd.*,
   560 F. App'x 52 (2d Cir. 2014) .....................................................................................5

**Statutes**

18 U.S.C. § 1965(b) ..............................................................................................................4

New York General Business Law §§ 349 & 350..................................................................8

Racketeer and Influenced and Corrupt Organizations Act ("RICO") ................................ *passim*

Securities Act of 1933 Section 12(a)(1).......................................................................1, 2, 5, 6, 10

Securities Act of 1933 Section 12(a)(2)................................................................................6

**Other Authorities**

Fed. R. Civ. P. 12(b)(2).........................................................................................................1

Fed. R. Civ. P. 12(b)(6).........................................................................................................1

Fed. R. Civ. P. 9(b) .............................................................................................................10

Baton Corporation Limited officers Alon Cohen, Dylan Kerler and Noah Tweedale (collectively, the "Baton Officers") respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiffs' Consolidated Amended Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[1]

## INTRODUCTION

It should come as no surprise that Plaintiffs' reaction to Defendants' motions to dismiss Plaintiffs' Amended Complaint was to file a motion for leave to further amend that pleading and seek jurisdictional discovery. The Amended Complaint is fatally flawed on its face, and Plaintiffs' opposition to Defendants' motions to dismiss (ECF No. 107) ("Opp.") does not come close to salvaging their deficient pleading. As to the Baton Officers specifically, Plaintiffs either ignore or completely mischaracterize the Baton Officers' showing that dismissal is warranted here:

- Plaintiffs offer virtually no response to the Baton Officers' showing that Plaintiffs have failed to allege any suit-related connection between the Baton Officers and the US or New York, as required to carry Plaintiffs' burden of establishing jurisdiction. (Opp. at 50-53).

- In Plaintiffs' tortured argument that the Baton Officers qualify as statutory sellers of allegedly unregistered securities under the Securities Act, Plaintiffs disregard recent Second Circuit case law holding that general promotion of an exchange platform does not constitute solicitation of the purchase of any specific security. (*Id.* at 69-72).

- After the Baton Officers challenged Plaintiffs' defective "group pleading" and conclusory allegations as insufficient to assert a RICO claim against the Baton Officers, Plaintiffs

---

[1] Unless otherwise noted, all emphasis is added and internal citations and quotations are omitted. Defined terms have the same meaning as set forth in the Baton Officers' Memorandum of Law in Support of Their Motion to Dismiss the Consolidated Amended Class Action Complaint (ECF No. 97) ("Officers' Mov. Br.").

- doubled down on that improper tactic in their Opposition by retrospectively defining "Pump.fun" in the Amended Complaint to include Baton and all three Baton Officers, which are discussed as a collective group throughout Plaintiffs' opposition brief. (*Id.* at 1 n.1, *passim*).
- Even if they could show personal jurisdiction with respect to their state law claims, which they cannot, Plaintiffs disregard that they have failed to plead key elements of those claims.
- Plaintiffs misrepresent that the Baton Officers did not request dismissal with prejudice (Opp. at 81), when in fact they did. (Officers' Mov. Br. at 20).

These failings, as well as the ones addressed in the briefs filed by Baton and the Blockchain Defendants, are fatal to Plaintiffs' claims against the Baton Officers. No amount of amendments will make these claims viable. The Amended Complaint should be dismissed with prejudice.

## I. PLAINTIFFS FAIL TO ALLEGE A PROPER BASIS FOR JURISDICTION OR JURISDICTIONAL DISCOVERY

Plaintiffs do not dispute that this Court lacks general jurisdiction over the Baton Officers, or that the proper inquiry is thus their suit-related connections with the relevant forum. (Officers' Mov. Br. at 16). Plaintiffs devote much of their response to the Baton Officers' jurisdictional motion to arguing that the correct forum to analyze for their Securities Act and RICO claims is the United States, rather than New York. (Opp. at 51). This is a red herring. The Baton Officers never asserted that New York is the correct forum for the jurisdictional analysis of Plaintiffs' federal claims—and Plaintiffs gloss over the fact that the Amended Complaint simply does not allege that the Baton Officers had *any* contacts with the US. (Officers' Mov. Br. at 6-9). Plaintiffs' jurisdictional allegations fail for this and several additional reasons.

