UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIEGO AGUILAR, KENDALL CARNAHAN, AND MICHAEL OKAFOR on behalf of themselves and all others similarly situated,

        *Plaintiffs,*

    v.

BATON CORPORATION LTD, d/b/a PUMP.FUN, ALON COHEN, DYLAN KERLER, NOAH BERNHARD HUGO TWEEDALE, SOLANA LABS, INC., SOLANA FOUNDATION, JITO LABS INC., JITO FOUNDATION, ANATOLY YAKOVENKO, RAJ GOKAL, DAN ALBERT, AUSTIN FEDERA, LILY LIU, LUCAS BRUDER, BRIAN SMITH

        *Defendants.*

Case No. 1:25-cv-00880-CM-BCM

ORAL ARGUMENT REQUESTED

**DEFENDANTS SOLANA LABS, INC., SOLANA FOUNDATION, DAN ALBERT AND AUSTIN FEDERA'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

Gregory N. Wolfe
Joseph W. Baier (*pro hac vice*)
NAGY WOLFE APPLETON LLP
31 East 62nd Street
New York, New York 10065

*Counsel for Defendants Solana Labs, Inc., Solana Foundation, Dan Albert and Austin Federa*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ........................................................................................................ 1

**ARGUMENT** ...................................................................................................................................... 1

    I.    THE OPPOSITION CONFIRMS THE ABSENCE OF A RICO INJURY ........................................ 1

    II.    THE ENTERPRISE AND CONDUCTING ALLEGATIONS ARE INSUFFICIENT ............................. 3

    III.    THE OPPOSITION CONFIRMS THAT THE AC FAILS TO ALLEGE ANY PREDICATE ACTS ....... 4

    IV.    THE OPPOSITION CONFIRMS THE ABSENCE OF PROXIMATE CAUSATION ........................... 7

    V.    THE OPPOSITION CONFIRMS THE ABSENCE OF A DOMESTIC INJURY ................................. 8

    VI.    THE RICO SECURITIES FRAUD BAR REQUIRES DISMISSAL .................................................... 9

    VII.    THE CONSPIRACY CLAIM NECESSARILY FAILS .................................................................... 9

    VIII.    PERSONAL JURISDICTION OVER THE COMMON LAW CLAIMS FAILS ................................. 10

    IX.    THE OPPOSITION CONFIRMS THE COMMON LAW CLAIMS FAIL ........................................ 10

**CONCLUSION** ................................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brill v. Postle*,
    2020 WL 2936688 (E.D. Cal. June 3, 2020) ............................................................................2

*Colangelo v. Champion Petfoods USA*,
    2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) ...........................................................................6

*Daly v. Castro Llanes*,
    30 F. Supp. 2d 407 (S.D.N.Y. 1998).........................................................................................5

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
    232 F.3d 173 (3d Cir. 2000).......................................................................................................8

*In re Ethereummax*,
    2022 WL 20804358 (C.D. Cal. Dec. 6, 2022) ..........................................................................2

*Flexborrow LLC v. TD Auto Fin. LLC*,
    255 F. Supp. 3d 406 (E.D.N.Y. 2017) .......................................................................................4

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009).......................................................................................5

*Gurung v. MetaQuotes Ltd.*,
    2024 WL 3849460 (E.D.N.Y. Aug. 16, 2024)..........................................................................3

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005).......................................................................................9

*Licht v. Binance Holdings*,
    2025 WL 625303 (D. Mass. Feb. 5, 2025) ...............................................................................9

*Liss v. Manuel*,
    296 N.Y.S.2d 627 (Civ. Ct. 1968) ............................................................................................5

*Lorenzo v. SEC*,
    587 U.S. 71 (2019)................................................................................................................5, 6

*In re MasterCard Int'l Inc.*,
    132 F. Supp. 2d 468 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002) ..............................8

