# NAGY WOLFE APPLETON LLP

Gregory N. Wolfe
greg@nagylaw.com

31 East 62nd Street, 6th Floor | New York, New York 10065 | (646) 494 - 4900

**VIA NYSCEF**

January 25, 2026

The Honorable Colleen McMahon
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007

Re:    *Aguilar v. Baton Corporation Ltd*, No. 1:25-cv-00880-CM-BCM (S.D.N.Y.)

Dear Judge McMahon,

We represent the Blockchain Defendants.[1]  We write to oppose Plaintiffs' letter motion for leave to file documents (the "Documents") under seal (the "Letter Motion," Dkt. 142), which should be denied for the reasons stated in the Baton Defendants' opposition (Dkt. 150).  We join in that opposition and write to add that the Letter Motion should be denied given (1) the absence of information in the record about what the Documents concern; (2) the need to be able to interrogate evidence should this case proceed to discovery; and (3) our concerns about Plaintiffs' use of confidential informants ("CIs") in this case given marked inconsistencies between Plaintiffs' representations in their Motion to Amend (Dkt. 103) about how evidence that a CI had purportedly provided would be used to amend the FAC and the actual resulting SAC.

*First*, the Blockchain Defendants have no idea if the Documents even relate to the Blockchain Defendants because the Letter Motion declines to disclose the "nature of the motion" sought to be sealed.  Dkt. 142.  Plaintiffs claim doing so would "materially increase[] the risk of rapid identification and retaliation by adversarial actors" (*id.*), which is difficult to believe.

*Second*, should our forthcoming motion to dismiss be denied, the Documents may well become material even if not directed at the Blockchain Defendants.  If the Documents relate to the merits of the underlying case, the Blockchain Defendants are entitled to test them.  And if the "individual" referenced in the Letter Motion is one of the CIs referenced in the SAC, then the Blockchain Defendants should be able to confront him or her.  If the individual is unwilling to be identified at any stage of the litigation, Plaintiffs should be candid about that fact and identify any allegations dependent on the individual so the Blockchain Defendants may make an appropriate application, such as potentially "to strike" any allegations dependent on him or her.  *TCP Diversified Technology Fund v. Gaotu Techedu Inc.*, 2025 WL 2997283, at *7 (E.D.N.Y. 2025).

*Third*, based on the disconnect between Plaintiffs' representations in their Motion to Amend and the actual contents of their SAC, the Blockchain Defendants have concerns about Plaintiffs' use of CIs in this litigation, which asserts a putative RICO class action dependent on allegations purportedly developed through CIs.

After we explained why the FAC failed to state a claim, Plaintiffs filed their Motion to Amend in which they asserted that their "CI" had "provid[ed] them" with "nearly *5,000* internal chat logs … involving members of the Pump.fun team, *Solana Labs engineers,* Jito Labs

---

[1] Capitalized terms are drawn from our prior filings.  All emphases have been added.  We are mindful of the Court's instruction not to litigate non-administrative matters through letters and have responded by letter since Plaintiffs filed a letter motion.

executives and third parties." Dkt. 103 at 6. According to Plaintiffs, the "logs … surfaced *targeted communications in which Solana Labs engineers are in direct contact with Pump.fun personnel*, discussing and providing technical guidance concerning integration of key components implicated in the alleged enterprise." *Id.* at 8.

Plaintiffs' representations convinced the Court to grant the Motion to Amend: it observed the "5,000 internal chat logs" provided by "[t]he CI" are "new and significant" because "Plaintiffs assert that the logs contain contemporaneous discussions among Pump.fun, Solana Labs, Jito Labs, and others concerning the alleged scheme, and that they materially clarify the enterprise's management, coordination, and communications." Dkt. 116 at 8. The Court further noted "Plaintiffs have given the Court no reason to disbelieve" their "factual representations." *Id.* at 10.

While Plaintiffs represented in their Motion to Amend that the SAC would "[a]dd ~40–50 paragraphs particularizing Solana-Pump.fun engineer communications and technical integration details" (Dkt. 103 at 9), the SAC references all of *one* purported "Solana-Pump" chat in two paragraphs (¶¶ 230–231), namely:

> A member of the Pump.fun core team maintained a private channel with Jon Cinque, a Solana Core Developer. The contents were shared with the Pump.fun executive team. On or about May 14, 2024, a Pump.fun developer contacted Cinque about eliminating a third-party per-token fee on Solana. Cinque explained what was feasible and where ecosystem support was missing. When the developer said Pump.fun was building a replacement for the third-party provider, Cinque continued assisting.

Unlike other chats in the SAC, this one is not attached or quoted. The other non-public chat added to the SAC (¶¶ 223–24) that allegedly concerns the Blockchain Defendants is an internal Pump note (*i.e.*, not sent externally) purporting to reflect that a Solana Labs officer offered to make "introductions" to help Baton fundraise. The redline between the FAC and SAC (*see* Exhibit 1) shows that the two are very different, with the SAC altering most allegations and adding some 179 paragraphs on top. We do not here address the merits; instead, our motion to dismiss will explain why the SAC (including the foregoing chats) fails to state a claim.

Suffice to say, however, the Amended RICO Management Statement and the 675-paragraph SAC do not reference anywhere close to 5,000 internal logs demonstrating "technical guidance" from "Solana Labs engineers … in direct contact with Pump.fun personnel" or "~40–50 paragraphs particularizing Solana-Pump.fun engineer communications and technical integration details."

We thus have justifiable concerns about Plaintiffs' use of CIs and should be able to learn the contents of the Documents and confront any CIs, particularly in light of the fact "[t]he mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants." *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 300 (S.D.N.Y. 2010).

Respectfully submitted,

/s/ Gregory N. Wolfe