**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIEGO AGUILAR, KENDALL CARNAHAN and MICHAEL OKAFOR on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>BATON CORPORATION LTD, d/b/a PUMP.FUN, ALON COHEN, DYLAN KERLER, and NOAH BERNHARD HUGO TWEEDALE, SOLANA LABS INC., SOLANA FOUNDATION, ANATOLY YAKOVENKO, RAJ GOKAL, DAN ALBERT, AUSTIN FEDERA, LILY LIU, and LEAD KOL DOES 1-25,<br><br>            Defendants. | Case No.: 1:25-cv-00880-CM |

**MEMORANDUM OF LAW IN SUPPORT OF BATON CORPORATION LTD, d/b/a PUMP.FUN'S MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED <u>CLASS ACTION COMPLAINT</u>**

**BROWN RUDNICK LLP**
Stephen D. Palley
Daniel L. Sachs
1900 N Street NW, 4th Floor
Washington, DC 20036
(202) 536-1700

Kyle Dorso (*pro hac vice*)
One Financial Center
Boston, MA 02111
(617) 856-8200

*Counsel for the Baton Corporation LTD*

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

    A.    Baton and the Pump.fun Platform..................................................................... 2

    B.    Tokens on Pump.fun ......................................................................................... 2

    C.    Plaintiffs' Alleged Purchases and Losses ........................................................ 3

    D.    Alleged RICO Enterprise.................................................................................. 3

ARGUMENT ...................................................................................................................... 4

I.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER BATON ......... 4

    A.    The SAC Fails to Establish Specific Personal Jurisdiction Under CPLR § 302 .... 5

    B.    Constitutional Due Process Forbids Exercising Personal Jurisdiction Over Baton 7

    C.    Plaintiffs' Civil RICO Theory Does Not Confer Personal Jurisdiction Over Baton ................................................................................................................ 7

II.    THE RICO CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ......................... 7

    A.    The PSLRA's Securities Exclusion Bars the RICO Claim.................................... 8

    B.    Plaintiffs Lack RICO Standing to Sue Baton. ....................................................... 8

        1.    Plaintiffs Fail to Plead Injury to Business or Property. ............................ 9

        2.    Plaintiffs Fail to Adequately Allege That Baton's Alleged Conduct Proximately Caused Their Injuries. ........................................................ 11

    C.    The SAC Fails to Adequately Plead a § 1962(c) Claim. ..................................... 13

        1.    The SAC Does Not Adequately Plead a RICO Enterprise. ..................... 13

        2.    The SAC Does Not Plead Baton's Illegal Conduct. ................................ 15

        3.    The SAC Does Not Adequately Plead Two or More Predicate Acts. ...... 16

    D.    The SAC Fails to Adequately Allege a "Conspiracy" Under Section 1962(d). ... 18

    E.    Plaintiffs Do Not Adequately Allege Domesticity ............................................. 18

    F.    The "Confidential Witness" Allegations Should Not Be Credited....................... 19

III.    THE SAC FAILS TO PLEAD AN ACTIONABLE SECURITIES ACT CLAIM.......... 20

    A.    The SAC Fails to Establish That the Pump Tokens Were Sold as Securities. ..... 20

        1.    The SAC Does Not Adequately Allege a Common Enterprise. ............... 21

2. The SAC Does Not Adequately Allege a Reasonable Expectation of Profits Based on the Efforts of Others. ................................................................... 22

B. Plaintiffs Lack Standing as to Tokens They Did Not Buy. .................................... 24

IV. THE UNJUST ENRICHMENT CLAIM FAILS. .............................................................. 25

CONCLUSION .............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 West 57th St. Realty Co., LLC v. Citigroup, Inc.*,
  771 F. App'x 498 (2d Cir. 2019) ........................................................................................11

*Abbott Labs v. Adelphia Supply USA*,
  2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ..........................................................................15

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
  529 F. Supp. 3d 111 (S.D.N.Y. 2021)...............................................................................4, 5

*Am. Girl, LLC v. Zembrka*,
  118 F.4th 271 (2d Cir. 2024) ...............................................................................................5

*Am. Home Mortg. Corp. v. UM Sec. Corp.*,
  2007 WL 1074837 (S.D.N.Y. Apr. 9, 2007).......................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................22

*Baisch v. Gallina*,
  346 F.3d 366 (2d Cir. 2003).................................................................................................11

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
  667 F. Supp. 3d 83 (S.D.N.Y. 2023).....................................................................................7

*Bender v. Cont'l Towers Ltd., P'ship*,
  632 F. Supp. 497 (S.D.N.Y. 1986).......................................................................................23

*Bensusan Rest. Corp. v. King*,
  126 F.3d 25 (2d Cir. 1997).....................................................................................................6

*Berdeaux v. OneCoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021)....................................................................................5

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007)...................................................................................................7

*Bettis v. Aixtron SE*,
  2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016) (McMahon, J.) .............................................20

*Black v. Ganieva*,
  619 F. Supp. 3d 309 (S.D.N.Y. 2022)..................................................................................14

*BMA LLC v. HDR Glob. Trading, Ltd.*,
  2021 WL 949371 (N.D. Cal. March 12, 2021)......................................................................19

*Boyle v. United States*,
  556 U.S. 938 (2009)..............................................................................................................13

*Brill v. Postle*,
  2020 WL 2936688 (E.D. Cal. June 3, 2020) .....................................................................9, 10

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016).....................................................................................................4

*Capitol Recs., LLC v. VideoEgg, Inc.*,
  611 F. Supp. 2d 349 (S.D.N.Y. 2009)......................................................................................6

*Cedar Swamp Holdings, Inc. v. Zaman*,
  487 F.Supp.2d 444 (S.D.N.Y. 2007).......................................................................................15

*Corsello v. Verizon N.Y. Inc.*,
  18 N.Y.3d 777 (2012) ............................................................................................................25

*Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*,
  2024 WL 1533189 (S.D.N.Y. Apr. 8, 2024)............................................................................5

*Cruz v. FXDirectDealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)...................................................................................................13

*D. Penguin Bros. v. City Nat'l Bank*,
  587 F. App'x 663 (2d Cir. 2014) ...........................................................................................14

*Davey v. PK Benelux B.V.*,
  2022 WL 1289341 (S.D.N.Y. Apr. 29, 2022)...........................................................................6

*Davis v. Rio Rancho Estates, Inc.*
  401 F. Supp. 1045 (S.D.N.Y. 1975).......................................................................................25

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001)...................................................................................................16

*Demaree v. Castro*,
  2023 WL 6465881 (S.D.N.Y. Oct. 4, 2023) (McMahon, J.) ..................................................19

*Diabat v. Credit Suisse Grp. AG*,
  2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024) (McMahon, J.)................................................20

*Donovan v. GMO-Z.com Trust. Co., Inc.*,
  779 F. Supp. 3d 372 (S.D.N.Y. 2025).....................................................................................23

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
232 F.3d 173 (3rd Cir. 2000) ........................................................................12

*Elsevier Inc. v. W.H.P.R., Inc.*,
692 F. Supp. 2d 297 (S.D.N.Y. 2010)................................................................13, 14

*Energy Brands Inc. v. Spiritual Brands, Inc.*,
571 F. Supp. 2d 458 (S.D.N.Y. 2008).................................................................7

*In re Ethereummax Litig.*,
2022 WL 20804358 (C.D. Cal. Dec. 6, 2022) ......................................................9, 10

*In re EVCI Colleges Holding Corp., Sec. Litig.*,
469 F. Supp.2d 88 (S.D.N.Y. 2006) (McMahon, J.)..................................................19

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
400 F. App'x 611 (2d Cir. 2010) .....................................................................26

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
20 F. Supp. 3d 451 (S.D.N.Y. 2014)..................................................................12

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004)..........................................................................14

*Flexborrow LLC v. TD Auto Fin. LLC*,
255 F. Supp. 3d 406 (E.D.N.Y. 2017) ................................................................18

*Forefront Mgmt., LLC v. Vergilis-Kalner*,
2025 WL 1222648 (S.D.N.Y. Apr. 24, 2025)..........................................................22

*Foster v. 2001 Real Est.*,
2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015)..........................................................14

*Friel v. Dapper Labs, Inc.*,
657 F. Supp. 3d 422 (S.D.N.Y. 2023).................................................................22

