# EXHIBIT A



## U.S. Securities and Exchange Commission

Home / Newsroom / Speeches and Statements / Staff Statement on Meme Coins

STATEMENT

# Staff Statement on Meme Coins

## Division of Corporation Finance

Feb. 27, 2025

As part of an effort to provide greater clarity on the application of the federal securities laws to crypto assets, the Division of Corporation Finance is providing its views[1] (/newsroom/speeches-statements/staff-statement-meme-coins#_ftn1) on "meme coins." A "meme coin" is a type of crypto asset[2] (/newsroom/speeches-statements/staff-statement-meme-coins#_ftn2) inspired by internet memes, characters, current events, or trends for which the promoter seeks to attract an enthusiastic online community to purchase the meme coin and engage in its trading. Although individual meme coins may have unique features, meme coins typically share certain characteristics. Meme coins typically are purchased for entertainment, social interaction, and cultural purposes, and their value is driven primarily by market demand and speculation. In this regard, meme coins are akin to collectibles. Meme coins also typically have limited or no use or functionality. Given the speculative nature of meme coins, they tend to experience significant market price volatility, and often are accompanied by statements regarding their risks and

lack of utility, other than for entertainment or other non-functional purposes.[3] (/newsroom/speeches-statements/staff-statement-meme-coins#_ftn3)

It is the Division's view that transactions in the types of meme coins described in this statement, do not involve the offer and sale of securities under the federal securities laws.[4] (/newsroom/speeches-statements/staff-statement-meme-coins#_ftn4) As such, persons who participate in the offer and sale of meme coins do not need to register their transactions with the Commission under the Securities Act of 1933 ("Securities Act") or fall within one of the Securities Act's exemptions from registration. Accordingly, neither meme coin purchasers nor holders are protected by the federal securities laws.

Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Securities Exchange Act of 1934 each defines the term "security" by providing a list of various financial instruments, including "stock," "note," and "bond." A meme coin does not constitute any of the common financial instruments specifically enumerated in the definition of "security" because, among other things, it does not generate a yield or convey rights to future income, profits, or assets of a business. In other words, a meme coin is not itself a security. The aforementioned statutory sections also provide that "investment contracts" are securities. Given that a meme coin is not itself a security, we conduct our analysis of whether a meme coin may be offered and sold as part of an investment contract under the "investment contract" test set forth in *SEC v. W.J. Howey Co.*[5] (/newsroom/speeches-statements/staff-statement-meme-coins#_ftn5) The *Howey* test analyzes whether certain arrangements or instruments are investment contracts based on their "economic realities."[6] (/newsroom/speeches-statements/staff-statement-meme-coins#_ftn6)

In evaluating the economic realities of a transaction, the *Howey* test considers whether there is an investment in an enterprise premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.[7] (/newsroom/speeches-statements/staff-statement-meme-coins#_ftn7) Federal courts since *Howey* have explained that *Howey's* "efforts of others" requirement is satisfied when "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise."[8] (/newsroom/speeches-statements/staff-statement-meme-coins#_ftn8)

The offer and sale of meme coins does not involve an investment in an enterprise nor is it undertaken with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. First, meme coin purchasers are not making an investment in an enterprise. That is, their funds are not pooled together to be deployed by promoters or other third parties for developing the coin or a related enterprise. Second, any expectation of profits that meme coin purchasers have is not derived from the efforts of others. That is, the value of meme coins is derived from speculative trading and the collective sentiment of the market, like a collectible. Moreover, the promoters of meme coins are not undertaking (or indicating an intention to undertake) managerial and entrepreneurial efforts from which purchasers could reasonably expect profit.[9] (/newsroom/speeches-statements/staff-statement-meme-coins#_ftn9)

Notwithstanding the foregoing, this statement does not extend to the offer and sale of meme coins that are inconsistent with the descriptions set forth above, or products that are labeled "meme coins" in an effort to evade the application of the federal securities laws by disguising a product that otherwise would constitute a security. As noted above, the Division will evaluate the economic realities of the particular transaction.

Further, although the offer and sale of meme coins may not be subject to the federal securities laws, fraudulent conduct related to the offer and sale of meme coins may be subject to enforcement action or prosecution by other federal or state agencies under other federal and state laws.

For further information, please contact the Division's Office of Chief Counsel by submitting a web-based request form at https://www.sec.gov/forms/corp_fin_interpretive (https://www.sec.gov/forms/corp_fin_interpretive).

---

[1] (https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins#_ftnref1)   This statement represents the views of the staff of the Division of Corporation Finance (the "Division"). The statement is not a rule,

Case 1:25-cv-00880-CM    Document 168-1    Filed 03/06/26    Page 5 of 6

regulation, guidance, or statement of the U.S. Securities and Exchange Commission ("Commission"), and the Commission has neither approved nor disapproved its content. This statement, like all staff statements, has no legal force or effect: it does not alter or amend applicable law, and it creates no new or additional obligations for any person.

[2] (https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins#_ftnref2)  For purposes of this statement, a "crypto asset" is an asset that is issued and/or transferred using distributed ledger or blockchain technology, including, but not limited to, so-called "virtual currencies," "coins," and "tokens," and that relies on cryptographic protocols.

[3] (https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins#_ftnref3)  Typical statements include the following: (i) purchasers should not expect to profit or generate a return through receipt or ownership of the coins; (ii) no one intends to exert any efforts or provide any assistance in bringing about a profit or return for holders of the coins; (iii) the coins have no use or functionality; (iv) purchasers may lose all of the money used to purchase the coins; and (v) the coins are intended for entertainment purposes only.

[4] (https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins#_ftnref4)  The Division's view is not dispositive of whether a specific meme coin itself is a security or whether it is offered and sold as part of an investment contract, which is a security. A definitive determination requires analyzing the specific facts relating to the meme coin and the manner in which it is offered and sold.

[5] (https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins#_ftnref5)  328 U.S. 293 (1946) ("*Howey*").

[6] (https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins#_ftnref6)  *See Landreth Timber Co. v. Landreth*, 471 U.S. 681, 689 (1985), in which the U.S. Supreme Court suggested that the proper test for determining whether a particular instrument that is not clearly within the definition of "stock" as set forth in Section 2(a)(1) of the Securities Act, or that otherwise is of an unusual nature, is the economic realities test set forth in *Howey*. In analyzing whether an instrument is a security, "form should be disregarded for

substance," *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967), "and the emphasis should be on economic realities underlying a transaction, and not on the name appended thereto." *United Housing Found., Inc. v. Forman*, 421 U.S. 837, 849 (1975).

[7] (https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins#_ftnref7)  *Forman*, 421 U.S. at 852.

[8] (https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins#_ftnref8)  *See, e.g., SEC v. v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 (9th Cir. 1973).

[9] (https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins#_ftnref9) For example, if the promoters' efforts are limited primarily to hyping the meme coin on social media and online forums and getting the coin listed on crypto trading platforms, then there are not likely to be sufficient indicia to establish that purchasers had a reasonable expectation of profits based on the efforts of the promoters.

Last Reviewed or Updated: May 5, 2025