**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DIEGO AGUILAR, KENDALL CARNAHAN and MICHAEL OKAFOR, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>BATON CORPORATION LTD, d/b/a PUMP.FUN, ALON COHEN, DYLAN KERLER, NOAH BERNHARD HUGO TWEEDALE, SOLANA LABS INC., SOLANA FOUNDATION, ANATOLY YAKOVENKO, RAJ GOKAL, DAN ALBERT, AUSTIN FEDERA, LILY LIU and LEAD KOL DOES 1-25,<br><br>     Defendants. | Case No. 25 Civ. 00880 (CM) |

**THE BATON OFFICERS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS THE
<u>SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>**

**CAHILL GORDON & REINDEL LLP**
Samson A. Enzer
Tammy L. Roy
Lauren Perlgut
32 Old Slip
New York, NY 10005
(212) 701-3000

*Counsel for the Baton Officers*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ALLEGATIONS AGAINST THE BATON OFFICERS ................................................................ 3

I.      THERE IS NO PERSONAL JURISDICTION OVER THE BATON OFFICERS ........... 8

        A.      RICO Does Not Supply Personal Jurisdiction .......................................... 8

        B.      The Court Lacks Jurisdiction Under New York's Long-Arm Statute ................... 9

        C.      The Exercise of Personal Jurisdiction Would Violate Due Process ..................... 13

II.     PLAINTIFFS' RICO CLAIMS FAIL AS TO THE BATON OFFICERS ....................... 14

        A.      Plaintiffs Fail to Plausibly Allege that the Baton Officers Participated in the
                Operation or Management of an Enterprise ............................................... 15

        B.      Plaintiffs Fail to Plead a Pattern of Racketeering Activity by the Baton Officers 17

        C.      Plaintiffs Do Not Adequately Plead a RICO Conspiracy Claim .......................... 21

III.    PLAINTIFFS' CONTROL PERSON LIABILITY CLAIMS FAIL ............................... 23

IV.     PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS ............................................. 24

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4 K & D Corp.* v. *Concierge Auctions, LLC*,
    2 F. Supp. 3d 525 (S.D.N.Y. 2014) .......................................................................................22

*Al Rushaid* v. *Pictet & Cie*,
    28 N.Y.3d 316 (2016) ...........................................................................................................9

*Asahi Metal Indus. Co.* v. *Superior Ct. of Cal., Solano Cty.*,
    480 U.S. 102 (1987)...............................................................................................................13

*Barlow* v. *Skroupa*,
    221 A.D.3d 482 (1st Dep't 2023) .........................................................................................25

*Berdeaux* v. *OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021).................................................................................12

*Bilinski* v. *Keith Haring Found., Inc.*,
    96 F. Supp. 3d 35 (S.D.N.Y. 2015) .....................................................................................25

*Brenner* v. *Brenner*,
    821 F. Supp. 2d 533 (E.D.N.Y. 2011) .................................................................................24

*Caplan* v. *Dollinger*,
    803 F. Supp. 3d 219 (S.D.N.Y. 2025).................................................................................25

*Chufen Chen* v. *Dunkin' Brands, Inc.*,
    2018 WL 9346682 (E.D.N.Y. Sept. 17, 2018) ....................................................................11

*Cont'l Petrol. Corp.* v. *Corp. Funding Partners, LLC*,
    2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012)......................................................................21

*Crab House of Douglaston, Inc.* v. *Newsday, Inc.*,
    418 F. Supp. 2d 193 (E.D.N.Y. 2006) .................................................................................17

*D. Penguin Bros.* v. *City Nat. Bank*,
    587 F. App'x 663, 668 (2d Cir. 2014) .................................................................................16

*Davey* v. *PK Benelux B.V.*,
    2022 WL 1289341 (S.D.N.Y. Apr. 29, 2022)......................................................................13

*Deer Consumer Prods., Inc.* v. *Little*,
    938 N.Y.S.2d 767 (Sup. Ct. N.Y. Cnty. 2012) ....................................................................10

*DeFalco* v. *Bernas*,
   244 F.3d 286 (2d Cir. 2001)...........................................................................................15

*Demaree* v. *Castro*,
   2023 WL 6465881 (S.D.N.Y. Oct. 4, 2023) ...................................................................15

*In re Deutsche Telekom AG Sec. Litig.*,
   2002 WL 244597 (S.D.N.Y. Feb. 20, 2002)....................................................................23

*Eades* v. *Kennedy, PC L. Offs.*,
   799 F.3d 161 (2d Cir. 2015)..............................................................................................9

*In re EHang Holdings Ltd. Sec. Litig.*,
   646 F. Supp. 3d 443 (S.D.N.Y. 2022)..............................................................................14

*Elsevier, Inc.* v. *Grossman*,
   77 F. Supp. 3d 331 (S.D.N.Y. 2015)....................................................................... 8-9, 12

*Elsevier, Inc.* v. *Grossman*,
   2013 WL 6331839 (S.D.N.Y. Dec. 5, 2013) ...................................................................22

*Elsevier Inc.* v. *W.H.P.R., Inc.*,
   692 F. Supp. 2d 297 (S.D.N.Y. 2010)..............................................................................16

*Emerson* v. *Mutual Fund Series Trust*,
   393 F. Supp. 3d 220 (E.D.N.Y. 2019) .............................................................................24

*FD Prop. Holding, Inc.* v. *U.S. Traffic Corp.*,
   206 F. Supp. 2d 362 (E.D.N.Y. 2002) ........................................................................ 22-23

*First Cap. Asset Mgmt., Inc.* v. *Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)............................................................................................18

*Flexborrow LLC* v. *TD Auto Fin. LLC*,
   255 F. Supp. 3d 406 (E.D.N.Y. 2017) ...................................................................... 20, 22-23

*Fuld* v. *Palestine Liberation Org.*,
   606 U.S. 1 (2025)............................................................................................................13

*Girl Scouts of U.S.* v. *Steir*,
   102 F. App'x 217 (2d Cir. 2004) .....................................................................................11

*In Re: Glob. Cord Blood Corp. Sec. Litig.*,
   2026 WL 444770 (S.D.N.Y. Feb. 17, 2026).....................................................................14

*Ho* v. *Duoyuan Glob. Water, Inc.*,
   887 F. Supp. 2d 547 (S.D.N.Y. 2012)..............................................................................23

*Jackson* v. *Wells Fargo Home Mortg.*,
  2019 WL 1376840 (E.D.N.Y. Mar. 27, 2019) ..............................................................7n

*JDH Unlimited Inc.* v. *APKZ Med. Inc.*,
  2025 WL 3078160 (E.D.N.Y. Nov. 4, 2025) ................................................................13

*Katzman* v. *Victoria's Secret Catalogue*,
  167 F.R.D. 649 (S.D.N.Y. 1996) ........................................................................... 14-15

*Kim* v. *Kimm*,
  884 F.3d 98 (2d Cir. 2018) ..........................................................................................15

*Koenig* v. *Boulder Brands, Inc.*,
  995 F. Supp. 2d 274 (S.D.N.Y. 2014) .........................................................................24

*Kousisis* v. *United States*,
  605 U.S. 114 (2025) ............................................................................................... 19-20

*Laborers Loc. 17 Health & Ben. Fund* v. *Philip Morris, Inc.*,
  26 F. Supp. 2d 593 (S.D.N.Y. 1998) ..............................................................................9

*LaSalle Nat'l Bank* v. *Duff & Phelps Credit Rating Co.*,
  951 F. Supp. 1071 (S.D.N.Y. 1996) .............................................................................15

*Lerner* v. *Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ........................................................................................19

*Lopez* v. *Shopify, Inc.*,
  2017 WL 2229868 (S.D.N.Y. May 23, 2017) .............................................................10

*May* v. *Barclays PLC*,
  2025 WL 887300 (S.D.N.Y. Mar. 21, 2025) ...............................................................23