First, Plaintiffs cannot rely on generic statements by ***Baton*** to support jurisdiction over the ***Baton Officers***. Plaintiffs argue that the Baton Officers exercised operational control over

Pump.fun, which conducted marketing campaigns "via TwitterX [sic] posts" that purportedly "target[ed] US users" because the posts used phrases like "better than venture capital," "unicorns," and "billion-dollar meme coins," that people in the US (and everywhere else) use. (Opp. at 51-52). These vague phrases are far too attenuated to suggest the US was a specific target of these globally-disseminated communications. But even if the US was a target (which Plaintiffs have not plausibly pleaded), Plaintiffs have no response to the argument that corporate control simply is not sufficient to establish personal jurisdiction over corporate officers. (*See* Officers' Mov. Br. at 8 ("[T]he Due Process Clause is made of sterner stuff than a mere allegation of [corporate] control.") (quoting *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449, 454 (S.D.N.Y. 2005))).

Second, Plaintiffs' few allegations about the Baton Officers are impermissibly conclusory. Plaintiffs argue that the Baton Officers "personally promoted [Pump.fun] as a trading venue and casino to lure retail users into unlawful wagering," citing only to a single paragraph in the Amended Complaint. (Opp. at 52 (citing AC ¶ 34 ("Each founder exercised operational control over Pump.fun and personally promoted the platform as a trading venue and casino, thereby luring retail users into unlawful wagering."))). However, such conclusory allegations fail to establish a prima facie showing of jurisdiction. *Stevenson* v. *Thornburgh*, 2024 WL 645187, at *33 (S.D.N.Y. Feb. 14, 2024) (McMahon, J.). While the Amended Complaint cites to a handful of Mr. Cohen's tweets and public statements (AC ¶¶ 116, 155-58, 162), Plaintiffs do ***not*** (and could not) argue that these statements confer jurisdiction over him. In fact, Plaintiffs do not respond at all to the flurry of authorities cited in the Baton Officers' moving brief that generic statements on Twitter and social media do not target any specific forum. (*See* Officers' Mov. Br. at 8-9). Plaintiffs assert no other basis to support any claim that the Baton Officers specifically targeted US users, and even admit that "[a]ny user, anywhere in the world," can use Pump.fun. (AC ¶ 175).

Plaintiffs' citation to *Matter of People* v. *JUUL Labs, Inc.*, 212 A.D.3d 414 (1st Dep't 2023) only highlights the dearth of jurisdictional allegations here. In *JUUL Labs*, the state court found jurisdiction over defendants who traveled to New York for meetings, sought to arrange in-person meetings with "New York targets," helped arrange marketing aimed directly at New Yorkers that they described as their "NYC takeover," and declared that "New York City users should be the focus of [JUUL's] branding/marketing." *Id*. at 415. That case simply does not stand for the proposition Plaintiffs proffer that "social media promotion" or "active control over platform operations" (Opp. at 50) are sufficient to plead that a defendant targeted a particular jurisdiction or otherwise support a minimum contacts analysis.

Third, with respect to Plaintiffs' state law claims (which Plaintiffs do not dispute require a New York connection), Plaintiffs do not even attempt to argue that they have pleaded any relevant contacts with New York (Officers' Mov. Br. at 9-11), which defeats jurisdiction as to those claims. *Nance* v. *New York Pub. Int. Rsch. Grp. Fund, Inc.*, 2025 WL 965883, at *6 (S.D.N.Y. Mar. 31, 2025) ("It is well-established that a plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").

Fourth, Plaintiffs' reliance on *Elsevier Inc*. v. *W.H.P.R., Inc.*, 692 F. Supp. 2d 297 (S.D.N.Y. 2010) is misplaced. (Opp. at 53). There, the court asserted "ends of justice" RICO jurisdiction over residents of Indiana, not foreign residents outside of RICO's service of process provisions. *Elsevier*, 692 F. Supp. 2d at 315; 18 U.S.C. § 1965(b) (allowing for "parties residing in any other district" to be summoned).