*Mezzonen, S.A. v. Wright*,
    1999 WL 1037866 (S.D.N.Y. Nov. 16, 1999).........................................................................9

*MLB Props., Inc. v. Price*,
  105 F. Supp. 2d 48 (E.D.N.Y. 2000) ...................................................................................2

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  651 F.3d 268 (2d Cir. 2011)..................................................................................................9

*Pace-O-Matic v. N.Y. State Liquor Auth.*,
  72 A.D.3d 1144 (3d Dep't 2010). .........................................................................................5

*Plato's Cave Corp. v. State Liquor Auth.*,
  68 N.Y.2d 791 (1986) ...........................................................................................................5

*Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*,
  832 F. Supp. 2d 194 (E.D.N.Y. 2010) ..................................................................................6

*Singh v. Illusory Sys.*,
  727 F. Supp. 3d 500, 509 (D. Del. 2024)..............................................................................7

*Stutts v. De Dietrich Grp.*,
  465 F. Supp. 2d 156 (E.D.N.Y. 2006) ................................................................................10

*In re Tether & Bitfinex Crypto Asset Litig.*,
  576 F. Supp. 3d 55 (S.D.N.Y. 2021).....................................................................................8

*U.S. v. Autuori*,
  212 F.3d 105 (2d Cir. 2000) .................................................................................................6

**Statutes**

15 U.S.C. §§ 78a–78qq..................................................................................................................6

15 U.S.C. § 1114(1) .......................................................................................................................4

15 U.S.C. § 1125(a) .......................................................................................................................4

15 U.S.C. § 1125(c) .......................................................................................................................4

18 U.S.C. § 1084............................................................................................................................4

18 U.S.C. § 1955............................................................................................................................4

18 U.S.C. § 1960............................................................................................................................7

31 U.S.C. §§ 5361–5367................................................................................................................4

N.Y.P.L. § 225.00 .........................................................................................................................4

N.Y.P.L. § 225.10..........................................................................................................................4

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition offers 81 pages of rhetoric, devoid of factually analogous cases or meaningful effort to distinguish the cases and arguments in the motion to dismiss (the "Motion").[1] Having voluntarily dismissed the Jito Defendants, Plaintiffs concede the allegations are deficient as to them. They should have dropped the claims altogether, which are equally deficient against the Blockchain Defendants, who are not alleged to have made any false statement but merely to have contributed to open-source code. Plaintiffs have alleged no cognizable injury, enterprise, predicate act, or causal theory. Without viable claims against the Blockchain Defendants, the RICO claims necessarily fail against all because the Baton Defendants cannot themselves constitute an enterprise. Given that it is virtually undisputed that Aguilar and Carnahan have not sufficiently alleged RICO claims, this brief focuses on the many reasons Okafor's claims fail.

**ARGUMENT**

**I.	THE OPPOSITION CONFIRMS THE ABSENCE OF A RICO INJURY**

The Opposition confirms Plaintiffs are alleging that, when they purchased their tokens, they "received what amounted to a gambling slip." Opp. at 10. And as the Motion (at 6–7) explained, that theory of liability fails because losses attributable to alleged gambling or the purchase of speculative assets are not cognizable harms under RICO.

Plaintiffs cite no case to the contrary. Plaintiffs repeatedly intone that their injury is not "post hoc disappointment," but "a case of actual funds taken from Plaintiffs at the moment of purchase." Opp. at 10. That is sophistry: in any gambling case, the plaintiff parts with money at the point of sale, whether when paying to play blackjack (*see Brill*), buy baseball cards (*see MLB*

---

[1] Defined terms have the same meaning as used in the Motion. All emphases have been added unless noted otherwise. The Opposition does not dispute that Plaintiffs' claims must generally meet Rule 9(b). Mot. at 6. Under either Rule 9(b) or Rule 8(a)'s plausibility standard, the claims fail.