*Gucci Am. v. Alibaba Grp. Holding Ltd.*,
2016 WL 6110565 (S.D.N.Y. Aug. 4, 2016)...........................................................18

*Hemi Grp., LLC v. City of N.Y.*,
559 U.S. 1 (2010)....................................................................................11

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992)..................................................................................13

*In re J.P. Jeanneret Assoc., Inc.*,
769 F. Supp. 2d 340 (S.D.N.Y. 2011) (McMahon, J.)..................................................21, 22

*Kerik v. Tacopina*,
  64 F. Supp. 3d 542 (S.D.N.Y 2014)..................................................................................10

*In re Lehman Bros. Sec. & ERISA Litig.*,
  684 F. Supp. 2d 485 (S.D.N.Y. 2010)..............................................................................25

*Licht v. Binance Holdings Ltd.*,
  2025 WL 625303 (D. Mass Feb. 5, 2025) ........................................................................19

*Lowenbraun v. L.F. Rothschild, Unterberg, Towbin*,
  685 F. Supp. 336 (S.D.N.Y 1988)....................................................................................22

*Maersk, Inc. v. Neewra, Inc.*,
  687 F. Supp. 2d 300 (S.D.N.Y. 2009), *aff'd sub nom. Maersk, Inc. v. Sahni*,
  450 F. App'x 3 (2d Cir. 2011) .........................................................................................15

*Major League Baseball Props., Inc. v. Price*,
  105 F. Supp. 2d 46 (E.D.N.Y. 2000) .................................................................................9

*MLSMK Inv. Co., v. JP Morgan Chase & Co.*,
  651 F.3d 268 (2d Cir. 2011)...............................................................................................8

*Matter of Muidallap Corp. v. State Liquor Auth.*,
  143 A.D.2d 9 (1st Dep't 1988) ........................................................................................17

*Murray v. Stone*,
  230 A.D.3d 1066 (1st Dep't 2024) .....................................................................................6

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
  537 F.3d 168 (2d Cir. 2008)..............................................................................................25

*Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*,
  575 U.S. 175 (2015).........................................................................................................16

*One World, LLC v. Onoufriadis*,
  2021 WL 184400 (S.D.N.Y. Jan. 19, 2021) (McMahon, J.)...............................................8

*Paul Hobbs Imports Inc. v. Verity Wines LLC*,
  2023 WL 374120 (S.D.N.Y. Jan. 24, 2023) .....................................................................18

*Pearson Educ., Inc. v. Shi*,
  525 F. Supp. 2d 551 (S.D.N.Y. 2007)................................................................................6

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
  721 F.3d 95 (2d Cir. 2013)................................................................................................25

*Prospect Funding Holdings, LLC v. Vinson*,
  256 F. Supp. 3d 318 (S.D.N.Y. 2017)................................................................................4

*Risley v. Univ. Navigation Inc.*,
　2026 WL 572065 (S.D.N.Y. March 2, 2026) ..........................................................................11

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
　30 F.3d 339 (2d Cir. 1994)....................................................................................................15

*RJR Nabisco v. Eur. Cmty.*,
　579 U.S. 325 (2016)...............................................................................................................18

*Savino v. E.F. Hutton & Co., Inc.*
　507 F. Supp. 1225 (S.D.N.Y. 1981)......................................................................................22

*SEC v. Coinbase*,
　726 F. Supp. 3d 260 (S.D.N.Y. 2024)...................................................................................24

*SEC v. Kik Interactive Inc.*,
　492 F. Supp. 3d 169 (S.D.N.Y. 2020)...................................................................................21

*SEC v. Terraform*,
　684 F. Supp.3d 170 (S.D.N.Y. 2023)....................................................................................24

*SEC v. W.J. Howey Co.*,
　328 U.S. 293 (1946)..........................................................................................................21, 23

*Sinva, Inc., v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
　253 F. Supp. 359 (S.D.N.Y. 1966)........................................................................................24

*Spokeo, Inc. v. Robins*,
　136 S. Ct. 1540 (2016)...........................................................................................................25

*Stevenson v. Thornburgh*,
　2024 WL 645187 (S.D.N.Y. Feb. 14, 2024) (McMahon, J.)...................................................8

*Sunward Elecs., Inc. v. McDonald*,
　362 F.3d 17 (2d Cir. 2004)......................................................................................................4

*In re Terrorist Attacks on Sept. 11, 2001*,
　714 F.3d 659 (2d Cir. 2013)....................................................................................................4

*In re Tether & Bitfinex Crypto Asset Litig.*,
　576 F. Supp. 3d 55 (S.D.N.Y. 2021)................................................................................11, 12

*Thackurdeen v. Duke Univ.*,
　130 F. Supp. 3d 792 (S.D.N.Y. 2015).....................................................................................5

*In re U.S. Foodservice Inc. Pricing Litig.*,
　729 F.3d 108 (2d Cir. 2013)..................................................................................................12

*United Hous. Found. v. Forman*,
    421 U.S. 837 (1975).............................................................................................23

*United States v. Turkette*,
    452 U.S. 576 (1981).............................................................................................15

*Villoldo v. BNP Paribas S.A.*,
    2015 WL 13145807 (S.D.N.Y. July 21, 2015) ......................................................9

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016).................................................................................16

*Westchester Cnty. Indep. Party v. Astorino*,
    137 F. Supp. 3d 586 (S.D.N.Y. 2015).....................................................................9

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007)...................................................................10

*Wynne v. Equilease Corp.*,
    1995 WL 764236 (S.D.N.Y. Dec. 27, 1995) ........................................................13

*Yegiazaryan v. Smagin*,
    599 U.S. 533 (2023)........................................................................................18, 19

*Yerkyn v. Yakovlevich*,
    164 F.4th 224 (2d Cir. 2026) ...............................................................................19

*Yien-Koo King v. Wang*,
    2020 WL 6875403 (S.D.N.Y. Nov. 23, 2020)......................................................16

**Statutes**

15 U.S.C. § 77l(a)(1).................................................................................................20

18 U.S.C. § 1955......................................................................................................17

18 U.S.C. § 1955(b)(1) ............................................................................................17

18 U.S.C. § 1960(b)(2) ............................................................................................17

18 U.S.C. § 1961(4) .................................................................................................13

18 U.S.C. § 1962(c) .......................................................................................8, 13, 15

18 U.S.C. § 1962(d) ...........................................................................................8, 18

18 U.S.C. § 1964(c) ...........................................................................................8, 18

18 U.S.C. § 1965.................................................................................................1, 7

N.Y.P.L. § 225.00(2) ...............................................................................................................17

N.Y.P.L. § 225.05 ...................................................................................................................17

N.Y.P.L. § 225.10 ...................................................................................................................17

Private Securities Litigation Reform Act § 107..........................................................................8

**Other Authorities**

CPLR § 302........................................................................................................................5, 7

CPLR § 302(a)(1) ....................................................................................................................5

CPLR § 302(a)(2) ....................................................................................................................6

CPLR § 302(a)(3) ....................................................................................................................6

CPLR § 302(a)(3)(ii)................................................................................................................7

Fed. R. Civ. P. 12(b)(6)............................................................................................................2

**PRELIMINARY STATEMENT**[1]

The Second Amended Consolidated Class Action Complaint ("SAC") is Plaintiffs' third attempt to transform speculative memecoin trading losses into Securities Act violations, civil RICO liability, and equitable relief against Baton Corporation LTD, d/b/a Pump.fun ("Baton").[2] The SAC's hundreds of paragraphs, exhibits and confidential witness accounts create the illusion of substance, but the pleading is empty. Stripped of volume and rhetoric, it offers only speculation, unsupported hypotheses, alleged parallel commercial conduct, and inactionable puffery. In short, it overpromises, underdelivers, and states no claim.

Personal jurisdiction is a threshold failure for Plaintiffs. The SAC does not plead general jurisdiction and lacks facts establishing specific jurisdiction. Relying on impermissible group pleading, the SAC alleges that unidentified New York residents accessed a globally available website. That does not establish personal jurisdiction. The SAC identifies no New York conduct, transaction, injury, or targeting by Baton. Plaintiffs also cannot rely on 18 U.S.C. § 1965 for personal jurisdiction because Baton, a U.K. defendant, was not served within the United States.