*Moose Toys Ltd* v. *Baby&Mommy K-ingdom Toy Store*,
  2025 WL 3466662 (S.D.N.Y. Sept. 19, 2025) .............................................................10

*Nat'l Asbestos Workers Med. Fund* v. *Philip Morris, Inc.*,
  86 F. Supp. 2d 137 (E.D.N.Y. 2000) ..............................................................................8

*Newman* v. *L.F. Rothschild, Unterberg, Towbin*,
  651 F. Supp. 160 (S.D.N.Y. 1986) ..............................................................................18

*Paraco Gas Corp.* v. *Ion Bank*,
  2021 WL 2810062 (S.D.N.Y. July 6, 2021) ........................................................... 9-10

*In re Parmalat Sec. Litig.*,
  376 F. Supp. 2d 449 (S.D.N.Y. 2005) ..........................................................................14

*Pub. Employees' Ret. Sys. of Miss.* v. *Merrill Lynch & Co. Inc.*,
   714 F. Supp. 2d 475 (S.D.N.Y. 2010)...................................................................................23

*Reliance First Cap., LLC* v. *Mid Am. Mortg., Inc.*,
   2019 WL 2504039 (E.D.N.Y. June 17, 2019) ........................................................................12

*Reves* v. *Ernst & Young*,
   507 U.S. 170 (1993)................................................................................................................15

*Risley* v. *Universal Navigation Inc.*,
   2026 WL 572065 (S.D.N.Y. Mar. 2, 2026) ...........................................................................24

*Rombach* v. *Chang*,
   355 F.3d 164 (2d Cir. 2004)...................................................................................................23

*Safex Found., Inc.* v. *SafeLaunch Ventures Ltd.*,
   694 F. Supp. 3d 1 (D.D.C. 2023) ...........................................................................................14

*Sandoval* v. *Uphold HQ Inc.*,
   2025 WL 1268291 (S.D.N.Y. May 1, 2025) .........................................................................18

*Savage Universal Corp.* v. *Grazier Const., Inc.*,
   2004 WL 1824102 (S.D.N.Y. Aug. 13, 2004).................................................................. 10-11

*Shetiwy* v. *Midland Credit Mgmt.*,
   15 F. Supp. 3d 437 (S.D.N.Y. 2014)......................................................................................17

*Snowbridge Advisors LLC* v. *ESO Cap. Partners UK LLP*,
   589 F. Supp. 3d 401 (S.D.N.Y. 2022)....................................................................................25

*Spool* v. *World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008)...................................................................................................19

*Stevenson* v. *Thornburgh*,
   2024 WL 645187 (S.D.N.Y. Feb. 14, 2024)..........................................................................10

*Strougo* v. *Barclays PLC*,
   105 F. Supp. 3d 330 (S.D.N.Y. 2015)....................................................................................18

*Sullivan* v. *UBS AG*,
   149 F.4th 206 (2d Cir. 2025) .................................................................................................14

*Telebyte, Inc.* v. *Kendaco, Inc.*,
   105 F. Supp. 2d 131 (E.D.N.Y.2000) ............................................................................. 12-13

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 659 (2d Cir. 2013).....................................................................................................8

*Vasquez* v. *Hong Kong & Shanghai Banking Corp.*,
477 F. Supp. 3d 241 (S.D.N.Y. 2020)........................................................................11

*W. Energy Opportunities II, LLC* v. *Finalis Sec., LLC*,
2025 WL 935201 (S.D.N.Y. Mar. 26, 2025) ...............................................................16

*Whitaker* v. *Am. Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001).......................................................................................12

*World Ass'n of Icehockey Players Unions N. Am. Div.* v. *Nat'l Hockey League*,
2024 WL 4893266 (S.D.N.Y. Nov. 26, 2024)............................................................12

*Yuille* v. *Uphold HQ Inc.*,
686 F. Supp. 3d 323 (S.D.N.Y. 2023)........................................................................18

*Zamora* v. *FIT Int'l Grp.*,
834 F. App'x 622 (2d Cir. 2020) ...............................................................................21

**Statutes**

CPLR § 302.................................................................................................... *passim*

N.Y. Penal Law § 225.00............................................................................................21

Racketeer Influenced and Corrupt Organizations Act ("RICO") ........................................... *passim*

Securities Act of 1933 Section 12(a)(1).......................................................................3, 23

Securities Act of 1933 Section 15............................................................................ 3, 23-24

**Rules**

Fed. R. Civ. P. 9(b) ..............................................................................................18, 20

Fed. R. Civ. P. 12(b)(2)..............................................................................................1

Fed. R. Civ. P. 12(b)(6)..............................................................................................1

**Constitution**

U.S. Const. Amend. V ..............................................................................................13

**Other Authorities**

Dawn Allcot, "Warren Buffett Says Stock Market Is Becoming 'Casino-Like' —
How To Invest and Not Gamble," Nasdaq (Mar. 22, 2024),
https://www.nasdaq.com/articles/warren-buffett-says-stock-market-is-
becoming-casino-like-how-to-invest-and-not-gamble.............................................................21

SEC Division of Corporate Finance, *Staff Statement on Meme Coins* (Feb. 27, 2025), https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins ...............................................................................................................1n, 21

Baton Corporation Limited officers Alon Cohen, Dylan Kerler, and Noah Tweedale (collectively, the "Baton Officers") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint (ECF No. 129) (the "SAC") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

This lawsuit never should have been filed, it never should have been styled as a putative RICO class action, it never should have named the Baton Officers as defendants, and it fails to present any plausible basis for haling those foreign residents to defend U.S. litigation in this Court.

In their original complaints filed in January 2025, Plaintiffs characterized themselves as representatives of proposed classes of meme coin buyers seeking to sue the Baton Officers for allegedly selling meme coins as unregistered securities via the Pump.fun website operated by their UK company, Baton Corporation Limited ("Baton"), in violation of the Securities Act of 1933.[2] (*See* ECF No. 1).  After the U.S. Securities and Exchange Commission ("SEC") issued guidance in February 2025 that meme coin transactions "do not involve the offer and sale of securities under the federal securities laws"[3]—dealing a fatal blow to the premise for Plaintiffs' claims that those meme coin transactions violated the Securities Act—Plaintiffs tried to repackage their meritless securities claims into the putative class RICO lawsuit set forth in Plaintiffs' first Amended Complaint (ECF No. 34) (the "AC"), alleging that Defendants conspired to defraud retail users on the Pump.fun website to the benefit of sophisticated users.  In reality, Plaintiffs were unhappy that

---

[1] Unless otherwise noted, all emphasis is added, and internal citations and quotations are omitted.

[2] For purposes of this motion only, the Baton Officers treat Plaintiffs' factual allegations as accurate, and do not make any affirmative representations about these topics.

[3] SEC Division of Corporation Finance, *Staff Statement on Meme Coins* (Feb. 27, 2025), https://www.sec.gov/newsroom/speeches-statements/staff-statement-meme-coins ("SEC Meme Coin Statement").

they apparently made money on only *some* of the meme coins they purchased via Pump.fun (*see, e.g.*, ECF No. 17-2)—in what they characterized as a game whose goal was to buy and "hold [each] meme coin and appreciate as much value as possible before the crash."  (AC ¶182).

Then shortly after Defendants moved to dismiss, Plaintiffs sought leave to amend their complaint yet again, and now attempt to plead an expansive theory of RICO liability based on alleged ecosystem misconduct.  Plaintiffs' SAC—their third attempt to plead plausible claims—spans more than 180 pages.  But while long in length, it is devoid of facts that would plausibly suggest any misconduct by the Baton Officers.  Like its predecessors, the SAC is fatally flawed for multiple independent reasons and should be dismissed with prejudice.