Finally, recognizing the infirmity of their jurisdictional allegations, Plaintiffs request, in the alternative, "discovery into the issues supporting general jurisdiction." (Opp. at 50 n.5). A plaintiff is entitled to jurisdictional discovery only where the allegations suffice "to articulate a

colorable basis for personal jurisdiction, which could be established with further development of the factual record." *Bayshore Cap. Advisors, LLC* v. *Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 151 (S.D.N.Y. 2023); *see also Chirag* v. *MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 18-19 (2d Cir. 2015) ("Where plaintiffs do not establish a prima facie case that the district court has jurisdiction over the defendant, the district court does not err in denying jurisdictional discovery."). Thus, in the sole case cited by Plaintiffs, *Cerovene, Inc.* v. *Fukuzyu Pharm. Co.*, the court granted limited jurisdictional discovery after concluding that the plaintiffs had alleged "facts that would support a colorable claim of jurisdiction." 2025 U.S. Dist. LEXIS 43236, at *8 (S.D.N.Y. Mar. 10, 2025).

Here, in contrast, Plaintiffs' threadbare allegations against the Baton Officers do not raise any fact questions as to jurisdiction. Thus, jurisdictional discovery is inappropriate. *See NovelAire Techs., L.L.C.* v. *Munters AB*, 2013 WL 6182938, at *13 (S.D.N.Y. Nov. 21, 2013) (McMahon, J.) ("[I]f the plaintiff offers only speculations or hopes" that "further connections to [the forum] will come to light in discovery, the court should dismiss the complaint without allowing discovery."); *Universal Trading & Inv. Co.* v. *Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 56 (2d Cir. 2014) (holding that discovery cannot be used to "allow [plaintiffs] to fish for additional grounds of jurisdiction that they ha[ve] not alleged"); *Holsworth* v. *BProtocol Found.*, 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021) ("The discovery request contradicts the purpose of personal jurisdiction, not to subject foreigners to the burden of court proceedings in a jurisdiction where there is neither general or specific jurisdiction.").

## II. PLAINTIFFS' STATUTORY SELLER CLAIMS FAIL

In their moving brief, the Baton Officers established that there are no allegations that the Baton Officers "solicited" any of Plaintiffs' purchases, which is fatal to Plaintiffs' claims that the Baton Officers are statutory sellers under Section 12(a)(1) of the Securities Act. (Officers' Mov.

Br. at 12-13). In their opposition, Plaintiffs do not point to *any* allegations or authority to the contrary. Plaintiffs do not dispute that they were required—and failed—to allege that any of the Baton Officers promoted the tokens that Plaintiffs contend were sold as securities or that the Baton Officers solicited Plaintiffs' purchases (Opp. at 69-72), which defeats their Securities Act claims. *See Brunero* v. *Vukasinovic*, 2024 WL 4345731, at *7 (S.D.N.Y. Sept. 30, 2024) ("Generally, a party's failure to respond to an argument effectively concedes that argument.").

Instead, Plaintiffs repeat their allegations that the Baton Officers promoted generally the Baton platform, citing only to a handful of specific tweets by Mr. Cohen. (Opp. at 70-71 (pointing to statements calling the Pump.fun site "a generator of AI unicorns, early-stage winners, and billion-dollar meme coins" and, as to tokens Plaintiffs did not trade in, that they were "models for investment narratives")). As noted in the Baton Officers' moving brief, the Second Circuit recently rejected nearly identical allegations. (Officers' Mov. Br. at 12-13). In *Risley* v. *Universal Navigation Inc.*, the Second Circuit affirmed dismissal of Section 12(a)(1) claims, finding that promotion of a trading exchange, including media posts "touting the safety" of the platform, were "too attenuated" to plead solicitation. 2025 WL 615185, at *3 (2d Cir. Feb. 26, 2025) (summary order). Plaintiffs ignore *Risley*, instead citing just one out-of-circuit case that is inapposite because it arose in the context of a Section 12(a)(2) claim where the defendants had used social media to advocate for the purchase of specific funds they managed. (Opp. at 71 (citing *Pino* v. *Cardone Cap., LLC*, 55 F.4th 1253, 1259-60 (9th Cir. 2022))). As the district court in *Risley* reasoned, however, "no plaintiff would sue the New York Stock Exchange or NASDAQ for tweeting that its exchange was a safe place to trade after that plaintiff had lost money due to an issuer's fraudulent schemes." *Risley* v. *Universal Navigation Inc.*, 690 F. Supp. 3d 195, 222 (S.D.N.Y. 2023). Yet that is all that is alleged here, which is insufficient as a matter of law under *Risley*.