1

*Props.*), or buy tokens (*see Ethereummax*). In each instance, the plaintiff has purchased a "chance" to profit and, "having paid for it and received it, … has not suffered any … RICO property injury." *MLB Props., Inc. v. Price*, 105 F. Supp. 2d 48, 53 (E.D.N.Y. 2000). So too here: the AC alleges that Plaintiffs engaged in gambling by purchasing tokens by "depositing real value in exchange for *a fleeting chance* at speculative profit" and that their harm was the failure to realize a profit on those purchases. AC ¶ 132. By way of example, the CMS states that Okafor "alleges total trading losses of about $242,076.74." CMS ¶ 143. However, "it seems quite plausible, based on Plaintiffs' own allegations, that Plaintiffs could have received far more than what they paid for the Tokens had they sold them at the right time." *In re Ethereummax*, 2022 WL 20804358, at *12 (C.D. Cal. Dec. 6, 2022). Indeed, it is undisputed that Okafor turned a profit on some tokens. Mot. at 1, 5.

Next, Plaintiffs (at 13–14) argue that, unlike "collectibles," tokens have no "intrinsic" value "apart from" a "speculative … gamble" but do not explain why that matters. That is true in the run-of-the-mill gambling case, *e.g.*, slot machines or blackjack. And as in *Ethereummax*, "Plaintiffs cannot claim that they paid more than fair market value for the … Tokens because the Tokens inherently have no value outside of what the market is willing to pay in real-time." *Id.*

Plaintiffs also note that Baton took a 1% "rake" on token purchases (Opp. at 48–49), but courts have rejected the notion that a "rake" can constitute an injury where, as here, it was baked into the purchase price. *Brill v. Postle*, 2020 WL 2936688, at *9 (E.D. Cal. June 3, 2020). That a defendant enjoyed a benefit does not mean the plaintiff suffered a harm.

Finally, Okafor's payment of priority fees for high-speed trading (Opp. at 14, 49) likewise cannot constitute a harm because Okafor got what he paid for: high-speed trading in an effort to turn a profit on his token purchases. *MLB Props.*, 105 F. Supp. 2d at 53. That he failed to execute his trading strategies successfully does not equate to harm. *Id.*

## II. THE ENTERPRISE AND CONDUCTING ALLEGATIONS ARE INSUFFICIENT

The Motion (at 8) explained that the gravamen of the alleged enterprise was that (1) many years before Baton existed and the alleged enterprise began in January 2024, the Blockchain Defendants promoted their own self-interest by contributing to the open-access, available-to-anyone blockchain code and then continued to maintain that code; and (2) the other Defendants built software on top of that code. Citing *Gurung v. MetaQuotes Ltd.*, the Motion further explained that such conduct amounts to allegations of "standard business transactions" and the Blockchain Defendants' awareness that "software was essential to the success of the" enterprise, which are insufficient to allege an enterprise. 2024 WL 3849460, at *9 (E.D.N.Y. Aug. 16, 2024), *appeal noticed*, No. 25-328 (2d. Cir.). And the Opposition repeatedly confirms that the AC is predicated on the notion that the Blockchain Defendants did not "provide the technical updates to protect users from their co-conspirators" or act to "meaningfully stop or mitigate the harms" in response to "red flags" (Opp. at 2–3, 8), a theory of inaction insufficient to allege conducting. Mot. at 9.

The Opposition does not even address *Gurung* and the long line of cases upon which it relies. Nor does it explain how the AC, as currently pleaded, (1) alleges an enterprise, (2) let alone how the Blockchain Defendants conducted its affairs post-formation. Instead, the Opposition (at 5, 8) argues that, in April 2024, the Blockchain Defendants "recommended a software update" to "alleviate … congestion" on the blockchain, which coincided with "Pump.fun's share of all Solana trading" increasing. Although the Opposition purports to cite AC ¶¶ 438–68 and CMS ¶¶ 4–7 for support, the 2024 "software update" appears nowhere in the AC or CMS, which Plaintiffs cannot amend through their Opposition. Even if considered, the argument confirms the implausibility of the allegations: the purported code changes had an obvious beneficial purpose (improving functioning of the blockchain) and were openly *proposed* by the Blockchain Defendants for approval before being adopted via vote by innumerable non-RICO persons. Although that may

3

have been "helpful" to the Baton Defendants, it is insufficient to allege an enterprise, let alone conducting. *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 415 (E.D.N.Y. 2017).