Plaintiffs' substantive claims fail as well. The RICO counts fail because the SAC pleads no cognizable enterprise, predicate acts, proximate causation, concrete, domestic injury to business or property, or a conspiracy—and are barred if they sound in securities fraud. The Securities Act claim fails because the SAC does not plausibly allege that the "Pump Tokens" are securities or

---

[1] At present, due to the anonymous nature of users on Pump.fun, Baton lacks sufficient information to determine whether any Plaintiff viewed and agreed to Baton's Terms of Use containing an arbitration clause. Because Plaintiffs' assent cannot be established based on the information presently known by Baton and disclosed in the SAC, it is not possible for Baton to move to compel arbitration at this stage. Baton expressly reserves, and does not waive, its right to compel arbitration pending discovery and further proceedings.

[2] For ease of reference, the "d/b/a Pump.fun" designation for Baton Corporation, Ltd. is included here because that is how the Plaintiff styled this matter. Baton denies that it uses a trade name of Pump.fun.

that Plaintiffs have standing as to the tokens they did not purchase. The unjust enrichment claim is duplicative of other theories and does not allege the absence of an adequate legal remedy.

Ultimately, Plaintiffs seek to convert dissatisfaction with speculative trading outcomes into sweeping federal liability. The law does not permit that result. Because the SAC fails to establish jurisdiction and fails to state any claim as a matter of law, it should be dismissed with prejudice.

## STATEMENT OF FACTS[3]

### A.     Baton and the Pump.fun Platform

Baton is a U.K. company. SAC ¶ 70. It operates Pump.fun, a web application where users can create and trade memecoins ("tokens") on the Solana blockchain using SOL, the blockchain's native currency. *Id.* ¶¶ 68, 70, 107, 236–37, 547. Token prices are determined automatically by a "bonding curve"—*i.e.*, an algorithm that adjusts each token's price based on user purchases and sales. *Id.* ¶¶ 137, 547; Amended RICO Case Statement, Dkt. 149 ("RCS") ¶¶ 5, 76. Users could buy and sell tokens at any time in exchange for SOL. SAC ¶¶ 124–29. Users transacted directly with the "bonding curve" and there is no competent allegation that any Defendant takes custody of or transfers any users' SOL. *Id.* ¶ 70, 137–38, 505. Users allegedly could pay for faster trade execution through software created by Jito Labs Inc. ("Jito"), which could affect trading outcomes. *Id.* ¶¶ 133, 240, 247–48, 253, 428. Plaintiffs allege Baton profited from a 1% transaction fee on all trades, while users' profits fluctuated with token demand and market prices. *Id.* ¶¶ 70, 101, 105.

### B.     Tokens on Pump.fun

Plaintiffs allege that over 11 million tokens have been launched on Pump.fun. *Id.* ¶ 496. Of these, they identify a subset of 20 "Pump Tokens" allegedly promoted as unregistered investment contracts. *Id.* ¶ 65–66, 497, 613–31. Plaintiffs also allege that non-party criminals used

---

[3] These allegations are drawn from the SAC and taken as true only for purposes of Fed. R. Civ. P. 12(b)(6). Baton joins in the arguments of the other Defendants.

other user-launched tokens to launder stolen funds. *Id.* ¶¶ 460–69. The SAC does not specifically allege that Plaintiffs purchased any of these other tokens or suffered any resulting harm.

### C.    Plaintiffs' Alleged Purchases and Losses

Plaintiffs Diego Aguilar and Kendall Carnahan and Lead Plaintiff Michael Okafor allegedly traded a small subset of tokens available on Pump.fun, some of which Plaintiffs characterized as securities. *Id.* ¶¶ 65–67, 497. The SAC does not allege where Plaintiffs placed their purchase orders, where title passed, or where and how their transactions were matched. *Id.* ¶¶ 65–67, 124–129, 137–40.

The SAC alleges tokens on Pump.fun were speculative, "valueless" or "absurd." *Id*. ¶ 397. Plaintiffs allege losses from price declines of tokens in the days or weeks after they were purchased caused by unidentified early buyers, bots, and non-specific insider manipulation. *Id.* ¶¶ 20, 22, 29–30, 39, 133–34, 140–41, 193, 382; RCS ¶ 107. They allege the platform's presentation as "fair" was misleading because some unidentified trades were "front-run" by unidentified individuals using technology created by Jito. SAC ¶¶ 33–37, 187, 253, 255, 510; RCS ¶¶ 106–07. At the same time, Plaintiffs acknowledge that (i) users—including Plaintiffs—paid priority and transaction fees for faster transaction execution (RCS ¶ 106), and (ii) that Pump.fun's interface discloses information that allows a user to see "at a glance, a token's insider concentration, circulating float, and susceptibility to manipulation[.]" SAC ¶¶ 425–26. Plaintiffs further acknowledge that some users profited. *Id.* ¶¶ 20, 296, 322.

### D.    Alleged RICO Enterprise

Plaintiffs claim that Defendants formed a RICO "enterprise" to defraud retail users of Pump.fun to the benefit of sophisticated users. *Id.* ¶¶ 1, 253, 537, 544; RCS ¶ 68. They allege that Defendants operated coordinated and complementary businesses. SAC ¶¶ 8, 11, 48, 221–25, 229, 536. The Blockchain defendants allegedly created the open-source Solana code anyone could use

3

and only Solana Labs, Inc. and its officer defendants (collectively, the "Labs Defendants") allegedly met with Baton concerning technical support. *Id.* ¶¶ 221–24, 228–29. Baton also allegedly contracted with, and compensated, unnamed key opinion leaders ("KOLs") and other parties to market tokens and maintain an online presence. *Id* ¶¶ 82, 150, 165, 541. As illustrated in Paragraph 123 of the SAC, Plaintiffs describe a rimless hub-and-spoke enterprise in which all connections run through Baton: KOL groups and the Blockchain Defendants each connect vertically to Baton, but the SAC alleges no direct coordination between KOLs and the Blockchain Defendants. *Id.* ¶ 123. The SAC also cites no facts showing when or how the alleged enterprise members agreed or engaged in coordinated conduct beyond conclusory assertions.

## ARGUMENT

## I.    THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER BATON

"[A] plaintiff must make a prima facie showing that [personal] jurisdiction exists." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).[4] Jurisdiction must be established "separately over each defendant", *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021), as "to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). Plaintiffs "may not rely on conclusory statements without any supporting facts." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 323 (S.D.N.Y. 2017).

Plaintiffs do not allege general personal jurisdiction over Baton. In fact, the SAC alleges Baton is incorporated and maintains its principal place of business in the U.K. SAC ¶ 70. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (corporation is subject to general jurisdiction where it is incorporated or maintains its principal place of business). Plaintiffs

---

[4] Unless otherwise noted, internal quotations, emphases, footnotes and citations are omitted.

therefore rely exclusively on specific personal jurisdiction. Courts analyze specific jurisdiction in two steps: first, under New York's long arm statute, CPLR § 302; and second, whether exercising jurisdiction comports with due process. *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015), aff'd, 660 F. App'x 43 (2d Cir. 2016). The SAC satisfies neither.

### A.    The SAC Fails to Establish Specific Personal Jurisdiction Under CPLR § 302

Plaintiffs rely on impermissible group pleading to establish personal jurisdiction. That defect alone defeats jurisdiction as to Baton. *See In re Aegean Marine*, 529 F. Supp. 3d at 135 ("To allege personal jurisdiction over a defendant, group pleading is not permitted."). Specifically, the SAC attributes conduct to "Defendants" collectively, rather than identifying any New York directed conduct by Baton. SAC ¶ 90. Without allegations particularized to Baton, personal jurisdiction cannot be established, warranting dismissal. In addition to this fatal flaw, there is no basis for personal jurisdiction under New York's long arm statute, as set forth below.

CPLR § 302(a)(1) permits jurisdiction only where a defendant transacts business in New York and the claims arise from that transaction. *Thackurdeen*, 130 F. Supp. 3d at 801. A non-domiciliary "transacts business" only when "it purposefully avails itself of the privilege of conducting activities" in New York. *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 277 (2d Cir. 2024).

The SAC pleads no facts demonstrating purposeful availment by Baton. Plaintiffs allege that "Defendants" operated a platform that was "accessed" by unidentified New York users. SAC ¶ 90. But jurisdiction is assessed based on the named plaintiffs' claims and contacts, not unnamed putative class members. *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397 (S.D.N.Y. 2021). Allegations about unidentified users are therefore irrelevant.