*First*, the SAC fails to establish, as is Plaintiffs' burden, that this Court may exercise personal jurisdiction over the Baton Officers.  Plaintiffs sue the Baton Officers, three foreign individuals, over alleged conduct tied to a global platform operated by a foreign corporation but do not plead defendant-specific, claim-linked U.S.- or New York-contacts that would support jurisdiction over any of the Baton Officers for any of the asserted claims.

*Second*, Plaintiffs' allegations do not plead a facially plausible claim for relief against any of the Baton Officers.  The Baton Officers join and incorporate by reference the arguments made in the motions to dismiss filed by Baton (ECF No. 168) and the Blockchain Defendants (ECF No. 166).  In addition, the putative claims against the Baton Officers fail for the additional reasons that:

- *RICO (Counts I & II)*:  Plaintiffs allege only ordinary business relationships among Baton, the Baton Officers, the Blockchain Defendants, and paid promoters, which is insufficient. At most, Plaintiffs' allegations demonstrate that the Baton Officers directed the marketing, technical development, and operations of Baton—not of a distinct enterprise's affairs.

Plaintiffs likewise fail to plead adequately that any of the Baton Officers committed the requisite two predicate acts necessary to state a claim under RICO.

- ***Securities Act Control Person Liability (Count IV)***:  Because Plaintiffs do not establish a primary violation for Section 12(a)(1) of the Securities Act (Baton Br. at § III), their Section 15 control person liability claim cannot stand.  Additionally, Plaintiffs' reliance solely on job titles to plead control person liability fails as to Mr. Kerler or Mr. Tweedale in the absence of any plausible allegations that either had the power to direct the specific issuances that underpin the alleged primary Securities Act violation.

- ***Unjust Enrichment (Count V)***:  Plaintiffs have not plausibly alleged that any of the Baton Officers received anything of value from Plaintiffs.

For these reasons and those detailed below, the SAC should be dismissed with prejudice as to the Baton Officers.

## ALLEGATIONS AGAINST THE BATON OFFICERS

Despite three opportunities to plead viable claims, and the purported receipt of thousands of documents and chat logs, Plaintiffs' 675-paragraph SAC fails to allege any plausible wrongdoing by the Baton Officers, alleging only the following relevant facts:

***Alon Cohen***:  Plaintiffs allege that Mr. Cohen is a UK resident who co-founded Baton and serves as its "Chief Executive."  (SAC ¶70).  Plaintiffs' allegations against Mr. Cohen are largely based on his public statements promoting the Pump.fun platform, as well as his efforts to contract with influencers or social media promoters (referred to herein as "Key Opinion Leaders" or "KOLs").  These allegations, reviewed individually or taken all together, do not plausibly allege his participation in any wrongdoing, let alone a RICO conspiracy.  Specifically, Plaintiffs' allegations as to Mr. Cohen fall into four categories:

First, Plaintiffs point to Mr. Cohen's public statements promoting the Pump.fun platform, contending that they mislead users with "explicit promises of gains" or "false" guarantees of fairness. (SAC ¶366; Amended RICO Statement ("RS") ¶¶51-53). As set out in Section II.B, *infra*, Mr. Cohen's statements do no such thing. For example, on December 10, 2024, Mr. Cohen tweeted: "Stop being poor" and "Download the Pump Fun App™ Now!" (SAC ¶367). Similarly, on January 17, 2025, he tweeted the platform would "make it easy & fun for ALL users to WIN." (SAC ¶368, *see also* ¶169 ("the movers feed on the pump fun mobile app literally cures cancer")). Mr. Cohen also praised successes on the Pump.fun platform. (*See* SAC ¶369 ("now there's a 9 figure runner EVERY DAY"); ¶370 ("small ports [portfolios] tend to chase 1000x+"). He described the platform as "fair" and "as much of an even playing field as it gets IMO [in my opinion]." (SAC ¶¶377, 144(b), 145(c), 364, 375-79). Despite Plaintiffs' characterizations, these tweets (and others cited in the SAC) when viewed in context and in their entirety are precisely as they appear: non-actionable opinions, marketing, and puffery.

Second, Plaintiffs allege that Mr. Cohen analogized trading on Pump.fun to "gambling" or a "casino." (SAC ¶¶404-08, 560(2)(a)). His public communications caution users about the risks of loss on the platform: "you guys came to the greatest CASINO in the world and are complaining when your txns [transactions] RANDOMLY drop?  what did you expect???  it's part of the experience.  don't like it?  LEAVE." (SAC ¶405). Plaintiffs allege that Mr. Cohen made similar comments internally: "we democratized trading lowcaps *so much* that everyone is exposed to the really really low odds that come with gambling such low mcaps." (SAC ¶388). Plaintiffs do not explain how these communications, which they characterize as "normalizing and encouraging casino-like participation," (RS ¶7), are actionable or misleading.

Third, Plaintiffs contend that the "Enterprise" coordinated trading schemes and

characterize certain of Mr. Cohen's public social media posts as "signals" to insiders or market participants to trade in specific tokens.  (RS ¶¶46, 54, 56; SAC ¶¶178, 195, 276-84, 301).  Plaintiffs, however, do not provide any plausible example of such a "signal," instead identifying a handful of generic tweets where Mr. Cohen did not even mention any specific tokens at all.  For example, Plaintiffs allege that Mr. Cohen's tweet "bottom on my memes or I chop it off" was intended "to prime the market for the COPE campaign, knowing insiders had already positioned." (RS ¶56; *see also* SAC ¶¶282-83, 302).  None of these tweets even mentions $COPE or any other token, and Plaintiffs do not even attempt to link any of these tweets with specific market reactions.  Similarly, Mr. Cohen's tweet "literally just a fwog" doesn't even relate on its face to meme coin trading.  (SAC ¶178).  Plaintiffs contend that the tweet "signal[ed] to the market value in 'Fwog' token by using a popular marketing catchphrase for the token."  (*Id.*).  But, on its face, the tweet says nothing about the "Fwog" ***token***.[4]  And again, Plaintiffs do not plausibly plead that the tweet impacted any trading in "Fwog"—in fact, the SAC suggests that the increase in trading in this token had nothing to do with the tweet.  The price graph included in the SAC reflects that the FWOG token price began surging the week *before* Mr. Cohen's post.  (*Id.*).  In short, all of the cited tweets more plausibly describe executive engagement with social media to create buzz for the Pump.fun platform, not coded instructions to KOLs—a proposition for which Plaintiffs provide only conjecture and no supporting factual allegations whatsoever.

Finally, Plaintiffs allege that Mr. Cohen entered into or furthered business arrangements

---

[4] As can be seen in the image in the SAC, Mr. Cohen's tweet was a reply to a different tweet (not alleged to be made by anyone affiliated with Baton), which displayed an image of 29 frogs, which are actually non-fungible tokens ("NFTs"), *not meme coins*, amalgamated in a collection called "The Pond" (itself an NFT) which is not on Pump.fun.  The author of the original tweet captioned the picture "$65,000 for a fwog," apparently a reference to pricing for the "The Pond" NFT.  Mr. Cohen's joking response essentially said, "It's literally just a frog picture."

with purported co-conspirators: KOLs, who were allegedly paid to promote Baton on social media, and certain of the Blockchain Defendants, the makers of an "open-source" code upon which Pump.fun was built. (SAC ¶¶87, 203, 221, 239, 548). Plaintiffs allege that Mr. Cohen had "direct communications" with one KOL but do not describe the contents thereof. (*Id*. ¶¶123, 147, 203). Plaintiffs allege that the Baton Defendants concealed the KOL agreements from the public, allowing the public to believe that the KOLs were promoting Pump.fun "organically." (*Id*. ¶203). However, Plaintiffs acknowledge that some KOLs displayed on their social media profiles a "pill-shaped affiliate badge" with the Pump.fun logo. (*Id*. ¶175). Their allegations about Mr. Cohen's communications with Labs are equally unremarkable: Mr. Cohen "met frequently" with Labs "leadership . . . concerning investment and technical support" and the COO of Labs "offered to help the Pump.fun team with introductions as they navigated needs for product support and investment capital." (*Id*. ¶¶220-24). Again, these allegations merely describe a CEO managing promotional and vendor relationships. There is no allegation that he or any other Baton agent met with the Foundation.