### III. PLAINTIFFS' GROUP PLEADING CANNOT SUSTAIN THEIR RICO CLAIMS

Plaintiffs do not dispute that the requirements of Section 1962(c) "must be established *as to each individual defendant*." (Officers' Mov. Br. at 13 (quoting *DeFalco* v. *Bernas*, 244 F.3d 286, 306 (2d Cir. 2001))). Their opposition confirms that they have failed to do so. Instead, Plaintiffs merely double down on their inadequate group pleading. (Opp. at 39-40). After retrospectively defining "Pump.fun" to include Baton *and* the Baton officers collectively (*id.* at 1 n.1), Plaintiffs argue that "Pump.fun, Solana Labs, the Solana Foundation, and Jito Labs each 'played some part in directing' the Pump Enterprise's affairs, not simply their own," and that those "allegations plead Pump.fun's direction of the enterprise's core process." (*Id.* at 39-40). Plaintiffs are wrong. Such allegations come nowhere close to satisfying Plaintiffs' pleading burden to pursue RICO claims. *See, e.g.*, *Gross* v. *Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) ("[L]umping the defendants into collective allegations results in a failure to demonstrate the elements of § 1962(c) with respect to each defendant individually, as required.").

Plaintiffs' sole argument as to the Baton Officers specifically is that each "exercised operational control over Pump.fun, personally promoted 'fair launch,' and directed and knowingly participated in the enterprise's affairs, including the bonding-curve engine, 1% fee, 'front-running protection,' and 'no presale/no insider allocations' messaging that drove orders into the extraction rails." (Opp. at 6 (citing AC ¶¶ 37-48, 121-24, 155-72, 329-37, 465-68)). The portions of the Amended Complaint cited by Plaintiffs for this point, however, do not support this argument. Of those 47 paragraphs, only *seven* even reference the Baton Officers, and of those, just three assert in conclusory fashion that each Baton Officer "directed and knowingly participated in the affairs of the Pump Enterprise as detailed below," while four paragraphs quote or reference public statements by Mr. Cohen, none of which support that he was participating in a RICO enterprise. (*See* Officers' Mov. Br. at 14-16).

## IV. PLAINTIFFS FAIL TO ADEQUATELY PLEAD THEIR GBL CLAIMS

Plaintiffs do not dispute that GBL Sections 349 and 350 contain "New York[] territorial requirements." (Opp. at 80; *see also* Officers' Mov. Br. at 16-17). Nor do Plaintiffs dispute that no Plaintiff alleges he is a resident of New York or transacted with the Baton Defendants in New York. (Officers' Mov. Br. at 16). Instead, Plaintiffs argue that they have standing to assert a GBL claim because (1) digital marketing campaigns "target[ed] . . . New York investors," and (2) Plaintiffs have alleged that "Solana Labs and the Solana Foundation both maintain substantial physical presence in New York." (Opp. at 80-81). Neither of these can salvage their claim.

First, Plaintiffs have alleged only that Mr. Cohen (and not Messrs. Kerler or Tweedale) made public statements on Twitter and through other digital platforms. (AC ¶¶ 116, 155-58, 162). However, even as to Mr. Cohen, none of his statements are alleged to have been aimed at New Yorkers specifically; indeed, it is clear on their face that they were not. *Id*. As Plaintiffs themselves have alleged, Pump.fun's reach is global. (AC ¶ 175 ("Any user, anywhere in the world, can begin wagering in seconds, entirely anonymously."), ¶ 244 (alleging "activities on a global scale")). Plaintiffs' reliance on *Cruz* v. *FXDirectDealer, LLC*, 720 F.3d 115, 124 (2d Cir. 2013), where the court upheld GBL claims, is misplaced. (Opp. at 81). In *Cruz*, unlike here, the complaint alleged numerous connections to New York, including that the defendant required that all customer communications be sent to its New York office and its agreement with the plaintiff specified that New York law governed. 720 F.3d at 123-24. Here, there are no comparable allegations with respect to Baton or the Baton Officers.[2]

---

[2] Plaintiffs also suggest that they have alleged "harm" to New York "residents," but do not point to any specific allegations. (Opp. at 80-81). And Plaintiffs do not dispute that they may not bring claims on behalf of "New York Residents of the Class" when they lack standing themselves. (Officers' Mov. Br. at 17).