### III.    THE OPPOSITION CONFIRMS THAT THE AC FAILS TO ALLEGE ANY PREDICATE ACTS

It is undisputed that the Wire Act, UIGEA, 15 U.S.C. §§ 1114(1), 1125(a) & (c), and conspiracy to commit wire fraud and to aid an unlicensed money transmission business predicate acts are insufficiently pleaded or do not qualify as predicate acts. Mot. at 11–16. And the Opposition (at 38–39) is non-responsive to the Motion (at 15–16) for why the counterfeiting/identity theft predicate acts are deficient. No other predicate act is sufficiently pleaded either:

**Section 1955.** The Opposition claims that the Blockchain Defendants "materially aided … gambling operations," but does not explain how they "*conduct[ed], finance[d], manage[d], supervise[d], direct[ed], or own[ed]* all or part of an illegal gambling business," as required to allege a Section 1955 violation. Independently, the Opposition only addresses N.Y.P.L. § 225.00, which sets forth the definition of gambling, and does not itself set forth a violation of state law, as required under Section 1955. The only alleged state law violation is N.Y.P.L. § 225.10, which requires allegations of bookmaking or promoting a lottery. Mot. at 11. It is undisputed that neither bookmaking nor a lottery—which have special statutory definitions, *see* N.Y.P.L. 225.00(9–11)—are alleged, which defeats the predicate act.

Independently, no gambling is alleged. The Opposition (at 25–26) now hinges its gambling theory on a purported distinction between pre-graduated and graduated tokens, which the AC analogizes to the difference between pre-IPO and IPO securities because graduated tokens can be traded on decentralized exchanges. AC ¶¶ 128, 357. The AC and CMS drew no such distinction, alleging that graduated tokens saw "prices collaps[e] almost immediately" upon being listed (*id.*) with good reason: there is nothing to suggest that listing an asset on an exchange changes its status

4

as an "investment." *Liss v. Manuel*, 296 N.Y.S.2d 627, 631 (Civ. Ct. 1968).

Graduation occurs when a token reaches "sufficient trading volume." AC ¶ 377. Although not listed on exchanges, there is no dispute Plaintiffs retained control over their pre-graduated tokens, which could still be bought and sold in user-to-user transactions for a profit, with prices determined according to supply-and-demand principles. Mot. at 10. While Plaintiffs claim token graduation "depends on random, external factors no individual could influence," they proceed to give a laundry list of factors within an individual's control, including marketing (*e.g.*, "virality on social media" and "trending memes") and "the timing/ordering of transactions." Opp. at 26. They thus admit any Plaintiff can influence graduation. Labels like "arbitrary" and "random" for "sell-offs," "the influx of other buyers" and "blockchain ordering" (Opp. at 26) do not alter the fact that a purchaser's ability to profit depends on skill in buying low and selling high.

Plaintiffs (at 27) cite *Plato's Cave Corp. v. State Liquor Auth.*, but that case is inapposite, as it did not address when a game of skill crosses over to chance. 68 N.Y.2d 791, 792 (1986). *Pace-O-Matic v. N.Y. State Liquor Auth.* is distinguishable, as it involved a "touch screen video game" that bears no resemblance to this case, where token price is determined by reference to supply-and-demand and trading acumen. 72 A.D.3d 1144, 1146 (3d Dep't 2010).