That Pump.fun is "accessible" in New York does not establish jurisdiction either, without more. "[T]he mere availability of the site to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a)." *Creative Photographers, Inc.*

*v. Grupo Televisa, S.A.B.*, 2024 WL 1533189, at *7 (S.D.N.Y. Apr. 8, 2024); *see also Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551, 556 (S.D.N.Y. 2007) ("Simply maintaining a web site in a distant state that residents of New York visit does not, by itself" establish jurisdiction).

Jurisdiction is unavailable under CPLR § 302(a)(2), which is construed strictly and reaches "only tortious acts performed by a defendant who was *physically present* in New York." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). The SAC alleges no tortious act committed by Baton while physically present in New York.[5]

The SAC also does not satisfy CPLR § 302(a)(3) because it fails to allege that Baton committed a tort outside of New York that caused injury within the state. Where, as here, the alleged injury is purely economic, "the situs of a commercial injury is where the original critical events associated with the action or dispute takes place, not where any financial loss or damages occurred." *Murray v. Stone*, 230 A.D.3d 1066 (1st Dep't 2024). Plaintiffs identify no injured New York user, no New York transaction involving a named plaintiff, and no New York situs of the alleged harm. Even if they did, Plaintiffs' allegations fail to meet either subsection (i) or (ii) of this statutory section.

The conclusory allegation that Defendants "derived substantial revenue from interstate and international commerce" satisfies neither subsection. Formulaic recitations of statutory language, without factual allegations, are insufficient. *See Davey v. PK Benelux B.V.*, 2022 WL 1289341, at *4 (S.D.N.Y. Apr. 29, 2022) ("conclusory allegation that defendant 'derive[s] substantial revenue from its sales of its subject products in the U.S. and in New York'" fails to establish personal

---

[5] Allegations regarding the presence or acts of the Blockchain Defendants, to the extent they constitute tortious acts, are not attributable to Baton. *See Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 359 (S.D.N.Y. 2009) (stating "[u]nilateral acts of third parties are not . . . purposeful contacts" that confer personal jurisdiction).

jurisdiction). Plaintiffs allege no facts regarding Baton's revenue, much less facts showing that Baton derives "substantial revenue" within the meaning of the statute.

Plaintiffs also allege no other subsection (i) predicate, namely that Baton regularly does or solicits business in New York or engages in a persistent course of conduct in New York. The absence of such allegations independently forecloses reliance on subsection (i). Nor do Plaintiffs satisfy subsection (ii), which requires pleading that Baton "expects or should reasonably expect" its acts to have consequences in New York. CPLR § 302(a)(3)(ii). Courts look for "a discernible effort to directly or indirectly serve the New York market." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008). Plaintiffs allege no such effort.

**B.      Constitutional Due Process Forbids Exercising Personal Jurisdiction Over Baton**

Because Plaintiffs fail to establish jurisdiction under § 302(a), the Court "need not reach" the issue of constitutional due process. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007). Even if it did, the same defects that defeat jurisdiction under CPLR § 302 likewise preclude a finding of required minimum contacts.

**C.      Plaintiffs' Civil RICO Theory Does Not Confer Personal Jurisdiction Over Baton**

Finally, Plaintiffs cannot rely on 18 U.S.C. § 1965 for personal jurisdiction. SAC ¶ 89. The SAC alleges that Baton is foreign, *id.* ¶ 70, and service was made in the U.K. ECF No. 19. "[F]oreign defendants must be served with process within the United States for the court to have personal jurisdiction under the RICO statute." *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 119 (S.D.N.Y. 2023). Because Baton was not served with process in the United States, the RICO statute does not confer personal jurisdiction over it.

**II.     THE RICO CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.**

The SAC fails to plead a civil RICO claim. Courts treat civil RICO claims "with caution, understanding that Congress' goal in enacting the RICO statute was to prevent legitimate

7

businesses from becoming infiltrated by organized crime." *One World, LLC v. Onoufriadis*, 2021 WL 184400, at *7 (S.D.N.Y. Jan. 19, 2021) (McMahon, J.). Courts are therefore "charged with flushing out frivolous RICO allegations at the earliest possible stage." *Id.*

Plaintiffs assert claims under §§ 1962(c) and (d). SAC ¶¶ 530–603. To establish RICO standing, a plaintiff must show: "(1) a violation of section 1962; (2) an injury to the plaintiff's business or property; and (3) that the defendant's violation was the proximate cause of the plaintiff's injury." *Stevenson v. Thornburgh*, 2024 WL 645187, at *9 (S.D.N.Y. Feb. 14, 2024) (McMahon, J.). The SAC fails to state a claim under both subsections for multiple reasons.

### A.     The PSLRA's Securities Exclusion Bars the RICO Claim.

If any Pump Tokens are adequately alleged to be securities (they are not), Section 107 of the Private Securities Litigation Reform Act (the "PSLRA Bar") prohibits reliance on "any conduct that would have been actionable as fraud in the purchase or sale of securities to establish" a RICO violation. 18 U.S.C. § 1964(c); *MLSMK Inv. Co., v. JP Morgan Chase & Co.*, 651 F.3d 268, 277–78 (2d Cir. 2011) (cleaned up). The SAC alleges that Pump Tokens are securities (*see* SAC ¶¶ 514, 604–41) and alleges fraud violations based on supposed misrepresentations concerning token launches, allocations, and pricing. *See id.* ¶¶ 27–31, 558–64. Because these alleged misstatements are inseparable from the securities fraud theory, the PSLRA Bar prohibits a RICO claim based on that conduct. *Thornburgh*, 2024 WL 645187, at *18 (dismissing RICO claim because complaint contains "allegations that sound in securities fraud" and "non-specific assertions of wire fraud and mail fraud."). The PSLRA Bar also applies to tokens *not* alleged to be securities because the front-running allegations about those tokens are "interwoven" with and "part of the same claim" relating to the Pump Tokens. *Id.* The RICO claims are therefore barred entirely.

### B.     Plaintiffs Lack RICO Standing to Sue Baton.

8

### 1.    Plaintiffs Fail to Plead Injury to Business or Property.

Plaintiffs do not allege any "concrete" injury to "business or property." *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612–13 (S.D.N.Y. 2015). The SAC alleges four categories of injury: "transaction losses" from buying tokens at prices that later declined; platform fees; execution related losses such as slippage and inferior fills; and a speculative assertion that they might have acted differently had the supposed scheme been disclosed.

First, the alleged injuries, including "transactional losses" (SAC ¶ 590(a)), rest on an expectancy theory and therefore fail. The SAC alleges token prices fluctuated with demand and Plaintiffs bought hoping to resell at a higher price. *Id.* ¶¶ 19, 27–28, 127–28, 143. There is no "standing under RICO for injury to an expectancy interest." *Villoldo v. BNP Paribas S.A.,* 2015 WL 13145807, at *3 (S.D.N.Y. July 21, 2015) (collecting cases), *aff'd*, 648 F. App'x 53 (2d Cir. 2016). Plaintiffs received what they bargained for: the opportunity to trade speculative tokens and the chance "to sell before buyers disappear." SAC ¶ 128. That opportunity has value, and a purchaser who receives it "has not suffered any financial loss or RICO property injury" merely because market prices later decline. *Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 51 (E.D.N.Y. 2000). Complaints regarding post-purchase price declines, including due to alleged execution harms, reflect nothing more than "disappointment over what their [tokens] are worth today", which is not a RICO injury. *In re Ethereummax Litig.*, 2022 WL 20804358, at *13 (C.D. Cal. Dec. 6, 2022). Plaintiffs' repeated characterization of Pump.fun as "gambling" (*see e.g.* SAC ¶ 8) underscores this defect; courts have held gambling losses—including costs incurred in gambling—reflect only an expectancy interest and cannot establish injury under RICO. *Brill v. Postle*, 2020 WL 2936688, at *9 (E.D. Cal. June 3, 2020) (collecting cases). Similarly, allegations that Plaintiffs would have transacted differently had more information been disclosed (SAC ¶

9

590(d)) allege only a hypothetical alternative, not a financial loss, that rests on an unfulfilled expectation, which is not actionable. *Ethereummax*, 2022 WL 20804358, at \*12-\*13.