**_Noah Tweedale_**: Plaintiffs allege that Mr. Tweedale is a UK resident who co-founded Baton and serves as its Chief Product Officer. (SAC ¶¶70, 79). The SAC alleges nothing more than his performance of that role. For example, Plaintiffs allege that Mr. Tweedale "exercised operational control over product design, platform features, and user-facing mechanics," including meeting with Labs' officers regarding technical support. (SAC ¶¶221, 390-95, 647). Plaintiffs also allege that he "coordinat[ed] operations and KOL management," including participating in discussions of price negotiation and sharing external content discussing the platform. (SAC ¶¶550, 199-205, 211, 450, 550). In addition to allegations concerning his product design work, the SAC quotes a snippet of a chat in which Mr. Tweedale allegedly advises caution in

keeping "Pump.fun's code and operational details" confidential. (SAC ¶481). Plaintiffs characterize this as evidence of "concealment efforts" and "consciousness of wrongdoing" (SAC ¶550), but the communication is far more plausibly viewed as ordinary corporate prudence and, in any event, is not alleged to have any connection to the alleged scheme in the SAC. Not surprisingly, Mr. Tweedale is all but absent from Plaintiffs' RICO statement, which contains just a handful of conclusory references to him, and does not allege that he made any misstatements or engaged in any specific wrongdoing. (RS ¶¶12, 13, 68, 72, 92).

*Dylan Kerler*: Plaintiffs allege that Mr. Kerler is a UK resident who co-founded Baton and serves as its Chief Technology Officer ("CTO"). (SAC ¶¶70, 80). Although the SAC asserts, without elaboration, that Mr. Kerler "has a documented history of prior 'rug-pull' schemes" (*id.* ¶70)[5], the specific factual allegations against him describe only routine technical work for Baton. Specifically, Plaintiffs allege that he measured user performance (SAC ¶¶234, 549), conferred with Labs and Jito employees to discuss technical issues (*id.* ¶¶221, 231, 234), worked to make the Pump.fun platform engaging for users (*id.* ¶¶391-92), internally shared or received social media mentions of the platform (*id.* ¶¶389, 452, 493), and facilitated content moderation tools and functionality for the platform (*id.* ¶¶475-77). Similarly, the RICO statement contains just a handful of references to Mr. Kerler, all of which are conclusory, and none of which assert any specific misstatements or wrongdoing. (RS ¶¶9-11, 68, 72, 92).

---

[5] This "documented history" consists of an article on "protos.com" that cites to another article that speculates that Mr. Kerler may have been involved in what may have been misconduct when he was 16 years old. The article is irrelevant and does not rescue Plaintiffs' deficient pleadings. *See, e.g.*, *Jackson* v. *Wells Fargo Home Mortg.*, 2019 WL 1376840, at *4 (E.D.N.Y. Mar. 27, 2019) (complaint's "incorporation of newspaper articles about Defendant's prior misconduct that bears no apparent connection to Plaintiff's situation or . . . claim" did not supply a basis for a plausible claim), *aff'd*, 811 F. App'x 27 (2d Cir. 2020).

## I.    THERE IS NO PERSONAL JURISDICTION OVER THE BATON OFFICERS

The SAC asserts that the Baton Officers are UK residents who act on behalf of a UK company with a global reach.  (SAC ¶¶70, 438-39).  Plaintiffs have not alleged that these men had any connections to the United States or to New York, let alone connections related to the claims at issue.  Plaintiffs bear the burden of establishing personal jurisdiction and "must make a *prima facie* showing that jurisdiction exists."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  In the SAC, Plaintiffs allege two bases for this Court to exercise personal jurisdiction over the Baton Officers: (1) as to "all Defendants" under RICO's venue and process statute, 18 U.S.C. § 1965; and (2) "[i]ndependently and in the alternative, this Court has specific personal jurisdiction over Defendants under New York's long-arm statute, N.Y. C.P.L.R. § 302(a)."  (SAC ¶¶89-90).  Yet the allegations in the SAC fall far short of establishing that this Court has general or specific personal jurisdiction over the Baton Officers under either statute or that exercising jurisdiction would satisfy the due process requirements of the U.S. Constitution.

### A.  RICO Does Not Supply Personal Jurisdiction

Plaintiffs allege that the Court may exercise personal jurisdiction over all Defendants under RICO, asserting that certain of the Blockchain Defendants transact their affairs within the district, and the "ends of justice" supply jurisdiction over the remaining Defendants, including the Baton Officers.  (SAC ¶89 (citing 18 U.S.C. § 1965)).  But the "ends of justice" provision is inapplicable to defendants residing outside the United States who were served abroad.  "[A] district court relying on § 1965 may only exert this jurisdictional pull over defendants residing in any other district [under] 18 U.S.C. § 1965(b), ***not foreign defendants***."  *Elsevier, Inc.* v. *Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015); *Nat'l Asbestos Workers Med. Fund* v. *Philip Morris, Inc.*, 86 F. Supp. 2d 137, 140 (E.D.N.Y. 2000) (explaining that 1965(b) by its language applies to parties "residing in any other district," *i.e.*, only United States residents).  Thus plaintiffs may not rely on

-8-

RICO to supply jurisdiction over foreign defendants served outside the United States, but instead "must rely on the long-arm statute of the state in which they filed suit." *Elsevier*, 77 F. Supp. 3d at 343; *see also Laborers Loc. 17 Health & Ben. Fund* v. *Philip Morris, Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998) (same).  The exercise of jurisdiction must also comport with federal due process requirements.  *Elsevier*, 77 F. Supp. 3d at 343.  Plaintiffs, however, fail to plausibly allege a basis for jurisdiction under CPLR Section 302 (*see* Section I.B), and the exercise of jurisdiction would not comport with due process (*see* Section I.C).

### B.  The Court Lacks Jurisdiction Under New York's Long-Arm Statute

The SAC alleges only that the Baton Officers ran Baton in the UK, transacted business utilizing the globally-available, open-source Solana Blockchain, facilitated agreements with promoters of the Pump.fun platform, and, as to Mr. Cohen, marketed the platform on global social media platforms and had "direct communications" with one unidentified KOL on unidentified topics.  (SAC ¶¶11, 147, 203 n.4, 364 n.9).  These allegations do not come close to establishing that the Baton Officers (i) transacted business in the forum which gave rise to Plaintiffs' claims or (ii) committed tortious acts causing injury in New York and "derive[d] substantial revenue from goods used or consumed or services rendered, in the state."  CPLR § 302; (SAC ¶90).

### 1.  CPLR Section 302(a)(1) – Transacting Business in the State

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  *Eades* v. *Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015).  "Transacting business" requires "purposeful activit[y]," *i.e.*, "volitional acts" in which a defendant "avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Al Rushaid* v. *Pictet & Cie*, 28 N.Y.3d 316, 323 (2016).  Courts consider "not the quantity but the quality of the contacts" with the forum.  *Paraco*

*Gas Corp.* v. *Ion Bank*, 2021 WL 2810062, at *5 (S.D.N.Y. July 6, 2021).