Plaintiffs also contend, without any support, that they can assert claims against the Baton Officers because "Solana Labs and the Solana Foundation both maintain substantial physical presence in New York." (Opp. at 81). But Plaintiffs have not drawn any connection between this office space, and the alleged misconduct by the Baton Officers or Plaintiffs' particular transactions. *See In re Fyre Festival Litigation*, 399 F. Supp. 3d 203, 223 (S.D.N.Y. 2019) (plaintiffs lack standing to bring GBL claim where complaint merely alleged deceptive practices "occurred in and emanated from New York, where Fyre Media and Fyre Festival were headquartered, and where the individual defendants resided, conducted business and/or had extensive ties"). Indeed, Plaintiffs admit that Solana Labs and Foundation, on the one hand, and Baton on the other are "unique and disconnected companies." (Opp. at 1-2).

Finally, Plaintiffs largely ignore the arguments that Plaintiffs' claims additionally fail because Plaintiffs have not sufficiently alleged the misrepresentation or causation requirements of the GBL. (Officers' Mov. Br. at 17). Plaintiffs contend that they "plausibly plead that they purchased their coins 'as a result of' Defendants' extensive national marketing and sales campaigns wherein Defendants made numerous and widespread public statements promoting the platform's fairness and equal trading opportunities." (Opp. at 80 (citing AC ¶¶ 144, 147-150, 165, 184-185)). However, none of those paragraphs address Plaintiffs' motivations or transactions, nor does the Complaint anywhere plead that Plaintiffs took specific actions "as a result of" statements by the Baton Officers.

## V. PLAINTIFFS' REVISED UNJUST ENRICHMENT THEORY STILL FAILS

Plaintiffs admit that to state a claim for unjust enrichment, they must allege that the Baton Officers were enriched at Plaintiffs' expense, and the benefit must be "specific" and "direct." (Opp. at 72 (citing *Kaye* v. *Grossman*, 202 F.3d 611, 616 (2d Cir. 2000))). And Plaintiffs do not dispute

that their unjust enrichment allegations, which sound in fraud, must satisfy Rule 9(b). (*See* Officers' Mov. Br. at 18-19; Opp. at 72 ("Defendants have been unjustly enriched through their violations of the Securities Act and/or RICO")).[3]

In the Amended Complaint, Plaintiffs allege that "Defendants" were "unjustly enriched" at "the expense of Plaintiffs" by the retention of "platform fees, MEV profits, and token allocations" (AC ¶ 472). In their opposition, Plaintiffs shift their focus, arguing that, in addition to the 1% transaction fee charged by Pump.fun, "Pump.fun's founders and insiders moved over $700 million in profits off-chain." (Opp. at 73 (quoting AC ¶ 361)). However, Plaintiffs still cannot point to any factual allegation supporting that the Baton Officers personally received the 1% fees paid by Plaintiffs or the "$700 million in profits," nor even that the "$700 million" contained a single dollar spent by Plaintiffs. "It is [] axiomatic that for a plaintiff to recover for unjust enrichment, defendants must in fact be enriched," and enriched at the expense of the plaintiff. *See Litman, Asche & Gioiella, LLP* v. *Chubb Custom Ins. Co.*, 373 F. Supp. 2d 314, 318 (S.D.N.Y. 2005). Plaintiffs' "failure to plead facts identifying with any specificity the benefit each of [the Baton Officers] is alleged to have received is fatal to their unjust enrichment claims." *Caplan* v. *Dollinger*, 2025 WL 1808530, at *9 (S.D.N.Y. June 30, 2025).

## CONCLUSION

Plaintiffs' claims against the Baton Officers should be dismissed with prejudice.

---

[3] Plaintiffs thus concede that their unjust enrichment claim duplicates their other claims. As argued by Baton, this is an independent basis for dismissal of this claim (*see* Baton Br. at 25), which Plaintiffs do not respond to at all.

| | |
|---|---|
| Dated:   October 10, 2025 | Respectfully submitted, |

                **CAHILL GORDON & REINDEL LLP**

                By: <u>*/s/ Samson A. Enzer*</u>
                   Samson A. Enzer
                   Tammy L. Roy
                   Lauren Perlgut
                   32 Old Slip
                   New York, NY 10005
                   (212) 701-3000

                *Counsel for the Baton Officers*

## WORD COUNT CERTIFICATION

  I, Samson A. Enzer, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c).  According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 3,192 words in the document.

                <u>*/s/ Samson A. Enzer*</u>
                Samson A. Enzer