**Wire Fraud.** It is undisputed that no Blockchain Defendant made a false statement. Plaintiffs neither cite a RICO case to suggest the Blockchain Defendants can be held liable on a wire fraud theory in such circumstances nor address *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) and *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998), which make clear they cannot. There is no particularized allegation the Blockchain Defendants were even aware of any allegedly false statements. Instead, Plaintiffs rely (at 22) on *Lorenzo v. SEC*, but that case is inapposite, as it affirmed a finding of scheme liability under the *Exchange Act* (not Section

5

1343) in a very different factual scenario, namely, "sending false statements directly to investors." 587 U.S. 71, 78 (2019). For this reason too, intent and scheme are not sufficiently alleged.

In any event, the Opposition confirms wire fraud is not sufficiently alleged against anyone. Plaintiffs concede that Baton's "no presales/no insider allocations" representations were "true." Opp. at 20. Although Plaintiffs maintain that they were still misleading because those who launched tokens could use high-speed trading to buy quickly, they have no response to their own allegations that that fact was publicly advertised (AC ¶ 291) or that any purchaser could "at a glance" see "a token's insider concentration" on the token's page on Pump.fun and assess its "susceptibility to manipulation" before purchasing (AC ¶ 129). Such allegations defeat any plausible inference of falsity, fraudulent intent, and materiality. *See* Mot. at 12–13.

As for the remaining alleged misrepresentations—that launches were "fair," "safe," and "rug-pull proof"—Plaintiffs have no response to the legion of cases finding virtually identical statements to be puffery. Mot. at 13. Plaintiffs' cases (at 20, 79), are inapposite. *U.S. v. Autuori* found that misrepresentations that financial "*projections*" were "good" and "credible" went beyond puffing because they were capable of being disproven. 212 F.3d 105 (2d Cir. 2000); *see also Colangelo v. Champion Petfoods USA*, 2020 WL 777462, at *8 (N.D.N.Y. Feb. 18, 2020) (describing dogfood as "Providing a Natural Source of Virtually Every Nutrient Your Dog Needs to Thrive" not puffery); *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 209 (E.D.N.Y. 2010) ("software 'would be 100% compliant with EI regulations regarding double billing'" not puffery). Not so here, where the statements are vague advertising.

Finally, Plaintiffs complain (at 21) that the Baton user interface ("UI") "mimicked a regulated market … to reinforce a false impression of fairness," including by presenting "'Fast/Turbo/Ultra' speed tiers ... alongside a 'front-running protection' toggle" (CMS ¶ 3) but

6

there is no allegation that any of these statements were false.  For example, there is no allegation that Baton marketed itself as regulated or that the UI misrepresented pricing.  And the pleadings allege the speed tiers and toggle "heightened the impression of professional-grade execution," not that utilizing a faster tier did not result in faster execution.  CMS ¶¶ 75, 73, 83, 150; AC ¶ 130.

**Section 1960.**  The Opposition (at 35–36) contends the Blockchain Defendants "aided" Baton in running an unlicensed money transmissions business.  But, as the Motion (at 14–15) explained, merely facilitating such a business does not fall within the ambit of Section 1960.

**Money Laundering.**  The Opposition confirms the only money laundering allegation against the Blockchain Defendants is that, by publishing open-source code for use by anyone, they "facilitated" a North Korean's cybercrime unit to launder money—that is it.  Opp. at 14.  As the Motion (at 14) explained, this is frivolous.

## IV.   THE OPPOSITION CONFIRMS THE ABSENCE OF PROXIMATE CAUSATION

It is undisputed that causation must be established as to each Defendant.  Plaintiffs do not argue causation is established for the bulk of the alleged predicate acts, including money laundering, counterfeiting, identity theft, and conspiracy.  Aside from a throw-away reference (at 15), Plaintiffs neither attempt to explain how unlicensed money transmission caused them injuries nor distinguish *Singh v. Illusory Sys.*, which found no causation based on violations of Section 1960 in connection with transmissions of digital assets because plaintiffs did "not directly link the lack of regulatory licensing" to their losses.  727 F. Supp. 3d 500, 509 (D. Del. 2024).