The alleged injuries also fail for independent reasons. The alleged platform or priority fees do not constitute a concrete injury, particularly where users—including Plaintiffs—received the services they paid for, and "would have had to pay the [costs] regardless of [the alleged racketeering activity]. SAC ¶¶ 22, 590; RCS ¶ 106. *Brill*, 2020 WL 2936688, at \*9. Alleged execution harms—"inferior fills, slippage, and related value losses"—are conclusory, (SAC ¶¶ 590; RCS ¶ 107) as the SAC identifies no specific trade by any Plaintiff that was executed at a worse price because of the alleged scheme, and alleges no measurable loss. *See* SAC ¶¶ 65–67, 590; *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 520 (S.D.N.Y. 2007) ("RICO plaintiff may not recover for speculative losses or where the amount of damages is unprovable."); *Am. Home Mortg. Corp. v. UM Sec. Corp.*, 2007 WL 1074837, at \*4 (S.D.N.Y. Apr. 9, 2007).

Although the SAC devotes extensive discussion to a COPE token case study (SAC ¶¶ 257–307), Plaintiffs do not allege that they purchased this token and do not plead any comparable transaction-level harm based on tokens they allegedly purchased. *Id*. at ¶¶ 65–67. Likewise, the SAC fails to link allegations of insider trading, coordination, and platform misrepresentations (*see Id.* ¶¶ 130–89, 560) to any concrete harm. *Brill*, 2020 WL 2936688, at \*9.

The SAC also does not allege which tokens were unfairly launched, a benchmark for a "fair" launch, or particulars as to what caused their alleged losses in any specific tokens or transactions. SAC ¶¶ 33–35, 65–67, 103, 126. Conclusory allegations of systemic loss and rigged outcomes (*id*. ¶¶ 95, 103, 126, 163, 185, 189), do not establish an "actual, quantifiable injury" or "concrete financial loss." *Kerik v. Tacopina,* 64 F. Supp. 3d 542, 560 (S.D.N.Y 2014); *World*

10

*Wrestling Ent., Inc*, 530 F. Supp. 2d at 521–22 (no RICO injury absent a theory of what a lawful process would have yielded).

In sum, the SAC alleges only that Plaintiffs speculated in volatile assets, paid ordinary transaction costs, and later experienced unfavorable market results. That is insufficient as a matter of law to plead the concrete financial injury RICO requires.

### 2.    Plaintiffs Fail to Adequately Allege That Baton's Alleged Conduct Proximately Caused Their Injuries.

To avoid dismissal, Plaintiffs must also allege the predicate acts were both the but-for cause and proximate cause of their injuries. *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010). Proximate causation requires a "direct" and "straightforward" connection between the defendant's conduct and the plaintiffs' injury. *Id.* at 9, 14–15. Links that are "too remote, purely contingent, or indirect" do not suffice. *Id.* at 9. Intervening acts, including "non-RICO violations committed by the defendants," break the causal chain. *Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003).

The SAC's proximate cause theory fails because it relies on the "intervening activity of third parties." *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55, 117 (S.D.N.Y. 2021). Plaintiffs allegedly were injured when token prices "collapsed within days or weeks of issuance." RCS ¶ 33; *see also id*. ¶¶ 34–35, 38. But the SAC acknowledges price declines resulted from trading decisions of independent market participants. *See* SAC ¶ 127 (trading of a "later person" causes loss). This third-party conduct breaks the causal chain. *See Hemi Grp., LLC*, 559 U.S. at 13 (no proximate cause if "independent actions of third and even fourth parties" interrupts causal chain); *7 West 57th St. Realty Co., LLC v. Citigroup, Inc.,* 771 F. App'x 498, 502 (2d Cir. 2019) (summary order) (no proximate cause because "injury was directly caused by buy/sell decisions that independent market actors made"); *see generally Risley v. Univ. Navigation Inc*., 2026 WL

11

572065, at *9 (S.D.N.Y. March 2, 2026) (crypto platform not liable because "some [unrelated third parties] used [it] for unlawful purposes.").

Plaintiffs also fail to plausibly link the three alleged predicate acts to their injuries. First, to establish proximate cause for wire fraud, a plaintiff must plead reliance. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 (2d Cir. 2013). The SAC alleges purchases of "fair-launch" tokens (SAC ¶¶ 65–67), but it does not contain non-conclusory allegations that any Plaintiff saw or relied on any specific misrepresentation. *See id.* ¶¶ 40–44; *see also FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 459 (S.D.N.Y. 2014) (dismissing RICO claim predicated on wire fraud because plaintiff "has not plausibly pled reliance on [defendant's] alleged misrepresentations"). Notably, the earliest alleged misrepresentation occurred on September 25, 2024. SAC ¶ 560(2)(a). Okafor purchased tokens both before and after this date, making reliance on that statement impossible. *Id.* ¶ 65. Plaintiffs also fail to tie their reliance to alleged KOL misrepresentations, which postdate the initiation of this action and concerned tokens Plaintiffs did not allegedly purchase. *Id.* ¶ 560(2)(d).

Second, allegations of unlicensed money transmitting are also not tied to any specific harm, transaction, or misrepresentation affecting Plaintiffs and instead rest on a generalized claim of insufficient "protections." *See id.* ¶¶ 435, 578–90. These generalized criticisms fail to allege conduct that proximately caused any cognizable injury. *See Tether*, 576 F. Supp. 3d at 122.

Third, the alleged gambling and wire fraud predicate acts cannot support proximate causation. *See* RCS ¶ 118. "Unlike an ordinary RICO victim," gamblers "can avoid any injury simply by walking away from the alleged wrongdoers" by not purchasing tokens, which defeats causation. *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 187–88 (3rd Cir. 2000). Similarly, Plaintiffs cannot establish that Defendants caused harm in the form of "platform fees or

12

other "execution harms" (SAC ¶ 590) where there is no allegation that the fees or execution environment was misrepresented, and in fact the SAC alleges that it was fully disclosed. *Id.* ¶¶ 244–256 ("Solana Labs announced network changes" in March 2024); *id.* ¶ 560 (no allegations as to fees or execution); *Wynne v. Equilease Corp.,* 1995 WL 764236, at *5, *9, (S.D.N.Y. Dec. 27, 1995) (dismissing RICO claim where facts of alleged fraud were "fully disclosed in the Offering Memorandum.") Finally, as set forth in § I.E of the Blockchain Defendants' Motion to Dismiss, ECF No. 166, which Baton incorporates by reference, the factors enumerated in *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 269 (1992), further confirm the absence of causation.

### C.    The SAC Fails to Adequately Plead a § 1962(c) Claim.

To establish a § 1962(c) violation Plaintiffs must plead that "a person engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013). The SAC fails to adequately plead a RICO enterprise or predicate-act violations that constitute racketeering activity.

### 1.    The SAC Does Not Adequately Plead a RICO Enterprise.

Plaintiffs assert an "association-in-fact enterprise" under 18 U.S.C. § 1961(4). SAC ¶ 536. To plead such an enterprise, Plaintiffs must allege (i) a common purpose, (ii) relationships among enterprise participants, and (iii) sufficient longevity. *Boyle v. United States*, 556 U.S. 938, 946 (2009); *Elsevier Inc. v. W.H.P.R., Inc.,* 692 F. Supp. 2d 297, 305-306 (S.D.N.Y. 2010*)*. The SAC fails to allege the first two elements.

First, Plaintiffs do not allege a common purpose shared by all Defendants. They identify only a general aim to "enrich its members," SAC ¶ 537, which is insufficient; if this sufficed, any market participants pursuing profits in parallel could qualify as a criminal enterprise. To qualify as an enterprise, the members "must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Cruz v. FXDirectDealer, LLC*,

13

720 F.3d 115, 120 (2d Cir. 2013). What Plaintiffs label an "enterprise" is routine, self-interested business conduct: a trading platform that charges fees, efforts to ensure orderly transaction processing on the blockchain, and paid marketing and promotion. SAC ¶¶ 105, 199–205, 229–48, 338; RCS ¶ 105–06. These allegations are consistent with lawful, independent conduct and do not support an inference of an association-in-fact enterprise. *See D. Penguin Bros. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) (no association-in-fact enterprise when the complaint failed to plead that defendants acted "on behalf of the enterprise as opposed to on behalf of themselves in their individual capacities, to advance their individual self-interests."); *Foster v. 2001 Real Est.*, 2015 WL 7587360, at *4 (S.D.N.Y. Nov. 24, 2015) (same).