First, Plaintiffs allege that "***Defendants*** transacted business in New York by operating, promoting, and monetizing the Pump.fun platform and related infrastructure that was accessed by New York residents." (SAC ¶90). As an initial matter, such group pleading is impermissible. *Stevenson* v. *Thornburgh*, 2024 WL 645187, at *32 (S.D.N.Y. Feb. 14, 2024) (McMahon, J.). Moreover, courts consistently hold that a web platform's mere accessibility in New York, without more, does not provide a basis for jurisdiction over a non-domiciliary. *See, e.g.*, *Moose Toys Ltd* v. *Baby&Mommy K-ingdom Toy Store*, 2025 WL 3466662, at *7 (S.D.N.Y. Sept. 19, 2025) ("To hold that a plaintiff's unilateral access of a defendant's website, without more, is sufficient under § 302(a)(1) to confer personal jurisdiction on that defendant, no matter where they are in the world, would unduly stretch the meaning of transacting business."), *report and recommendation adopted*, 2025 WL 3204418 (S.D.N.Y. Nov. 13, 2025); *Lopez* v. *Shopify, Inc.*, 2017 WL 2229868, at *8 n.9 (S.D.N.Y. May 23, 2017) ("The Court is not satisfied that the theoretical availability of . . . allegedly [unlawful] goods to anyone with internet use in any state, including New York, means that [defendant] has 'purposefully directed' its activities at New York."); *Deer Consumer Prods., Inc.* v. *Little*, 938 N.Y.S.2d 767, 778 (Sup. Ct. N.Y. Cnty. 2012) ("Regardless of the interactivity level of [defendant's websites], there is no indication that [defendant's] internet postings on these websites, which are merely accessible to anyone—in New York and in the entire world—were expressly targeted at *anyone in New York*.").

Thus, Plaintiffs' allegation that New York residents "accessed" the Pump.fun platform does not suffice. (SAC ¶91). *See Savage Universal Corp.* v. *Grazier Const., Inc.*, 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 13, 2004) ("It stretches the meaning of 'transacting business' to subject defendants to personal jurisdiction in any state merely for operating a website, however

commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred."). Further, Plaintiffs' allegations that the Baton Officers promoted the platform does not constitute "transacting business," as the SAC does not allege that they "manifested [] intent specifically to target New York [consumers] or to avail themselves of the particular benefits of New York law." *Girl Scouts of U.S.* v. *Steir*, 102 F. App'x 217, 219 (2d Cir. 2004).

Second, Plaintiffs, none of whom are alleged to be residents of New York, do not demonstrate that their claims arise from any transaction of business within the state. Nor may they rely on the possibility that unidentified class members reside in New York. "[P]ersonal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action. Contacts with unnamed class members may not be used as a jurisdictional basis, especially before a class has been certified." *Vasquez* v. *Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 255 (S.D.N.Y. 2020); *see also Chufen Chen* v. *Dunkin' Brands, Inc.*, 2018 WL 9346682, at *5 (E.D.N.Y. Sept. 17, 2018) ("[E]ach named plaintiff in a purported class action must show that in-state contacts specific to their claim give rise to specific jurisdiction over an out-of-state defendant."), *aff'd*, 954 F.3d 492 (2d Cir. 2020).

### 2. CPLR Section 302(a)(3) – Tortious Conduct Without the State

Plaintiffs allege that jurisdiction under Section 302(a)(3) is proper because "Defendants committed tortious acts causing injury in New York by transmitting into New York misrepresentations and omissions concerning 'fair launches,' 'even playing fields,' and purportedly organic promotions[.]" (SAC ¶90). The SAC alleges ***no such communications by Mr. Kerler or Mr. Tweedale, however***. (*E.g., id.* ¶560). For them, that is the end of the inquiry.

As to Mr. Cohen's alleged communications: Plaintiffs do not allege that any of these communications occurred within New York, and no named Plaintiff alleges an injury in New York;

this means the "situs" of their injuries is not New York, and Section 302(a)(3) does not confer jurisdiction over Mr. Cohen. *See Whitaker* v. *Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) ("situs-of-injury" test looks to "the location of the original event which caused the injury"). In *Elsevier*, Judge Failla found the "situs" requirement was not satisfied where the plaintiff suffered its injury in Delaware, the defendants conducted their alleged subscription fraud in Brazil, and the complaint contained "no allegations regarding sales to New York customers, or potential losses to those customers." 77 F. Supp. 3d 331 at 346. Similarly, in *Berdeaux* v. *OneCoin Ltd.*, 561 F. Supp. 3d 379, 407-08 (S.D.N.Y. 2021), the court held that New York was not the situs of the injury for claims of fraud against defendants for an alleged cryptocurrency scheme where the named plaintiffs lived and felt their alleged economic injuries in other states, the defendants lived in Florida, and the alleged fraud occurred outside of New York. And courts in the Second Circuit "have long looked only to the claims of named plaintiffs in assessing personal jurisdiction," even where those plaintiffs purport to represent unnamed individuals. *World Ass'n of Icehockey Players Unions N. Am. Div.* v. *Nat'l Hockey League*, 2024 WL 4893266, at *10 (S.D.N.Y. Nov. 26, 2024) (finding New York was not the situs of the injury under section 302(a)(3) where the only New York residents allegedly injured in New York were unnamed class members).

Moreover, the SAC lacks plausible allegations that Mr. Cohen (or any of the Baton Officers) "transmitted" any statements into New York. Courts routinely hold that generic statements on Twitter and social media do not target any specific forum and thus cannot provide a basis for personal jurisdiction. *See, e.g.*, *Reliance First Cap., LLC* v. *Mid Am. Mortg., Inc.*, 2019 WL 2504039, at *10-11 (E.D.N.Y. June 17, 2019) (the defendant's Twitter posts did not satisfy sections 302(a)(1) or 302(a)(3) because there were no allegations or jurisdictional evidence that defendant made efforts to serve or target the New York market); *Telebyte, Inc.* v. *Kendaco, Inc.*,

-12-

105 F. Supp. 2d 131, 136 (E.D.N.Y. 2000) ("[T]he mere existence of a web site accessible from New York is insufficient to establish 'solicitation' for purposes of personal jurisdiction.") (citing *Bensusan Rest. Corp.* v. *King*, 126 F.3d 25, 29 (2d Cir. 1997)).

Finally, Plaintiffs cannot satisfy Section 302(a)(3)'s revenue or foreseeability requirement with the bare allegation that Defendants "derived substantial revenue from interstate and international commerce, including fees and other proceeds generated from transactions initiated by users located in New York and this federal district." (SAC ¶90). Courts have rejected identical conclusory allegations. *See Davey* v. *PK Benelux B.V.*, 2022 WL 1289341, at *4 (S.D.N.Y. Apr. 29, 2022) (finding that plaintiff's "conclusory allegation that defendant 'derives substantial revenue from its sales of its subject products in the U.S. and in New York' is insufficient for the Court to exercise personal jurisdiction" under Section 302(a)(3)(ii)).   There are no specific allegations that the Baton Officers personally derived revenue from any New York transactions. *See JDH Unlimited Inc.* v. *APKZ Med. Inc.*, 2025 WL 3078160, at *12 (E.D.N.Y. Nov. 4, 2025) ("Apart from a passing reference in the Complaint and opposition, [p]laintiff does not explain how [defendant] *personally* derived any revenue from interstate or international commerce.").

## C.  The Exercise of Personal Jurisdiction Would Violate Due Process

The Supreme Court has long emphasized that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co.* v. *Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 115 (1987).  Thus, even if a statutory basis for jurisdiction exists, foreign defendants may be haled into U.S. courts only where doing so is consistent with the Due Process Clause of the Fifth Amendment.  *Fuld* v. *Palestine Liberation Org.*, 606 U.S. 1, 19, 23 (2025).