With respect to wire fraud, Plaintiffs state (at 12) they need not plead first-party reliance, but fail to explain how third-party reliance caused their harm.  The Opposition contends (at 12) that Okafor (not Aguilar or Carnahan) relied.  But the sole reliance allegation appears in the NYGBL Count (AC ¶ 470) and was not incorporated into the RICO Count.  And, regardless, the Opposition makes no effort to explain how reliance would have been reasonable.  As the Motion

7

(at 18) explained, any reliance could not have been reasonable given that the pattern of tokens rising and then falling in value was apparent. Moreover, it is undisputed that Okafor used high-speed trading in an effort to buy ahead of other users and continued trading even after he filed this action, facts vitiating any reasonable inference that any alleged misrepresentation mattered to him. And Plaintiffs do not even attempt to explain how any allegedly false statement induced Okafor to pay money to engage in high-speed trading—*i.e.*, to trade ahead of others.

With respect to all predicate acts, Plaintiffs do not substantively contest that ten intervening acts, independently and cumulatively, break the causal chain for their trading losses.[2] Nor do they try to distinguish *In re MasterCard Int'l Inc.*, 132 F. Supp. 2d 468 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002) and *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 116–22 (S.D.N.Y. 2021). Nor do they argue that the *Holmes* factors favor them on this score. Instead, Okafor (at 11–12, 45–46) seeks to reorient the causal link to his payments for high-speed trading and the 1% fees Baton took on token purchases. Even for those alleged injuries, however, Plaintiffs have no answer for *Doug Grant v. Greate Bay Casino*: "[u]nlike an ordinary RICO victim," Plaintiffs "can avoid any injury simply by walking away from the alleged wrongdoers" by not speculating on tokens, which is fatal. 232 F.3d 173, 187–88 (3d Cir. 2000).

V.  **THE OPPOSITION CONFIRMS THE ABSENCE OF A DOMESTIC INJURY**

It is undisputed that Aguilar and Carnahan have failed to allege domestic injuries. As for Okafor, he cites no factually analogous case to show that his mere status as a U.S. resident is sufficient given (1) his allegations that he was interfacing with a foreign website and (2) the

---

[2] Namely, (1) community approval of alleged changes to the blockchain; (2) non-party users creating and selling meme tokens; and (3) Plaintiffs' own acts of accessing the internet; (4) locating Pump.fun; (5) entering their information; (6) playing electronic casino games by purchasing meme tokens; and (7) supply-and-demand and external factors affecting the price of the tokens; (8) Plaintiffs not buying at the right moment; and (9) not selling at the right moment; whereas (10) independent actors did acquire and sell at the right time, driving the price down. Mot. at 19.

8

absence of allegations that his cryptocurrencies "originated in the [U.S]" or (3) that the purported enterprise was "targeting [U.S.]-based victims." *Licht v. Binance Holdings*, 2025 WL 625303, at *41–42 (D. Mass. Feb. 5, 2025). Okafor attempts to distinguish *Licht* by arguing that that case involved a "foreign scam" (Opp. at 16), which rings hollow given that the Baton Defendants are foreign and the AC too has alleged a foreign scam without attempting to plead other facts to domesticate his injury, such that his tokens were in the U.S.