Second, Plaintiffs fail to adequately plead relationships among participants. Courts require "factual, concrete, specific, declarative, [and] trustworthy" allegations of interpersonal relationships and coordinated conduct. *Black v. Ganieva*, 619 F. Supp. 3d 309, 335 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). A RICO plaintiff must explain how purported enterprise members "came to an agreement to act together." *Elsevier*, 692 F. Supp. 2d at 307. At most, Plaintiffs allege a hub-and-spoke set of routine commercial relationships— Baton's dealings with KOLs[6] and Baton's discussing technical guidance with the Labs Defendants—without a "rim" connecting the alleged spokes into a single enterprise that "function[s] as a continuing unit." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). SAC ¶ 123's visual diagram confirms that the SAC pleads exactly the type of "enterprise" that courts reject: a rimless hub-and-spoke, where all alleged coordination flows through Baton and no relationships

---

[6] Baton also incorporates by reference § I.A of the Blockchain Defendants' Motion to Dismiss, including the argument that the SAC fails to adequately identify the alleged "Lead KOLs" and "other coordinated participants" (RCS ¶ 68) sufficient to permit a defense.

14

exist between the Blockchain Defendants and the KOLs. *See Cedar Swamp Holdings, Inc. v. Zaman*, 487 F.Supp.2d 444, 449–50 (S.D.N.Y. 2007) (a "'hub-and-spokes' structure—that is, allegations that a common defendant perpetrated various independent frauds, each with the aid of a different co-defendant—do not satisfy the enterprise element of a RICO claim"); *see also, e.g.*, *Abbott Labs v. Adelphia Supply USA,* 2017 WL 57802, at \*5 (E.D.N.Y. Jan. 4, 2017) ("The parallel conduct of a number of 'spokes,' even through a central 'hub,' is not a RICO enterprise without more—that is, without a 'rim' that connects the spokes.").

Plaintiffs also impermissibly collapse the enterprise into the alleged racketeering activity. RICO requires an enterprise "separate and apart from the pattern of activity in which it engages," *Turkette*, 452 U.S. at 583, and it "must be an organization distinct from the conduct of the culpable defendants comprising it." *Maersk, Inc. v. Neewra, Inc.*, 687 F. Supp. 2d 300, 333 (S.D.N.Y. 2009), *aff'd sub nom. Maersk, Inc. v. Sahni*, 450 F. App'x 3 (2d Cir. 2011). The SAC does not plead such a distinct structure. Instead, it defines the supposed enterprise solely by reference to the very acts alleged as predicate offenses. SAC ¶¶ 535–45. The SAC identifies no organizational framework, decision-making structure, hierarchy, continuity mechanism, or shared purpose independent of the alleged predicates. In other words, the "enterprise" is not alleged as an entity with an existence of its own, but a label attached to the misconduct, which is insufficient.

Finally, if the Blockchain Defendants are dismissed, the RICO claim fails because Baton cannot form a distinct enterprise with its own employees or agents. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994).

### 2.    The SAC Does Not Plead Baton's Illegal Conduct.

Baton incorporates by reference, and adopts as applicable to it, the arguments in the Blockchain Defendants' Motion to Dismis § I.B, regarding conduct. Plaintiffs also fail to satisfy § 1962(c)'s "conduct" requirement because Baton cannot be held liable for its employees'

performing routine industry functions or providing services that are "necessary and helpful" to its business. *See Yien-Koo King v. Wang*, 2020 WL 6875403, at \*19 (S.D.N.Y. Nov. 23, 2020).

### 3.    The SAC Does Not Adequately Plead Two or More Predicate Acts.

The SAC also fails to allege that Baton or any other Defendant personally committed two or more predicate acts. *See DeFalco v. Bernas*, 244 F.3d 286, 305–06 (2d Cir. 2001).

**Wire Fraud Predicate Act.** Baton incorporates by reference, and adopts as applicable to it, the arguments and authorities in the Blockchain Defendants' Motion to Dismiss, § I.C.1, including that the SAC fails to plead (i) intent to defraud or a fraudulent scheme (ii) material omissions absent a duty to disclose, and (iii) any actionable false or misleading statement.

The SAC also fails to plead wire fraud predicate acts as to Baton for four related reasons. First, the SAC fails to allege that Defendant Cohen acted with intent to defraud for the reasons set forth in the Baton Officers' Motion to Dismiss. ECF No.170.

Second, the statement that "retail's already up massively" (SAC ¶ 560(2)(c)) is inactionable puffery. Puffery includes "statements that are too general to cause a reasonable investor to rely on them and thus cannot have misled a reasonable investor." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245 (2d Cir. 2016). No reasonable user would rely on this statement because it is unclear who "retail" refers to, in what way they are "up" and how that could be measured.

Third, the statement that Baton was as "even playing field as it gets [in my opinion]" is a non-actionable opinion. A "sincere statement of pure opinion is not an untrue statement of material fact, regardless whether an investor can ultimately prove the belief wrong." *Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*, 575 U.S. 175, 186 (2015).

Fourth, the SAC fails to allege that the statements that Baton was an "unruggable fair launch platform" or the identified KOL promotions were false. *See* SAC ¶¶ 560(2)(a) and (d). The SAC does not allege what "ruggable" means or competent facts suggesting how Pump.fun was

"ruggable." *Id*. ¶ 560(2)(a). Similarly, alleging that the KOL statements "appeared to be independent" when they were not does not allege falsity. *Id*. ¶ 560(2)(d).

**Gambling-Related Predicate Act**. The SAC fails to allege a gambling violation under 18 U.S.C. § 1955. Plaintiffs must establish a state-law gambling violation, 18 U.S.C. § 1955(b)(1), but the SAC does not allege violations of N.Y.P.L. §§ 225.05 or 225.10. Section 225.00(2) defines gambling as risking "something of value upon the outcome of a contest of chance . . . upon an agreement or understanding [to] receive something of value in the event of a certain outcome." The SAC fails to satisfy this definition in two ways. The SAC alleges the legal conclusion that users staked SOL in a "contest of chance" but the SAC alleges no game of chance akin to gambling; "price spikes" and stochastic outcomes do not convert it into one. SAC ¶¶ 315, 397. The SAC also alleges no agreement or understanding that users a) would receive a payout—or anything other than the tokens they purchased—b) in the event of a certain outcome. *See Matter of Muidallap Corp. v. State Liquor Auth.*, 143 A.D.2d 9, 11–12 (1st Dep't 1988) (finding "no gambling occurred" where buyers did not agree to or understand that they would receive something of value "by chance procedures similar to those used in certain gambling games.").

**Unlicensed Money Transmission Predicate Act.** Plaintiffs fail to allege an unlicensed money-transmitting business. "Money transmitting" under 18 U.S.C. § 1960(b)(2) requires "transferring funds on behalf of the public." The SAC does not allege that Baton took custody or control of user funds. *See* SAC ¶¶ 581, 588(a). It alleges users sent SOL "into a bonding-curve contract" and Baton's role is limited to product design, interface functions, and marketing. *Id*. ¶¶ 634, 107. Accordingly, the SAC fails to allege that Baton holds or transfers funds on behalf of the public. The SAC also does not allege that Baton knowingly laundered money; instead, it alleges that Baton took appropriate remedial steps upon learning of the alleged illegal acts. *See id*. ¶ 467.

17

**D.    The SAC Fails to Adequately Allege a "Conspiracy" Under Section 1962(d).**

Section 1962(d) makes it unlawful "to conspire to violate" other RICO subsections. Because Plaintiffs fail to state a substantive RICO claim, the conspiracy claim fails as well. *Gucci Am. v. Alibaba Grp. Holding Ltd.*, 2016 WL 6110565, at *9 (S.D.N.Y. Aug. 4, 2016).