As to the Baton Officers, Plaintiffs have not plausibly alleged minimum contacts or any meaningful nexus to New York or even to the U.S., nor demonstrated that the exercise of

jurisdiction over these foreign residents would be reasonable. *See, e.g.*, *In Re: Glob. Cord Blood Corp. Sec. Litig.*, 2026 WL 444770, at *8 (S.D.N.Y. Feb. 17, 2026); *see also Sullivan* v. *UBS AG*, 149 F.4th 206, 218 (2d Cir. 2025). Plaintiffs do not allege that the Baton Officers reside in or have any connections to New York or the U.S. (SAC ¶70). Nor have Plaintiffs plausibly alleged that any of the Baton Officers' suit-related conduct—running Baton and Mr. Cohen's social media posts—targeted New York or the U.S. *See In re EHang Holdings Ltd. Sec. Litig.*, 646 F. Supp. 3d 443, 457-58 (S.D.N.Y. 2022) (Twitter and LinkedIn posts insufficient to confer jurisdiction where not directed at forum); *Safex Found., Inc*. v. *SafeLaunch Ventures Ltd*., 694 F. Supp. 3d 1, 16-17 (D.D.C. 2023) ("The mere accessibility of [defendant's] self-promotional Tweets in the United States, just as they are accessible around the globe, does not establish the necessary minimum contacts with this forum, particularly when the Tweets do not themselves evince any effort to target United States business."). Indeed, Plaintiffs acknowledge that "[a]ny user, anywhere in the world" can utilize the Pump.fun platform. (SAC ¶439). And with respect to Plaintiffs' allegations of the Baton Officers' corporate roles, as courts have recognized, "the Due Process Clause is made of sterner stuff than a mere allegation of [corporate] control." *In re Parmalat Sec. Litig*., 376 F. Supp. 2d 449, 454 (S.D.N.Y. 2005) (holding that a corporation's jurisdictional contacts could not be imputed to individual defendant through her corporate board membership and alleged status as a control person).

Thus, for the same reasons Plaintiffs cannot satisfy CPLR Section 302—the absence of alleged conduct by the Baton Officers in the relevant jurisdiction—the SAC cannot satisfy the requirements of federal due process.

## II.    PLAINTIFFS' RICO CLAIMS FAIL AS TO THE BATON OFFICERS

Despite numerous amendments, the SAC fails to plead facially plausible RICO claims against any of the Baton Officers. Civil RICO is considered "an unusually potent weapon—the

litigation equivalent of a thermonuclear device." *Katzman* v. *Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997). "Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Id.* Those concerns are particularly relevant here where the Baton Officers face potential treble damages for merely operating a cryptocurrency platform.

To state a claim under Section 1962(c), Plaintiffs must adequately plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," *Kim* v. *Kimm*, 884 F.3d 98, 103 (2d Cir. 2018), and to state a claim under Section 1962(d), must plead a conspiracy to violate Section 1962(c). The Baton Officers join in the arguments made by the other Defendants that Plaintiffs' RICO claims fail because: they are barred by the PSLRA; lack the requisite RICO injury and proximate causation; do not adequately plead a RICO enterprise; do not adequately plead the alleged predicate acts; fail to plead a domestic injury; and fail to plead a RICO conspiracy. (*See* Baton Br. at § II; Blockchain Defendants Br. at §§ I-II). Plaintiffs' RICO claims against the Baton Officers fail for the additional reasons that the SAC does not adequately allege that any of the Baton Officers (i) operated or managed an enterprise, (ii) personally committed two or more predicate acts, or (iii) agreed to participate in a racketeering conspiracy.

### A. Plaintiffs Fail to Plausibly Allege that the Baton Officers Participated in the Operation or Management of an Enterprise

The requirements of Section 1962(c) "must be established as to ***each*** individual defendant." *DeFalco* v. *Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). Liability under Section 1962(c) attaches only to those who "participate[] in the operation or management of the enterprise itself." *Reves* v. *Ernst & Young*, 507 U.S. 170, 183 (1993); *see also Demaree* v. *Castro*, 2023 WL 6465881, at *10 (S.D.N.Y. Oct. 4, 2023) ("[O]ne is liable under RICO only if he participated in the operation or

management of the enterprise itself.") (citing *First Cap. Asset Mgmt., Inc.* v. *Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004)).  This "operation and management test" is "a very difficult test to satisfy."  *LaSalle Nat'l Bank* v. *Duff & Phelps Credit Rating Co*., 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996), *abrogated on other grounds*, *Anschutz Corp*. v. *Merrill Lynch & Co., Inc*., 690 F.3d 98, 115 (2d Cir. 2012).

Plaintiffs fail to plead that the Baton Officers operated or managed an enterprise distinct from Baton.  "[P]laintiffs must . . . allege that the defendants conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity, meaning that the defendant must have had some part in directing the ***enterprise's affairs***."  *W. Energy Opportunities II, LLC* v. *Finalis Sec., LLC*, 2025 WL 935201, at *6 (S.D.N.Y. Mar. 26, 2025).  This requires allegations that each defendant acted "on behalf of the *enterprise* as opposed to on behalf of [themselves] in their individual capacities, to advance their individual self-interests." *D. Penguin Bros.* v. *City Nat. Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) (summary order).  However, the latter is all plaintiffs allege—instead of pleading operation or management of the ***enterprise***, Plaintiffs merely allege that the Baton Officers operated and managed ***Baton****:* Mr. Cohen directed strategy and promoted the platform (RS ¶7; SAC ¶¶377-79, 388, 405-07, 548, 563); Mr. Kerler developed the platform's technology and communicated with Labs about technical integration (RS ¶10; SAC ¶¶231-32, 549); and Mr. Tweedale was involved in platform operations and marketing (RS ¶12; SAC ¶¶481, 550).  Such allegations are not enough to plead their participation in a RICO enterprise.  *See Elsevier Inc*. v. *W.H.P.R., Inc*., 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010) (dismissing RICO claims against several individual defendants because "it is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the

enterprise") (McMahon, J.); *Crab House of Douglaston, Inc.* v. *Newsday, Inc.*, 418 F. Supp. 2d 193, 206-09 (E.D.N.Y. 2006) (allegations insufficient to allege "operation or management of an enterprise" where "there [wa]s no attempt to distinguish" individual defendant's "legitimate capacity as a supervisor" in the corporate defendant and "his [alleged] illegitimate capacity as a director or manager of the enterprise").

**B. Plaintiffs Fail to Plead a Pattern of Racketeering Activity by the Baton Officers**

Plaintiffs' RICO claims against the Baton Officers also fail because the SAC does not adequately plead that each of the Baton Officers committed two predicate acts. *See Shetiwy* v. *Midland Credit Mgmt.*, 15 F. Supp. 3d 437, 443 (S.D.N.Y. 2014) (citing *DeFalco*, 244 F.3d at 306). The SAC alleges three RICO predicate acts: (1) wire fraud, (2) gambling, and (3) money laundering. The Baton Officers incorporate by reference the arguments made by the other Defendants, and address here only the allegations specific to the Baton Officers, which relate only to wire fraud and gambling and only to Mr. Cohen.

**1.      Plaintiffs Do Not Plausibly Allege Wire Fraud by Any of the Baton Officers**

As confirmed by Plaintiffs' RICO statement,[6] Plaintiffs do not plead that Mr. Kerler or Mr. Tweedale made ***any*** actionable misrepresentations or omissions, and their wire fraud allegations with respect to Mr. Cohen rely on only a handful of his tweets (RS ¶¶50-56), none of which constitutes a material misstatement made with fraudulent intent. Plaintiffs contend that Mr. Cohen's statements were misleading because (1) he characterized the Pump.fun platform as "fair," and a "level playing field," (2) suggested that users could achieve successes, when most users lost

---

[6] The RS purports to provide a "non-exhaustive" list of the statements on which Plaintiffs base their wire fraud claims. (RS ¶50). The implication that there may be other, unspecified misstatements does not state the allegations with particularity and should be entitled to no weight. *See* RICO Case Standing Order at 1-2.

money, and (3) allegedly sent coded signals to insiders to facilitate coordinated trading. (*Id.*). None of these statements rise to the level of an actionable misstatement, however, and Plaintiffs fall far short of Rule 9(b)'s demanding standard. *See, e.g.*, *Satinwood*, 385 F.3d at 178-79 (affirming dismissal where complaint failed to plead RICO predicate acts with particularity as to each defendant).