## VI.   THE RICO SECURITIES FRAUD BAR REQUIRES DISMISSAL

The Motion explained (at 22–23) that the RICO securities fraud bar by its plain text and broad congressional purpose forbids pleading RICO in the alternative to securities fraud, thus rejecting a "wait and see" approach that alleged securities may turn out not to be securities at trial. In advocating for a narrow interpretation of the bar, Plaintiffs without candor cite (at 17) cases (*e.g.*, *Mezzonen, S.A. v. Wright*, 1999 WL 1037866 (S.D.N.Y. Nov. 16, 1999)) that were abrogated by *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 276–80 (2d Cir. 2011), which adopted a broad view. Although Plaintiffs claim to have disclaimed their securities fraud allegations in the RICO count, they offer no case finding such a disclaimer to be effective and do not deny that their RICO count, three times, incorporates their securities allegations. There is no dispute that such disclaimers have been rejected in analogous contexts. *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005). The RICO claims should thus be dismissed.

## VII.  THE CONSPIRACY CLAIM NECESSARILY FAILS

Now that the Jito Defendants have been dismissed, and given that the claims against the Blockchain Defendants are insufficient, the RICO conspiracy claim necessarily fails because the Baton Defendants cannot comprise an enterprise by themselves. *See* Mot. at 8, 22–23. The claim also fails for the reasons explained in the Motion, including that the conspiracy count is a summary tack-on and knowledge and injury are insufficiently alleged.

## VIII. PERSONAL JURISDICTION OVER THE COMMON LAW CLAIMS FAILS

It is undisputed that general jurisdiction is not stated against Solana Labs, Solana Foundation, and Albert. Plaintiffs ask for "discovery" on this issue (at 50), but "courts in this circuit routinely reject requests for jurisdictional discovery where," as here, "a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction." *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006). With respect to specific jurisdiction, Plaintiffs (at 51) invoke federal jurisdictional statutes, which do not apply here; instead, the familiar long-arm statute and constitutional analysis apply to the common law claims. Although Plaintiffs contend (at 52) the Blockchain Defendants have operations in New York, the mere allegations that contributions to the code occurred in New York are too insignificant to link the claims of consumer deception and unjust enrichment to New York. Mot. at 23. That is certainly true for Albert, who is only alleged to have hosted events in New York. Opp. at 52.

## IX. THE OPPOSITION CONFIRMS THE COMMON LAW CLAIMS FAIL

The failure to identify a false statement by the Blockchain Defendants dooms the NYGBL claims, which are independently deficient based on Plaintiffs' failure to plead that any deception occurred in New York. Mot. at 24–25. As for unjust enrichment, Plaintiffs state that "Defendants have been unjustly enriched through their violations of the Securities Act and/or RICO" (Opp. at 72), which confirms that the claim is duplicative of the foregoing claims and subject to dismissal. Mot. at 24–25. Independently, it is undisputed that Plaintiffs never interacted with the Blockchain Defendants. The Opposition asserts that the Blockchain Defendants saw benefits due to token appreciation and increased "on-chain activity" (at 73), but, as the Motion (at 25) explained without substantive rebuttal, this sort of alleged benefit is far too attenuated to sustain the claim.

## CONCLUSION

For the foregoing reasons, the AC should be dismissed with prejudice.

| | |
|---|---|
| Dated: October 10, 2025<br>New York, New York | NAGY WOLFE APPLETON LLP<br><br>By: *Gregory N. Wolfe*<br>Gregory N. Wolfe<br>greg@nagylaw.com<br>Joseph W. Baier (*pro hac vice*)<br>jbaier@nagylaw.com<br>31 East 62nd Street<br>New York, New York 10065<br>(646) 494-4900<br><br>*Counsel for Defendants Solana Labs, Inc., Solana Foundation, Dan Albert and Austin Federa* |

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document complies with the word count and page limit set forth in Local Civil Rule 7.1 because it contains 3,445 words, excluding the exempted portions of the brief. In making this calculation, I have relied on the word count of the word-processing system used to prepare the document.

The foregoing document also complies with the typeface, margin, and spacing limitations provided in subsection (a)(4) of Local Civil Rule 7.1.

By: *Gregory N. Wolfe*
Gregory N. Wolfe

*Counsel for Defendants Solana Labs, Inc., Solana Foundation, Dan Albert and Austin Federa*