The RICO conspiracy claim also fails because the SAC fails to allege a specific "agreement to commit predicate acts." *Paul Hobbs Imports Inc. v. Verity Wines LLC,* 2023 WL 374120, at *13 (S.D.N.Y. Jan. 24, 2023) "Conclusory, vague, and general allegations of a criminal conspiracy . . . simply do not suffice." *Id.* The SAC alleges that Defendants' "knowledge and agreement are shown by" platform control, design decisions, and the absence of KYC/AML safeguards. *See* SAC ¶ 597. But it does not allege who agreed with whom, when any agreement was formed, what its terms were, or which Defendant agreed to commit the predicate act. Absent specific facts alleging agreement to commit racketeering acts, the RICO conspiracy claim must be dismissed. *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 425 (E.D.N.Y. 2017) (dismissing conspiracy claim where plaintiffs "only summarily alleged . . . an illicit agreement").

**E.    Plaintiffs Do Not Adequately Allege Domesticity**

Section 1964(c) "requires a civil RICO plaintiff to allege and prove a domestic injury . . . and does not allow recovery for foreign injuries." *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 354 (2016). "[D]etermining whether a plaintiff has alleged a domestic injury [for purposes of RICO] is a context-specific inquiry that turns largely on the particular facts alleged in a complaint," including the nature of the injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity. *Yegiazaryan v. Smagin*, 599 U.S. 533, 543 (2023).

Here, the SAC's only alleged domestic nexus is that Okafor resides in, and both Okafor and Carnahan allegedly transacted in the United States. SAC ¶¶ 65, 67. But residence alone does not establish domestic harm. *Yegiazaryan,* 599 U.S. at 543–45 (rejecting "bright-line rule" that

18

RICO injury occurs at plaintiffs' residence). The SAC does not allege that the enterprise was formed in the U.S., the cryptocurrency originated in the U.S., the conspiracy was conceived or directed from the U.S., or predicate acts were U.S.-based. *See Yerkyn v. Yakovlevich*, 164 F.4th 224, 230 (2d Cir. 2026) (no domestic injury where alleged conduct was neither "conceived" nor "executed" in the U.S.). Instead, it alleges that the Baton Defendants are foreign, Pump.fun operated "over the internet," and a scheme was operated through "foreign wires" and a "globally distributed network." SAC ¶¶ 70, 545, 558, 561. The SAC, therefore, alleges *foreign*, not domestic, racketeering activity inactionable under RICO. *Yerkyn*, 164 F.4th at 231-32. Allegations that U.S. users accessed Pump.fun domestically or suffered economic harm in the U.S. fail because the SAC does not allege relevant conduct or statements made from the U.S., directed to the U.S., or tied to domestic transactions. *See Demaree v. Castro*, 2023 WL 6465881, at *1 n.3 (S.D.N.Y. Oct. 4, 2023) (McMahon, J.) (holding insufficient allegations involving "foreigners who did business with a [foreign] corporation over a [foreign] website"); *Licht v. Binance Holdings Ltd.*, 2025 WL 625303, at *42 (D. Mass Feb. 5, 2025) (injury allegedly caused by "international wire communications by one or more international syndicates" was not domestic).

### F.    The "Confidential Witness" Allegations Should Not Be Credited

The SAC's allegations from three "Confidential Witnesses" ("CWs") should be disregarded. Confidential sources can be credited only if the pleading describes them "with sufficient particularity to support the probability that someone in such a person's position would be privy to the information alleged." *In re EVCI Colleges Holding Corp., Sec. Litig.*, 469 F. Supp.2d 88, 96–97 (S.D.N.Y. 2006) (McMahon, J.) (citing *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000)); *see also BMA LLC v. HDR Glob. Trading, Ltd.*, 2021 WL 949371, at *18 n.10 (N.D. Cal. March 12, 2021) (civil RICO decision discussing standards for confidential sources in securities fraud cases).

The SAC lacks the necessary particularity. CW-1 is identified as a "member of the Pump.fun team" (SAC ¶ 219 n.6); CW-2 is identified as a "prominent KOL" who communicated with Defendant Cohen (*Id.* ¶ 203 n.4); and CW-3 is identified as a "prominent" KOL "operating primarily outside the Pump.fun ecosystem but with direct contacts within it" (*Id.* ¶ 270). These descriptions fail to allege that any purported CW was positioned to observe enterprise coordination or other alleged wrongdoing. The descriptions fail for vagueness or because they describe "lower level employees" who would not have been privy to such decisions. *Id.* ¶¶ 203–04, 269–71, 599; *Diabat v. Credit Suisse Grp. AG,* 2024 WL 4252502, at *140 (S.D.N.Y. Sept. 19, 2024) (McMahon, J.) (declining to credit CW allegations for that reason). Similarly, the CW allegations that Defendants coordinated on buying and selling COPE (SAC ¶ 291–95) and bought "early positions" in tokens on Baton (*id.* ¶ 271) should be disregarded because they are "entirely general and conclusory and devoid of specific facts." *Bettis v. Aixtron SE*, 2016 WL 7468194, at *9 (S.D.N.Y. Dec. 20, 2016) (McMahon, J.).

## III.    THE SAC FAILS TO PLEAD AN ACTIONABLE SECURITIES ACT CLAIM.

The SAC fails to state a claim under Section 12 of the Securities Act for two reasons: (i) it does not adequately allege that the Pump Tokens were sold as securities and (ii) Plaintiffs lack standing to assert claims regarding the "Pump Tokens" that they did not buy.

### A.    The SAC Fails to Establish That the Pump Tokens Were Sold as Securities.

To state a Securities Act § 12 claim, Plaintiffs must allege a securities transaction. 15 U.S.C. § 77l(a)(1). The mere fact that something is called a token does not make it a security. *See, e.g.*, SEC Staff Statement on Meme Coins (Feb. 27, 2025) ("a meme coin is not itself a security").[7] To establish that Pump Tokens were sold as securities Plaintiffs need to allege that they were sold

---

[7] Ex. A, available at https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins ("the "SEC Staff Statement" or "SEC Staff Stmt.").

as an "investment contract." *See* SAC ¶ 499. To do this a Plaintiff must allege (i) an investment of money (ii) "in a common enterprise" and (iii) "with profits to come solely from the efforts of others." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946). The SAC fails to adequately plead the second and third elements.

### 1.    The SAC Does Not Adequately Allege a Common Enterprise.

Second Circuit courts recognize two ways to establish a common enterprise: horizontal commonality or strict vertical commonality. "Horizontal commonality" is the "tying of each individual investor's fortunes to the fortunes of the other investors by the pooling of assets, usually combined with the pro-rata distribution of profits." *In re J.P. Jeanneret Assoc., Inc.,* 769 F. Supp. 2d 340, 359 (S.D.N.Y. 2011) (McMahon, J.); *see also SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 179 (S.D.N.Y. 2020) ("key feature" of horizontal commonality is "that investors' profits at any given time are tied to the success of the enterprise."). Strict vertical commonality requires that "the fortunes of plaintiff and defendants are linked so that they rise and fall together." *Jeanneret,* 769 F. Supp. 2d at 359–60 (noting Second Circuit has not decided whether strict vertical commonality suffices, but citing district court decisions holding that it might).

Plaintiffs satisfy neither. Plaintiffs do not allege that Baton pooled their funds and used them for a common enterprise. Instead, the SAC alleges that buyers "sent SOL into a bonding-curve contract" that "burned the tokens and return SOL" upon sale. SAC ¶ 634. Thus the SAC alleges that the bonding curve—not Baton—held Plaintiffs' funds, and it does ***not*** allege that Baton employed users' funds to increase the value of the Pump Tokens or build its business. *Id*. ¶¶ 500, 600, 634. Also, the allegation that funds were "pooled" (*id.* ¶¶ 501, 612, 634–35) is an unsupported legal conclusion that must be disregarded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). This case differs from crypto-offering cases where courts found pooling satisfied based on allegations that "plausibly tied the funds received by the promoter through the offering to an

21

improvement of the ecosystem . . . that consequently increases the value of the token[.]" *Friel v. Dapper Labs, Inc.*, 657 F. Supp. 3d 422, 436 (S.D.N.Y. 2023).

Apart from transaction fees, Plaintiffs do not allege Baton's use of their funds "causally related to the profitability of [the enterprise] as a whole," which is fatal to horizontal commonality. *Savino v. E.F. Hutton & Co., Inc.* 507 F. Supp. 1225, 1237 (S.D.N.Y. 1981); *see also Forefront Mgmt., LLC v. Vergilis-Kalner*, 2025 WL 1222648, at *5 (S.D.N.Y. Apr. 24, 2025) (pooled funds must be tied "to the success of the overall venture"); SEC Staff Stmt. (meme-coin purchase funds "are not pooled together to be deployed by the promoters or other third parties for developing the coin or a related enterprise").