First, Mr. Cohen's statements promoting Pump.fun are inactionable puffery and opinion. Indeed, his tweet that "pump fun is as much of an even playing field as it gets IMO" is even qualified with "IMO" meaning "in my opinion." (RS ¶52). His similar statements that Pump.fun was an "unruggable fair launch platform," (*id.* ¶51) and "the playing field is as fair as ever," (*id.* ¶53) are too vague to be actionable. *See, e.g.*, *Sandoval* v. *Uphold HQ Inc.*, 2025 WL 1268291, at *6 (S.D.N.Y. May 1, 2025) (statements that investment were "safe" and "secured" were puffery); *Yuille* v. *Uphold HQ Inc.*, 686 F. Supp. 3d 323, 344-45 (S.D.N.Y. 2023) (statements that "security is in our DNA" and "security is built into our systems and culture" were inactionable puffery, as opposed to concrete statements that the defendant "responds immediately to any detected threat" and that its "providers undergo appropriate due diligence checks"); *Strougo* v. *Barclays PLC*, 105 F. Supp. 3d 330, 344 (S.D.N.Y. 2015) ("[G]eneral statements about reputation, integrity, and compliance with ethical norms are inactionable puffery.").

Second, the same is true of Mr. Cohen's generic statements about Pump.fun's successes, such as his boast that "retail's already up massively" (RS ¶53). These statements are mere sales puffery. *See Newman* v. *L.F. Rothschild, Unterberg, Towbin*, 651 F. Supp. 160, 163 (S.D.N.Y. 1986) ("When a broker calls a bond 'marvelous,' or says a stock is so 'red hot' that the investor 'could not lose,' . . . the reasonable investor is presumed to understand that this is nothing more than 'the common puff of a salesman,' not a material factual misstatement."). Moreover, any

inference of intent to mislead is undercut by Plaintiffs' examples of Mr. Cohen's public statements saying the exact opposite. (*See, e.g.*, SAC ¶406 (Cohen's tweet that users get "oneshotted" by pump.fun was an "acknowledge[ment] that users were being compelled toward financial destruction chasing 'generational wealth' and yet continued to operate the platform.")). And Plaintiffs' vague claims that Mr. Cohen sent "3,000+ cold DMs [direct messages]" soliciting users to trade on the platform are too vague to be actionable. (SAC ¶¶364 & n.9, 377; RS ¶55). Plaintiffs do not specify the contents of the messages, to whom they were sent, when, and what was misleading about the messages. *See Spool* v. *World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) ("Allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent.").

Third, while Plaintiffs allege that Mr. Cohen sent messages to insiders in furtherance of a scheme to disguise coordinated trading as "organic" market activity, the actual tweets they cite show no such thing. (RS ¶¶54-57). For example, Plaintiffs allege that Mr. Cohen's tweet "bottom on my memes or I chop it off" was intended "to prime the market for the COPE campaign." (*Id*. ¶56(d)). However, this is pure speculation; on its face, Mr. Cohen's tweet does not contain any statement of fact, does not mention COPE, and does not exhort any action from users. *See Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (claims of fraud may not be based on speculation or conclusory allegations).

Finally, none of the foregoing informal statements are sufficiently alleged to be material or made with fraudulent intent, as they must be to violate the wire fraud statute. *Id.* Materiality resembles a "but-for standard" and considers "whether the misrepresentation constitut[es] an inducement or motive to enter into a transaction." *See Kousisis* v. *United States*, 605 U.S. 114,

131 (2025). Plaintiffs fail to allege with particularity that the cited statements were inducements to Plaintiffs or anyone else to enter into the allegedly rigged transactions—*e.g.*, that the statements had any "effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Id*. Instead, Plaintiffs merely allege in a conclusory fashion that Plaintiffs "suffered losses in reliance on defendants' false assurances." (SAC ¶43).

Plaintiffs' allegations as to intent are equally conclusory. (SAC ¶¶480-94, 560, 563). The allegations purportedly showing the scienter of Defendants (as a group) have little connection to Plaintiffs' wire fraud claims: "(i) internal acknowledgments characterizing Pump.fun as 'gambling' with low odds; (ii) public statements describing Pump.fun as a 'casino'; (iii) deliberate operation without KYC/AML/sanctions screening despite foreseeability of misuse; (iv) concealment steps taken when scrutiny increased; and (v) continued inducement of retail participation after learning of predatory conduct and retail losses." (RS ¶57). Moreover, the fact that Defendants described the risks of token trading consistently internally and externally is not indicative of scienter; the sanctions screening is irrelevant to any statement alleged to be misleading; and, as discussed above, the allegations of "concealment steps" consist of counseling prudence with respect to press inquiries. None of this pleads scienter. *See Flexborrow LLC* v. *TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 423 (E.D.N.Y. 2017) (simply coupling a factual statement with a "conclusory allegation of fraudulent intent," such as that Defendants "knew but concealed" some things, does not satisfy the requirements of Rule 9(b)) (citing *Shields* v. *Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994)). And there is nothing nefarious about "inducement of retail participation." (RS ¶57). Plaintiffs may not rely upon a "generalized profit motive that could be imputed to any company," and thus such allegations are "consistently rejected as a basis for inferring fraudulent intent." *Flexborrow*, 255 F. Supp. 3d at 423.

### 2. Plaintiffs Do Not Adequately Plead Illegal Gambling as to the Baton Officers

For the reasons set forth in Baton's Brief (§ II.C), the SAC does not plausibly allege that Baton engaged in illegal gambling within the meaning of N.Y. Penal Law § 225.00. Thus, the claims against the Baton Officers based on their roles at Baton also necessarily fail. *See* 18 U.S.C. § 1955 (liability hinges on existence of "illegal gambling business").

Outside of running Baton itself, Plaintiffs point only to a handful of comments by Mr. Cohen that analogize meme coin trading to gambling. (RS ¶¶7, 51(f); SAC ¶¶405-07). But these are not admissions that he or Baton violated New York's gambling laws. Nor are these statements remarkable. Analysts and commentators often liken trading in the financial markets generally to "gambling" in a colloquial sense. *See, e.g.*, Dawn Allcot, "Warren Buffett Says Stock Market Is Becoming 'Casino-Like' — How To Invest and Not Gamble," Nasdaq (Mar. 22, 2024).[7] And as the SEC has recognized, meme coin trading is inherently "speculative," and it is well-known that meme coins "tend to experience significant market price volatility," such that they are "often are accompanied by statements regarding their risks and lack of utility, other than for entertainment or other non-functional purposes." (SEC Meme Coin Statement).

### C. Plaintiffs Do Not Adequately Plead a RICO Conspiracy Claim

Because Plaintiffs' underlying Section 1962(c) claim fails, Plaintiffs' RICO conspiracy claim under Section 1962(d), relying on the same factual predicate, likewise fails. *See Zamora* v. *FIT Int'l Grp.*, 834 F. App'x 622, 626 (2d Cir. 2020) (summary order).

Moreover, Plaintiffs have not adequately pleaded, as they must: "that each defendant 'knew about and agreed to facilitate' a pattern of racketeering activity." *Cont'l Petrol. Corp.* v. *Corp. Funding Partners, LLC*, 2012 WL 1231775, at *8 (S.D.N.Y. Apr. 12, 2012) (quoting *Baisch* v.

---

[7] *Available at* https://www.nasdaq.com/articles/warren-buffett-says-stock-market-is-becoming-casino-like-how-to-invest-and-not-gamble.