The SAC also fails to establish strict vertical commonality because it pleads different economic circumstances for Plaintiffs and Defendants. Plaintiffs allege that Baton earned "a platform-wide 1% fee" on each transaction. SAC ¶ 505. Plaintiffs' gains or losses, by contrast, depended on the "market value of the Tokens" *id.* ¶ 524, and the prices at which they traded, *id.* ¶ 327 (losses from "closed trading positions"). In other words, Plaintiffs' and Baton's profits did ***not*** rise and fall together. These divergent economic realities defeat strict vertical commonality. *Lowenbraun v. L.F. Rothschild, Unterberg, Towbin*, 685 F. Supp. 336, 341 (S.D.N.Y 1988) (profits "were not interdependent since the broker allegedly profited from the commissions while plaintiffs suffered losses."); *see also Jeanneret*, 769 F. Supp. 2d at 360 (fortunes of "stockbroker, who collects a fee for every consummated transaction" are not tied to client's).

### 2.    The SAC Does Not Adequately Allege a Reasonable Expectation of Profits Based on the Efforts of Others.

To satisfy *Howey*'s third prong, purchasers must have "a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." *United Hous. Found. v. Forman*, 421 U.S. 837, 852 (1975). "The focus is on 'what the purchasers were offered or

22

promised' and whether a reasonable purchaser under the circumstances would have expected 'profits' derived primarily from the efforts of others." *Donovan v. GMO-Z.com Trust. Co., Inc*., 779 F. Supp. 3d 372, 385 (S.D.N.Y. 2025) (quoting *Forman*). "An objectively reasonable purchaser . . . must believe that the efforts of others will be geared towards generating profits, enhancing the value of the asset underlying the investment contract, or growing the enterprise— not merely facilitating individual purchasers' speculative schemes." *Id.* at 389. This distinguishes "investment contracts that are securities and investment contracts that are simply investments." *Id*.

In fact, the SAC characterizes Pump.Fun as a platform for buying speculative tokens, not earning profits from Defendants' managerial efforts. *See* SAC ¶ 414 (rewards for "token creators who achieved short-term speculative milestones") and *id.* ¶ 397 (users "encouraged to speculate and chase elusive price spikes"). But the promotional activities *Howey* envisions are "the organization of a business, the efforts of a promoter in cultivating and marketing citrus. . . or the efforts of the managers of a savings and loan to earn profits to be distributed as dividends." *Bender v. Cont'l Towers Ltd., P'ship*, 632 F. Supp. 497, 501 (S.D.N.Y. 1986) (cleaned up). Allegations that Baton facilitated speculation or gambling are "a far cry from the entrepreneurial or managerial efforts required for an objectively reasonable purchaser to believe that they would derive a profit solely from the efforts of others." *GMO-Z*, 779 F. Supp. 3d 372 at 389 (dismissing complaint under third *Howey* prong); *see also* SEC Staff Stmt. ("value of meme coins is derived from speculative trading"; "promoters are not undertaking . . . managerial and entrepreneurial efforts from which purchasers could reasonably expect profit").

The SAC generically alleges that Baton led buyers of Pump Tokens to expect profits but pleads no facts supporting this legal conclusion. SAC ¶¶ 502, 612(c). Unlike cases involving alleged "ecosystem" development promises, Plaintiffs do not allege that Baton represented that

23

token-sale proceeds would be used to increase token values by growing the Pump.fun platform. *See SEC v. Coinbase*, 726 F. Supp. 3d 260, 292 (S.D.N.Y. 2024); *SEC v. Terraform,* 684 F. Supp.3d 170, 196 (S.D.N.Y. 2023) (profits "from the use of the Mirror Protocol . . . were fed back to investors"). Baldly stating that "[b]uyers were told" tokens would appreciate (SAC ¶ 502) does not identify *how* that alleged appreciation would occur, nor any specific statements *by Baton* about token appreciation. Baton's platform left each participant "to (its) own devices for realizing upon (its) rights." *Sinva, Inc., v. Merrill, Lynch, Pierce, Fenner & Smith, Inc*., 253 F. Supp. 359, 367 (S.D.N.Y. 1966) (striking securities claims, quoting *Howey* at 348).

Alleged statements by unaffiliated token creators also do not satisfy *Howey*'s third prong. SAC ¶¶ 613–31 (citing descriptions in Ex. C). For example, the SAC alleges the Apex AI token's "value is linked to pending FDA approvals and future integration with healthcare providers" (*id*. ¶ 618) but the cited exhibit neither states that, nor identifies any other reason to expect profit. *See* Ex. C. at 7. Moreover, Baton did not issue any Pump Tokens, which were created by unidentified third-parties, and the alleged token descriptions (many of which are not in Plaintiffs' exhibits) do not identify *who* made these statements, what concrete promises the unidentified promoters made, or why investors should have expected profits from them. *See* SAC, Ex. C. at 1-20. An objective, reasonable investor thus could not have expected profit from them based on *Baton's* activities. *See Davis v. Rio Rancho Estates, Inc*. 401 F. Supp. 1045, 1049–50 (S.D.N.Y. 1975) ("defendants' promotional materials, fairly read [do not encourage a] purchase as an investment").

### B.     Plaintiffs Lack Standing as to Tokens They Did Not Buy.

Count III fails to state a claim as to the "Pump Tokens" that Plaintiffs do not allege they bought. Count III covers 20 "Pump Tokens." SAC ¶¶ 613–631. But the SAC alleges that Okafor and Aguilar purchased only three: the FRED, FWOG and GRIFFAIN tokens. *Id.* ¶¶ 65–66. Claims based on the FWOG tokens should be dismissed because the SAC does not allege it was purchased

24

as an investment contract. *See id.* ¶¶ 66, 613-631. The SAC identifies no other Pump Token purchases by Okafor and none at all by Carnahan. *Id.* ¶¶ 65, 67.

Plaintiffs lack Article III standing over tokens they did not purchase. Standing requires "injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Plaintiffs have not "suffered any injury stemming from [any] offerings [that] they did not purchase." *In re Lehman Bros. Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 491 (S.D.N.Y. 2010) (plaintiffs alleged purchases in nine of 94 offerings but did "not allege[] any personal injury stemming from the other eighty-five [and] therefore have no standing to assert those claims"), *aff'd sub nom. In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011); *see also Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 111 (2d Cir. 2013) (same). Count III should therefore be dismissed as to the Pump Tokens that Plaintiffs do not allege they bought. Carnahan lacks standing to assert a claim because he is not alleged to have purchased *any* Pump Tokens.

## IV.   THE UNJUST ENRICHMENT CLAIM FAILS.

Plaintiffs' unjust enrichment claim should be dismissed as duplicative. *Corsello v. Verizon N.Y. Inc.*, 18 N.Y.3d 777, 790–91 (2012) (unjust enrichment claim fails "where it simply duplicates, or replaces, a conventional contract or tort claim."). Claims are duplicative "if they 'arise from the same facts and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). The unjust enrichment claim should be dismissed because it repackages the same allegations underlying other claims (SAC ¶¶ 650–53) and alleges no distinct damages. It also must be dismissed because the SAC fails to allege the element that no adequate remedy at law exists. *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010).

## CONCLUSION

For these reasons, the Court should dismiss all claims against Baton.

Dated: March 6, 2026                          Respectfully submitted,

                                              **BROWN RUDNICK LLP**

                                              _/s/ Stephen D. Palley_
                                              Stephen D. Palley
                                              Daniel L. Sachs
                                              1900 N Street NW, 4th Floor
                                              Washington, DC 20036
                                              (202) 536-1700 (telephone)
                                              (202) 536-1701 (facsimile)
                                              spalley@brownrudnick.com
                                              dsachs@brownrudnick.com

                                              Kyle Dorso (_pro hac vice_)
                                              One Financial Center
                                              Boston, MA 02111
                                              (617) 856-8200 (telephone)
                                              (617) 289-0899 (facsimile)
                                              kdorso@brownrudnick.com

                                              _Counsel for the Baton Corporation LTD_

26

## WORD COUNT CERTIFICATION

I, Stephen D. Palley, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c). According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 8,421 words in the document.

*/s/ Stephen D. Palley*

Stephen D. Palley

27