*Gallina*, 346 F.3d 366, 377 (2d Cir. 2003)).   Specifically, "a plaintiff must prove that (i) the defendants agreed to form and associate themselves with a RICO enterprise; (ii) the defendants agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise; and (iii) if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity."  *Elsevier, Inc.* v. *Grossman*, 2013 WL 6331839, at *11 (S.D.N.Y. Dec. 5, 2013) (citing *Cofacredit, S.A.* v. *Windsor Plumbing Supply Co.*, 187 F.3d 229, 244-45 (2d Cir. 1999)).  The "core of a RICO civil conspiracy is an agreement to commit predicate acts," and a plaintiff must allege "specifically" that ***each defendant*** entered such an agreement to facilitate a pattern of racketeering activity.  *Flexborrow*, 255 F. Supp. 3d at 425 (quoting *Hecht* v. *Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990)).

Here, Plaintiffs conclusorily allege that "Defendants knowingly and intentionally conspired to violate § 1962(c) by agreeing among themselves and with other Enterprise participants that at least one conspirator would conduct or participate in the conduct of the [enterprise] through a pattern of racketeering activity[.]"  (SAC ¶594).  The only supporting factual allegations with respect to the Baton Officers are of "[m]eetings between Pump.fun leadership and [Labs] leadership" regarding "investment and technical support" and Mr. Cohen's entering into promotion agreements with paid KOLs.  (*Id.* ¶¶597(e), 598(a)).  These allegations simply do not support the claim that the Baton Officers agreed to form a RICO enterprise or agreed to commit illegal racketeering.  *See 4 K & D Corp.* v. *Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 545 (S.D.N.Y. 2014) (dismissing RICO conspiracy claim and finding that "plaintiffs have alleged no facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations"); *FD Prop. Holding, Inc.* v. *U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 373-74 (E.D.N.Y. 2002) (allegation that "each of these defendants agreed to commit each of the two or more

-22-

predicate acts" insufficient to state a claim for RICO conspiracy); *see also Flexborrow*, 255 F. Supp. 3d at 425 (a RICO conspiracy claim "should be more than a conclusory add-on at the end of a complaint").

### III.    PLAINTIFFS' CONTROL PERSON LIABILITY CLAIMS FAIL

As explained in Baton's motion to dismiss, Plaintiffs' Section 12(a)(1) claim fails for multiple independent reasons including because: they do not adequately allege that the tokens at issue are "securities," that the relevant transactions occurred in the United States, or that Plaintiffs have standing.  (*See* Baton Br. at § III).  Absent a viable primary violation, the Section 15 claim against the Baton Officers fails as a matter of law.  *See Rombach* v. *Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004); *May* v. *Barclays PLC*, 2025 WL 887300, at *30 (S.D.N.Y. Mar. 21, 2025) (dismissing Section 15 claims where no primary violation is alleged).

Even setting aside that threshold defect, Plaintiffs still fail to adequately allege "control" as to Mr. Kerler or Mr. Tweedale.  To survive dismissal, "a plaintiff must plead facts which support a reasonable inference that [each] had the potential power to influence and direct the activities of the primary violator." *In re Deutsche Telekom AG Sec. Litig.*, 2002 WL 244597, at *7 (S.D.N.Y. Feb. 20, 2002).  It is not "sufficient . . . to simply allege. . .that they were all either officers or directors of [the company] at relevant times." *Pub. Employees' Ret. Sys. of Miss.* v. *Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010); *Ho* v. *Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 578 (S.D.N.Y. 2012) (dismissing claims against individual defendants as the "[s]tatus of defendants as directors, standing alone, is insufficient to establish their control").

Here, the SAC pleads no nonconclusory facts that Mr. Kerler or Mr. Tweedale exercised actual control over Baton in connection with the issuance or solicitation of the tokens alleged to be "securities."  The allegations against Mr. Tweedale and Mr. Kerler concern their technical and operational development roles with respect to Baton.  (*See* SAC ¶¶646-47 (Mr. Tweedale

"exercised operational control over product design, platform features, and user-facing mechanics"); ¶647(c) (Mr. Kerler controlled technical architecture and operational mechanics of the platform)).  Plaintiffs plead no link between their roles building the platform's infrastructure and the purported direction of any decisions to offer and sell the alleged securities.  *See Orient Plus Int'l Ltd.*, 799 F. Supp. 3d 310, 356 (S.D.N.Y. 2025) (dismissing Section 15 claim where it would require "speculative, inferential leaps" to conclude the defendant actively controlled the transactions); *Emerson* v. *Mutual Fund Series Trust*, 393 F. Supp. 3d 220, 260-61 (E.D.N.Y. 2019) (dismissing Section 15 claim and rejecting "boilerplate statement of control status").  The Court should likewise reject the "boilerplate" allegations here.

## IV.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS

Plaintiffs have not alleged that a single dollar has flowed from their pockets to those of Mr. Cohen, Mr. Kerler, or Mr. Tweedale.  This is fatal to Plaintiffs' unjust enrichment claim against the Baton Officers.  *See Koenig* v. *Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (to state a claim for unjust enrichment under New York law, a plaintiff must adequately allege that "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff"); *Brenner* v. *Brenner*, 821 F. Supp. 2d 533, 540-41 (E.D.N.Y. 2011) ("To support an unjust enrichment claim a plaintiff must establish a specific and direct benefit moving from the plaintiff to the defendant.").

Plaintiffs allege only that "Defendants" were "unjustly enriched" at "the expense of Plaintiffs" by the retention of "platform fees, profits, and token allocations" (SAC ¶651), but do not plead any facts supporting that any of these fees or funds were paid directly to the Baton Officers.  Plaintiffs may not rely on such conclusory allegations or group pleading.  *See Risley* v. *Universal Navigation Inc.*, 2026 WL 572065, at *13 (S.D.N.Y. Mar. 2, 2026) (dismissing unjust enrichment claim where the complaint "contains no allegations of a specific, direct benefit");

*Caplan* v. *Dollinger*, 803 F. Supp. 3d 219, 238 (S.D.N.Y. 2025) ("Plaintiffs' [f]ailure to plead facts identifying with any specificity the benefit each of these Defendants is alleged to have received is fatal to their unjust enrichment claims."); *Snowbridge Advisors LLC* v. *ESO Cap. Partners UK LLP*, 589 F. Supp. 3d 401, 421-22 (S.D.N.Y. 2022) (dismissing unjust enrichment claim where plaintiff failed to allege "affirmative acts" by individual defendants that resulted in them obtaining a benefit at the expense of plaintiff); *Barlow* v. *Skroupa*, 221 A.D.3d 482, 484 (1st Dep't 2023) ("[P]laintiffs failed to state a cause of action against [individual defendants] for unjust enrichment because the complaint asserts no nonconclusory facts suggesting that they were enriched at plaintiffs' expense.").

Finally, Plaintiffs do not and cannot argue that the purported benefit to the Baton Officers is the compensation each received as an officer of Baton, as courts routinely reject claims premised on an individual's compensation as too "attenuated" to state a claim for unjust enrichment. *See, e.g.*, *Bilinski* v. *Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 52 (S.D.N.Y. 2015) (dismissing unjust enrichment claim where "the connection between the alleged harm to the plaintiffs and the compensation paid to individual defendants is too attenuated to support an unjust enrichment claim"), *aff'd*, 632 F. App'x 637 (2d Cir. 2015).

For each of these reasons, and those set out in Baton's motion to dismiss (*see* Baton Br. at § IV), Plaintiffs' unjust enrichment claims against the Baton Officers should be dismissed.

## <u>CONCLUSION</u>

Plaintiffs' claims against the Baton Officers should be dismissed with prejudice.

Dated:   March 6, 2026     Respectfully submitted,

          CAHILL GORDON & REINDEL LLP

          By:  */s/ Samson A. Enzer*
              Samson A. Enzer
              Tammy L. Roy
              Lauren Perlgut
              32 Old Slip
              New York, NY 10005
              (212) 701-3000

          *Counsel for the Baton Officers*

**<u>WORD COUNT CERTIFICATION</u>**

I, Samson A. Enzer, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c).  According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 8,217 words in the document.

*/s/Samson A. Enzer*
Samson A. Enzer
